BLANK ROME LLP
Ana Tagvoryan (SBN 246536)
ana.tagvoryan@blankrome.com
Victor Sandoval (SBN 344461)
victor.sandoval@blankrome.com
2029 Century Park East | 6th Floor
Los Angeles, CA 90067
Telephone: 424.239.3400
Facsimile: 424.239.3434

*Attorneys for Defendant*
Rack Room Shoes, Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION**

| | |
|---|---|
| DEMETRIUS SMITH, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>RACK ROOM SHOES, INC.,<br><br>Defendant. | Case No. 3:24-cv-06709-RFL<br><br>[*Assigned to Judge Rita F. Lin*]<br><br>**DEFENDANT RACK ROOM SHOES, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS AND/OR STRIKE COMPLAINT**<br><br>(*Filed concurrently with Memorandum and Points of Authorities, Request for Judicial Notice and [Proposed] Order*)<br><br>Date: January 14, 2025<br>Time: 1:30 p.m.<br>Courtroom: 15<br><br>Complaint Filed: September 24, 2024<br>Complaint Served: October 9, 2024<br>Trial Date: None set |

TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on January 14, 2025 at 1:30 p.m., or as soon thereafter as this matter can be heard by the Honorable Rita F. Lin of the United States District Court, Northern District of California, located at 450 Golden Gate Ave., San Francisco, CA 94102, Courtroom 15, 18th Floor, Defendant Rack Room Shoes, Inc. ("Defendant" or "Rack Room") will and hereby does move to dismiss and/or strike Plaintiffs' Putative Class Action Complaint ("Complaint") pursuant to Federal Rules of Civil Procedure, Rules 12(b)(6) and 12(f).

Specifically, Defendant moves to dismiss Plaintiffs' Complaint, or any claim therein, pursuant to Federal Rules of Civil Procedure, Rule 12(b)(6), and/or to strike Plaintiffs' tolling allegations pursuant to Federal Rules of Civil Procedure, Rule 12(f).

This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Request for Judicial Notice, any Reply filed in support of the Motion, and the records and pleadings in this action.

DATED: November 27, 2024 BLANK ROME LLP

By: /s/ *Victor Sandoval*
Ana Tagvoryan
Victor Sandoval
Attorneys for Defendant
RACK ROOM SHOES, INC.

BLANK ROME LLP
Ana Tagvoryan (SBN 246536)
ana.tagvoryan@blankrome.com
Victor Sandoval (SBN 344461)
victor.sandoval@blankrome.com
2029 Century Park East | 6th Floor
Los Angeles, CA 90067
Telephone: 424.239.3400
Facsimile: 424.239.3434

*Attorneys for Defendant*
Rack Room Shoes, Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION**

DEMETRIUS SMITH, et al.,

Plaintiffs,

v.

RACK ROOM SHOES, INC.,

Defendant.

Case No. 3:24-cv-06709-RFL

[*Assigned to Judge Rita F. Lin*]

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE COMPLAINT**

(*Filed concurrently with Notice of Motion and Motion, Request for Judicial Notice, and [Proposed] Order*)

Date: January 14, 2025
Time: 1:30 p.m.
Courtroom: 15

Complaint Filed: September 24, 2024
Complaint Served: October 9, 2024
Trial Date: None set

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .....1
II. ARGUMENT .....2
A. FRCP 12(b)(6) – Failure to State a Claim .....2
B. FRCP 12(f) – Motion to Strike .....2
C. The Claims Unrelated to Meta Are Conclusory and Group-Pled .....2
D. Plaintiffs Consented to the Conduct Alleged to be at Issue Here .....3
E. Plaintiffs' Complaint Fails to State a Claim for Violation of CIPA 631(a) .....4
a. The Party and Party Extension Exceptions Exempt Rack Room .....5
b. Plaintiffs Do Not Otherwise State a Violation of Section 631(a) .....6
i. Intentional Wiretapping Is Inapplicable to Internet. .....6
ii. No Content of Communications and Not Intercepted in Transit. .....7
iii. No Information from Wiretapping or Eavesdropping Used. .....9
iv. No Derivative Liability Alleged. .....9
F. Plaintiffs' Complaint Fails to State a Claim for Violation of CIPA 632 .....11
a. Internet Communications Are Presumptively Non-Confidential .....11
b. Section 632 Does Not Provide for Derivative Liability .....13
G. The Tolling Section of Plaintiffs' Complaint Should be Stricken .....14
III. CONCLUSION .....15

**Issues to Be Decided**

1. Can Plaintiffs plead a violation of CIPA Sections 631 and 632 where they allege they consented to the complained-of conduct?

2. Can Plaintiffs plead a violation of CIPA Section 631 where they allege that the alleged third parties are extensions of the Defendant?

3. Can Plaintiffs plead a violation of CIPA Section 631 where Plaintiffs did not adequately plead that the content of their communications were intercepted?

4. Can Plaintiffs plead a violation of CIPA Section 631 where they allege that their communications were not intercepted while in transit?

5. Can Plaintiffs plead a violation of CIPA Section 631 where they do not allege the requisite intent?

6. Can Plaintiffs' misreading of Defendant's Privacy Policy make their browsing data confidential under CIPA Section 632?

7. Does CIPA Section 632 provide for derivative liability here?

8. Should the tolling section of Plaintiffs' complaint be stricken where they do not allege the factual predicate for tolling?

## I. INTRODUCTION

Plaintiffs Demetrius Smith, Robin Savage, and Maia Williams ("Plaintiffs") contend that Meta's software (the "Pixel") transmitted certain, limited data concerning Plaintiffs' interactions with the Rack Room Shoes Inc.'s ("Rack Room" or "Defendant") website, www.rackroomshoes.com ("Website") to Meta (f/k/a Facebook Inc.). Although Plaintiffs assert that the Pixel can collect a variety of information, the only information that is alleged to have actually been transmitted to Meta are the URLs of pages viewed. (Compl. ¶¶ 35-49.) While Plaintiffs also allege that visitors' "personal information" such as "first name, last name, email address, phone number, [] delivery address," were also transmitted, all Plaintiffs allege with respect to supporting facts are the existence of a Facebook ID while users are logged in to Facebook, and "*encrypted* values for" first name, last name, email address and phone number. (*Id*. ¶¶ 50-59.) Plaintiffs then take issue with Attentive, a service provider that assists companies with email and text marketing—using information provided by customers during a transaction on the Website. Based on these allegations, Plaintiffs assert claims under California's Invasion of Privacy Act ("CIPA"), Penal Code §§ 631 and 632.

Plaintiffs' complaints do not fall within the asserted Penal Code sections.[1] First, each of the Plaintiffs concede that they consented to the conduct at issue. Even if they had not, Plaintiffs fail to identify "contents" of a communication. Page views, clicks, and "personal information," are not the "contents" of communications under CIPA. Nor do Plaintiffs plead that any information was intercepted "while in transit," that Plaintiffs' browsing information was "confidential," or Defendant had the requisite intent. Accordingly, CIPA is inapplicable here.

Even if the claims survive in some fashion, Plaintiffs' boilerplate tolling theory should be stricken because Plaintiffs cannot allege the factual predicates required for the Court to toll the statute of limitations where a reasonable inquiry would have disclosed Plaintiffs' alleged injury.

---

[1] To the extent Plaintiffs allege that Defendant's use of other "tracking technologies" are independent claims, these claims are indistinguishable from Claimant's Pixel related allegations and fail for the same reasons as discussed herein and the additional reason that those claims are conclusory and group-plead. *See infra* § II.C.

## II. ARGUMENT

### A. FRCP 12(b)(6) – Failure to State a Claim.

A complaint must be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) where, as here, the plaintiff fails to state a cognizable legal theory or has not alleged sufficient facts establishing a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) (citation omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678.

### B. FRCP 12(f) – Motion to Strike.

Under Federal Rule of Civil Procedure 12(f), the Court "may order stricken from any pleading . . . any redundant, immaterial, impertinent, or scandalous matter." *Id*. The essential function of a Rule 12(f) motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.1993). The grounds for a motion to strike can appear on the face of the pleading under attack, or from matters that the court may judicially notice. *See S.E.C. v. Sands*, 902 F.Supp. 1149, 1165 (C.D.Cal.1995).

### C. The Claims Unrelated to Meta Are Conclusory and Group-Pled.

As an initial matter, while the vast majority of the Complaint is spent discussing Meta's Pixel (Compl. ¶¶ 28-61) with a few paragraphs discussing Attentive (*id*. ¶¶ 62-69), its allegations relating to 14 other alleged third-parties consist of a sentence each (Compl. ¶¶ 77-79).[2] As to Attentive, Plaintiffs allege only that after a user inputs their email and phone number, Attentive's

---

[2] Plaintiffs also provide an "example" concerning Traverse Data, Inc. (Compl. ¶¶ 80-81) However, it is based on the hypothetical concerning users signing-up for Defendant's email list, which none of the Plaintiffs are alleged to have done. (Compl. ¶¶ 7-11.) Accordingly, it is a red herring and should be disregarded. Similarly, none of the Plaintiffs allege that they used the cookie banner, so those allegations should be disregarded as well. (Compl. ¶¶ 73-74.)

software creates two cookies that transmit that information to Attentive, and pair it with purchase information in order to provide email and SMS services to Defendant. (Compl. ¶¶ 62-69.) As to the 14 other third-parties, Plaintiffs allege only that they are "tracking technologies" that "tout their ability to offer 'personalized' advertisements and marketing strategies[.]" (Compl. ¶¶ 77-79.) Both sets of allegations are far too conclusory to state a claim. *Iqbal*, 556 U.S. at 678. And any other allegations relating to these parties are impermissibly group-plead. *See, e.g., Dana v. Idaho Dep't of Corr.*, No. 23-35047, 2024 WL 2862581, at *1 (9th Cir. June 6, 2024) (affirming dismissal on basis of "group pleading" doctrine). Accordingly, to the extent that Plaintiffs' claims relate to Attentive and the 14 other alleged third-parties, they should be dismissed.

**D. Plaintiffs Consented to the Conduct Alleged to be at Issue Here.**

Plaintiffs' CIPA claims fail at the threshold level because Plaintiffs do not plausibly allege that any of their communications were accessed "without [their] consent[.]" Cal. Penal Code §§ 631(a), 632; *see also Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013) (citing *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal.4th 95, 117 n.7 (2006)). Both of CIPA section 631(a) and section 632 apply only where the alleged offending conduct is "without the consent of all parties to the communication." *Id.*; *see also Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954, 956 (N.D. Cal. 2017) (dismissing CIPA §§ 631(a) and 632 claims because plaintiffs alleged they consented to policies disclosing the "conduct at issue" which "bar[red]" their claims and "[n]o further allegations could allow [them] to bring claims arising out of conduct which they consented to") (citation omitted), *aff'd*, 745 F. App'x 8 (9th Cir. 2018). "Where lack of consent is an express element of a claim, as is the case here, it must be alleged in the complaint" and may be challenged on a motion to dismiss using documents incorporated by reference. *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015).

Here, Plaintiffs' Complaint reflects that they consented to the conduct at issue on two separate occasions—when accepting the Website's Privacy Policy and Meta's. First, each Plaintiff alleges that at the time that they "accessed the [W]ebsite, a notice appeared at the bottom of her screen stating that their continued use of the [W]ebsite would constitute assent to

Defendant's Privacy Policy." (Compl. ¶¶ 7-9; *see also id.* ¶ 2 n.1 (incorporating Privacy Policy).) Accordingly, each plaintiff assented to the Website's privacy policy when they continued to use the website after the notice appeared. *Long v. Provide Commerce, Inc.*, 245 Cal.App.4th 855, 867 (2016) (a textual notice advising consumers that continued use of a website will constitute the consumer's agreement to be bound makes a browsewrap agreement enforceable) (citing *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 178-79 (9th Cir. 2014) (same)). And the privacy policy discloses that Rack Room "allow[s] third party companies . . . to place beacons,[3] cookies or tags on our Site . . . to gather information regarding use of our Site[.]" *See* Request for Judicial Notice ("RJN") Ex 1. Accordingly, Plaintiffs consented to the conduct at issue here—allowing third parties to use pixels and cookies to gather information about use of the Website. *Id.*

Second, as a necessary condition of using Facebook, Plaintiffs consented to three different policies: Meta's Terms of Service, Privacy Policy, and Cookie Policy. Each Plaintiffs allege that they are Facebook users who consented to these policies. (Compl. ¶¶ 7-9, 28 n.4; *see also* RJN Exs. 2-13.) These policies disclose that Meta can collect information regarding user's off-Facebook online activity. RJN Exs. 5-11. Thus, Plaintiffs clearly consented to the conduct at the center of their Complaint. Because Plaintiffs alleges that they consented on two separate occasions, both of Plaintiffs' claims should be dismissed.[4] *See Smith,* 262 F. Supp. 3d at 953-55; *Reyes v. Educ. Credit Mgmt. Corp.*, 773 Fed. App'x 989, 990 n.1 (9th Cir. 2019).

**E. Plaintiffs' Complaint Fails to State a Claim for Violation of CIPA 631(a).**

Plaintiffs' Complaint also otherwise fails to plead a valid claim under Section 631(a) of

---

[3] "Beacons" and "tags" are synonymous with "pixels." *See, e.g.,* https://en.wikipedia.org/wiki/Web_beacon n. 1; *see also Io Grp., Inc. v. Veoh Networks, Inc.*, 586 F. Supp. 2d 1132, 1145 n.8 (N.D. Cal. 2008) (taking judicial notice of the contents of a Wikipedia page).

[4] As discussed below (*infra* § III.F.a), although Plaintiffs allege that the Privacy Policy creates the misleading impression that users' browsing information is not collected, that is not a reasonable interpretation of the Privacy Policy. When read in context, the disclosure that Plaintiffs quote does not speak to third-party data practices and, in other sections of the Privacy Policy, Rack Room discloses the use of third-party cookies and tracking technologies.

CIPA. First, Rack Room was a party to the purported conversation; thus, Rack Room can have no direct liability. Similarly, Plaintiffs allege that Meta and the other alleged third parties acted as extensions of Rack Room, such that Rack Room can have no secondary liability. Second, even if Meta and other alleged third parties are not extensions of Rack Room, Rack Room cannot be secondarily liable for their violations because the wiretapping clause does not apply to internet communications, and the eavesdropping clause is inapplicable because contents of communications are not at issue, and any alleged communications were not captured while "in transit." Third, Plaintiffs cannot allege that Rack Room possessed the requisite intent to state a claim under 631(a)'s fourth clause. As such, Plaintiffs' CIPA claims should be dismissed.

**a. The Party and Party Extension Exceptions Exempt Rack Room.**

Section 631(a) provides for primary liability concerning "three distinct and mutually independent patterns of conduct: [1] intentional wiretapping, [2] willfully attempting to learn the contents or meaning of a communication in transit over a wire, and [3] attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." *See* Cal. Penal Code § 631(a); *Tavernetti v. Superior Court of San Diego Cty*., 583 P.2d 737, 741 (Cal. 1978). Section 631(a) also provides for secondary liability for one who "aids, agrees with, employs, or conspires with" another that violates any of the prior three clauses. *Id.*

Because Rack Room was a party to any alleged "communication" that occurred between Plaintiffs and Rack Room's Website, Rack Room cannot be liable under any of the three primary bases for liability. *See, e.g., Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979);[5] (Compl. ¶ 103.)

Furthermore, to the extent that Plaintiffs alleges that Rack Room is secondarily liable for aiding or conspiring with Meta and the other alleged third parties to intercept Plaintiffs' communications with Rack Room's website, the party exception still precludes liability for Rack Room because a party to a communication "does not violate § 631 by recording the

[5] *See also Williams v. What If Holdings, LLC*, No. C 22-03780 WHA, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022) ("Parties to a conversation cannot eavesdrop on their own conversation, so no other part of Section 631(a) is applicable to" a website operator).

communication." *Rogers v Ulrich*, 52 Cal. App. 3d 894, 897–99 (1975). Although Plaintiffs asserts that Meta and the other entities are "third-parties," innumerable courts in well-reasoned decisions have not found the "third-party" label dispositive. Rather, courts have looked to what that software is alleged to do. *See e.g., Graham v. Noom*, 533 F. Supp. 3d 823, 832–33 (N.D. Cal. 2021) (party extension applicable where vendor provided a software service to record visitors' keystrokes, mouse clicks, and page scrolling and allowed analysis and monetization of that data).[6] Here, as in those cases, Plaintiffs allege only that Meta and the other entities "provide[] a tool—like the tape recorder in *Rogers*—that allows [Rack Room] to record and analyze its own data in aid of [Rack Room]'s business. It is not a third-party eavesdropper." *Graham*, 533 F. Supp. 3d at 832–33; (*see also, e.g.,* Compl. ¶ 36 ("One such Business Tool is the … Pixel."); *id.* ¶¶ 62-63.) Accordingly, Rack Room is not only exempt from primary liability, but it is also exempt from secondary liability because, as alleged, Meta and the other entities are an extension of Defendant by virtue of the services they provide to Defendant.[7]

**b. Plaintiffs Do Not Otherwise State a Violation of Section 631(a).**

Even if the party and the party extension exceptions did not preclude Rack Room from liability here (and, they do), Rack Room is not secondarily liable for aiding Meta and the other parties in any of the three primary bases for liability. The Complaint does not identify which primary basis for liability Plaintiffs alleges to be at issue; thus, Rack Room analyzes each in turn.

**i. Intentional Wiretapping Is Inapplicable to Internet.**

[6] *See also Garcia v. Build.com, Inc.*, No. 22-CV-1985, 2024 WL 1349035, at *5–6 (S.D. Cal. Mar. 29, 2024) (allegations concerning Salesforce linking data with Facebook insufficient to avoid application of party extension); *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1068 (C.D. Cal. 2023) (conclusory allegations that a third-party 'monetized' or 'harvested' data insufficient to avoid application of party extension); *Javier v. Assurance IQ*, 20-cv-02860, 2021 WL 940319, at *4 n.5 (N.D. Cal. Mar. 9, 2021) (party extension applicable to provider of product that records website user interactions).

[7] This is particularly true in the case of Attentive who allows Defendant to communicate with its customers and does not use data to market for its own purposes. *See* https://www.attentive.com/.

First, Rack Room cannot be secondarily liable under the "intentional wiretapping" clause because courts have repeatedly held this clause does not apply in the context of the internet. *See, e.g., Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1135-36 (E.D. Cal. 2021) (finding intentional wiretapping clause inapplicable to internet-based communications).

**ii. No Content of Communications and Not Intercepted in Transit.**

Second, Rack Room cannot be secondarily liable for aiding Meta and the other alleged third parties in their purported attempts to read or learn the contents of communications because the allegations are clear that (1) there was no substantive communication, or "contents," captured and (2) because any communications were not captured *while in transit*.

"Contents" of communications are "any information concerning the substance, purport, or meaning of [a] communication," which does not include record information like a consumer's name, address, and subscriber number (such as a Facebook ID). *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1105-06 (9th Cir. 2014) (dismissing federal Wiretap Act claims); *see also Graham*, 533 F. Supp. 3d at 833 ("The 'contents' of a communication under CIPA and the federal Wiretap Act are the same."). In *Zynga*, the Ninth Circuit rejected the notion that a Facebook ID and list of webpages visited were the contents of communication. 750 F.3d 1098 at 1107. In dismissing the claims, the court analogized the Facebook ID to an individual's name and the webpage addresses, or URLs, to a physical address, and concluded that neither qualified as substantive communications. *Id.*; *see also Graham*, 533 F. Supp. 3d at 833 (same result under CIPA).[8] Here, the only information that is alleged to have actually been transmitted to Meta are each of Plaintiffs' encrypted "first name, last name, email address, phone number, [] delivery address," and the URLs of pages viewed. Again, to be clear, "personal information" is not covered under CIPA Section 631(a). Accordingly, the same result is warranted here.

[8] *See also In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 935 (N.D. Cal. 2015) (applying *In re Zynga Privacy Litigation* to hold that the web addresses plaintiffs accessed do not qualify as the contents of an electronic communication); *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 826 (N.D. Cal. 2020) (dismissing for no contents of communications where "Plaintiffs have not alleged any information about the[] conversations" recorded).

Additionally, Plaintiffs have not alleged and cannot allege that any communication was "intercepted" while it was "in transit," as required for an eavesdropping claim under Cal. Penal Code § 631(a). Courts applying Section 631 and the federal Wiretap Act[9] have acknowledged that, given the speed of modern internet communications, the acts' "application to that form of electronic communication is undoubtedly limited." *NovelPoster v. Javitch Canfield Grp*., 140 F. Supp. 3d 938, 951 (N.D. Cal. 2014) (dismissing Wiretap Act and Section 631(a) claims for insufficiently alleging interception while in transit). Internet communications travel so quickly that there is only an incredibly narrow window during which an interception could occur. *See id*. at 951-52. The "in transit" requirement was intended to be narrowly construed and held that for it to be satisfied, a communication "must be acquired during transmission, not while it is in electronic storage." *Konop v. Hawaiian Airlines, Inc*., 302 F.3d, 868, 878 (9th Cir. 2002). Thus, "the crucial question under § 631(a)'s second clause is whether [Plaintiffs] ha[ve] plausibly alleged that [the third-party vendor, here Meta] read one of [Plaintiffs'] communications while it was still in transit, *i.e.*, before it reached its intended recipient." *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021). Once a communication is received by the destination server, a communication becomes "stored" and interception "in transit" is not possible. *See NovelPoste.*, 140 F. Supp. 3d at 952. It does not matter if acquisition occurred within "milliseconds"—if the communication was received by the destination server, it was not "in transmission." *Bunnell v. Mot. Picture Ass'n of Am.* 567 F.Supp.2d 1148, 1154 (C.D. Cal. 2007).

Plaintiffs concede that transmission to Meta occurs *after* the URL information is received by Rack Room. Specifically, Plaintiffs allege that when a user takes an action on the Website "the individual's browser sends a GET request to Defendant's server requesting that server to load the particular webpage. . . . [Meta then] sends secret instructions back to the individual's browser . . . [and] causes the browser to secretly duplicate the communication with Defendant,

[9] In interpreting Section 631, courts have construed it "as coextensive with the [federal] Wiretap Act." *In re Vizio, Inc., Consumer Privacy Litig*., 238 F. Supp. 3d 1204, 1228 n.9 (C.D. Cal. 2017).

transmitting it to Facebook's servers[.] " *i.e.*, the information is sent to Meta *after* Plaintiffs' alleged "communications" reach Rack Room's servers. (Compl. ¶ 38; *see also id.* ¶¶ 65-69 (alleging the same with regard to Attentive).) This gap—even if it occurs within milliseconds—means it is undisputed that the capture is not alleged to be "contemporaneous with transmission" and, therefore, the allegations do not meet CIPA's "in transit" element. "[T]he amount of time a message is in storage is immaterial. As such, [the defendant] could have received the forwarded messages in milliseconds or days, it makes no difference." *Bunnel*, 567 F.Supp.2d at 1154. Plaintiffs cannot allege interception while in transmission and thus, the claim must be dismissed.

**iii. No Information from Wiretapping or Eavesdropping Used.**

Next, since the third prong of Section 631 is dependent on the first two, Plaintiffs' inability to allege a violation of either of the first two prongs of CIPA Section 631(a) establishes that the third prong cannot be satisfied. *See In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020). Thus, because Plaintiffs do not and cannot state a valid claim for relief under any of the three prongs of Section 631, Plaintiffs' claims fail as a matter of law.

**iv. No Derivative Liability Alleged.**

Finally, Plaintiffs fail to state a claim against Rack Room under Section 631(a)'s fourth clause because they do not allege facts to show Rack Room "aid[ed], agree[d] with, employ[ed], or conspire[d]" with any third party "***to*** unlawfully do, or permit, or cause" any third party to act in violation of the wiretapping statute. Cal. Pen. Code § 631(a) (emphasis added). Whether this court applies analogs from criminal conspiracy law, or the plain text of the statute, the result is the same: Plaintiffs fail to allege facts sufficient to show the requisite knowledge and intent and, thus, cannot allege a claim under Section 631(a)'s fourth clause against Rack Room.

Section 631 is a criminal law. Under California law, to plead a violation of a criminal law, the plaintiff must be able to plead specific intent. *See* Cal. Penal Code § 20 ("In every crime or public offense there must exist a union, or joint operation of act and intent"). A conspiracy requires an agreement and a defendant's specific intent to commit the unlawful acts that are the objects of the conspiracy. *E.g., People v. Swain*, 12 Cal. 4th 593, 600 n.1 (1996). A similar

requirement exists for "aiding" under the criminal law—Plaintiff must show that Rack Room had knowledge of "the unlawful purpose and intended to help the other accomplish that purpose." *E.g., People v. Lee*, 31 Cal. 4th 613, 624 (2003) (defendant must "give such aid or encouragement with knowledge of the criminal purpose" and "with an intent or purpose either of committing, or of encouraging or facilitating commission of, the crime in question") (internal quotation marks omitted). Accordingly, some courts in this circuit have found that these principles apply equally to civil claims brought under Section 631(a). *E.g., Rodriguez v. Ford Motor Co*., No. 3:23-00598, 2024 WL 1223485, at *14 (S.D. Cal. Mar. 21, 2024).[10]

Other courts, including this Court, have found that while CIPA "does not necessarily incorporate the common law requirement for aiding and abetting," there is "other language in § 631(a)'s fourth clause [that] does require some level of knowledge and intent." *Smith v. Yeti Coolers, LLC*, No. 24-cv-01703-RFL, 2024 WL 4539578, at *4 (N.D. Cal. Oct. 21, 2024). Specifically, the "clause prohibits a defendant from aiding, agreeing with, or employing a third party '*to* unlawfully do, or permit, or cause' the third party to act in violation of the wiretapping statute. That language indicates that the defendant must be acting with the third party *in order to* have the third party perform acts that violate the statute." *Id.* (emphasis in original). In *Yeti Coolers*, the plaintiff failed to state a claim under Section 631(a) because he merely alleged the defendant was aware of the third-party use of information and that the defendant assisted in intercepting and storing sensitive information. *Id.* at *5. Those allegations were insufficient to allow the court to infer that the defendants had sufficient intent. *Id.*

Whether the Court applies the analogs from the criminal law, or the plain text of the statute, Plaintiffs do not allege facts to establish these elements. At most, they parrot the statutory

[10] *Esparza v. UAG Escondido A1 Inc*., No. 23-0102, 2024 WL 559241, at *6 (S.D. Cal. Feb. 12, 2024) (applying the common law definition of aiding and abetting to Section 631(a) claim and finding plaintiff failed to assert facts to support the "knowledge" prong); *Heiting v. Taro Pharms. USA, Inc*., No. 2:23-08002, 2023 WL 9319049, at *6 (C.D. Cal. Dec. 26, 2023) (dismissing Section 631(a) claim absent allegations to establish that defendant knowingly assisted the third party in committing an unlawful act).

elements when they allege that Rack Room "aided, agreed with, and conspired with third parties to track and intercept Plaintiffs' and the Class members internet communications[.]" (Compl. ¶¶ 59, 61, 79, 103.) And, Plaintiffs do not solve the problem with that conclusory statement by adding in the Complaint that Rack Room "assit[s] Facebook" and various third parties with intercepting its users' communications." (Compl. ¶¶ 59, 61, 79.) Under the criminal law analogs set forth above, Plaintiff must show that Rack Room agreed with, and specifically intended to help accomplish, Meta and the other alleged third parties with having improper access to and use of Plaintiffs' information in violation of Section 631(a). They fail to do so here. Under the plain language of the statute, which this Court recently applied, Plaintiffs must show that Rack Room acted in concert with the Meta and the other alleged third parties *in order to* have them perform acts that violate the statute. At best, Plaintiffs allege that Rack Room did not disclose any collection of personal information (which is irrelevant to CIPA) and allowed Meta and other alleged third parties to collect the information for advertising purposes. Nothing in the Complaint even remotely suggests an intent to violate the other three clauses. Accordingly, Plaintiffs cannot allege a Section 631(a) violation against Rack Room and the claim should be dismissed.

**F. Plaintiffs' Complaint Fails to State a Claim for Violation of CIPA 632.**

Section 632 provides liability for a "person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, . . . by means of a telegraph, telephone, or other device[.]" Cal. Pen. Code § 632. In addition to the consent discussed above, Plaintiffs' 632 claim fails because their factual allegations do not establish that the information at issue is "confidential" under the statute or that Rack Room "eavesdropped upon" or "recorded" their electronic communications in violation of CIPA.

**a. Internet Communications Are Presumptively Non-Confidential.**

A communication is confidential under Section 632 only if a party has "an objectively reasonable expectation that the conversation is not being overheard or recorded." *Rodriguez v. Google LLC*, No. 20-4688, 2021 WL 2026726, at *7 (N.D. Cal. May 21, 2021). There is a

presumption that internet-based communications are not confidential within the meaning of Section 632. *Id.* This is because California does not recognize an expectation of privacy regarding internet communications. *See People v. Stipo*, 195 Cal. App. 4th 664, 669 (2011) ("Internet users have no expectation of privacy in . . . the websites they visit[.]").

Here, Plaintiffs' theory of confidentiality depends on a misreading of the Privacy Policy. Plaintiffs allege that because Rack Room's Privacy Policy says "[o]ur usage of cookies is in no way linked to any Personal Information while on our site" and "[t]he Privacy Policy defines 'Personal Information' as 'information that personally identifies you when you voluntarily provide it to us," Rack Room "created an expectation of privacy on its website, promising users that it would refrain from using tracking technologies that link web activity to personally identifiable information." (Compl. ¶¶ 71, 72, 76.) However, Plaintiffs' Complaint strategically omits who that definition of Personal Information applies to, and the context in which it is used. *See* RJN, Ex. 1. That definition comes in the section of the Privacy Policy entitled "Personal Information We Collect" directly after the reference to "Rack Room Shoes." *See id.* ("Rack Room Shoes may collect certain information that personally identifies you when you voluntarily provide it to us . . ."). The definition continues: "We collect such Personal Information when you purchase items online, sign up for the Rack Room Shoes Rewards program, sign up to receive discounts, promotions and perks, email us or submit an inquiry using the 'Contact Us' submission page or participate in one of our contests, sweepstakes, or online promotions[.]" *Id.* Accordingly, when the Privacy Policy says "[o]ur usage of cookies is in no way linked to any Personal Information while on our site," what it is saying is that the information that ***Rack Room*** collects when a user purchases something or signs up for the rewards program is not linked to ***Rack Room's*** use of the cookies. It does not say anything about refraining from using tracking technologies that allow alleged third-parties to link web activity to user's information. As such, Plaintiffs' attempt to contort these statements to be a promise that Rack Room would refrain from using tracking technologies is not a reasonable reading of the Privacy Policy.

This is particularly true because immediately following this alleged "promise," the Privacy Policy discloses that Rack Room "allow[s] third party companies . . . to place beacons, cookies or tags on our Site . . . to gather information regarding use of our Site[.]" *See id*. Thus, the Privacy Policy explicitly discloses the collection of information that Plaintiffs (incorrectly) allege it promises they will not collect. Accordingly, Plaintiffs' theory as to privacy fails.

*Rodriguez v. Google LLC* is instructive. There, the plaintiff alleged that third-party app developers intercepted communications after Google "set an expectation' that it would not save plaintiffs" web and app activity. 2021 WL 2026726, at *8. Google allegedly set that expectation through a feature that said "[t]o let Google save this information ... Web & App Activity must be on." *Id.* at *2. The Court found that, although such representations might "demonstrate an 'objectively reasonable expectation' that their communications with third-party apps would not be 'recorded' by Google [the representations did] not reasonably give rise to the expectation that *nobody* (including the apps' developers) would record the communications." *Id.* at *7 (citing *Flanagan v. Flanagan,* 27 Cal.4th 766, 776-77 (2002)). The same is true here. The quoted portions of the Privacy Policy speak only of Rack Room's practices and cannot reasonably give rise to the expectation that nobody (including Meta and the other alleged third parties) would record communications. To plead a section 632 claim "plaintiffs must plead unique, definite circumstances rebutting California's presumption against online confidentiality." *Id.* Because they have not done so, the claim should be dismissed.

**b. Section 632 Does Not Provide for Derivative Liability**

Yet another deficiency with any Section 632 claim against Rack Room is that Plaintiffs have failed to allege that ***Rack Room*** eavesdropped upon or recorded her purportedly "confidential" communications. They contend that Rack Room is liable under Section 632 for "aiding and abetting" Meta. (Compl. ¶ 113.) But the text of Section 632 does not provide for the same derivative liability found in Section 631(a)(4). Under the doctrine of avoiding surplusage, the proper interpretation of Section 632 is that it does not provide for the same derivative liability

as Section 631(a). *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 834 (9th Cir. 1996) (May 30, 1996) ("statutes should not be construed to make surplusage of any provision.").

Moreover, even if Section 632 does permit Plaintiffs to bring a claim against Rack Room for allegedly aiding and abetting Meta's purported violation of Section 632, this claim necessarily fails for the same reasons that Plaintiffs' aiding and abetting claim under Section 631(a) fails—i.e., Plaintiffs' allegations do not plausibly establish that Rack Room agreed with, much less intended to help accomplish, Meta's purported recording. *Supra* § II.D. The section 632 claim must be dismissed for this additional reason. *YETI Coolers*, 2024 WL 4539578, at *5.

**G. The Tolling Section of Plaintiffs' Complaint Should be Stricken**

Plaintiffs contend that the statute of limitations were tolled by the delayed discovery rule. (Compl. ¶¶ 82-99.) The discovery rule postpones accrual of a claim until "the plaintiff discovers, or has reason to discover the cause of action." *Clemens v. Daimler Chrysler Corp*., 534 F.3d 1017 (9th Cir. 2008) (quoting *Norgart v. Upjohn Co*., 21 Cal.4th 383, 397 (1999)). For the discovery rule to apply, Plaintiffs "must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Plumlee v. Pfizer, Inc*., No. 13-414, 2014 WL 695024, at *8 (N.D. Cal. Feb. 21, 2014) (quoting *E-Fab, Inc. v. Accountants, Inc. Services*, 153 Cal.App.4th 1308, 1319 (2007)). "[P]laintiffs are charged with presumptive knowledge of an injury if they have 'information of circumstances to put [them] on inquiry' or if they have 'the opportunity to obtain knowledge from sources open to [their] investigation.'" *Fox v. Ethicon Endo–-Surgery, Inc.*, 35 Cal.4th 797, 807–-809 (2005).

Applying these principles, courts repeatedly find that, where a party had access to policies, statements or reports that would have disclosed the facts underlying her claims, the party is on inquiry notice of the facts underlying the party's claims, and the discovery rule is inapplicable. *See, e.g., Sun 'n Sand, Inc. v. United California Bank*, 21 Cal. 3d 671, 702 (1978).[11]

[11] *See also Christensen v. Zions Bancorporation*, No. 3:22-00007, 2023 WL 2212753, at *6 (S.D. Cal. Jan. 24, 2023); *Gomez v. JP Morgan Chase Bank, N.A*., No. 3:22-01773, 2024 WL 2243243, at *6 (S.D. Cal. Mar. 26, 2024) (discovery rule inapplicable where "plaintiff could reasonably discover an injury by reviewing his or her bank statement or online account").

Here, Plaintiffs have not set forth a sufficient factual predicate for tolling. Rather, the alleged facts suggest that Plaintiffs knew of their injuries when the events giving rise to the injuries occurred in February, March, and July of 2024. Specifically, Plaintiffs knew of their alleged injuries the moment they consented to the Privacy Policy which, as discussed above, disclosed the use of beacons, cookies, and similar technologies. *See supra* § II.D. Similarly, Plaintiffs had inquiry notice of their alleged injuries relating to the Pixel at all relevant times because (1) Plaintiffs consented to Meta's policies, which provided them with constructive knowledge that "off-Facebook" activity could be tracked by Meta, and (2) since 2020, Meta has provided all Meta users with an "Off-Facebook Activity Report," which discloses to users which websites Meta tracked users' activity on, including activity on Website. *See* RJN Exs. 2-13.

As for the allegation that Defendant failed to notify Plaintiffs of the "true character, quality, and nature of its activities," this allegation seems to be tied to the allegations discussed above that Defendant allegedly promised its customers to keep their browsing information confidential. (Compl. ¶¶ 2, 5, 83.) However, as discussed above, that is not a reasonable interpretation of the Privacy Policy. *See supra* § II.F. And, Plaintiffs also do not set forth facts explaining their inability to have discovered their injuries earlier despite reasonable diligence. As a result, Plaintiffs have not sufficiently alleged that tolling is appropriate here, and the section of the Complaint relating to the same should be stricken. *See, e.g., Garcia v. City of King*, No. 5:16-06712, 2017 WL 5194519, at *6 (N.D. Cal. Nov. 9, 2017) (striking tolling allegations where plaintiffs failed to allege the factual predicate for tolling); *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900-01 (N.D. Cal. 2023) (tolling found inapplicable to CIPA claim).[12]

## III. CONCLUSION

Plaintiffs' complaint should be dismissed. Because Plaintiffs consented to the conduct at issue, dismissal should be with prejudice. Plaintiffs' tolling allegations should be stricken.

---

[12] *See also Brodsky v. Apple Inc.*, No. 19-00712, 2019 WL 4141936, at *11–12 (N.D. Cal. Aug. 30, 2019) (same); *Lau v. Gen Digital Inc.*, No. 22-08981, 2023 WL 10553772, at *3 (N.D. Cal. Sept. 13, 2023) (same where plaintiff made the same tolling allegations as here).

DATED: November 27, 2024

BLANK ROME LLP

By: /s/ Victor Sandoval
Ana Tagvoryan
Victor Sandoval
Attorneys for Defendant
RACK ROOM SHOES, INC.