1  BLANK ROME LLP
   Ana Tagvoryan (SBN 246536)
2  ana.tagvoryan@blankrome.com
   Harrison Brown (SBN 291503)
3  Harrison.brown@blankrome.com
   Victor Sandoval (SBN 344461)
4  victor.sandoval@blankrome.com
   2029 Century Park East | 6th Floor
5  Los Angeles, CA 90067
   Telephone:    424.239.3400
6  Facsimile:    424.239.3434
7
8  *Attorneys for Defendant*
   Rack Room Shoes, Inc.
9

10                  **UNITED STATES DISTRICT COURT**

11  **NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION**

12

13

14  DEMETRIUS SMITH, et al.,                    Case No. 3:24-cv-06709-RFL

15                          Plaintiffs,         [*Assigned to Judge Rita F. Lin*]

16          v.                                  **MEMORANDUM IN SUPPORT OF**
                                                **DEFENDANT'S MOTION TO DISMISS**
17  RACK ROOM SHOES, INC.,                      **AMENDED COMPLAINT**

18                          Defendant.          (*Filed concurrently with Notice of Motion and
                                                Motion to Dismiss, Request for Judicial Notice,*
19                                              *and [Proposed] Order*)

20                                              Date: March 18, 2025
                                                Time: 10:00 a.m.
21                                              Courtroom: 15

22                                              Complaint Filed: September 24, 2024
23                                              Complaint Served: October 9, 2024
                                                Trial Date: None set
24

25

26

27

28

---

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..............................................................................................................1

II.   ARGUMENT ...................................................................................................................2

    A.    Plaintiffs Consented to the Conduct Alleged to be at Issue Here ...........................2

    B.    Plaintiffs Fail to State a Claim Under CIPA 631(a) or the Wiretap Act................4

        a.    The Party and Party Extension Exceptions Exempt Rack Room ...............5

        b.    Plaintiffs Do Not State a CIPA 631(a) or Wiretap Act Claim....................5

            i.    There are No Content of Communications. ....................................6

            ii.    Communications Were Not Intercepted in Transit. .......................6

            iii.    Hashed Data, by Definition, Cannot be Read or Learned...............7

            iv.    Plaintiffs Have Not Alleged Derivative Liability. ...........................9

    C.    CDAFA, §632 and the Wiretap Act Do Not Provide for Derivative Liability ......11

    D.    The Section 632 and Invasion of Privacy Claims Fail Because Internet
        Communications Are Presumptively Non-Confidential.......................................12

    E.    The CDAFA Claim Fails Because No Computer Was Accessed or Damaged .....13

    F.    The UCL and CLRA Claims Fail to Allege Economic Injury or Causation .........14

    G.    The Invasion of Privacy Claim Fails For Lack of Privacy Interest ......................15

III.  CONCLUSION................................................................................................................15

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Ashcroft v. Iqbal,*
     556 U.S. 662 (2009)............................................................................................2

5

6

*B.K. v. Eisenhower Med. Ctr.,*
     721 F. Supp. 3d 1056 (C.D. Cal. 2024) ...........................................................5

7

8

*BK v. Eisenhower Medical Center,*
     2024 WL 878100 (C.D. Cal. Feb. 29, 2024)....................................................4

9

10

*Buckingham v. Gailor,*
     2001 WL 34036325 (D. Md. Mar. 27, 2001), aff'd, 20 Fed.Appx. 243 (4th Cir.
     2001) ...............................................................................................................11

11

12

*Bunnell v. Mot. Picture Ass'n of Am.*
     567 F.Supp.2d 1148 (C.D. Cal. 2007) ..............................................................7

13

14

*In re Carrier IQ, Inc.,*
     78 F.Supp.3d 1051 (N.D. Cal. 2015) ..............................................................11

15

*Chrisman v. City of Los Angeles,*
     155 Cal. App. 4th 29 (2007) ...........................................................................13

16

17

*Cousin v. Sharp Healthcare,*
     2023 WL 4484441 (S.D. Cal. July 12, 2023) .................................................15

18

19

*Dana v. Idaho Dep't of Corr.,*
     2024 WL 2862581 (9th Cir. June 6, 2024) .......................................................2

20

*Doe I v. Google LLC,*
     - F.Supp.3d -, 2024 WL 3490744, at *4, *7 (N.D. Cal. July 22, 2024)...................9

21

22

*Doe v. Meta Platforms, Inc.,*
     690 F. Supp. 3d 1064 (N.D. Cal. 2023) ..........................................................14

23

24

*Doe v. Microsoft Corp.,*
     2023 WL 8780879 (W.D. Wash. Dec. 19, 2023) ............................................13

25

*Esparza v. UAG Escondido A1 Inc.,*
     2024 WL 559241 (S.D. Cal. Feb. 12, 2024).....................................................9

26

27

*In re Facebook Internet Tracking Litig.,*
     140 F. Supp. 3d 922 (N.D. Cal. 2015) ..............................................................6

28

ii

*In re Facebook Privacy Litig.*,
    791 F. Supp. 2d 705 (N.D. Cal. 2011) ...................................................................14

*Flores-Figueroa v. United States*,
    556 U.S. 646 (2009).............................................................................................9

*Glenn K. Jackson Inc. v. Roe*,
    273 F.3d 1192 (9th Cir. 2001) .............................................................................14

*In re Google Assistant Priv. Litig.*,
    457 F. Supp. 3d 797 (N.D. Cal. 2020) ...............................................................3, 6

*In re Google, Inc. Priv. Pol'y Litig.*,
    58 F. Supp. 3d 968 (N.D. Cal. 2014) ...................................................................15

*In re Google, Inc. Privacy Pol'y Litig.*,
    2015 WL 4317479 (N.D. Cal. July 15, 2015)........................................................15

*Graham v. Noom*,
    533 F. Supp. 3d 823 (N.D. Cal. 2021) ...............................................................5, 6

*Gutierrez v. Converse Inc.*,
    2024 WL 3511648 (C.D. Cal. July 12, 2024)........................................................8, 9

*Hammerling v. Google, LLC*,
    2024 WL 937247 (9th Cir. Mar. 5, 2024)............................................................3, 15

*Heiting v. Taro Pharms. USA, Inc.*,
    709 F. Supp. 3d 1007 (C.D. Cal. 2023) ...............................................................9, 14

*Hill v. Nat'l Collegiate Athletic Assn.*,
    7 Cal. 4th 1 (1994) ...............................................................................................12

*In re iPhone Application Litig.*,
    2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) .....................................................3

*Katz-Lacabe v. Oracle Am., Inc.*,
    2024 WL 1471299 (N.D. Cal. Apr. 3, 2024) .......................................................4

*Kirch v. Embarq Mgmt. Co.*,
    702 F.3d 1245 (10th Cir. 2012) ...........................................................................11

*Konop v. Hawaiian Airlines, Inc.*,
    302 F.3d 1035 (9th Cir. 2002) ...............................................................................7

*Krantz v. BT Visual Images, L.L.C.*,
    89 Cal. App. 4th 164 (2001) ................................................................................14

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**

*Kwikset Corp. v. Superior Ct.*,
  51 Cal. 4th 310 (2011) ..................................................................................14

*Long v. Provide Commerce, Inc.*,
  245 Cal.App.4th 855 (2016) .............................................................................3

*Low v. LinkedIn Corp.*,
  900 F. Supp. 2d 1010 (N.D. Cal. 2012) ..........................................................15

*Mastel v. Miniclip SA*,
  549 F. Supp. 3d 1129 (E.D. Cal. 2021) .............................................................7

*In re Meta Pixel Healthcare Litig.*,
  647 F. Supp.3d 778 (N.D. Cal. 2022) ................................................................4

*Mikulsky v. Bloomingdale's, LLC*,
  713 F. Supp. 3d 833 (S.D. Cal. 2024) ..............................................................15

*Moore v. Centrelake Med. Grp., Inc.*,
  83 Cal. App. 5th 515 (2022) ............................................................................15

*Nazemi v. Specialized Loan Servicing, LLC*,
  637 F. Supp. 3d 856 (C.D. Cal. 2022) .............................................................14

*New Show Studios LLC v. Needle*,
  2014 WL 2988271 (C.D. Cal. June 30, 2014) ..................................................13

*NovelPoster v. Javitch Canfield Grp.*,
  140 F. Supp. 3d 938 (N.D. Cal. 2014) ...........................................................6, 7

*Nw. Forest Res. Council v. Glickman*,
  82 F.3d 825 (9th Cir. 1996) (May 30, 1996) ...................................................11

*O'Donnell v. Bank of Am. Nat'l Ass'n*,
  504 Fed.Appx. 566 (9th Cir. 2013) ..................................................................14

*Oracle Corp. v. SAP AG*,
  734 F. Supp. 2d 956 (N.D. Cal. 2010) .............................................................11

*Peavy v. WFAA-TV, Inc.*,
  221 F.3d 158 (5th Cir. 2000) ...........................................................................11

*People v. Lee*,
  31 Cal. 4th 613 (2003) .......................................................................................9

*People v. Stipo*,
  195 Cal. App. 4th 664 (2011) ...........................................................................12

iv

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**

*People v. Swain*,
    12 Cal. 4th 593 (1996) ...................................................................................9

*Perkins v. LinkedIn Corp.*,
    53 F. Supp. 3d 1190 (N.D. Cal. 2014) ...........................................................14

*Phillips v. Apple Inc.*,
    725 F. App'x 496 (9th Cir. 2018) ...................................................................15

*Pruchnicki v. Envision Healthcare Corp.*,
    845 F. App'x 613 (9th Cir. 2021) ...................................................................15

*Pyankovska v. Abid*,
    65 F.4th 1067 (9th Cir. 2023) .........................................................................3

*R.C. v. Walgreen Co.*,
    733 F. Supp. 3d 876 (C.D. Cal. 2024) ............................................................15

*Rodriguez v. Ford Motor Co.*,
    2024 WL 1223485 (S.D. Cal. Mar. 21, 2024) ..................................................9

*Rodriguez v. Google LLC*,
    2021 WL 2026726 (N.D. Cal. May 21, 2021) .........................................4, 12, 13

*Rogers v Ulrich*,
    52 Cal. App. 3d 894 (1975) .............................................................................5

*Satchell v. Conic Notify, Inc.*,
    234 F. Supp. 3d 996 (N.D. Cal. 2017) ...........................................................11

*Smith v. Facebook, Inc.*,
    262 F. Supp. 3d 943 (N.D. Cal. 2017) aff'd, 745 F. App'x 8 (9th Cir. 2018),
    *aff'd*, 745 F. App'x 8 (9th Cir. 2018) ...............................................................2

*Smith v. Yeti Coolers, LLC*,
    2024 WL 4539578 (N.D. Cal. Oct. 21, 2024) ...........................................10, 12

*Svenson v. Google Inc.*,
    65 F. Supp. 3d 717 (N.D. Cal. 2014) ...............................................................6

*In re Toys R Us, Inc., Privacy Litig.*,
    MDL No. M-00-1381 MMC, Master File No. C 00-2746 MMC, 2001 U.S.
    Dist. LEXIS 16947 (N.D. Cal. Oct. 9, 2001)..................................................11

*Williams v. DDR Media*,
    LLC, 2023 WL 5352896 (N.D. Cal. Aug. 18, 2023)..........................................8

v

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**

*Williams v. DDR Media, LLC,*
  2024 WL 4859078 (N.D. Cal. Nov. 20, 2024) ........................................................8

*In re Yahoo Mail Litig.,*
  7 F. Supp. 3d 1016 (N.D. Cal. 2014) ......................................................................4

*Yoon v. Lululemon USA, Inc.,*
  549 F. Supp. 3d 1073 (C.D. Cal. 2021) ................................................................15

*In re Zynga Privacy Litig.,*
  750 F.3d 1098 (9th Cir. 2014) ................................................................................6

**Statutes**

18 U.S.C.
  § 2510 ..................................................................................................................1, 4
  § 2520 ...................................................................................................................11
  § 2520(a) ..............................................................................................................11

Cal. Bus. & Prof. Code § 17200 ...............................................................................1

Cal. Civ. Code § 1782 ...............................................................................................1

Cal. Pen. Code
  § 20 ........................................................................................................................9
  § 502 ......................................................................................................................1
  § 502(c)(2) ...........................................................................................................13
  § 631 ...............................................................................................................1, 5, 9
  § 631(a) ..........................................................................................................*passim*
  § 632 ...............................................................................................................*passim*
  § 632(c) ................................................................................................................12

MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

**Issues to Be Decided**

1.     Can Plaintiffs plead claims where they allege they consented to the complained-of conduct?

2.     Can Plaintiffs plead a violation of the California Invasion of Privacy Act ("CIPA") Section 631(a) or the Wiretap Act where they allege that the alleged third parties are extensions of (and service providers to) the Defendant?

3.     Can Plaintiffs plead a violation of CIPA Section 631(a) or the Wiretap Act where Plaintiffs did not adequately plead that the content of their communications were intercepted?

4.     Can Plaintiffs plead a violation of CIPA Section 631(a) or the Wiretap Act where they allege that their communications were not intercepted while in transit?

5.     Can Plaintiffs plead a violation of CIPA Section 631(a) or the Wiretap Act where they allege that their personal information was hashed?

6.     Can Plaintiffs plead a violation of CIPA Section 631(a) or the Wiretap Act where they do not allege the requisite intent?

7.     Can Plaintiffs' misreading of Defendant's Privacy Policy make their browsing data confidential when it otherwise is not?

8.     Do CIPA Section 632, the Comprehensive Computer Data and Access and Fraud Act ("CDAFA"), or the Wiretap Act provide for derivative liability?

9.     Can Plaintiffs plead claims for CDAFA where there's no permission-less access that caused cognizable damage?

10.     Can Plaintiffs plead Unfair Competition Law and Consumers Legal Remedies Act claims where they do not (and cannot) plead economic injury or causation?

MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

## I.    INTRODUCTION

Plaintiffs Demetrius Smith, Robin Savage, and Maia Williams ("Plaintiffs") contend that certain website functionality tools, including Meta's pixel, transmitted specific, limited data concerning Plaintiffs' interactions with Rack Room Shoes Inc.'s ("Rack Room," or "Defendant") website, www.rackroomshoes.com. Although Plaintiffs assert that the pixel can collect contents of communications, the only information that is alleged to have actually been transmitted are the URLs of pages viewed and items added to a cart. (FAC, ¶¶6-8.) While Plaintiffs also allege that visitors' "personal information" such as "first name, last name, email address, phone number, [] delivery address," were also transmitted, all that Plaintiffs allege with respect to supporting facts are the existence of a Facebook ID while users are logged in to Facebook, and "*hashed* values for" first name, last name, email address and phone number. (*Id*. ¶¶ 83, 93, 130, 131) (emphasis added).[1] The rest of the allegations are generalized, speculative assertions about what can or may be collected on consumers through various practices, not specific to Rack Room.

Whereas Plaintiffs' initial Complaint asserted only two California class claims under California's Invasion of Privacy Act ("CIPA"), Penal Code §§ 631 and 632, Plaintiffs' amended complaint ("FAC") adds claims for alleged violations of (i) the federal Wiretap Act, 18 U.S.C. § 2510, *et. seq* ("Wiretap Act")., (ii) the Comprehensive Computer Data and Access and Fraud Act, Cal. Penal Code § 502, *et. seq.* ("CDAFA"), (iii) common law invasion of privacy, (iv) the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et. seq.* ("UCL"), and (v) the Consumers Legal Remedies Act, Cal. Civ. Code § 1782, *et. seq.* ("CLRA"). Plaintiffs' Amended Complaint also adds a putative nationwide class under the federal Wiretap Act claim.

Parsing through the irrelevant allegations regarding expert opinions and general data mining practices not applicable here, each of Plaintiffs' claims lack sufficient factual support. Plaintiffs concede that they consented to the conduct at issue, barring each claim. Even if they had not, Plaintiffs fail to allege they relayed "contents" of communications or conversed with

---

[1] To the extent Plaintiffs allege that Defendant's use of other "miscellaneous" "tracking technologies" are independent claims, these claims are indistinguishable and fail for the same reasons as discussed herein and the additional reason discussed at *infra* n.2.

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**

Rack Room, that any such content was intercepted "while in transit," that Plaintiffs' browsing was "confidential," that hashed data was learned or read, or that Defendant had the requisite intent. Further, neither the Wiretap Act, Section 632 of CIPA, nor the CDAFA provide for derivative liability. The CDAFA claim is also misplaced because there is no permission-less access to a computer that caused cognizable damage. The UCL and CLRA claims fail because Plaintiffs cannot reasonably plead economic injury or causation from a single-website visit, much less any loss that can be "restored" to them pursuant to an equitable claim for relief (upon which the Court lacks jurisdiction, in any event).

## II.    ARGUMENT[2]

A complaint should be dismissed if it does not state a cognizable legal theory or sufficient facts establishing a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### A.    Plaintiffs Consented to the Conduct Alleged to be at Issue Here.

Each of Plaintiffs' claims fail at the threshold level because Plaintiffs do not meet their burden to show that any of their communications or personal information were collected by third parties without consent. *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954, 956 (N.D. Cal. 2017) aff'd, 745 F. App'x 8 (9th Cir. 2018) (dismissing Wiretap Act, invasion of privacy, section 631 and 632 claims because plaintiffs alleged they consented to policies disclosing the "conduct at

---

[2] As an initial matter, while the vast majority of the Amended Complaint's substantive allegations is spent discussing Meta and Attentive, with a few paragraphs discussing LiveIntent (FAC, ¶¶123-29), allegations relating to 21 other alleged third parties consist of a sentence each (FAC, ¶¶118-21). As to LiveIntent, Plaintiffs allege only that Defendant uses the LiveConnect Tag through which "LiveIntent receives a unique numerical code that 'can identify customers and prospects that visit'" the Website and the webpage visited. (FAC¶¶126-28.) As to the 21 other third parties, Plaintiffs allege that they "tout their ability to offer 'personalized' marketing and advertising strategies" and "[u]pon information and belief, Defendant assisted those third parties with intercepting communications…that contained their personally identifiable information." (FAC, ¶¶118-19.) Both sets of allegations are far too conclusory to state a claim. *Iqbal*, 556 U.S. at 678. Any other allegations that may be relating to these parties are impermissibly group-plead. *See, e.g., Dana v. Idaho Dep't of Corr.*, 2024 WL 2862581, at *1 (9th Cir. June 6, 2024) (affirming dismissal on basis of "group pleading"). What is more, Plaintiffs utterly fail to allege that these entities collected and misused *their* information.

2

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**

issue" which "bar[red]" their claims and "[n]o further allegations could allow [them] to bring claims arising out of conduct which they consented to"), *aff'd*, 745 F. App'x 8 (9th Cir. 2018).[3]

Here, Plaintiffs' Amended Complaint reflects that they consented to the conduct at issue. Each Plaintiff alleges that at the time that they "accessed the [W]ebsite, a notice appeared at the bottom of her screen stating that their continued use of the [W]ebsite would constitute assent to Defendant's Privacy Policy." (FAC, ¶¶6-8.) Accordingly, each plaintiff assented to the privacy policy when they "receiv[ed] that notice" and continued to use the Website. *Id.*; *Long v. Provide Commerce, Inc.*, 245 Cal.App.4th 855, 867 (2016) (a textual notice advising consumers that continued use of a website will constitute the consumer's agreement to be bound makes a browsewrap agreement enforceable) (citing *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 178-79 (9th Cir. 2014) (same)). And the privacy policy discloses that Rack Room "allow[s] third party companies . . . to place beacons, cookies or tags on our Site . . . to gather information regarding use of our Site[.]" *See* RJN, Ex 1. Accordingly, Plaintiffs consented to the conduct at issue here—allowing third parties to use pixels and cookies to gather information about their use of the Website. *Id.*[4]

Further, the Federal Wiretap Act does not apply "when at least one party to the communication" consents. *Pyankovska v. Abid*, 65 F.4th 1067, 1074–75 (9th Cir. 2023). Because Plaintiffs allege Defendant chose to deploy the tools on the Website, it necessarily follows that

---

[3] *See also Hammerling v. Google*, LLC, 2024 WL 937247, at *2 (9th Cir. Mar. 5, 2024) (dismissing UCL and CLRA claims where defendant "disclosed the challenged data collection efforts in the Policy"); *In re iPhone Application Litig.*, 2011 WL 4403963, at *13 (N.D. Cal. Sept. 20, 2011) (similar under CDAFA); *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 828 (N.D. Cal. 2020) (citing *Reyes v. Educ. Credit Mgmt. Corp.*, 773 Fed. App'x 989, 990 n.1 (9th Cir. 2019) ("under California law, the plaintiff bringing a CIPA claim has the burden to prove that the defendant lacked consent to record.").)

[4] As discussed below, Plaintiffs' allegations—that the Privacy Policy creates the misleading impression that users' browsing information is not collected—is not a reasonable interpretation of the Privacy Policy. When read in context, the disclosure that Plaintiffs quote does not speak to third-party data practices and, in other sections of the Privacy Policy, Rack Room discloses the use of third-party cookies and tracking technologies. Thus, also, to the extent that Plaintiffs allege that their consent to Meta's policies were ineffective because Rack Room's conduct was "unlawful," their argument is circular. (FAC, ¶¶86-94.)

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**

1    "one of the parties to the communication," Defendant, gave "prior consent to such interception."

2    *Katz-Lacabe v. Oracle Am., Inc*., 2024 WL 1471299, at \*4 (N.D. Cal. Apr. 3, 2024).[5]

3    This conclusion is not negated by Plaintiffs' conclusory allegation that Rack Room used

4    the third-party tools for "tortious or criminal" purposes. (FAC, ¶167.) Under the crime-tort

5    exception, Plaintiffs "must show that the purpose for [RRS's alleged] interception was to injure

6    [P]laintiffs tortiously." *In re Meta Pixel Healthcare Litig*., 647 F. Supp.3d 778, 797 (N.D. Cal.

7    2022). That cannot be the case here because the crime-tort exception is "inapplicable[,] where

8    the defendant's primary motivation was to make money[.]" *Id*. (collecting cases). The tortious or

9    criminal act must also be "independent of the intentional act of the recording or interception

10   itself." *BK v. Eisenhower Medical Center*, 2024 WL 878100, \*5 (C.D. Cal. Feb. 29, 2024)

11   (collecting cases). Because the alleged purpose was financial gain by Defendant itself, and there

12   is no "independently illegal or actionable conduct", the crime-tort exception cannot apply.[6]

13   **B.    Plaintiffs Fail to State a Claim Under CIPA 631(a) or the Wiretap Act.**

14   Plaintiffs' Amended Complaint otherwise fails to plead a valid claim under Section

15   631(a) or the Wiretap Act. The Wiretap Act requires a showing that the defendant (1)

16   intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or

17   endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device. 18

18   U.S.C. §§ 2510 *et seq*. Similarly, CIPA prohibits any person from using electronic means to

19   "read or learn the contents or meaning"[7] of any "communication" "without consent" or in an

20   "unauthorized manner." Cal. Pen. Code § 631(a).

21

22   [5] *See also Rodriguez v. Google LLC*, 2021 WL 2026726, at \*6 (N.D. Cal. May 21, 2021); *In re Yahoo Mail Litig*., 7 F. Supp. 3d 1016, 1026 (N.D. Cal. 2014).

23   [6] To the extent Plaintiffs allege that Defendant's unlawful or tortious purpose was "associating

24   the content of their electronic communications with preexisting consumer profiles" (FAC, ¶167) they do not allege any facts supporting the allegation Rack Room associated any of *their*

25   voluntarily provided information with *their* pre-existing profiles—or even that third parties did— and, in any event, third parties creating consumer profiles for advertising purposes is clearly for a

26   money-making purpose and not a criminal or tortious purpose.

27   [7] Plaintiffs' Amended Complaint expressly alleges that they are asserting a derivative liability claim under Section 631(a)'s second, "eavesdropping" clause. (*E.g.*, FAC ¶¶ 3, 176.) If Plaintiffs

28   had attempted to bring a claim under any of the other clauses, those claims would fail for the reasons discussed in Defendant's motion to dismiss the initial complaint. (Dkt. No. 19 at 5-9.)

4

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**

1

      **a.**      **The Party and Party Extension Exceptions Exempt Rack Room.**

2

      First, because Rack Room was a party to any alleged "communication" that occurred

3

between Plaintiffs and the Website, Rack Room cannot be directly liable under either statute.

4

*See, e.g., B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1064–65 (C.D. Cal. 2024) ("Both

5

[the Wiretap Act and CIPA] contain an exemption from liability for a person who is a 'party' to

6

the communication").

7

      Furthermore, to the extent that Plaintiffs allege that Rack Room is secondarily liable for

8

aiding or conspiring with Meta and Attentive to intercept Plaintiffs' communications with Rack

9

Room's website, (1) the Wiretap Act does not provide for such liability, *see infra*, II.C, and (2) a

10

party to a communication "does not violate § 631 by recording the communication," *Rogers v*

11

*Ulrich*, 52 Cal. App. 3d 894, 897–99 (1975).

12

      With respect to Section 631(a), although Plaintiffs assert that Meta and the other entities

13

are "third-parties," innumerable courts in well-reasoned decisions have not found the "third-

14

party" label dispositive. Rather, courts have looked to what that software is alleged to do. *See*

15

*e.g., Graham v. Noom*, 533 F. Supp. 3d 823, 832–33 (N.D. Cal. 2021) (party extension

16

applicable where vendor provided a software service to record visitors' keystrokes, mouse clicks,

17

and page scrolling and allowed analysis and monetization of that data). Here, as in those cases,

18

Plaintiffs allege only that Meta and the other entities "provide[] a tool [and, thus, are not] third-

19

party eavesdropper[s]." *Graham*, 533 F. Supp. 3d at 832–33; (*see also, e.g.,* FAC ¶59 ("One such

20

Business Tool is the … Pixel."), *id.* ¶¶ 95-117 (alleging that Attentive collects limited user

21

information for the retailer's use).

22

      **b.**      **Plaintiffs Do Not State a CIPA 631(a) or Wiretap Act Claim.**

23

      In any event, Defendant is not secondarily liable for Meta and Attentive's alleged

24

primary violations because (1) there are no contents at issue, (2) any communications were not

25

allegedly intercepted "in transit," (3) they concede that the relevant "communications" are

26

"hashed" such that it is impossible to "read or attempt to learn the contents of" such

27

communications, and (4) they cannot allege the requisite scienter here.

28

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**

1

###### i.    There are No Content of Communications.

2      First, "contents" of communications are "any information concerning the substance,

3  purport, or meaning of [a] communication," which does not include record information like a

4  consumer's name, address, and subscriber number (such as a Facebook ID). *In re Zynga Privacy*

5  *Litig.*, 750 F.3d 1098, 1105-06 (9th Cir. 2014) (dismissing federal Wiretap Act claims); *see also*

6  *Graham*, 533 F. Supp. 3d at 833 ("The 'contents' of a communication under CIPA and the

7  federal Wiretap Act are the same."). In *Zynga*, the Ninth Circuit rejected the notion that a

8  Facebook ID and list of webpages visited were the contents of communication. 750 F.3d 1098 at

9  1107. In dismissing the claims, the court analogized the Facebook ID to an individual's name

10  and the webpage addresses, or URLs, to a physical address, and concluded that neither qualified

11  as substantive communications. *Id.*; *see also Graham*, 533 F. Supp. 3d at 833 (same result under

12  CIPA).[8] Here, the only information that is alleged to have been transmitted to Meta are

13  Plaintiffs' hashed "first name, last name, email address, phone number, city, state, and zip code,"

14  and the URLs of pages and items viewed. (FAC, ¶83.) And, the only information alleged to be

15  transmitted to Attentive is email address and phone number. (FAC, ¶110.)

16

###### ii.    Communications Were Not Intercepted in Transit.

17      Second, Plaintiffs have not alleged and cannot allege that any communication was

18  "intercepted" while it was "in transit," as required for their claims. Courts applying Section

19  631(a) and the federal Wiretap Act have acknowledged that, given the speed of modern internet

20  communications, the statutes' "application to that form of electronic communication is

21  undoubtedly limited." *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 951 (N.D. Cal.

22  2014) (dismissing Wiretap Act and Section 631(a) claims where no interception while in transit).

23

24

---

25  [8] *See also Svenson v. Google Inc.*, 65 F. Supp. 3d 717, 729 (N.D. Cal. 2014) (explaining that

26  "names, mailing addresses, phone numbers" are not "contents" of a communication); *In re*
*Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 935 (N.D. Cal. 2015) (applying *In re*
*Zynga Privacy Litigation* to hold that the web addresses plaintiffs accessed do not qualify as

27  the contents of an electronic communication); *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d

28  797, 826 (N.D. Cal. 2020) (dismissing for no contents of communications where "Plaintiffs have
not alleged any information about the[] conversations" recorded).

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**

Internet communications travel so quickly that there is only an incredibly narrow window during which an interception could occur. *See id.* at 951-52. The "in transit" requirement was intended to be narrowly construed and held that for it to be satisfied, a communication "must be acquired during transmission, not while it is in electronic storage." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d, 868, 878 (9th Cir. 2002). Thus, "the crucial question under § 631(a)'s second clause is whether [Plaintiffs] ha[ve] plausibly alleged that [the third-party vendor] read one of [Plaintiffs'] communications while it was still in transit, *i.e.*, before it reached its intended recipient." *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021). Once a communication is received by the destination server, a communication becomes "stored" and interception "in transit" is not possible. *See NovelPoster*, 140 F. Supp. 3d at 952. It does not matter if acquisition occurred within "milliseconds"—if the communication was received by the destination server, it is not "in transmission." *Bunnell v. Mot. Picture Ass'n of Am.* 567 F.Supp.2d 1148, 1154 (C.D. Cal. 2007).

Plaintiffs concede that transmission to Meta and Attentive occurs *after* the URL information is received by Rack Room. Specifically, Plaintiffs allege that when a user takes an action on the Website "the individual's browser sends a GET request to Defendant's server requesting that server to load the particular webpage. . . . [Meta then] sends secret instructions back to the individual's browser . . . [and] causes the browser to secretly duplicate the communication with Defendant, transmitting it to Meta's servers[.] " *i.e.*, the information is sent to Meta *after* Plaintiffs' alleged "communications" reach Rack Room's servers. (FAC, ¶61; *id.* ¶108 (alleging Attentive operates similarly); *see also id.* ¶164 (conceding information is captured by third party servers)) This gap—even if it occurs within milliseconds—means it is undisputed that the capture is not alleged to be "contemporaneous with transmission" and, therefore, the allegations do not meet the "in transit" element. Third parties "could have received the forwarded messages in milliseconds or days, it makes no difference." *Bunnel*, 567 F.Supp.2d at 1154. Thus, Plaintiffs cannot allege interception while in transit.

### iii.    Hashed Data, by Definition, Cannot Be Read or Learned.

Third, a defendant cannot be liable if it does not "'read[], or attempt[] to read, or to learn

---

7

the contents of meaning of' [a] communication." *Williams v. DDR Media*, LLC, 2023 WL 5352896, at *5 (N.D. Cal. Aug. 18, 2023) (dismissing where same not sufficiently alleged); *see also Williams v. DDR Media, LLC*, 2024 WL 4859078, at *5 (N.D. Cal. Nov. 20, 2024) ("*DDR Media II*") ("the phrase 'reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication'…requires some effort at understanding the substantive meaning"). Defendant's position is that record information such as name, email and address are not "contents" of communications; but, even if they were, Plaintiffs repeatedly concede that this information was "hashed," such that it cannot be "read" or "learned". (*See* FAC, ¶¶83 (alleging that consumer's first name, last name, phone number, and email address, city, state, and zip code are hashed when received by Meta), 93 (same); *see also* 130 (alleging same with respect to LiveIntent and the other miscellaneous third parties)). For example, in *Gutierrez v. Converse Inc.*, Judge Kato found that where it was undisputed that communications are encrypted, a plaintiff cannot establish that the contents of communications were read or learned. 2024 WL 3511648, at *7-8 (C.D. Cal. July 12, 2024). Similarly, in *DDR Media II*, Judge Illiston found that where it is undisputed that communications were "hashed" when it is sent to a third party, an eavesdropping claim cannot be established because it is, by definition, impossible to read or learn the contents of hashed communications. 2024 WL 4859078, at *3-5 (explaining that "unlike encryption that can be decoded with a key, hashing is what is referred to as a 'one-way' cryptographic function. There is no 'key' that can unlock the hash, nor is there a second algorithm that can be applied to turn the hash code back into the data that originally went in[.]"). Here, like in *DDR Media II*, it is undisputed that the consumer's first name, last name, phone number, and email address, city, state, and zip code are hashed when received by the third parties. This conclusion is not negated by Plaintiffs' generalized speculations regarding "reverse hashing" and the ability to "guess" email addresses using algorithms[9] because, not only are they unrelated to Rack Room, the content must be read or learned "in transit" and hashed

---

[9] These allegations also relate only to one of the 22 miscellaneous third parties and are thus irrelevant to Meta, Attentive, and the other 21 miscellaneous third parties. (FAC, ¶133-34.)

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**

communications cannot be reversed or guessed until they have reached a destination server, and the statute requires that the communications' contents be readable—not guessable—and Plaintiffs concede hashed communications are "not readable". (FAC, ¶133.) *See Converse,* 2024 WL 3511648, at *7-8 (possibility third party can use encrypted values to "connect the dots" and guess content of communications insufficient). Accordingly, Plaintiffs cannot establish that those third parties read or learned the contents of communications.

### iv.    Plaintiffs Have Not Alleged Derivative Liability.

Finally, Plaintiffs fail to state a derivative claim against Rack Room because they do not allege facts to show Rack Room "aid[ed], agree[d] with, employ[ed], or conspire[d]" with any third party "***to*** unlawfully do, or permit, or cause" any third party to act in violation of the wiretapping statute. Cal. Pen. Code § 631(a) (emphasis added).

Under California law, to plead a violation of a criminal law, the plaintiff must be able to plead specific intent. *See* Cal. Penal Code § 20 (every crime requires "act and intent"); *Flores-Figueroa v. United States*, 556 U.S. 646, 658 (2009) (same). A conspiracy requires an agreement and a defendant's specific intent to commit the unlawful acts that are the objects of the conspiracy. *E.g., People v. Swain*, 12 Cal. 4th 593, 600 n.1 (1996). A similar requirement exists for "aiding" under the criminal law—Plaintiff must show that Rack Room had knowledge of "the unlawful purpose and intended to help the other accomplish that purpose." *E.g., People v. Lee*, 31 Cal. 4th 613, 624 (2003). Accordingly, some courts in this circuit have found that these principles apply equally to civil claims brought under Section 631(a). *E.g., Rodriguez v. Ford Motor Co.*, 2024 WL 1223485, at *14 (S.D. Cal. Mar. 21, 2024).[10]

Other courts, including this Court, have found that while Section 631 "does not

---

[10] *Esparza v. UAG Escondido A1 Inc.*, 2024 WL 559241, at *6 (S.D. Cal. Feb. 12, 2024) (no facts to support "knowledge"); *Heiting v. Taro Pharms. USA, Inc.,* 709 F. Supp. 3d 1007, 1019 (C.D. Cal. 2023) (no facts supporting knowing assistance to third party committing unlawful act); *Doe I v. Google LLC*, - F.Supp.3d -, 2024 WL 3490744, at *4, *7 (N.D. Cal. July 22, 2024) ("CIPA liability only extends to willful or intentional conduct," and such "intent" is "a necessary element of an invasion of privacy claim" under California's Constitution; "binding" Ninth Circuit law requires "something more than mere awareness that an interception might occur.").

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**

necessarily incorporate the common law requirement for aiding and abetting," there is "other language in § 631(a)'s fourth clause [that] does require some level of knowledge and intent." *Smith v. Yeti Coolers, LLC*, 2024 WL 4539578, at *4 (N.D. Cal. Oct. 21, 2024). Specifically, the "clause prohibits a defendant from aiding, agreeing with, or employing a third party '*to* unlawfully do, or permit, or cause' the third party to act in violation of the wiretapping statute. That language indicates that the defendant must be acting with the third party *in order to* have the third party perform acts that violate the statute." *Id.* (emphasis in original). In *Yeti Coolers*, the plaintiff failed to state a claim under Section 631(a) because he merely alleged the defendant was aware of the third-party collection and use of information and that the defendant assisted in intercepting and storing sensitive information. *Id.* at *5. Those allegations were insufficient to allow the court to infer that the defendants had sufficient intent. *Id.*

Whether the Court applies the analogs from the criminal law, or the plain text of the statute, Plaintiffs do not allege facts to establish these elements. At most, they parrot the statutory elements when they allege that Rack Room "aided, agreed with, and conspired with third parties to track and intercept Plaintiffs' and the Class members internet communications[.]" (FAC¶¶174.) And, Plaintiffs do not solve the problem with that conclusory statement that Rack Room "assist[s] Meta" and various third parties with intercepting its users' communications," and "intentionally integrates the Meta Pixel into its website". (FAC, ¶¶83, 85, 110, 104-05, 120.) Similarly, the allegations that Attentive makes certain external representations about its products are not enough to meet this threshold—particularly where Defendant is not even alleged to have read or relied on the representations or used the products (such as, for example, the AI product).

Under the criminal law analogs set forth above, Plaintiff must show that Rack Room agreed with, and specifically intended to help carry out, the improper access to and use of Plaintiffs' information in violation of the statute. They fail to do so. Under the plain language of the statute, which this Court recently applied, Plaintiffs must show that Rack Room acted in concert with Meta and the other alleged third parties *in order to* have them perform acts that violate the statute. At best, Plaintiffs allege that Rack Room did not disclose any collection of

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**

1  "personal information" (which is irrelevant to CIPA) and allowed Meta and other alleged third

2  parties to collect the personal information for advertising purposes. Nothing in the FAC even

3  remotely suggests the requisite intent to violate the statute. Dismissal is warranted.

### C.    CDAFA, §632 and the Wiretap Act Do Not Provide for Derivative Liability.

5  Plaintiffs' CIPA Section 632, Wiretap Act, and CDAFA claims also fail because they do

not allege that **Rack Room** committed the offending conduct.[11] Although they contend that Rack

7  Room is liable under Section 632 of CIPA and the Wiretap Act for "aiding and abetting" and

8  "procuring" Meta and Attentive's primary violations of those statutes (FAC, ¶184, 161), neither

9  Section 632, the Wiretap Act or the CDAFA provides for the same derivative liability found in

10  the fourth clause of Section 631(a). Under the doctrine of avoiding surplusage, the proper

11  interpretation of the statutes is that they do not provide for the same derivative liability as

12  Section 631(a). *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 834 (9th Cir. 1996) (May 30,

13  1996). *See also In re Carrier IQ, Inc.*, 78 F.Supp.3d 1051, 1089–90 (N.D. Cal. 2015) ("there is

14  simply no secondary liability" under the Wiretap Act)[12]; *Oracle Corp. v. SAP AG*, 734 F. Supp.

---

16  [11] Section 632 provides liability for a "person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to

17  eavesdrop upon or record the confidential communication, . . ." Cal. Pen. Code § 632. The claim is against the party doing the recording.

18  [12] "[T]he Wiretap Act was amended in 1986 to narrow the class of persons who could be held

19  civilly liable under § 2520(a)[.]" *In re Toys R Us, Inc., Privacy Litig.*, MDL No. M-00-1381 MMC, Master File No. C 00-2746 MMC, 2001 U.S. Dist. LEXIS 16947, at *20-22 (N.D. Cal.

20  Oct. 9, 2001). While a civil cause of action under § 2520 previously provided for secondary liability of "any person who . . . procures any other person to intercept, disclose, or use"

21  communications in violation of the Wiretap Act, 18 U.S.C. § 2520, Amendment Note, 1986, such language was omitted by the 1986 amendment, and the "plain language of § 2520(a) now

22  limits its applicability to those who 'intercept,' 'disclose' or 'use' the communications at issue." *In re Toys R Us, Inc., Privacy Litig.*, 2001 U.S. Dist. LEXIS 16947, at *20-22. As a result, "there

23  is simply no secondary liability (such as aiding and abetting)" or conspiracy under the Wiretap Act, *In re Carrier IQ*, 78 F. Supp. 3d at 1089-90, and "in order to state a claim, Plaintiff must be

24  able to allege that each Defendant engaged in conduct that directly violates the Wiretap Act." *Satchell v. Conic Notify, Inc.*, 234 F. Supp. 3d 996, 1007 (N.D. Cal. 2017). Other circuit courts

25  considering the issue have correctly found that the 1986 amendments eliminated the availability of a civil action against a procurer. *See, e.g., Buckingham v. Gailor*, 2001 WL 34036325, at *6

26  (D. Md. Mar. 27, 2001), aff'd, 20 Fed.Appx. 243 (4th Cir. 2001) (per curiam); *Peavy v. WFAA-*

27  *TV, Inc.*, 221 F.3d 158, 168 (5th Cir. 2000) (same); *Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245,

28  1246-47 (10th Cir. 2012) (same).

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**

2d 956, 967 (N.D. Cal. 2010) (same re CDAFA); *YETI Coolers*, 2024 WL 4539578, at \*5 (this Court recognized that Section 632 does not expressly provide for derivative liability).

Moreover, even if these statutes did permit Plaintiffs to bring secondary liability claims against Rack Room, these claims necessarily fail for the same reasons that Plaintiffs' secondary liability claims under Section 631(a) fail—i.e., Plaintiffs' allegations do not plausibly establish that Rack Room agreed with, much less intended to help accomplish, the alleged primary statutory violations. *Supra* § II.B.iv.

**D.    The Section 632 and Invasion of Privacy Claims Fail Because Internet Communications Are Presumptively Non-Confidential.**

Both Section 632 of CIPA and the common law invasion of privacy claim require that communications be "confidential". Cal. Pen. Code § 632(c); *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 35 (1994) (to have a "[l]egally recognized [informational] privacy interest [the information allegedly misused must be] sensitive and confidential"). Plaintiffs' allegations do not establish that the information at issue is "confidential". There is a presumption that internet-based communications are not confidential. *Rodriguez v. Google LLC*, 2021 WL 2026726, at \*7 (N.D. Cal. May 21, 2021); *see also People v. Stipo*, 195 Cal. App. 4th 664, 669 (2011) ("Internet users have no expectation of privacy in . . . the websites they visit[.]").

Here, Plaintiffs' theory of confidentiality depends on a misreading of the Privacy Policy. Plaintiffs allege that because Rack Room's Privacy Policy says "[o]ur usage of cookies is in no way linked to any Personal Information while on our site" and "[t]he Privacy Policy defines 'Personal Information' as 'information that personally identifies you when you voluntarily provide it to us," Rack Room "created an expectation of privacy on its website, promising users that it would refrain from using tracking technologies that link web activity to personally identifiable information." (FAC, ¶¶44, 45, 140) However, Plaintiffs' Amended Complaint strategically-omits portions of the Privacy Policy which make clear that these representations speak only to first-party cookies and data practices. *See* RJN, Ex. 1. It does not say anything about refraining from using tracking technologies that allow alleged third parties to link web

1    activity to user's information. Plaintiffs' attempt to contort these statements to be a promise that

2    Rack Room would refrain from using tracking technologies is not reasonable or correct.[13]

3        This is particularly true because immediately following this alleged "promise," the

4    Privacy Policy discloses that Rack Room "allow[s] third party companies . . . to place beacons,

5    cookies or tags on our Site . . . to gather information regarding use of our Site[.]" *See id*. Thus,

6    the Privacy Policy explicitly discloses the collection of information that Plaintiffs (incorrectly)

7    allege it promises they will not collect. Accordingly, Plaintiffs' theory as to privacy fails. But in

8    any event, it does not matter. While Plaintiffs purport to have disclosed personal information,

9    they do not allege "communications" and thus Section 632 in particular does not apply.

10       Further, pixel software is not a "device" under Section 632. *Doe v. Microsoft Corp.,* 2023

11   WL 8780879, at *8 (W.D. Wash. Dec. 19, 2023) (collecting cases). Although Plaintiffs refer to

12   "servers," which a minority of courts found distinct from software, the complaint alleges that

13   *only third parties* used such servers to record information (whereas Defendant allegedly used

14   *software*). Because software does not constitute a "device" under Section 632, the claim fails. *Id.*

15   **E.    The CDAFA Claim Fails Because No Computer Was Accessed or Damaged.**

16       CDAFA claims require: (1) access to a computer, without permission, that caused (2)

17   cognizable damage or loss. Cal. Penal Code § 502(c)(2). Plaintiffs complain about third parties

18   accessing their information. However, CDAFA "defines 'access' in terms redolent of 'hacking'

19   or breaking into a computer." *Chrisman v. City of Los Angeles*, 155 Cal. App. 4th 29, 34 (2007).

20   As a result, "[a]ccessing plaintiffs' information [is not the same as the requisite] accessing

21   plaintiffs' computer systems" and does not state a claim. *New Show Studios LLC v. Needle*, 2014

22

---

23   [13] *Rodriguez v. Google LLC* is instructive. There, the plaintiff alleged that third-party app

24   developers intercepted communications after Google "set an expectation' that it would not save
     plaintiffs" web and app activity. 2021 WL 2026726, at *8. Google allegedly set that expectation

25   through a feature that said "[t]o let Google save this information ... Web & App Activity must be
     on." *Id.* at *2. The Court found that, although such representations might "demonstrate an

26   'objectively reasonable expectation' that their communications with third-party apps would not

27   be 'recorded' by Google [the representations did] not reasonably give rise to the expectation that
     *nobody* (including the apps' developers) would record the communications." *Id.* at *7 (citing

28   *Flanagan v. Flanagan,* 27 Cal.4th 766, 776-77 (2002)). The same is true here.

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**

WL 2988271, at *6 (C.D. Cal. June 30, 2014); *see also Taro Pharm.*, 709 F. Supp. 3d at 1021 (cannot allege unauthorized access without allegations that "a defendant in some way caused output from the function of a computer, without the owner's permission"). Similarly, Plaintiffs fail to allege that such access was "without permission" because they do not allege an overcome technical or code-based barrier, *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1217 (N.D. Cal. 2014),[14] or that they suffered the requisite "damage or loss" to a computer system or network, only inadequate website data. *Taro Pharm.*, 709 F. Supp. 3d at 1021 (CDAFA "damage or loss" "contemplates some damage to the computer system, network, program, or data contained on that computer, <u>as opposed to data generated by a plaintiff while engaging with a defendant's website</u>.") (emphasis added). *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1081-83 (N.D. Cal. 2023).

### F.    The UCL and CLRA Claims Fail to Allege Economic Injury or Causation.

Plaintiffs' unlawful[15] UCL and CLRA claims are premised on the statutory violations alleged herein, and, thus, fail for the same reasons as their statutory claims, discussed above. (FAC, ¶212); *Krantz v. BT Visual Images, L.L.C.*, 89 Cal. App. 4th 164, 178 (2001).[16] Additionally, these claims fail because Plaintiffs do not plausibly allege an economic injury that was caused by these alleged violations. *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 322 (2011) (UCL and CLRA claims require economic injury and causation). Plaintiffs allege merely

---

[14] *See also In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 715 (N.D. Cal. 2011) (same).

[15] Plaintiffs also allege an unfairness claim based on an alleged violation of the UCL itself (FAC, ¶¶214, 211.) However, a violation of the UCL cannot be the predicate violation. *See, e.g., Nazemi v. Specialized Loan Servicing, LLC*, 637 F. Supp. 3d 856, 865 (C.D. Cal. 2022) ("to state a UCL claim, Plaintiff must plead a violation of **another** statute") (emphasis supplied).

[16] Plaintiffs also cite the California Online Privacy Protection Act, the California Consumer Privacy Act, and the Federal Trade Commission Act (FTCA) as alleged predicate violations. *Id.* However, Plaintiffs allege only that "[p]ut together" these statutes indicate that a company cannot "collect[], disclose[] or sell[] personal information" without appropriate disclosures and opt out mechanisms. (FAC ¶¶30-37.) This is insufficient. *See, e.g., Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1203 (9th Cir. 2001) (affirming dismissal on basis of failure to plead with specificity the conduct that violated the UCL, noting ). Further, the FTCA is inapplicable. *O'Donnell v. Bank of Am. Nat'l Ass'n*, 504 Fed.Appx. 566, 568 (9th Cir. 2013) (the FTCA "doesn't create a private right of action, and plaintiffs can't use California law to engineer one").

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**

that their personal information "has value as demonstrated by its use by Defendant." FAC, ¶ 215. But, this vague and speculative assertion does not meet the plausibility standard for supporting a claim of monetary loss. Because "the 'mere misappropriation of personal information' does not establish compensable damages," Plaintiffs lack statutory standing. *Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 615 (9th Cir. 2021).[17] Defendant also did not cause any cognizable harm, only third parties did, insofar as they allegedly misappropriated and used the data at issue. *See, e.g., Phillips v. Apple Inc*., 725 F. App'x 496, 498 (9th Cir. 2018) (no standing if third-party caused).

### G.    The Invasion of Privacy Claim Fails For Lack of Privacy Interest.

Plaintiffs' invasion of privacy act claims also fail because they have no legally-protected privacy interest in their browsing data on the Website alone. *See, e.g., Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 846 (S.D. Cal. 2024).[18] Similarly, the alleged collection of URL and hashed information on a website are not "highly offensive" because the collection and disclosure of website visitors' online activity falls short of this "high bar." *Low v. LinkedIn Corp*., 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (collection and disclosure to third party of browsing not "highly offensive").[19]

## III.    CONCLUSION

Plaintiffs' Amended Complaint should be dismissed, with prejudice.

---

[17] *See also In re Google, Inc. Privacy Pol'y Litig*., 2015 WL 4317479, at *5 (N.D. Cal. July 15, 2015) ("The mere misappropriation of personal information, without a resultant economic harm—for example in the form of being deprived of the ability to monetize that information" is insufficient); *R.C. v. Walgreen Co*., 733 F. Supp. 3d 876, 898 (C.D. Cal. 2024) (distinguishing *Brown v. Google*, rejecting benefit of the bargain and diminution in value arguments); *see also Moore v. Centrelake Med. Grp., Inc*., 83 Cal. App. 5th 515, 540-41 & n.13 (2022) (finding "there is absolutely no support for the proposition that the personal information of an individual [consumer] had any value for which that p[erson] could have expected to be compensated").

[18] *Yoon v. Lululemon USA, Inc*., 549 F. Supp. 3d 1073, 1086 (C.D. Cal. 2021) (while users may "have a privacy interest in their internet-wide browsing history," they do not have a "privacy interest in browsing data collected only while users interact with the website of the defendant").

[19] *Cousin v. Sharp Healthcare*, 2023 WL 4484441, at *6 (S.D. Cal. July 12, 2023); *In re Google, Inc. Priv. Pol'y Litig*., 58 F. Supp. 3d 968, 973, 988 (N.D. Cal. 2014) (same); s*ee also Hammerling*, 2024 WL 937247, at *3.

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**

DATED:  January 16, 2025                    BLANK ROME LLP

                                            By: */s/ Victor Sandoval*
                                                Ana Tagvoryan
                                                Victor Sandoval
                                            Attorneys for Defendant
                                            RACK ROOM SHOES, INC.

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**