**THE FREEDMAN FIRM PC**
Michael G. Freedman (Cal. Bar No. 281279)
1801 Century Park East, Ste. 450
Los Angeles, California, 90067
Telephone: (310) 285-2210
E-Mail: michael@thefreedmanfirm.com

**MARCUS NEIMAN RASHBAUM
& PINEIRO LLP**
Michael A. Pineiro (*pro hac vice*)
Brandon S. Floch (*pro hac vice* forthcoming)
Christopher R. Reilly (*pro hac vice*)
2 South Biscayne Blvd., Suite 2530
Miami, FL 33131
Telephone: (305) 400-4260
E-Mail: mpineiro@mnrlawfirm.com
      bfloch@mnrlawfirm.com
      creilly@mnrlawfirm.com

**LEVIN LAW, P.A.**
Brian Levin (*pro hac vice*)
Jacob Polin (Cal. Bar No. 311203)
2665 S. Bayshore Dr., Ph. 2B
Miami, FL 33133
Telephone: (305) 402-9050
E-Mail: brian@levinlawpa.com
E-Mail: jpolin@levinlawpa.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

DEMETRIUS SMITH, ROBIN SAVAGE, and MIA WILLIAMS

                 Plaintiffs,

v.

RACK ROOM SHOES, INC.

                 Defendant.

Case No. 3:24-cv-06709-RFL

[*Assigned to Judge Rita F. Lin*]

PLAINTIFFS' OMNIBUS RESPONSE BRIEF TO DEFENDANT'S MOTIONS TO DISMISS AND STRIKE

Date: 3/18/2024
Time: 10:00 AM
Courtroom: 15, 18th Floor

Complaint Filed: September 24, 2024
Complaint Served: October 9, 2024
Trial Date: None set

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

BACKGROUND ....................................................................................................................1

ARGUMENT..........................................................................................................................2

   I.    DEFENDANT FAILS TO ESTABLISH CONSENT ........................................................2

   II.    PLAINTIFFS ESTABLISH THE CRIME-TORT EXCEPTION......................................6

   III.    DEFENDANT FAILS TO ESTABLISH THE PARTY EXCEPTION ........................8

   IV.    PLAINTIFFS SATISFY THE "CONTENTS" REQUIREMENT...............................10

   V.    PLAINTIFFS MEET THE "IN TRANSIT" REQUIREMENT....................................12

   VI.    PLAINTIFFS MEET THE "READ OR LEARNED" REQUIREMENT ...................13

   VII.    PLAINTIFFS ALLEGE DERIVATIVE LIABILITY UNDER CIPA § 631 ..............14

   VIII.    PLAINTIFFS ALLEGE DERIVATIVE LIABILITY UNDER CIPA § 632, CDAFA, AND THE WIRETAP ACT ................................................................................................16

   IX.    PLAINTIFFS' COMMUNICATIONS WERE CONFIDENTIAL..............................18

   X.    PLAINTIFFS ALLEGE SOFTWARE CONSTITUTES A "DEVICE"..........................19

   XI.    PLAINTIFFS PROPERLY PLEAD THEIR CDAFA CLAIM ...................................19

   XII.    PLAINTIFFS PROPERLY PLEAD THEIR UCL AND CLRA CLAIMS.................20

   XIII.    PLAINTIFFS PROPERLY PLEAD THEIR INVASION OF PRIVACY CLAIM......21

   XIV.    DEFENDANT'S MOTION TO STRIKE IS MERITLESS....................................22

OMNIBUS RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS AND STRIKE

## TABLE OF AUTHORITIES

*A.B. by and through Turner v. Google LLC*, 737 F. Supp. 3d 869 (N.D. Cal. 2024)...................19

*Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033 (N.D. Cal. 2014)...............................................1

*Bristol-Myers Squib Co. v. Superior Court of Cal.*, 137 S. Ct. 1773 (2017) ..............................23

*Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110 (N.D. Cal. 2020) ......................................................5

*Brown v. Duchesne*, 60 U.S. 18 (1856).........................................................................................17

*Brown v. Google LLC*, 2021 WL 6065009 (N.D. Cal. Dec. 22, 2021)........................................19

*Brown v. Google LLC*, 525 F. Supp. 3d 1049 (N.D. Cal. 2021)...................................... 1, 3, 6, 17

*Brown v. Google, LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023) ...................................... 1, 5, 18

*Calhoun v. Google, LLC*, 113 F. 4th 1141 (9th Cir. 2024) ........................................ 1, 2, 4, 19

*California Medical Assn. v. Aetna Health of California Inc.*, 14 Cal. 5th 1075 (2023) ...............19

*Campbell v. Facebook*, 951 F. 3d 1106 (9th Cir. 2020).............................................................16

*Cappello v. Walmart Inc.*, 394 F. Supp. 3d 1015 (N.D. Cal. 2019)............................................20

*Castillo v. Costco Wholesale Corp.*, 2024 WL 4785136 (W.D. Wash. Nov. 14, 2024)................7

*Clemens v. DaimlerChrysler Corp.*, 548 F. 3d 1017 (9th Cir. 2008) ..........................................21

*Cody v. Ring LLC*, 718 F. Supp. 3d 993 (N.D. Cal. 2024)............................................................5

*Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv.*, 911 F. 2d 242 (9th Cir. 1990)...............................................................................................................................12

*Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 111 (S.D. Cal. 2023) .........................................12

*CTC Real Estate Services v. Lepe*, 140 Cal. App. 4th 856 (2006) .............................................19

*Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244 (N.D. Cal. 2024) ..................................................22

*Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064 (N.D. Cal. 2023)................................. 10, 18

*Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934 (S.D. Cal. 2024)...................................................17

*Faulkner v. ADT Sec. Services, Inc.*, 706 F. 3d 1017 (9th Cir. 2013)..........................................17

*Federal Trade Commission v. Kochava, Inc.*, 715 F. Supp. 3d 1319 (D. Idaho 2024) .................7

*Flanagan v. Flanagan*, 27 Cal. 4th 766 (2002) ........................................................................17

*Flat v. Ford Motor Co.*, 678 F. Supp. 3d 1138 (N.D. Cal. 2023).................................................22

*Georgia v. Public.Resource. Org, Inc.*, 590 U.S. 255 (2020) .....................................................14

OMNIBUS RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS AND STRIKE

*Gibson v. Planned Parenthood Federation of America, Inc.*, 2024 WL 4251892 (N.D. Cal. July 2, 2024)..................................................................................................................................9

*Gladton v. Amazon Web Services, Inc.*, 739 F. Supp. 3d 846 (W.D. Wash. 2024) .....................13

*Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754 (2011) ................................................15

*Go-Video, Inc. v. Akai Elec. Co., Ltd.*, 885 F. 2d 140 (9th Cir. 1989).........................................24

*Graham v. Noom, Inc.*, 533 F. Supp. 3d 823 (N.D. Cal. 2021) ................................................7, 9

*Greenley v. Kochava*, Inc., 684 F. Supp. 3d 1024 (S.D. Cal. 2023)......................................11, 18

*Gutierrez v. Converse Inc.*, 2024 WL 3511648 (C.D. Cal. July 12, 2024)..................................13

*Hazel v. Prudential Financial, Inc.*, 2023 WL 3933073 (N.D. Cal. June 9, 2023).....................12

*Heiting v. Taro Pharmaceuticals USA, Inc.*, 728 F. Supp. 3d 1112 (C.D. Cal. 2024) ..........11, 12

*Herrera v. Wells Fargo Bank, N.A.*, 2020 WL 5802421 (Sept. 1, 2020)....................................23

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F. 3d 589 (9th Cir. 2020)....................3, 8, 10

*In re Google Inc. Cookie Placement Cons. Priv. Litig.*, 806 F. 3d 125 (3d Cir. 2015) ...............10

*In re Google Inc.*, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013)....................................2, 10, 17

*In re Google RTB Cons. Priv. Litig.*, 606 F. Supp. 3d 935 (N.D. Cal. 2022) .............................18

*In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778 (N.D. Cal. 2022)................................11

*In re Nickelodeon Cons. Priv., Litig.*, 827 F. 3d 262 (3d Cir. 2016) .............................................4

*In re Packaged Seafood Products Antitrust Litig.*, 338 F. Supp. 3d 1118 (S.D. Cal. 2018)........24

*In re Vizio, Inc., Cons. Priv. Litig.*, 238 F. Supp. 3d 1204 (C.D. Cal. 2017) .............................20

*In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016 (N.D. Cal. 2014).............................................5, 16

*In re Zynga Priv. Litig.*, 750 F. 3d 1098 (9th Cir. 2014).........................................................9, 10

*Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891 (N.D. Cal. 2023) ...........................................7

*Jones v. Tonal Systems, Inc.*, --- F. Supp. 3d ----, 2024 WL 43457558 (S.D. Cal. Sept. 30, 2024) ...............................................................................................................................................11

*Kellman v. Spokeo*, 599 F. Supp. 3d 877 (N.D. Cal. 2022)........................................................19

*Marden v. LMND Medical Group, Inc.*, 2024 WL 4448684 (N.D. Cal. July 3, 2024) (Lin, J.) .6, 8

*McCoy v. Alphabet, Inc.*, 2021 WL 405816 (N.D. Cal. Feb. 2, 2021)............................................1

*Miller v. Nature's Path Foods, Inc.*, 2024 WL 4177940 (N.D. Cal. Sept. 11, 2014)..................23

iv

**OMNIBUS RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS AND STRIKE**

*NJOY, LLC v. Imiracle (HK) Ltd.*, --- F. Supp. ----, 2024 WL 5324737 (S.D. Cal. Dec. 20, 2024)
...................................................................................................................................19

*People v. Buckley*, 183 Cal. App. 3d 489 (1986)......................................................................15

*Pilgrim v. General Motor Co.*, 408 F. Supp. 3d 1160 (C.D. Cal. 2019).....................................24

*Planned Parenthood Federation of America, Inc. v. Newman*, 51 F. 4th 1125 (9th Cir. 2022) .....6

*Poursohi v. Blinken*, 2021 WL 3209728 (N.D. Cal. July 29, 2021)............................................21

*R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876 (C.D. Cal. 2024)..................................................6, 7

*Rees v. PNC Bank, N.A.*, 308 F.R.D. 266 (N.D. Cal. 2015)........................................................21

*Roy v. Wells Fargo Bank*, N.A., 2015 WL 1408919 (N.D. Cal. Mar. 27, 2015).........................23

*Saleh v. Nike*, 562 F. Supp. 3d 503 (C.D. Cal. 2021) ..................................................................9

*Santos v. CarMax Business Services*, LLC, 2018 WL 7916823 (N.D. Cal. May 8, 2018)...........23

*Securities Investor Protection Corp. v. Vigman*, 764 F. 2d 1309 (9th Cir. 1985) .......................24

*Serafin v. Realmark Holdings, LLC*, 2024 WL 150594 (N.D. Cal. Jan. 12, 2024). .....................21

*Shah v. Fandom*, 2024 WL 4539577 (N.D. Cal. Oct. 21, 2024) (Lin, J.)............................1, 5, 10

*Sloan v. General Motors LLC*, 287 F. Supp. 3d 840 (N.D. Cal. 2018).......................................24

*Sousa v. 7-Eleven, Inc.*, 2020 WL 6399595 (S.D. Cal. Nov. 2, 2020).......................................23

*St. Aubin v. Carbon Health Technologies, Inc.*, 2024 WL 4369675 (N.D. Cal. Oct. 1, 2024)10, 12

*Sussman v. American Broadcasting Co.*, 186 F. 3d 1200 (9th Cir. 1999) ....................................6

*Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, 2014 WL 1048710 (N.D. Cal. Mar. 14, 2014)
...................................................................................................................................23

*Thomas v. Pap Johns Int'l, Inc.*, 2024 WL 2060140 (S.D. Cal. May 8, 2024)............................17

*Toy v. Life Line Screening of America Ltd.*, 2024 WL 1701263 (N.D. Cal. Mar. 19, 2024) (Lin, J.)......................................................................................................................... 9, 12, 20

*Turner v. Nuance Communications, Inc.*, 735 F. Supp. 3d 1169 (N.D. Cal. 2024)...................7, 9

*Vacarro v. Altais*, 2023 WL 7003211 (C.D. Cal. Oct.  23, 2023) ..............................................15

*Valentine v. WideOpen West Finance, LLC*, 288 F.R.D. 407 (N.D. Ill. 2012). ..........................16

*Vera v. O'Keefe*, 791 F. Supp. 2d 959 (S.D. Cal. 2011) ............................................................15

*Weston v. Lefti*, 2024 WL 4579237 (9th Cir. Oct. 25, 2024) .....................................................16

OMNIBUS RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS AND STRIKE

*Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970 (9th Cir. 2010) ...........................................21

*Willaims v. What If Holdings, LLC*, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) .................15

*Williams v. DDR Media, LLC*, 2024 WL 4859078 (N.D. Cal. Nov. 20, 2024)..........................13

*Wright v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 2023 WL 5837492 (S.D. Cal. Sept. 8, 2023) .................................................................................................................................................12

*Yockey v. Salesforce, Inc.*, --- F. Supp. 3d ----, 2024 WL 3875785 (N.D. Cal.) .........................18

*Yoon v. Meta Platforms, Inc.*, 2024 WL 5264041 (N.D. Cal. Dec. 30, 2024) .............................11

**OMNIBUS RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS AND STRIKE**

**INTRODUCTION**

Defendant's motions are easily denied. Defendant operates a website, www.rackroomshoes.com, where it repeatedly and falsely promised Plaintiffs that it would keep their communications confidential. Despite making these promises, Defendant knowingly and intentionally assisted a litany of third parties—including Meta Platforms, Inc., Attentive, Inc., and six data brokers—with intercepting Plaintiffs' communications and pairing those communications with personally identifiable information. Plaintiffs set this out in a highly detailed pleading, which includes close analysis and screenshots depicting and describing these illegal interceptions and how they are used by the third-party companies. As the Ninth Circuit and this Court routinely conclude, Defendant's assistance in this scheme violates federal and state anti-wiretapping laws. As shown below, Defendant's arguments for dismissal and to strike are meritless.

**BACKGROUND**

Plaintiffs are California residents who purchased shoes on Defendant's website. *See* ECF No. 27, First Amended Complaint ("FAC") at ¶¶ 6-8. When Plaintiffs first accessed the website, "a notice appeared at the bottom of [their] screen[s] stating that [their] continued use of the website would constitute assent to Defendant's Privacy Policy." *Id.* ¶¶ 6-8. That privacy policy falsely reassured customers that "Rack Room values the privacy of its customers," and it "endeavors to comply with relevant ethical standards in gathering, using and safeguarding customer information." *Id.* ¶ 42. The privacy policy then makes the following representation: "Rack Room Shoes collects information through cookies and beacons … but none of the information collected through cookies or beacons is personally identifiable." *Id.* ¶ 43. And the privacy policy goes on to make a similar representation: "Our usage of cookies is no way linked to any Personal Information while on our site." *Id.* ¶ 43. "[B]y making these representations, Defendant created an expectation of privacy on its website, promising users that it would refrain from using tracking technologies that link web activity to personally identifiable information." *Id.* ¶ 140.

But those representations were false. Rather than abide by its promise to users, "Defendant assisted third parties—including Meta, Attentive, and six data brokers—with intercepting [Plaintiffs'] communications while visiting Defendant's website, including communications that

1

contained [their] personally identifiable information." *Id.* ¶¶ 6-8. By doing so, "Defendant knowingly and repeatedly has made—and continues to make—false representations that give customers a misplaced sense of privacy." *Id.* ¶ 140. Plaintiffs thus seek redress through seven causes of action: the Wiretap Act; section 631 of CIPA; section 632 of CIPA; California's Comprehensive Computer Data and Access and Fraud Act; California's Unfair Competition Law; and California's Consumers Legal Remedies Act. *See, e.g.*, ¶¶ 158-227.

## ARGUMENT

### I.    DEFENDANT FAILS TO ESTABLISH CONSENT

As an initial matter, Defendant argues that "Plaintiffs do not meet their burden to show that any of their communications or personal information were collected by third parties without consent." MTD at 2. To be clear, it is Defendant's burden—not Plaintiffs' burden—to prove consent. *See, e.g.*, *Shah v. Fandom*, 2024 WL 4539577, at *5 (N.D. Cal. Oct. 21, 2024) (Lin, J.). Notwithstanding that, no matter where the burden is placed, Defendant *cannot* show consent because it fails to address—let alone overcome—the glut of misrepresentations on its website that promise to protect communications containing personally identifiable information.

"[C]onsent can be explicit or implied, but any consent must be actual." *Brown v. Google, LLC*, 685 F. Supp. 3d 909, 926 (N.D. Cal. 2023). "For consent to be actual, the disclosures must explicitly notify users of the conduct at issue." *Calhoun v. Google, LLC*, 113 F. 4th 1141, 1147 (9th Cir. 2024) (internal quotations omitted). "The disclosures must [also] have only one plausible interpretation for a finding of consent." *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1063 (N.D. Cal. 2021). "Moreover, consent is not an all-or-nothing proposition." *Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1045 (N.D. Cal. 2014). Rather, "consent is generally limited to the specific conduct authorized." *Shah*, 2024 WL 4539577, at *5 (internal quotations omitted). Put together, "[i]f the contract language at issue is reasonably susceptible to more than one interpretation, with one of those interpretations suggesting consent and another belying it, the Court cannot decide the consent issue in Defendant's favor at the motion to dismiss stage." *McCoy v. Alphabet, Inc.*, 2021 WL 405816, at *6 (N.D. Cal. Feb. 2, 2021) (internal quotations and brackets omitted).

OMNIBUS RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS AND STRIKE

Throughout its privacy policy, Defendant "repeatedly promises consumers that it will keep their electronic communications confidential." FAC ¶ 40. That allegation rests on at least five representations:

- "This Privacy Policy (the 'Policy') explains how Rack Room Shoes, Inc., ('Rack Room', 'us', or 'we') collects information from you when you use the website www.rackroomshoes.com … what Rack Room Shoes does with the information that Rack Room Shoes collects, how that information is shared and what you can expect from Rack Room Shoes regarding the privacy of your information." *See* Defendant's Request for Judicial Notice, Exhibit 1 (ECF No. 38-1).

- "Rack Room values the privacy of its customers." FAC ¶ 42.

- "[Rack Room] endeavors to comply with relevant ethical standards in gathering, using, and safeguarding customer information." *Id.*

- "Rack Room Shoes collects information through cookies and beacons … ***but none of the information collected through cookies and beacons is personally identifiable***." *Id.* ¶ 43 (emphasis added).

- "Our usage of cookies ***is in no way linked to any Personal Information while on our site***." *Id.* ¶ 44 (emphasis added).

By making these affirmative representations, "Defendant created an expectation of privacy on its website, promising users that it would refrain from using tracking technologies that link web activity to personally identifiable information." *Id.* ¶ 140. As alleged, "[r]ather than uphold that expectation," Defendant "surreptitiously assisted third parties with intercepting their confidential communications," including communications that contained their personally identifiable information. *Id.*; *see also id.* ¶¶ 63-117. Because Plaintiffs "possessed the reasonable expectation that their communications … would remain confidential," they "never consented" to "Defendant systematically disclos[ing] such information to numerous third parties." *Id.* ¶¶ 6-8, 49, 140.

When reviewing similar misrepresentations, courts in this Circuit—along with the Ninth Circuit itself—reach the same result, routinely concluding that such misrepresentations not only fail to establish consent but instead support a reasonable expectation of privacy. *See, e.g.*, *Calhoun*, 113 F. 4th at 1151 (holding that Google failed to establish consent where Google made specific representations "suggesting that certain information would not be sent to Google unless a user turned on sync"); *In re Google Inc.*, 2013 WL 5423918, at *14 (N.D. Cal. Sept. 26, 2013) (holding that there was no consent because "[n]othing in the Policies suggests that Google intercepts email communication in transit between users, and in fact, the policies obscure Google's

intent to engage in such interceptions"); *see also Brown*, 525 F. Supp. 3d at 1064 (holding that there was no consent where Google made representations that "present private browsing as a way that users can manage their privacy").

Further, a seminal case from the Ninth Circuit, *In re Facebook, Inc. Internet Tracking Litig.*, 956 F. 3d 589 (9th Cir. 2020), controls here. The plaintiffs there brought claims against Facebook for "track[ing] their browsing histories after they had logged out of the Facebook application." *Id.* at 596. According to the plaintiffs, four representations "suggest[ed] that users' information would not be tracked" once they were logged out:

1. "Your privacy is very important to us." *Id.*
2. "We design our Privacy Policy to make important disclosures about how you can use Facebook to share with others and how we collect and can use your content and information." *Id.*
3. "We receive data when you visit a game, application, or website that uses [Facebook's services].  This may include the date and time you visit the site; the web address, or URL, you're on … and, *if you are logged in to Facebook*, your user ID." *Id.* (emphasis and brackets in the original).
4. "If you are logged into Facebook, we also see your user ID number and email address. … If you log out of Facebook, we will not receive this information about partner websites but you will also not see personalized experiences on these sites." *Id.*

Based on these representations, the Ninth Circuit held that the plaintiffs did not consent to Facebook's conduct, concluding they "plausibly alleged that Facebook set an expectation that logged-out user data would not be collected, but then collected it anyway." *Id.*

The representations at issue in *In re Facebook* are very similar to those here. Like Facebook's representations, Defendant's representations fall into one of three buckets: 1) statements portraying privacy as valued and important; 2) statements presenting the privacy policy as a comprehensive inventory of *all the ways* in which personal information is collected and disclosed; and 3) false statements affirmatively promising to protect certain kinds of personal information.

OMNIBUS RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS AND STRIKE

| # | Facebook | Rack Room Shoes |
|---|----------|-----------------|
| 1 | "Your privacy is very important to us." | "Rack Room values the privacy of its customers." "[Rack Room] endeavors to comply with relevant ethical standards in gathering, using, and safeguarding customer information." |
| 2 | "We design our Privacy Policy to make important disclosures about how you can use Facebook to share with others and how we collect and can use your content and information." | "This Privacy Policy … explains how Rack Room Shoes … collects information from you when you use the website www.rackroomshoes.com … what Rack Room Shoes does with the information that Rack Room Shoes collects, how that information is shared and what you can expect from Rack Room Shoes regarding the privacy of your information." |
| 3 | "We receive data when you visit a game, application, or website that uses [Facebook's services]. This may include … the web address, or URL, you're on … and, *if you are logged in to Facebook*, your user ID." | "Rack Room Shoes collects information through cookies and beacons … but none of the information collected through cookies and beacons is personally identifiable." "Our usage of cookies is in no way linked to any Personal Information while on our site." |

Although *In re Facebook* focused on whether the plaintiffs possessed "a reasonable expectation of privacy," *see id.* at 603, that analysis is necessarily intertwined with "the presence or absence of consent." *In re Nickelodeon Cons. Priv., Litig.*, 827 F. 3d 262, 293-94 (3d Cir. 2016). Indeed, in a recent decision specifically evaluating whether certain representations could establish consent, the Ninth Circuit heavily relied upon *In re Facebook*, frequently treating that case as the touchstone for circumstances in which "a reasonable user would not necessarily understand that they were consenting to the data collection at issue." *Calhoun*, 113 F. 4th at 1151. Accordingly, because Defendant's representations align with—if not exceed—the representations in *In re Facebook*, Plaintiffs properly allege that that they "never consented to Defendant assisting other third parties with intercepting … confidential communications."  FAC ¶¶ 6-8.

In a futile and meritless effort to resist that conclusion, Defendant offers an argument that contorts the privacy policy beyond recognition. With generous (and improper) use of brackets and ellipses, Defendant contends that "the privacy policy discloses that Rack Room 'allow[s] third party companies … to place beacons, cookies or tags on our Site … to gather information regarding use of our Site[.]'" MTD at 3:3-15. As the alterations suggest, Defendant cobbles this

**OMNIBUS RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS AND STRIKE**

"representation" together by lifting different phrases from different sentences and assembling them into a single statement that lacks surrounding—and unfavorable—context. The full excerpt states:

> We also allow third party companies such as Google Analytics to place beacons, cookies or tags on our Site. Google Analytics utilizes cookies to gather information regarding use of our Site, which Google uses to generate reports for us regarding our Site. To find out more about how Google uses data when you use our Site and your options for controlling the information collected by Google from this Site, <u>google policies</u> [sic]. RJN at 1 at 2.

As evinced by even a cursory comparison, Defendant places the full weight of its analysis on a "representation" that bears almost no resemblance to the excerpt from which it originated. Most glaringly, the excerpt only informs consumers that "Google Analytics"—not "third party companies" in general—"utilizes cookies to gather information regarding use of our Site[.]"  *Id.* Given Plaintiffs' allegations that Defendant assisted numerous third parties beyond Google with intercepting electronic communications, the excerpt falls well short from establishing consent. *Shah*, 2024 WL 4539577, at *5 (noting the well-established principle that "consent is generally limited to the specific conduct authorized") (internal quotations omitted).  And even if the excerpt implied that other third parties may "gather information regarding use of our Site," it would still constitute a general representation—one merely covering "information"—that contradicts the specific promise to safeguard "Personal Information" and "personally identifiable" information from disclosure. *See, e.g.*, FAC ¶¶ 42-44.

## II.    PLAINTIFFS ESTABLISH THE CRIME-TORT EXCEPTION

Defendant argues that the Wiretap Act claim must be dismissed because "one of the parties to the communication, Defendant, gave prior consent." MTD at 3:16-4:12. Even though the Wiretap Act is a one-party consent statute, Plaintiffs properly invoke the crime-tort exception.

Although generally "[t]he analysis for a violation of CIPA is the same as that under the federal Wiretap Act," the issue of consent is the exception to that rule.  *See Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) (internal quotations omitted). Whereas CIPA requires "the consent of all parties," *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1000 (N.D. Cal. 2024), the Wiretap Act "only requires one party to the communication to consent to an interception to relieve the provider of liability."  *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1028 (N.D. Cal. 2014).

OMNIBUS RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS AND STRIKE

Despite being a "one-party consent statute," however, the Wiretap Act imposes an important caveat. *See Brown*, 685 F. Supp. 3d at 939. That caveat, known as the crime-tort exception, forecloses consent as a defense "where 'the communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.'" *Brown*, 525 F. Supp. 3d at 1067. In other words, even where all parties to a communication provide explicit and unambiguous consent, an interception remains actionable under the Wiretap Act "when done for the purpose of facilitating some further impropriety." *Planned Parenthood Federation of America, Inc. v. Newman*, 51 F. 4th 1125, 1135 (9th Cir. 2022) (internal quotations omitted). That analysis turns "not upon whether the interception itself violated another law," but "upon whether the purpose for the interception—its intended use—was criminal or tortious." *Sussman v. American Broadcasting Co.*, 186 F. 3d 1200, 1202 (9th Cir. 1999) (internal quotations omitted).

Plaintiffs allege that Defendant helps funnel communications into "identity graph[s]" and "generalized datasets" for the unlawful and tortious purpose of "associating the content of [Plaintiffs'] electronic communications with preexisting consumer profiles." FAC ¶ 167; *see also id.* ¶¶ 51, 53, 55, 98, 125, 138. Multiple courts—including this one—recognize that "[t]he association of Plaintiffs' data with preexisting user profiles is a further use of Plaintiffs' data that satisfies [the crime-tort] exception," because it "violate[s] state law, including the CDAFA, intrusion upon seclusion, and invasion of privacy." *Brown*, 525 F. Supp. 3d at 1067; *Marden v. LMND Medical Group, Inc.*, 2024 WL 4448684, at *2 (N.D. Cal. July 3, 2024) (Lin, J.) (quoting *Brown* and finding that the plaintiff "plausibly alleges tortious intent"); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 902 (C.D. Cal. 2024) (quoting *Brown* and finding that the crime-tort exception applies "if plaintiffs have adequately alleged that the defendant's conduct violated state law, including state law privacy claims").

Plaintiffs also allege a second basis for the crime-tort exception. As discussed in the FAC, there are at least two statutes—the CCPA and the FTC Act—that prohibit companies from exceeding or contravening privacy representations when using consumers' personal information. FAC ¶¶ 30-36. The CCPA, for example, dictates that "[a] business shall not … use personal

**OMNIBUS RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS AND STRIKE**

information for additional purposes that are incompatible with the disclosed purpose for which the personal information was collected without providing the consumer with notice consistent with this section." Cal. Civ. Code § 1798.100(a).  And the FTC Act, which generally outlaws "unfair and deceptive acts or practices," prohibits companies from engaging in conduct that "deprives consumers of their privacy." *See Federal Trade Commission v. Kochava, Inc.*, 715 F. Supp. 3d 1319, 1321 (D. Idaho 2024) (analyzing *In re Facebook* and holding that "an invasion of privacy may constitute an injury that gives rise to liability under Section 5(a) [of the FTC Act]").

Whether emanating from one of those statutes or both, Defendant was legally obligated to honor its privacy representations when using or exploiting personal information. Despite that obligation, Defendant chose to assist third parties with intercepting electronic communications for the purpose of later "us[ing] and exploit[ing] the contents of the electronic communications in a manner that exceeds what Defendant promised Plaintiffs and Class members in its Privacy Policy." FAC at ¶ 167; *see id.* ¶¶ 51-62, 95-106.  By doing so, Defendant facilitated the interceptions for a criminal and unlawful purpose. *See, e.g.*, *Castillo v. Costco Wholesale Corp.*, 2024 WL 4785136, at * (W.D. Wash. Nov. 14, 2024) ("The Court concludes that alleging a defendant intercepted data to use in violation of criminal or tort laws suffices to invoke the crime-tort exception.").

Rather than address either basis for the crime-tort exception, Defendant instead argues that the exception lacks applicability because "the alleged purpose was financial gain by Defendant itself."  MTD at 11:11. "But even where a defendant is arguably motivated by monetary gain, the crime-tort exception may nonetheless apply if plaintiffs have adequately alleged that the defendant's conduct violated state law, including state law privacy claims." *Walgreens*, 733 F. Supp. 3d at 901 (collecting cases).

### III.    DEFENDANT FAILS TO ESTABLISH THE PARTY EXCEPTION

Without any analysis in support, Defendant argues that "Meta and the other entities provide a tool and thus are not third-party eavesdroppers."  MTD at 5:12-13 (internal quotations omitted). That argument runs contrary to the overwhelming weight of authority.

"There is a split in the Ninth Circuit on the standard used to define a third party." *Turner v. Nuance Communications, Inc.*, 735 F. Supp. 3d 1169, 1183 (N.D. Cal. 2024).  Two cases—

8

*Graham v. Noom, Inc.*, 533 F. Supp. 3d 823 (N.D. Cal. 2021) and *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891 (N.D. Cal. 2023)—demarcate that split.  Under the narrower view advanced by *Graham*, a company constitutes a "third-party eavesdropper" if it "intercepted and used the data [for] itself." *Graham*, 533 F. Supp. 3d at 832-33. Under the broader view articulated by *Javier*, a company constitutes a third-party eavesdropper if it "ha[s] the capability to use its record of the interaction for any other purpose."  *Javier*, 649 F. Supp. 3d at 900.

Plaintiffs satisfy either standard.  As currently alleged, Plaintiffs focus on eight companies—"Meta, Attentive, and six data brokers"—who "intercepted electronic communications that not only revealed [Plaintiffs'] personally identifiable information but also the content of their communications." FAC ¶¶ 6-8, 136. All eight companies exploit those communications "for their own commercial purposes." *Id.* ¶ 135; *see also id.* ¶¶ 51-62, 95-106, 118-139. When Meta receives an intercepted communication, for example, it places that communication "into a generalized database" known as "Core Audiences" where advertisers can serve any Facebook user—whether an "existing customer[]" or not—with targeted advertisements. *Id.* ¶¶ 55-56.  Attentive also "leverages personal information to enhance its platform," including through its use of "the 1.4 trillion datapoints in [its] possession" to train and develop products that "incorporat[e] artificial intelligence." *Id.* ¶ 105. And the remaining six companies—"LiveIntent, Svorn, LiveRamp, Neustar, AtData, and Throtle"—likewise exploit personal information for their own benefit, collecting online activity from across the internet and associating it with "billions" of identifiers for "behavioral targeting," "programmatic advertising," "customer profiles," and "look-a-like models." *Id.* ¶ 119. Unsurprisingly, those six companies "are registered in California as data brokers," *see id.*, meaning they admit to being "a business that knowingly collects and sells to third parties the personal information of a consumer with whom the business does not have a direct relationship."  Cal. Civ. Code § 1798.99.80(c).  Put differently, the data brokers "use [intercepted] communications for their own commercial purposes."  *Id.* ¶ 135.

As this Court and other courts uniformly hold when reviewing identical or analogous allegations, all eight companies constitute third-party eavesdroppers.  *See, e.g.*, *In re Facebook*, 956 F. 3d at 608 ("Facebook is not exempt from liability as a matter of law under the Wiretap Act

9

1   or CIPA as a party to the communication."); *Marden*, 2024 WL 4448684, at *3 (Lin, J.) (rejecting

2   party exception where "Plaintiffs allege that Google and Facebook benefitted from this

3   interception by using the information to sell ads to other third-party advertisers."); *Toy v. Life Line*

4   *Screening of America Ltd.*, 2024 WL 1701263, at *1 (N.D. Cal. Mar. 19, 2024) (Lin, J.) (holding

5   that "Life Line aided a third party's violation of the California Invasion of Privacy Act" by

6   "installing [the Meta] Pixel and Google Analytics on its website"); *Gibson v. Planned Parenthood*

7   *Federation of America, Inc.*, 2024 WL 4251892, at *2 (N.D. Cal. July 2, 2024) (holding that "third

8   parties acquired the contents of Gibson's communications for more than PPFA's own access or

9   use" because "Meta 'assimilates intercepted communications and information into datasets like

10  Core Audiences and Custom Audiences'") (internal brackets omitted); *see also Graham*, 533 F.

11  Supp. 3d at 832 (describing "Navistone and Facebook" as examples of third-party eavesdroppers).

12  **IV.    PLAINTIFFS SATISFY THE "CONTENTS" REQUIREMENT**

13      Defendant argues that Plaintiffs fail to allege that the interceptions contained "the contents

14  of [their] communication." MTD at 6:8. That argument ignores the many allegations

15  demonstrating that at least three types of information—"form field entries," "the full-string URL,"

16  and the "name of the button[s] clicked"—revealed the "contents" of Plaintiffs' communications.

17  *See, e.g.*, FAC ¶¶ 65, 68, 81, 109, 113, 126, 131, 136, 165.

18      "The term 'contents' is defined as 'any information concerning the substance, purport, or

19  meaning of that communication.'" *Turner*, 735 F. Supp. 3d at 1185 (quoting 18 U.S.C. § 2510)).

20  Put differently, "'contents' refers to 'the intended message conveyed by the communications,' as

21  opposed to 'record information regarding the characteristics of the message that is generated in the

22  course of the communication.'" *Id.* (quoting *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th

23  Cir. 2014)). "Whether information is 'content' or 'record information' can depend in part on the

24  manner in which the information is generated, as information that would otherwise be considered

25  'record information'—such as names, addresses, telephone numbers, and email addresses—may

26  be 'contents' of a communication where the user communicates with a website by entering his

27  information into a form provided by the website." *Saleh v. Nike*, 562 F. Supp. 3d 503, 517 (C.D.

28  Cal. 2021).

Plaintiffs adequately allege that "form field entries"—including those that ask for "phone numbers" and "email addresses"—revealed the contents of their communications. *See* FAC ¶¶ 81, 109, 165.  Although phone numbers and email addresses sometimes operate as "record information," they become "the contents of a communication" when they form part of "the communication itself." *In re Zynga Priv. Litig.*, 750 F. 3d at 1107. In other words, "addresses, phone numbers, and URLs may be dialing, routing, addressing, or signaling information, but only when they are performing such a function." *In re Google Inc. Cookie Placement Cons. Priv. Litig.*, 806 F. 3d 125, 137 (3d Cir. 2015).  By contrast, when "entered into a form provided by a website," contact information—like "email addresses" and "telephone numbers"—become "the contents of a communication." *In re Zynga Priv. Litig.*, 750 F. 3d at 1107.  Accordingly, Plaintiffs adequately allege that the information they submitted into form fields—including their phone numbers and email addresses—constitute the "contents" of their communications.  *See, e.g.*, *id*. ("Because the users had communicated with the website by entering personal medical information into a form provided by the website, the First Circuit correctly concluded that the defendant was disclosing the contents of a communication."); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1076 (N.D. Cal. 2023) ("[C]ontact information provided as part of a sign-up process constitutes 'content' because this information is the subject of the communication.").

Plaintiffs also adequately allege that the URLs revealed the "contents" of their communication. *See* FAC ¶¶ 113; *see also id.* ¶¶ 65, 126, 162. URLs become "content" when they "contain a search term or similar information communicated by the user." *St. Aubin v. Carbon Health Technologies, Inc.*, 2024 WL 4369675, at *4 (N.D. Cal. Oct. 1, 2024) (collecting cases). A "full-string detailed URL," for example, constitutes content because it "contains the name of a website, folder and sub-folders on the web-server, and the name of the precise file requested." *In re Facebook, Inc.*, 956 F. 3d at 605. Here, the third parties intercepted "full-string URLs" with enough information about Plaintiffs' communications—like "the name of the product" being browsed or purchased—to treat those URLs as "content." *See* FAC ¶¶ 6-8, 69, 113; *see also Shah*, 2024 WL 4539577, at *3 (Lin, J.) ("[T]he 'contents' referenced by Section 638.50 are the users' HTTP requests to load Fandom's website, not the Tracker's transmission of the users' IP addresses

to the third party."); *In re Google*, 806 F. 3d at 139 ("[T]he domain name portion of the URL—everything before the '.com'—instructs a centralized web server to direct the user to a particular browser, but post-domain name portions of the URL are designed to communicate to the visited website which webpage content to send the user."); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022) (distinguishing the URLs in *Zynga* because "the transmitted URLs include both the 'path' and the 'query string'").

That same analysis applies for information revealing "the name of the button clicked." *See* FAC ¶ 68; *see also In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 796 (rejecting the argument that "the names of buttons clicked on websites and their associated URLs are not 'content' within the meaning of the statute"); *Yoon v. Meta Platforms, Inc.*, 2024 WL 5264041, at *6 (N.D. Cal. Dec. 30, 2024) (holding that "the button click data associated with the video titles are contents"); *Greenley v. Kochava*, Inc., 684 F. Supp. 3d 1024, 1052 (S.D. Cal. 2023). ("[I]nformation about particular activity conducted and search terms used on an app qualify as the 'contents' of communication.").

## V.    PLAINTIFFS MEET THE "IN TRANSIT" REQUIREMENT

Defendant argues that "Plaintiffs have not and cannot allege that any communication was 'intercepted' while 'in transit,' as required for their claims."  MTD at 6:17-18.  That argument is both wrong and premature.

To establish a claim under the Wiretap Act and section 631(a) of CIPA, "a defendant must have read or learned the contents of a communication while the communication was in transit, or in the process of being sent or received." *Jones v. Tonal Systems, Inc.*, --- F. Supp. 3d ----, 2024 WL 43457558, at *6 (S.D. Cal. Sept. 30, 2024). Put differently, "the allegations must demonstrate a party intercepted the communication during its transmission, rather than once it was placed in electronic storage." *Heiting v. Taro Pharmaceuticals USA, Inc.*, 728 F. Supp. 3d 1112, 1125 (C.D. Cal. 2024). Here, to meet the "in transit" element, Plaintiffs make the following allegation:

> When a user accesses a website hosting the Meta Pixel, Meta's software script surreptitiously directs the user's browser to send a separate message to Meta's servers.  This second, secret transmission contains the original GET request sent to the host website along with additional data that the Pixel is configured to collect. This transmission is initiated by Meta's code and concurrent with the

OMNIBUS RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS AND STRIKE

communication with the host website. Two sets of code are thus automatically run as part of the browser's attempt to load and read Defendant's website—Defendant's own code, and Meta's embedded code.

FAC ¶¶ 59-60; *see also id.* ¶¶ 108, 127 (alleging the same for Attentive and LiveIntent).

Multiple courts—including this one—have reviewed identical or analogous allegations and held that they "plausibly alleged interception." *See, e.g.*, *St. Aubin*, 2024 WL 4369675, at *6 (N.D. Cal. Oct. 1, 2024) (reviewing identical allegation and rejecting argument "that Plaintiff fails to allege with specificity that the alleged interception occurred while the communications were in transit"); *see also Toy*, 2024 WL 1701263, at *1 (Lin, J.) (holding that "the communications were intercepted in transit" because "the complaint offers highly detailed allegations about how Pixel works and how the alleged interception occurs").

To be sure, "[m]erely parroting the statutory requirement that it occurred in transit is insufficient." *Heiting*, 709 F. Supp. 3d at 1019. But at this stage, "a plaintiff is not expected to prove or even know how and when [her] communications were captured." *Wright v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 2023 WL 5837492, at *6 (S.D. Cal. Sept. 8, 2023). And here, "Plaintiffs' allegations are far more specific than the conclusory allegations regularly held to fail to plead an interception 'in transit' under CIPA and the Wiretap Act." *Hazel v. Prudential Financial, Inc.*, 2023 WL 3933073, at *3 (N.D. Cal. June 9, 2023) (collecting cases). Thus, at a minimum, "Defendant's arguments regarding what constitutes 'in transit' are best left for resolution at the summary judgment stage." *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1131 (S.D. Cal. 2023).

## VI.    PLAINTIFFS MEET THE "READ OR LEARNED" REQUIREMENT

Defendant contends that "hashed" or "encrypted" information "cannot be 'read' or learned.'" MTD at 7:27-9:6. For three reasons, that argument is meritless.

***First***, Defendant's argument hinges on the notion that CIPA "requires that the communications' content be readable—not guessable." MTD at 9:2. But CIPA not only prohibits reading the contents of communications, it also prohibits "attempt[ing] to read"—*i.e.*, attempting to decrypt or unhash—the contents of communications. *See* Cal. Penal Code § 631(a).

***Second***, on its face, Defendant's argument raises "questions of fact [that] cannot be

13

resolved or determined on a motion to dismiss." *See Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv.*, 911 F. 2d 242, (9th Cir. 1990). Indeed, Defendant spends most of its analysis quoting expert reports from two cases—*Williams v. DDR Media, LLC*, 2024 WL 4859078, at *1 (N.D. Cal. Nov. 20, 2024) and *Gutierrez v. Converse Inc.*, 2024 WL 3511648, at *1 (C.D. Cal. July 12, 2024)—that were both decided on summary judgment. Defendant attempts to deny the existence of a factual dispute by claiming that "Plaintiffs concede hashed communications are 'not readable.'" MTD at 9:3 (misquoting FAC ¶ 133). But as evinced through the actual allegations, Plaintiffs made no such concession. *See, e.g.*, FAC ¶¶ 133-34 (quoting a data broker who observes that, in some circumstances, "emails in hashed form *may* not be human readable," before explaining that "many firms are now offering services that reverse email hashing to correctly guess consumers' email addresses").

**Third**, none of the "contents" here—form field information, URLs, and button clicks—fully involve "hashed" or "encrypted" information. *See, e.g.*, *id.* ¶¶ 109-110 (alleging Attentive receives "unencrypted versions" of "phone numbers" and "email addresses"). Put differently, even if this argument possessed a modicum of merit, it still fails to constitute a basis for dismissal.

## VII.    PLAINTIFFS ALLEGE DERIVATIVE LIABILITY UNDER CIPA § 631

Defendant argues that Plaintiffs have not alleged derivative liability because "[n]othing in the FAC even remotely suggests the requisite intent to violate the statute." MTD at 11:2-3. Contrary to that position, Plaintiffs plainly satisfy the standard that this Court has previously articulated.

To trigger derivative liability under CIPA, "the defendant must be acting with the third party *in order to* have the third party perform acts that violate the statute." *Smith*, 2024 WL 4539578, at *5. "At the very least, that requires both knowledge of the conduct that will violate the statute and a purpose of aiding, agreeing with, or employing the third party to commit those acts." *Id.* Notwithstanding that, "[w]hether a person possessed the requisite intent under CIPA is generally a question of fact." *Gladton v. Amazon Web Services, Inc.*, 739 F. Supp. 3d 846, 860 (W.D. Wash. 2024).

As Plaintiffs point out in their FAC, California law imposes an affirmative obligation on Defendant to "[d]isclose whether other parties may collect personally identifiable information about an individual consumer's online activities over time and across different Web sites when a consumer uses [Defendant's] Web site or service." Cal. Bus. & Prof. Code § 22575(a); *see also* FAC ¶ 35 (quoting the statute verbatim). California law also requires Defendant to disclose "[t]he categories of personal information to be collected and the purposes for which the categories of personal information are collected or used and whether that information is sold or shared." Cal. Civ. § 1780.100(a)(1). Together or separately, these statutes imposed a legal duty on Defendant to investigate and disclose whether a third party "intercept[s] and use[s] the data [for] itself." *Graham*, 533 F. Supp. 3d at 832-33.

Against that backdrop, Defendant took software from at least three companies—Meta, Attentive, and LiveIntent—and "intentionally integrate[d]" that software into its website, causing those companies and five others to receive "consumers' electronic communications and their personally identifiable information." *See, e.g.*, FAC ¶¶ 63, 107, 125. Publicly and privately, those eight companies made plain that they were collecting consumers' personal information and using it for their own commercial purposes. Meta, for example, built its entire business model around "surveil[ing] users on and off its site," including through "generalized databases" where advertisers target "existing customers" and "new people" alike. *Id.* ¶¶ 55-56. Attentive, on the other hand, made clear through at least three avenues—contracts, product pitches, and public representations—that it "uses identifiers and online activity for its own commercial purposes." *Id.* ¶ 104-107. And the remaining companies—all of which were "well-known and registered data brokers"—likewise made clear that they "use [intercepted] communications for their own commercial purposes," exploiting those communications for "behavioral targeting," "programmatic advertising," "customer profiles," and "look-a-like models." *Id.* ¶ 119.

By combining those allegations with the legal duty to investigate and disclose such misconduct, Plaintiffs comfortably demonstrate that Defendant knew and intended for Meta, Attentive, and the six data brokers to "use [intercepted] communications for their own commercial purposes." *Id.* ¶ 135. That conclusion flows naturally from the bedrock principle that "[e]very

OMNIBUS RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS AND STRIKE

citizen is presumed to know the law," *see Georgia v. Public.Resource. Org, Inc.*, 590 U.S. 255, 266 (2020), which means Defendant presumably knew about its legal duty to investigate and disclose whether "the software vendor independently 'uses' the gathered data in some way." *Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022).  Because any reasonable investigation would have revealed that all eight companies "use [intercepted] communications for their own commercial purposes," Defendant either knew that fact or intentionally chose not to discover it. FAC ¶ 119. Even assuming the latter, "persons who know enough to blind themselves to direct proof of critical facts in effect have actual knowledge of those facts."  *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 768 (2011).

In any event, "[k]nowledge, like intent, is rarely susceptible of direct proof and generally must be established by circumstantial evidence and the reasonable inferences to which it gives rise."  *See, e.g.*, *People v. Buckley*, 183 Cal. App. 3d 489, 495 (1986).  Even without a legal duty to investigate, the transparency with which the companies "use [intercepted] communications for their own commercial purposes" makes clear that Defendant knew and intended for that result. *See* FAC ¶ 119.

## VIII.    PLAINTIFFS ALLEGE DERIVATIVE LIABILITY UNDER CIPA § 632, CDAFA, AND THE WIRETAP ACT

Defendant asserts that "neither Section 632, the Wiretap Act or CDAFA provides for … derivative liability." *See* MTD at 11:9. As this Court and others have held, that is wrong.

Starting with section 632 and CDAFA, California law makes clear that "[a]ll persons concerned in the commission of a crime … or [who] aid and abet in its commission are principals in any crime so committed."  Cal. Penal Code § 31.  As this Court has noted, that statute supports derivative liability "for violations of Penal Code § 632." *Smith*, 2024 WL 4539578, at *5.  And because CDAFA is likewise located in the Penal Code, the analysis is the same. *See id.*; *see also Vera v. O'Keefe*, 791 F. Supp. 2d 959, 963 (S.D. Cal. 2011) ("Although California may enact a particular statute or define a particular cause of action to preclude or include aider and abettor and conspirator liability, there is no exclusion to the applicability of Penal Code § 31 with respect to

Penal Code § 632."); *Vacarro v. Altais*, 2023 WL 7003211, at *5 (C.D. Cal. Oct. 23, 2023) (noting that "Section 31, when applies to Sections 632 and 632.7," allows for derivative liability).

Turning to the Wiretap Act, Defendant asserts, in a footnote, that "the 1986 amendments eliminated the availability of a civil action against a procurer." MTD at 11, fn. 12. But in *Campbell v. Facebook*, 951 F. 3d 1106, 1117 (9th Cir. 2020), the Ninth Circuit foreclosed that position, noting that the Wiretap Act "includes a private right of action, 18 U.S.C. § 2520, against anyone who 'intentionally intercepts, endeavors to intercept, **or procures** any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication,' 18 U.S.C. § 2511(1)(a)." *Id.* (emphasis added). And not only does Defendant's argument disagree with controlling authority, but it also relies on a warped interpretation of 18 U.S.C. § 2520(a), which provides that:

> Except as provided in section 2511(2)(a)(ii), any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate.

*See* 18 U.S.C. § 2520(a). As the Ninth Circuit has explained, "Section 2520(a)'s language concerning 'violation[s] of this chapter' refers to the Federal Wiretap Act's substantive provisions, in this case § 2511." *Weston v. Lefti*, 2024 WL 4579237, at *1 (9th Cir. Oct. 25, 2024). And under section 2511, "a Wiretap Act violation exists when any person 'intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication.'" *In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1026 (quoting 18 U.S.C. § 2511(a)). Accordingly, "[t]he procurer of an interception has indeed engaged in a violation of §2511(a), and may thus be sued by the person whose communication was intercepted." *Valentine v. WideOpen West Finance, LLC*, 288 F.R.D. 407, 412 n. 3 (N.D. Ill. 2012).

Beyond logically flowing from the plain meaning of the statutory text, "[t]his interpretation also makes sense because the procurer of a violation—the one who merely brings about the violation—is not secondarily liable as that term is usually understood; the procurer is the *principal*, not merely the secondary actor." *Id.* (emphasis in the original). By contrast, Defendant's interpretation would effectively insulate "a party to the communication" from liability despite the

**OMNIBUS RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS AND STRIKE**

1    Wiretap Act specifically providing for such liability when "[the] communication is intercepted for

2    the purpose of committing any criminal or tortious act in violation of the Constitution or laws of

3    the United States or of any State." 18 U.S.C. § 2511(d).  In other words, Defendant's interpretation

4    would unquestionably—and avoidably—"defeat the object which the Legislature intended to

5    accomplish." *Brown v. Duchesne*, 60 U.S. 183, 194 (1856).

6    **IX.    PLAINTIFFS' COMMUNICATIONS WERE CONFIDENTIAL**

7        Defendant argues that "Plaintiffs' allegations do not establish that the information at issue

8    is confidential.'" MTD at 12.  The weight of legal authority from this Circuit says otherwise.

9        "Section 632 prohibits the interception of any 'confidential communication.'" *Brown*, 525

10   F. Supp. 3d at 1073 (quoting Cal. Penal Code § 632)).  "[A] conversation is confidential under

11   section 632 if a party to that conversation has an objectively reasonable expectation that the

12   conversation is not being overheard or recorded." *Flanagan v. Flanagan*, 27 Cal. 4th 766, 777

13   (2002). "The standard of confidentiality is an objective one defined in terms of reasonableness."

14   *Faulkner v. ADT Sec. Services, Inc.*, 706 F. 3d 1017, 1019 (9th Cir. 2013) (internal quotations

15   omitted). "Courts have recognized that individuals retain a privacy interest in their personally

16   identifiable information, including their name, address, and phone number."  *Smith*, 2024 WL

17   4539578, at *6 (Lin, J.).  Additionally, "courts have found users have a reasonable expectation of

18   privacy if a company states it will not collect your information in certain spaces or while searching

19   in a protected mode."  *Thomas v. Pap Johns Int'l, Inc.*, 2024 WL 2060140, at *2 (S.D. Cal. May

20   8, 2024) (collecting cases).

21       As discussed above, "Defendant repeatedly promised consumers that it will keep their

22   electronic communications confidential." *Id.* ¶ 40.  Because consumers "are entitled to rely on the

23   public promises of the companies they deal with," Plaintiffs possessed a reasonable expectation of

24   privacy while on Defendant's website.  *See In re Google Inc.*, 806 F. 3d at 151.

25       To refute that inescapable conclusion, Defendant asserts that "[t]here is a presumption that

26   internet-based communications are not confidential." MTD at 12:15. But that "presumption" does

27   not apply. ***First,*** Defendant "disregarded [Plaintiffs'] privacy choices while simultaneously

28   holding itself out as respecting them." *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 946 (S.D. Cal.

2024). **Second,** Plaintiffs "gave Defendant [their] first name, email address, phone number, and delivery address" (FAC ¶¶ 6-8)—which "is personal information under California law and parties generally maintain a reasonable expectation in their personal information." *See, e.g.*, *In re Google RTB Cons. Priv. Litig.*, 606 F. Supp. 3d 935, 946 (N.D. Cal. 2022).

Defendant then asserts that "portions of the Privacy Policy … make clear that these representations speak only to first-party cookies and data practices." MTD at 12:24-25. Tellingly, Defendant declines to identify the "portions of the Privacy Policy" that support such an interpretation, choosing instead to recycle the same "representation" from its meritless argument challenging consent. MTD at 13:2-9. As discussed, that "representation" is fatally deficient.

## X.       PLAINTIFFS ALLEGE SOFTWARE CONSTITUTES A "DEVICE"

Defendant argues that "pixel software is not a 'device' under Section 632." MTD at 13. That is wrong. *See, e.g.*, *Meta Platforms, Inc.*, 690 F. Supp. 3d at 1080 ("Pixel software is a device under section 632(a)."); *Yockey v. Salesforce, Inc.*, --- F. Supp. 3d ----, 2024 WL 3875785, at *7 ("[S]oftware qualifies as a device under Section 632.").

## XI.      PLAINTIFFS PROPERLY PLEAD THEIR CDAFA CLAIM

Defendant challenges the CDAFA on three grounds: 1) "access"; 2) "permission"; and 3) "damage or loss." MTD at 13-14. Defendant misses the mark on each one.

**First,** Plaintiffs properly allege that Defendant "accessed" their computers. "'[A]ccess' means to cause output from the logical, arithmetical, or memory function resources of a computer." *Brown*, 685 F. Supp. 3d at 939 (cleaned up). Plaintiffs satisfy that standard with ease. *See, e.g.*, FAC ¶ 20 ("Defendant employed and configured third-party trackers to intercept, record, and store personally identifiable information about visitors, including Plaintiffs, while those visitors were conducting searches and purchasing goods."). **Second**, Plaintiffs adequately allege that Defendant lacked permission because "[t]he plain meaning of 'without permission' does not require the circumvention of computer barriers." *See, e.g.*, *Greenley*, 684 F. Supp. 3d at 1049. And **third**, Plaintiffs adequately allege "damage or loss" because they "can state an economic injury for their misappropriated data." *Brown*, 685 F. Supp. 3d at 940; *see also* FAC ¶ 190 ("Plaintiffs and California Class members retain a stake in the profits Defendant earned form their information and

1    other data because, under the circumstances, it is unjust for Defendant to retain those profits.").

2    **XII.    PLAINTIFFS PROPERLY PLEAD THEIR UCL AND CLRA CLAIMS**

3        Defendant asserts that "Plaintiffs lack statutory standing" to bring their UCL and CLRA

4    claims because they "do not plausibly allege an economic injury." MTD at 14:16. But consistent

5    with precedent from courts in this Circuit, Plaintiffs establish economic injury by adequately

6    alleging they lost money and property.

7        "To bring a UCL claim, a plaintiff must have UCL standing, which is distinct from Article

8    III standing." *NJOY, LLC v. Imiracle (HK) Ltd.*, --- F. Supp. ----, 2024 WL 5324737, at *6 (S.D.

9    Cal. Dec. 20, 2024). "To establish statutory standing to sue for a violation of the UCL, a plaintiff

10    must '(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact,

11    i.e., economic injury, and (2) show that that economic injury was the result of, i.e., caused by, the

12    unfair business practice or false advertising that is the gravamen of the claim.'" *Kellman v. Spokeo*,

13    599 F. Supp. 3d 877, 895-96 (N.D. Cal. 2022) (quoting *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th

14    310, 321 (2011)). "A showing of economic injury only requires that the plaintiff allege or prove

15    a personal, individualized loss of money or property in any nontrivial amount." *California*

16    *Medical Assn. v. Aetna Health of California Inc.*, 14 Cal. 5th 1075, 1088 (2023) (internal

17    quotations omitted).

18        Beginning with lost property, Plaintiffs adequately establish such injury by alleging that

19    "Defendant lacked a lawful basis to disclose [their] personally identifiable information." *See, e.g.*,

20    FAC ¶ 94. California courts acknowledge, for example, that "[a] person's identifying information

21    is a valuable asset." *See, e.g., CTC Real Estate Services v. Lepe*, 140 Cal. App. 4th 856, 860

22    (2006). "California courts have also acknowledged that users have a property interest in their

23    personal information." *Calhoun*, 526 F. Supp. 3d at 635. Accordingly, "[p]rivacy harms involving

24    personal data can constitute an injury to … property sufficient to provide standing under the

25    UCL.'" *A.B. by and through Turner v. Google LLC*, 737 F. Supp. 3d 869, 882 (N.D. Cal. 2024);

26    *see also Brown v. Google LLC*, 2021 WL 6065009, at *16 (N.D. Cal. Dec. 22, 2021) ("[A] number

27    of district courts … have concluded that plaintiffs who suffered a loss of their personal information

28    suffered economic injury and had standing.") (internal quotations omitted).

**OMNIBUS RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS AND STRIKE**

1      Turning to lost money, Plaintiffs adequately establish such an injury by alleging Defendant

2    violated contractual promises to "safeguard [their] personal information from disclosure." FAC

3    ¶¶ 6-8. Importantly, neither Defendant nor Plaintiffs dispute that the privacy policy constitutes a

4    binding agreement. *See, e.g.*, MTD at 3:6 (arguing "each plaintiff assented to the privacy policy").

5    Under such circumstances, "an alleged breach of the contractual terms of a privacy policy is

6    sufficient to establishing standing under the UCL." *See, e.g.*, *Cappello v. Walmart Inc.*, 394 F.

7    Supp. 3d 1015, 1020 (N.D. Cal. 2019) (collecting cases). Although Defendant disputes the

8    adequacy of Plaintiffs' allegations about "monetary loss," MTD at 15:3, its undisputed that

9    "Plaintiffs' purchases entitled them to the bundle of goods, services, and rights set forth in their

10   purchase contract, which in this case included the privacy protections [Defendant] allegedly

11   violated." *Id.* at *1021. As a corollary, "both economic injury and causation are satisfied under

12   a benefit of the bargain theory, so long as Plaintiffs adequately pled that [Defendant] breached its

13   privacy policy." *Id.*; *see also Toy*, 2024 WL 1701263, at *2 (Lin, J) (holding that "[t]he benefit-

14   of-the-bargain theory … supports UCL standing" where the plaintiff "plausibly allege[d] that she

15   was unaware that her orders for home health tests would be shared with Facebook rather than being

16   kept confidential as she expected, and that this information would have been material to her

17   decision to use Life Line's website and to pay the amount that she did for the tests").

18      Accordingly, "taken together, these allegations are enough to establish an injury in fact

19   resulting in a loss of money or property." *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987,

20   1025 (N.D. Cal. 2024).

21   **XIII.  PLAINTIFFS PROPERLY PLEAD THEIR INVASION OF PRIVACY CLAIM**

22      Along with recycling the argument that Plaintiffs lack a "legally-protected privacy interest

23   in their browsing data," Defendant argues that the alleged interceptions "are not 'highly offensive'

24   because the collection and disclosure of website visitors' online activity falls short of this 'high

25   bar.'" MTD at 15:13-14. Both arguments run into the overwhelming weight of authority. *See, e.g.*,

26   *In re Vizio, Inc., Cons. Priv. Litig.*, 238 F. Supp. 3d 1204, 1233 (C.D. Cal. 2017) ("[M]ore routine

27   data collection practices may be highly offensive if a defendant disregards consumers' privacy

28   choices while simultaneously holdings itself out as respecting them.") (collecting cases).

21

**OMNIBUS RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS AND STRIKE**

## XIV.   DEFENDANT'S MOTION TO STRIKE IS MERITLESS

The Defendant's Motion to Strike (ECF No. 37) is an improper attempt to raise Rule 12(b)(6) arguments and to challenge class allegations through Rule 12(f).

Under Rule 12(f), a district court "may strike from a pleading…any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Redundant allegations are those that are wholly foreign to the issues involved or the needless repetition of allegations." *Rees v. PNC Bank, N.A.*, 308 F.R.D. 266, 271 (N.D. Cal. 2015). An "[i]mmaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being plead." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010) (cleaned up). Motions under Rule 12(f) are "disfavored" and considered a "drastic remedy." *Serafin v. Realmark Holdings, LLC*, 2024 WL 150594, at *1 (N.D. Cal. Jan. 12, 2024). And they should be denied "unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation." *Poursohi v. Blinken*, 2021 WL 3209728, at *1 (N.D. Cal. July 29, 2021).

### A.   Plaintiff's Tolling Allegations Should Not Be Struck

As an initial matter, Defendant's motion to strike Plaintiffs' tolling allegations (FAC ¶¶ 141-147) is procedurally improper. Defendant does not identify the basis under Rule 12(f) by which it seeks to strike Plaintiffs' allegations. Nor do these allegations fall under any of the limited categories of allegations that can be stricken. Ignoring the threshold requirement for this type of motion, Defendant argues that the delayed-discovery rule is "inapplicable here"—a merits-based argument regarding the statute of limitations that is proper for a motion for summary judgment, not a Rule 12(f) motion. Indeed, Defendant does not even try to show that these allegations "clearly could have no possible bearing on the subject of the litigation," *Poursohi*, 2021 WL 3209728, at *1, nor do they cite to even one case striking these types of allegations under even arguably analogous circumstances.

Turning to the substance (which is unnecessary given the procedural defects), Defendant argues that this Court should strike Plaintiffs' allegations about tolling because Plaintiffs purportedly "knew of or had inquiry notice of the tracking activities."  MTS at 4:12-8:6. That is wrong. "In California, the discovery rule postpones accrual of a claim until 'the plaintiff discovers,

1   or has reason to discover, the cause of action.'" *Clemens v. DaimlerChrysler Corp.*, 548 F. 3d

2   1017, 1024 (9th Cir. 2008) (quoting *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 389 (1999)). "For the

3   discovery rule to apply, the plaintiff 'must specifically plead facts to show (1) the time and manner

4   of discovery and (2) the inability to have made earlier discovery despite reasonable diligence.'"

5   *Flat v. Ford Motor Co.*, 678 F. Supp. 3d 1138, 1141 (N.D. Cal. 2023) (citation and quotes omitted).

6       Starting with time and manner of discovery, Plaintiffs allege that, "[a]though unaware at

7   the time," they were "informed … that Defendant assisted third parties—including Meta,

8   Attentive, and six data brokers—with intercepting [their] communications while visiting

9   Defendant's website," and Plaintiffs attribute their discovery "to the investigation of their

10  counsel." FAC ¶¶ 1, 6-8. Those allegations would be enough satisfy a motion to dismiss, let alone

11  a motion to strike. *See, e.g.*, *Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1255 (N.D. Cal. 2024)

12  (rejecting argument "that plaintiff cannot invoke the discovery rule unless she alleges the specific

13  'time and manner' of her discovery … given plaintiff's clear statement that 'the earliest' plaintiff

14  could have known of her injury was shortly before filing").

15      Turning to the inability to make an earlier discovery, Plaintiffs detail the various

16  representations in which "Defendant repeatedly promises consumers that it will keep their

17  electronic communications confidential." FAC ¶ 40.  Plaintiffs also describe how the tracking

18  technologies "surreptitiously" and rely on "secret transmission[s]" to convey "their confidential

19  communications." *Id.* ¶¶ 59, 108, 127, 140.  Once again, those allegations would survive a motion

20  to dismiss, let alone a motion to strike. *FullStory, Inc.*, 712 F. Supp. at 1255 (denying motion to

21  dismiss CIPA claims as untimely where the plaintiffs alleged that "'Defendant's software was

22  secretly incorporated into the Favor Platform'") (quoting allegations).

23      Defendant struggles to find a defensible basis for moving to strike these allegations.

24  Defendant begins by making the familiar argument that the privacy policy "disclosed the use of

25  beacons, cookies, and similar technologies." MTS at 5:12. For the reasons already discussed, the

26  opposite is true: "Defendant affirmatively promised users (including Plaintiffs and Class members)

27  that it would not procure third parties to track their online activity and personally identifiable

28  information while they were using Defendant's website." *See* FAC ¶ 203. Defendant then argues

that "Plaintiffs consented to and had access to Meta's policies, which provided them with constructive knowledge that 'Off-Facebook' activity could be tracking by Meta."  MTD at 5:14-17.  Once again, Plaintiffs allege the opposite: "Meta never receives consent from users to collect electronic communications on websites that have a statutory obligation to shield those communications from disclosure."  FAC ¶ 86; *see also id.* ¶¶ 88, 94. Finally, Defendant disputes "that the statute of limitations was tolled due to concealment," arguing that Plaintiffs "fall far short" of alleging "fraudulent concealment with particularity."  MTS at 8:1-6.  Not so.  *See, e.g.*, *id.* FAC ¶ 140 (alleging "Defendant created an expectation of privacy on its website," but then "surreptitiously assisted third parties with intercepting their confidential communications").

### B.    Plaintiffs' Nationwide Class Allegations Should Not Be Struck

Pointing to the Supreme Court's decision in *Bristol-Myers Squib Co. v. Superior Court of Cal.*, 137 S. Ct. 1773 (2017), Defendant argues that "the nationwide class allegations related to the federal Wiretap Act" should be struck because "this Court does not have personal jurisdiction over Defendant as to the claims of out-of-state putative class members."  *See* MTS at 8:8-11. The Court should not—and cannot—entertain the motion to strike the nationwide class allegations because it fails to raise any of the limited grounds for a motion to strike. *See, e.g.*, *Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, 2014 WL 1048710, at *3 (N.D. Cal. Mar. 14, 2014) (based on Ninth Circuit's decision in *Whittlestone*, "recent district courts have stated that Rule 12(f) motions to strike are not the proper vehicle for seeking dismissal of class allegations"); *see also Roy v. Wells Fargo Bank*, N.A., 2015 WL 1408919, at *2 (N.D. Cal. Mar. 27, 2015) (collecting cases).

In addition to this key procedural defect, a motion to strike class allegations at the threshold stage is premature. *See, e.g., Miller v. Nature's Path Foods, Inc.*, 2024 WL 4177940, at *4 (N.D. Cal. Sept. 11, 2014); *Santos v. CarMax Business Services*, LLC, 2018 WL 7916823, at *6 (N.D. Cal. May 8, 2018); *Sousa v. 7-Eleven, Inc.*, 2020 WL 6399595, at *5 (S.D. Cal. Nov. 2, 2020); *Herrera v. Wells Fargo Bank, N.A.*, 2020 WL 5802421, at *12 (Sept. 1, 2020).

In the very limited circumstances where courts do evaluating motions to strike class allegations, those judges "have applied a very strict standard to motions to strike class allegations on the pleadings, whereby "[o]nly if the court is convinced that any questions of law are clear and

1    not in dispute, and that under no set of circumstances could the claim succeed may the allegations

2    be stricken." *Roy*, 2015 WL 1408919, at *2 (cleaned up). That is not the case here.

3          Although some courts have held that "*Bristol-Myers* applies to federal courts sitting in

4    diversity," *Pilgrim v. General Motor Co.*, 408 F. Supp. 3d 1160, 1167 (C.D. Cal. 2019), those

5    cases are inapplicable where, as here, "a federal court presides over litigation involving a federal

6    question." *Sloan v. General Motors LLC*, 287 F. Supp. 3d 840, 859 (N.D. Cal. 2018). Because

7    the Fifth Amendment—not the Fourteenth Amendment—governs personal jurisdiction for cases

8    implicating a federal question, "the due process analysis does not incorporate the interstate

9    sovereignty concerns that animated *Bristol-Myers* and which may be 'decisive' in a state court's

10   analysis." *Id.* Accordingly, "a court would not apply *Bristol-Myers* when sitting in federal question

11   jurisdiction," as here. *See, e.g.*, *In re Packaged Seafood Products Antitrust Litig.*, 338 F. Supp. 3d

12   1118, 1173 (S.D. Cal. 2018).

13         Ignoring the difference between the Fifth Amendment and the Fourteenth Amendment,

14   Defendant asserts "that each plaintiff's claim must arise from Defendant's forum-related activities

15   regardless of whether specific jurisdiction was established for another claimant." MTD at 9:4-5.

16   As the Ninth Circuit has held, however, "'minimum contacts' with a particular district or state for

17   purposes of personal jurisdiction is *not* imposed on the federal courts in a federal question case by

18   due process concerns." *Securities Investor Protection Corp. v. Vigman*, 764 F. 2d 1309, 1315 (9th

19   Cir. 1985) (emphasis in the original). Instead, the Fifth Amendment only asks "whether the party

20   has sufficient contacts with the United States, not any particular state." *Id.* Accordingly, even

21   assuming *Bristol-Myers* has applicability here, putative class members can rely on Defendant's

22   contacts with the United States as a whole—not just California—to support personal jurisdiction.

23   *See, e.g.*, *Go-Video, Inc. v. Akai Elec. Co., Ltd.*, 885 F. 2d 1406, 1416 (9th Cir. 1989) ("[W]hen a

24   [federal] statute authorizes nationwide service of process, national contacts analysis is

25   appropriate."); *Securities and Exchange Commission v. Gastauer*, 93 F. 4th 1, 8 (1st Cir. 2024)

26   ("In a federal question case such as this one, the Fifth Amendment Due Process Clause requires

27   the plaintiff to show that the defendant has adequate contacts with the United States as a whole,

28   rather than with a particular state.") (internal quotations omitted).

**OMNIBUS RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS AND STRIKE**

1

2    Dated: February 13, 2025

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MARCUS NEIMAN RASHBAUM &
PINEIRO LLP

By:    */s/ Michael A. Pineiro*
       Michael A. Pineiro

*Attorney for Plaintiffs*

**OMNIBUS RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS AND STRIKE**