BLANK ROME LLP
Ana Tagvoryan (SBN 246536)
ana.tagvoryan@blankrome.com
Harrison Brown (SBN 291503)
Harrison.brown@blankrome.com
Victor Sandoval (SBN 344461)
victor.sandoval@blankrome.com
2029 Century Park East | 6th Floor
Los Angeles, CA 90067
Telephone: 424.239.3400
Facsimile: 424.239.3434

*Attorneys for Defendant*
Rack Room Shoes, Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION**

| | |
|---|---|
| DEMETRIUS SMITH, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>RACK ROOM SHOES, INC.,<br><br>Defendant. | Case No. 3:24-cv-06709-RFL<br><br>[*Assigned to Judge Rita F. Lin*]<br><br>**OMNIBUS REPLY IN SUPPORT OF DEFENDANT'S MOTIONS TO DISMISS AND STRIKE AMENDED COMPLAINT**<br><br>Date: March 18, 2025<br>Time: 10:00 a.m.<br>Courtroom: 15<br><br>Complaint Filed: September 24, 2024<br>Complaint Served: October 9, 2024<br>Trial Date: None set |

## TABLE OF CONTENTS

Page

I. INTRODUCTION .......... 1

II. Plaintiffs Concede They Have No Claims Against 16 of the Third Parties Identified in the First Amended Complaint .......... 1

III. Plaintiffs Consented to the Conduct Alleged to be at Issue Here .......... 1

IV. The Crime Tort Exception is Not Established. .......... 4

V. Plaintiffs Fail to State a Claim Under CIPA 631(a) or the Wiretap Act .......... 6

- A. The Party and Party Extension Exceptions Exempt Rack Room .......... 6
- B. There Are No Content of Communications. .......... 7
- C. Communications Were Not Intercepted in Transit. .......... 8
- D. Hashed Data, by Definition, Cannot be Read or Learned. .......... 9
- E. Plaintiffs Have Not Alleged Derivative Liability. .......... 10

VI. CDAFA, Section 632 and the Wiretap Act Do Not Provide for Derivative Liability .......... 12

VII. The Section 632 and Invasion of Privacy Claims Fail Because Internet Communications Are Presumptively Non-Confidential .......... 14

VIII. Pixel Software is Not a Device under CIPA Section 632 .......... 14

IX. The CDAFA Claim Fails For Want of Basic Factual Allegations. .......... 15

X. The UCL and CLRA Claims Fail to Allege Economic Injury or Causation. .......... 15

XI. The Invasion of Privacy Claim Fails For Lack of a Cognizable Privacy Interest .......... 16

XII. The Tolling Allegations Should be Stricken. .......... 17

XIII. The Nationwide Class Claims Should be Stricken .......... 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Backhaut v. Apple, Inc.*,
74 F. Supp. 3d 1033 (N.D. Cal. 2014)....................3

*BK v. Eisenhower Medical Center*,
2024 WL 878100 (C.D. Cal. Feb. 29, 2024)....................5

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021)....................3, 5, 15

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023)....................15

*Buckingham v. Gailor*,
2001 WL 34036325 (D. Md. Mar. 27, 2001), aff'd, 20 Fed.Appx. 243 (4th Cir. 2001) (per curiam)....................13

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024)....................3

*Cappello v. Walmart Inc.*,
394 F. Supp. 3d 1015 (N.D. Cal. 2019)....................16

*Castillo v. Costco Wholesale Corp.*,
2024 WL 4785136 (W.D. Wash. Nov. 14, 2024)....................5

*Chrisman v. City of Los Angeles*,
155 Cal. App. 4th 29 (2007)....................15

*Conservation Force v. Salazar*,
677 F. Supp. 2d 1203 (N.D. Cal. 2009)....................1

*Doe v. FullStory, Inc.*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024)....................17

*Doe v. Microsoft Corp.*,
2023 WL 8780879 (W.D. Wash. Dec. 19, 2023)....................15

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F. 3d 589 (9th Cir. 2020)....................3

*Gardiner v. Walmart Inc.*,
No. 20 -04618, 2021 WL 2520103 (N.D. Cal. Mar. 5, 2021)....................16

*Glob.-Tech Appliances, Inc. v. SEB S.A.*,
563 U.S. 754 (2011)........................................................................................... 12

*In re Google Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015)........................................................................................... 6

*In re Google Inc.*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013)........................................................................................... 3

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019)........................................................................................... 15

*In re Google RTB Cons. Priv. Litig*,
606 F. Supp. 3d 935 (N.D. Cal. 2022)........................................................................................... 14

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021)........................................................................................... 11

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023)........................................................................................... 15

*Gutierrez v. Converse Inc.*,
2024 WL 3511648 (C.D. Cal. July 12, 2024)........................................................................................... 10

*Hershey v. United States*,
933 F.2d 1014 (9th Cir. 1991)........................................................................................... 1

*Kirch v. Embarq Mgmt. Co.*,
702 F.3d 1245 (10th Cir. 2012)........................................................................................... 13

*Marden v. LMND Med. Grp., Inc.*,
No. 23-CV-03288-RFL, 2024 WL 4448684 (N.D. Cal. July 3, 2024)........................................................................................... 5

*McCoy v. Alphabet, Inc.*,
No. 20-CV-05427-SVK, 2021 WL 405816 (N.D. Cal. Feb. 2, 2021)........................................................................................... 3

*Moore v. Centrelake Med. Grp., Inc.*,
83 Cal. App. 5th 515, 299 Cal.Rptr.3d 544 (2022), review denied (Dec. 14, 2022)........................................................................................... 16

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024)........................................................................................... 6

*Oracle Corp. v. SAP AG*,
734 F. Supp. 2d 956 (N.D. Cal. 2010)........................................................................................... 13

*Peavy v. WFAA-TV, Inc.*,
221 F.3d 158 (5th Cir. 2000)........................................................................................... 13

*Pena v. GameStop, Inc.*,
670 F. Supp. 3d 1112 (S.D. Cal. 2023) .......... 6

*Phan v. Sargento Foods, Inc.*,
No. 20-09251, 2021 WL 2224260 (N.D. Cal. June 2, 2021) .......... 17

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) .......... 5, 6

*Rivera v. Peri & Sons Farms, Inc.*,
735 F.3d 892 (9th Cir. 2013) .......... 2, 9, 10

*Shah v. Fandom, Inc.*,
No. 24-CV-01062-RFL, 2024 WL 4539577 (N.D. Cal. Oct. 21, 2024) .......... 4

*Sloan v. Gen. Motors LLC*,
438 F. Supp. 3d 1017 (N.D. Cal. 2020) .......... 17

*Sloan v. General Motors LLC*,
287 F. Supp. 3d 840 (N.D. Cal. 2018) .......... 17

*Smith v. YETI Coolers, LLC*,
No. 24-CV-01703-RFL, 2024 WL 4539578 (N.D. Cal. Oct. 21, 2024) .......... 12, 14

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) .......... 9, 17

*Toy v. Life Line Screening of America Ltd.*,
2024 WL 1701263 (N.D. Cal. Mar. 19, 2024) .......... 5, 6

*In re Toys R Us, Inc., Privacy Litig.*,
MDL No. M-00-1381-MMC, 2001 U.S. Dist. LEXIS 16947 (N.D. Cal. Feb. 21, 2003) .......... 14

*United States v. Paulson*,
68 F.4th 528 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 1029 (2024) .......... 15

*Vera v. O'Keefe*,
791 F. Supp. 2d 959 (S.D. Cal. 2011) .......... 13

*Vinole v. Countrywide Home Loans, Inc.*,
571 F.3d 935 (9th Cir. 2009) .......... 17

*In re Vizio, Inc., Cons. Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) .......... 16, 17

*W. Coast Univ., Inc. v. Bd. of Registered Nursing*,
82 Cal. App. 5th 624 (2022) .......... 4

*Weston v. Lefiti*,
No. 24-541, 2024 WL 4579237 (9th Cir. Oct. 25, 2024) .......... 2, 13

*Williams v. DDR Media, LLC*,
2024 WL 4859078 (N.D. Cal. Nov. 20, 2024) .......... 10, 11

*In re Zynga Priv. Litig*.,
750 F.3d 1098 (9th Cir. 2014) .......... 8

**Statutes**

18 U.S.C. § 2511 .......... 13

18 U.S.C. § 2520 .......... 13

Cal. Bus. & Prof. Code § 22575 .......... 11

Cal. Bus. & Prof. Code § 22575(a) .......... 11

Cal. Civ. Code § 1780.100(a)(1) .......... 11

Cal. Pen. Code
§ 31 .......... 13, 14
§ 631 .......... 9, 12, 14
§ 631(a) .......... 6
§ 632 .......... 12, 14, 15
§ 637.2 .......... 14

California Consumer Privacy Act .......... 16

California Online Privacy Protection Act .......... 15

Federal Trade Commission Act .......... 16

Wiretap Act .......... 4, 6, 13

## I. INTRODUCTION

Plaintiffs' sprawling first amended complaint (the "FAC") alleges multiple state and nationwide claims against Rack Room for the mere use of third-party pixels and cookies on its website, erroneously claiming that Plaintiffs were harmed because the marketing purposes for which their data *may* have been used was not disclosed in Rack Room's privacy policy. Plaintiffs boldly try to expand the claims outside of California, which is *per se* improper given that there is no federal claim for relief regarding website tracking by operators themselves. And, egregiously, Plaintiffs have identified a wide array of website software, including that which is necessary to operate the website, does not track users, and most importantly, Rack Room did not and never used. The kitchen-sink approach to the FAC should be rejected by this Court.

## II. Plaintiffs Concede They Have No Claims Against 16 of the Third Parties Identified in the First Amended Complaint

Rack Room's opening brief established that Plaintiffs' allegations relating to various third parties that the FAC devoted little more than a sentence to were insufficient to state a claim. Mot. at n. 1. Plaintiffs do not address this argument and thereby concede its merit. *See, e.g., Conservation Force v. Salazar*, 677 F. Supp. 2d 1203, 1211 (N.D. Cal. 2009) ("Where plaintiffs fail to provide a defense for a claim in opposition, the claim is deemed waived.") (citing *Pers. Elec. Transports, Inc. v. Office of U.S. Tr.*, 313 F. App'x 51, 52 (9th Cir. 2009)), *aff'd,* 646 F.3d 1240 (9th Cir. 2011).[1] Now, Plaintiffs argue that they have claims relating to only eight of the 24 alleged third parties in the FAC—Meta, Attentive, LiveIntent, Svorn, LiveRamp, Neustar, AtData, and Throtle. Opp. at 9, 15-16. Accordingly, Plaintiffs concede that they have no claims relating to the others, and those claims should be dismissed. *Salazar*, 677 F. Supp. 2d at 1211.

## III. Plaintiffs Consented to the Conduct Alleged to be at Issue Here.

Plaintiffs' alleged consent bars each of their claims and none of the Opposition's arguments can change that conclusion. As an initial matter, irrespective of whether consent is an affirmative defense or an element of Plaintiffs' claims, Plaintiffs have specifically alleged that

[1] Further, the entire Opposition can be disregarded because it was not filed by this Court's 5 p.m. (PST) filing deadline. *See Hershey v. United States*, 933 F.2d 1014 (9th Cir. 1991).

they consented to the Privacy Policy. It is black letter law that, "[w]hen an affirmative defense is obvious on the face of a complaint ... a defendant can raise that defense in a motion to dismiss." *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013). And, Plaintiffs have not overcome the fact that they plead they consented to an agreement that bars their claims. *See, e.g., Weston v. Lefiti*, No. 24-541, 2024 WL 4579237, at *2 (9th Cir. Oct. 25, 2024) (finding that where one party to a communication clearly consented to the interception of that communications, plaintiff has the burden of overcoming consent).

Plaintiffs miss the point when they argue that the representations barring their claims are "a general representation—one merely covering 'information'—that contradicts the specific promise to safeguard 'Personal Information'." As explained in the Motion, the representations that Plaintiffs rely on speak to ***first-party data practices*** (i.e., the information that the website operator, itself, collects on the website); they do not speak to ***third-party data practices*** (i.e., the information that third parties collect on the website). Accordingly, they are not "general" and "specific" representations; rather, they address different conduct.

This case is just like *Rodriguez v. Google LLC*, which was cited repeatedly in the Motion and which Plaintiffs fail to even attempt to distinguish, where although Google allegedly set the expectation Plaintiffs' "communications with third-party apps would not be 'recorded' by Google[,] [the representations did] not reasonably give rise to the expectation that *nobody*" including the third--party app developers, would record the communications. *Id.* at *7. The same is true here. Each of the five representations identified in the FAC, and relied on in Opposition (at p.3), speak only to the data Rack Room collects, not to the third-party data practices allegedly at issue in the FAC. By contrast, Plaintiffs have not identified a single representation that speaks to the third-party data practices allegedly at issue in the FAC, and, the Privacy Policy discloses that third parties use the technologies allegedly at issue here. Thus, Plaintiffs consented.

Similarly, Plaintiffs' arguments that consent here was not "actual" is misguided. Consent here was actual because the specific conduct at issue—allowing third parties to collect website-usage information through pixels and cookies—was specifically disclosed in the Privacy Policy. None of the cases relied on in opposition address similar circumstances. And, a close reading of

each demonstrates that they support Rack Room's position.[2] In addition, Plaintiffs assert that "*In re Facebook, Inc. Internet Tracking Litig.*, 956 F. 3d 589 (9th Cir. 2020), controls here" but fail to recognize that the plaintiffs there brought claims concerning Facebook's data practices; as such, Facebook's representations concerning Facebook's data practices were properly at issue. Here, by contrast, Plaintiffs complain of *third-party* data practices, but limit their focus to the

---

[2] In *Calhoun v. Google, LLC*, 113 F.4th 1141, 1145 (9th Cir. 2024), there were conflicting representations in Google's general privacy policy, and Chrome browser privacy policy, which was incorporated by reference therein. *Id*. Google argued that because the data collection at issue was "browser-agnostic," Google's general policies applied and barred the plaintiffs' claims. The district court held an evidentiary hearing and, after hearing expert testimony, agreed with Google. *Id*. at 1146–47. The Ninth Circuit reversed because by holding an evidentiary hearing and taking expert testimony "instead of conducting the reasonable person inquiry, the district court failed to apply the correct standard". *Id*. at 1148–49. There are no similar conflicts here.

In *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1064 (N.D. Cal. 2021), Google argued that the plaintiffs expressly consented to Google's Privacy Policy, and Google's Privacy Policy disclosed that Google would receive the data from its third-party services, barring the claim. However, the Court found that because Google's Privacy Policy did not disclose Google's alleged data collection while Plaintiffs were in private browsing mode, consent was not "actual" because the claim at issue concerned data collection while Plaintiffs were in private browsing mode. *Id*. at 1064-65. There are no similar allegations here. Plaintiffs complain of third-party cookies and beacons, and those specific technologies are disclosed in the privacy policy.

In *In re Google Inc*., 2013 WL 5423918, at *14 (N.D. Cal. Sept. 26, 2013) the plaintiffs alleged that Google had intercepted their email communications over Google's email service. *Id*. at *1. Google contended that the plaintiffs expressly consented to the interception of their emails and pointed to its Terms of Service and Privacy Policies. *Id*. at *13. Analyzing these policies, the Court concluded that because there was no specific disclosure about email-tracking, general tracking disclosures did not suffice. *Id*. Here, by contrast, Rack Room relies on specific third-party beacon and cookie website tracking disclosures—not general disclosures.

In *Backhaut v. Apple, Inc.,* 74 F. Supp. 3d 1033, 1045 (N.D. Cal. 2014), Apple's license agreement only inform[ed] users that Apple 'may hold your iMessages in encrypted form for a limited period of time' '[t]o facilitate delivery of your iMessages....'" The Court found that while users may consent to Apple's holding iMessages for the purpose of "facilitating delivery," Apple exceeded the scope of that consent when it blocked messages from being delivered to former Apple device users. *Id.* at 1045-46. Unlike here, Apple did not disclose the conduct at issue.

In *McCoy v. Alphabet, Inc*., No. 20-CV-05427-SVK, 2021 WL 405816, at *1 (N.D. Cal. Feb. 2, 2021), the plaintiff alleged that Google had been using an internal program called "Android Lockbox" to monitor and collect sensitive personal data when users used non-Google applications on their Android smartphones. The Court found that Google's general disclosures like "we collect information about your activity in our services" were not sufficient to establish consent because they did not specifically speak to Google collecting personal data when users use non-Google applications on their Android smartphones. *Id*. at *4-6. Here, by contrast, the specific conduct at issue—use of third-party beacon and cookies on the website—is disclosed in the Privacy Policy.

Privacy Policy's representations concerning *Rack Room's* (first party) data practices. Furthermore, unlike here, Facebook's privacy policy had a specific representation that it would not collect data when a user was logged-out of Facebook, giving rise to specific, reasonable expectations. Here, the privacy policy lacks any similar representations that are directly contradictory to the conduct allegedly at issue, and the only relevant representation is *consistent* with Plaintiffs' allegations. Similarly, Plaintiffs cite this Court's opinion in *Shah v. Fandom, Inc.*, No. 24-CV-01062-RFL, 2024 WL 4539577, at *5 (N.D. Cal. Oct. 21, 2024), which actually supports Defendants' position. There, Fandom argued that because users consented to sharing their IP addresses with Fandom, they also consented to sharing the IP addresses with third parties. *Id.* This Court rejected that argument and found that "[a] user who consents to disclose their IP address to Fandom as part of accessing its website does not necessarily consent to disclose their IP address to the third parties operating the Trackers." *Id.* The same, party-specific, reasoning supports Defendant's argument here—a user who consents to a Privacy Policy disclosing that third parties use pixels and cookies to collect website information does not destroy that consent because the Privacy Policy makes unconnected disclosures concerning Defendant's first-party data practices. In sum, none of the case law relied on in Plaintiffs' opposition supports their arguments. To the contrary, each supports the finding that Plaintiffs' alleged consent was actual and effective, and Plaintiffs' claims are barred.[3]

## IV. The Crime Tort Exception is Not Established.

Plaintiffs concede that one party consented to the conduct at issue, but insist that the crime-tort exception saves their Wiretap Act claim because (1) they allege that the third parties

[3] As a final "hail Mary" attempt to save their claims, Plaintiffs attempt to side-step their clear consent by arguing that Rack Room changed the meaning of the Privacy Policy because, in the interests of preserving space in its Motion, it omitted a specific third party used as an example therein. Opp. at 5-6. Not so. The Privacy Policy clearly discloses that third party data practices, generally, include allowing third parties "to place beacons, cookies or tags on our Site." *See* ECF No. 38-1 at 2. The fact that the privacy policy also provides an example of a specific third party—Google Analytics—does not mean that the disclosure applies only to Google Analytics, as Plaintiffs argue. *W. Coast Univ., Inc. v. Bd. of Registered Nursing*, 82 Cal. App. 5th 624, 634 (2022) ("When a general term is said to include certain specified examples, courts ordinarily will not construe the general term to consist only of those examples.") (citations omitted).

funnel communications into identity graphs for the unlawful and tortious purpose of associating the content of Plaintiffs' electronic communications with preexisting consumer profiles, and (2) they assert that the CCPA and FTC Act allegedly prohibit "exceeding or contravening privacy representations" and mistakenly assert that Rack Room's privacy representations have been exceeded. Neither establishes that Rack Room had the requisite criminal or tortious purpose.

First, Plaintiffs' allegations that third-parties associate Plaintiffs' information with identify graphs and consumer profiles does not speak to *Rack Room's* alleged criminal or tortious purposes. Unlike *Brown v. Google*, where the court found that Google had a criminal or tortious purpose because Google funneled information it intercepted into Google's consumer profiles, Rack Room is not alleged to have any of its own consumer profiles to funnel information into. *Brown*, 525 F. Supp. 3d at 1067. Rather, it is the third parties who allegedly funnel information into their own consumer profiles. Thus, if these allegations can allege a criminal or tortious purpose, at all, they can only allege that the third parties had the criminal or tortious purpose—not Rack Room. Indeed, Plaintiffs do not even allege that Rack Room had knowledge of any of these practices. *See* Sec.V.E *infra.* Thus, Plaintiffs clearly cannot allege that Rack Room's purpose was unlawfully associating consumer data with other data sets. Put differently, Plaintiffs have not alleged that Rack Room committed any tortious or criminal act "independent of the intentional act of the recording or interception itself"—only that the third parties did so. *BK v. Eisenhower Medical Center*, 2024 WL 878100, *5 (C.D. Cal. Feb. 29, 2024) (collecting cases).[4]

---

[4] Furthermore, neither of *Marden v. LMND Med. Grp., Inc.*, No. 23-CV-03288-RFL, 2024 WL 4448684, at *3 (N.D. Cal. July 3, 2024) nor *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 902 (C.D. Cal. 2024) found that the association of Plaintiffs' data with preexisting user profiles satisfies the crime-tort exception, as Plaintiffs argue (and indeed, Plaintiffs have not cited, nor has Defendant found, any case applying the crime tort exception to a party on the basis of a third-parties' acts—let alone on the basis of a third parties' acts that the party may not even be aware of). Rather, both cases found that the crime-tort exception was satisfied where the defendant had the purpose of sharing protected health information with third parties. There is no protected health information at issue in this case, and those cases, too, are inapposite. For similar reasons, *Castillo v. Costco Wholesale Corp.*, 2024 WL 4785136, at *6 (W.D. Wash. Nov. 14, 2024) does not apply here. Indeed, the Court there specifically distinguished that case from others on the basis that the case "involved health data that could implicate HIPAA." *Id.* Similarly, this Court's opinion in *Toy v. Life Line Screening of America Ltd.*, 2024 WL 1701263 (N.D. Cal. Mar. 19, 2024) is inapplicable to this case because "Plaintiff[s] ha[ve] made no

Second, again, Plaintiffs have not established that Rack Room exceeded or contravened its privacy representations because Plaintiffs' allegations focus on third-party data practices whereas the privacy representations that Plaintiffs put at issue concern first-party data practices. Even if that were not the case, the conduct that Plaintiffs allege exceeded or contravened Rack Room's privacy policies is the very same conduct that Plaintiffs premise their Wiretap Act claim on and is not "independent of the intentional act of the recording or interception itself". *Id.* And, authority "indicates that the criminal or tortious acts contemplated by § 2511(2)(d) are acts secondary to the acquisition of the communication involving tortious or criminal use of the interception's fruits." *In re Google Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 145 (3d Cir. 2015); *Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112, 1119–20 (S.D. Cal. 2023) (same). None of these purported facts are alleged nor can any be inferred to satisfy Plaintiffs' perceived exception to the federal law.

Finally, Plaintiffs' reliance on *Walgreens* is misplaced because that court specifically found that the separate claim for violation of the state's invasion of privacy law, which specifically "involved health information" including "the purchasing of sensitive healthcare products (Monistat and a diabetes test kit) related to specific health conditions (yeast infection and diabetes)" satisfied the exception where such medical privacy recognition was also separately codified in other state statutes. *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 893, 901-02 (C.D. Cal. 2024). Indeed, the Court specifically noted that "[h]ad Plaintiffs alleged only that they purchased, say, beauty products and laundry detergent, it is unlikely that a privacy claim would flow from such activity." *Id.* Here, Plaintiffs allege only that they purchased shoes.

## V. Plaintiffs Fail to State a Claim Under CIPA 631(a) or the Wiretap Act.

### A. The Party and Party Extension Exceptions Exempt Rack Room.

Plaintiffs allege that they satisfy the narrow view of the party-extension exception because they allege that the third parties exploit Plaintiffs' communications "for their own

---

allegations of [t]he[i]r interactions with Defendant's websites, let alone any allegations showing that [t]he[i]r interactions plausibly related to the provision of healthcare." *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1085 (W.D. Wash. 2024) (distinguishing *Toy*).

commercial purposes." Opp. at 9. However, the FAC does not allege any facts to establish this with respect to LiveIntent, Svorn, LiveRamp, Neustar, AtData, and Throtle. Instead, Plaintiffs group these parties together and purport to quote allegations that simply do not exist in an attempt to establish that these particular parties exploit personal information for their own benefit. For example, Plaintiffs purport to quote FAC paragraph 119 for the proposition that these parties collect online activity from across the internet and associating them with "billions" of identifiers, but paragraph 119 does not say that any of these third parties collect online activity from across the internet and associate them with "billions" of identifiers. FAC, ¶119. Further, Plaintiffs cite no allegations relating to LiveIntent that purport to establish that it uses any data for its own commercial purposes. *Id.* And, out-of-context use the words "behavioral targeting," "programmatic advertising," "customer profiles," and "look-a-like models" do not establish use of any specific data for one's own commercial purposes. Opp. at 9 (citing FAC, ¶119). Furthermore, Plaintiffs' argument that these particular third parties are not party-extensions because they are registered as data brokers is also overbroad because it does not speak to the interception allegedly at issue. Plaintiffs simply have not alleged any facts concerning these third parties that countenance against application of the party-extension exception to them. Further, Plaintiffs do not address Rack Room's argument that Plaintiffs' *factual* allegations concerning Meta and Attentive establish that that they are not third parties in this context. *Compare* Mot. at 5 *with* Opp. at 8-10. Accordingly, Plaintiffs' claims can be dismissed on this independent basis.

### B. There Are No Content of Communications.

Although the FAC referred to a variety of pieces of information that could be at issue, in opposition Plaintiffs argue only that three types of "contents" of communications are at issue:

- "form field entries" that ask for "phone numbers" and "email addresses" (Opp. at 11 (citing FAC ¶¶ 81, 109, 165)),
- "full-string URLs" with "the name of the product" being browsed or purchased (Opp. at 11 (citing FAC ¶¶ 6-8, 69, 113), and
- "the name of the button clicked." (Opp. at 12 (citing FAC ¶ 68).

However, Plaintiffs' citations to the FAC in purported support of these arguments demonstrate why the group pleading doctrine exists—none of these allegations relate to all eight

of the third parties that are still at issue. With respect to form fields, Plaintiffs allege only that Meta and Attentive receive this information. FAC ¶¶ 81, 109, 165. With respect to full-string URLs, Plaintiffs allege only that Attentive receives this data. FAC ¶¶ 69, 113. And, with respect to button click data, Plaintiffs allege only that Meta receives this information. FAC ¶ 68. As such, Plaintiffs have not established that any of the other third parties (*see supra*) intercepted any "contents" of communications. Moreover, Plaintiffs do not identify any substantive contents of communications that were revealed by button clicks. *See* FAC ¶¶ 6-8. Accordingly, all that is properly at issue is Meta and Attentive's alleged receipt of Plaintiffs' "phone numbers" and "email addresses" transmitted through "form field entries" and Attentive's alleged receipt of full-string URLs, which as addressed below, do not fall within the purview of the statute.

With respect to Plaintiffs' "phone numbers" and "email addresses" transmitted through "form field entries," Plaintiffs' argument relies on a fabricated quotation. Opp. at 11. Plaintiffs argue that "when 'entered into a form provided by a website,' contact information—like 'email addresses' and 'telephone numbers'—become 'the contents of a communication.'" *Id.* (allegedly citing *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1107 (9th Cir. 2014)). However, the phrase "entered into a form provided by a website," does not appear anywhere in the opinion—it is a complete fabrication. And, that case did not hold that if you enter information that would otherwise be record information into a form field, it becomes the content of communications. In reality, the opinion states "where the users had communicated with the website by **entering their personal medical information** into a form provided by a website, the First Circuit correctly concluded that the defendant was disclosing the contents of a communication." *In re Zynga Priv. Litig.*, 750 F.3d at 1107 (emphasis supplied). And, divulging "identification and address information" was "record information about a user's communication, not the communication itself." *Id*. Here, unlike in *Zynga*, Plaintiffs do not allege that they entered personal medical information into a form on the website. With respect to URL information that Attentive allegedly receives, Plaintiffs do not allege that they visited any webpage on the website whose URL disclosed any specific information. FAC ¶¶ 6-8. Accordingly, this, too, fails.

### C. Communications Were Not Intercepted in Transit.

Plaintiffs argue that their allegations satisfy the "in transit" requirement because they copied and pasted allegations from other complaints that other courts have found sufficient and, the issue is not appropriate for resolution at the motion to dismiss stage. Opp. at 12-13. They are wrong. First, Plaintiffs fail to address (and thus concede) Defendant's argument that, despite the conclusory allegation that the pixel sends information "concurrent[ly]", the factual allegations more specifically explaining how the pixel operates, contradict that conclusion. *Compare* Mot. at 7 (citing FAC ¶¶ 61, 108, 164) *with* Opp. at 12-13 (not addressing this argument). And, because courts should not accept as true conclusory allegations that are contradicted by facts, Plaintiffs cannot satisfy this element simply because they use the word "concurrent" elsewhere in the FAC. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 989 (9th Cir. 2001). Second, courts regularly decide these issues at the pleadings stage particularly where, as here, the "defense is obvious on the face of a complaint." *Rivera*, 735 F.3d at 902.

### D. Hashed Data, by Definition, Cannot be Read or Learned.

Plaintiffs make three arguments as to why their allegation that the information at issue was "hashed" does not defeat their claims. Each is misguided. First, Plaintiffs argue, without support, that because Section 631 prohibits "attempt[ing] to read" the contents of communications, it also prohibits "attempting to decrypt or unhash[ ]the contents of communications." Opp. at 13. Neither authority nor the statute's text support this argument. Further, Plaintiffs allege that the contents of the alleged communications were "hashed," not encrypted. *See* FAC ¶¶83, 93 (alleging that consumer's first name, last name, phone number, and email address, city, state, and zip code are hashed if received by Meta); *see also* 130 (alleging same with respect to LiveIntent and the other miscellaneous third parties). And, as explained in the Motion and unaddressed (and thus conceded) in the Opposition, hashed communications cannot be decrypted in the same manner as encrypted communications. Mot. at 8-9. In any event, Plaintiffs do not allege that any of the alleged third parties attempt to decrypt or "unhash" any of the alleged communications. So, even if that were true that the statute prohibited decrypting or "dehashing" (it's not), Plaintiff's claim would still fail because they do not allege that any of the alleged third parties attempted to decrypt or unhash any of the relevant communications. Second,

although Plaintiffs are correct that *Williams v. DDR Media, LLC*, 2024 WL 4859078, at *1 (N.D. Cal. Nov. 20, 2024) and *Gutierrez v. Converse Inc*., 2024 WL 3511648, at *1 (C.D. Cal. July 12, 2024) were both decided on summary judgment, unlike in those cases, Plaintiffs here specifically plead that the communications at issue were hashed. FAC ¶¶83, 93, 130. Again, "[w]hen an affirmative defense is obvious on the face of a complaint" it is appropriate for resolution on a motion to dismiss. *Rivera*, 735 F.3d at 902. Furthermore, a finding that Plaintiffs have not plausibly alleged that third parties read or attempted to learn contents of communications is even more appropriate in this case because Plaintiffs specifically plead that hashed communications are not "human readable." FAC ¶ 133.[5] Third, although Plaintiffs argue that the alleged "contents" of communications here do not "fully" involve hashed information, they point to only the allegations that Attentive receives "unencrypted versions" of "phone numbers" and "email addresses". The other content allegations specifically plead that the alleged "contents" at issue are "hashed" and not "human readable". *See, e.g.*, FAC ¶¶ 83, 130-33, Figures 39-47. Thus, at most, Plaintiffs allege that Attentive is the only third party that has the capability of reading or attempting to read consumers' email addresses and phone numbers. However, as explained above, these are not "contents" here. Accordingly, there are no readable or learnable "contents" of communications at issue.

**E. Plaintiffs Have Not Alleged Derivative Liability.**

Plaintiffs' argument regarding Rack Room's liability for the third parties' actions goes to far. Plaintiffs argue that knowledge of use of communications for a third party's "own commercial purposes" is sufficient to allege the state of mind necessary for their claims; and

[5] Moreover, contrary to Plaintiffs' arguments, neither the FAC nor the quoted material says hashed materials are not readable "in certain circumstances." Opp. at 14. The statement quoted in the complaint, "[w]hile an email in hashed form may not be human readable…many firms are now offering services that can…correctly guess consumers' email addresses" is not expressing uncertainty—it is a statement of a factual limitation followed by an alternative. FAC ¶ 133. And, the fact that certain, unidentified "firms" offer "services that can reverse email hashing to correctly guess consumers' email addresses" is immaterial here, because none of the third parties at issue in the FAC are alleged to have used these anonymous email address guessing firms or otherwise attempted to decrypt or dehash the communications at issue.

because Defendant had a "duty to investigate," Defendant must have known that the alleged third parties would use Plaintiffs' information for their own commercial purposes. Not so. The Court should not, and may not, impose a duty to investigate on Rack Room in these circumstances.

First, Plaintiffs are incorrect that a "duty to investigate" the conduct at issue applies here. Although Plaintiffs are unclear as to where the supposed duty arises from, to the extent that they allege it arises from Cal. Bus. & Prof. Code § 22575 (CalOPPA), they are wrong. That statute, relating to online privacy policies, does not impose an affirmative duty to investigate the internal practices of third parties and, in fact, does the opposite, insofar as it specifically provides that one shall not be in violation of the statute until "30 days after being notified of noncompliance." Cal. Bus. & Prof. Code § 22575(a). Accordingly, not only is there no interplay between that statute and CIPA, that statute contemplates a duty to respond to a notification of non-compliance regime, not a "duty to investigate" regime.[6] As such, Plaintiffs' fabricated "duty to investigate" cannot help them in alleging intent. Similarly, Plaintiffs' argument that Rack Room necessarily had the requisite intent because "[e]very citizen is presumed to know the law," Opp. at 16, is not serious. If that principle held, the intent requirement would be meaningless.

Further, Plaintiffs argue that because "[p]ublicly and privately" the eight companies "made plain that they were collecting consumers' personal information and using it for their own commercial purposes," the Court can find that Defendant had the requisite intent. Opp. at 15. However, even if exposure to these "public and private" statements were sufficient to allege the requisite intent (they are not), the FAC's allegations would still fail because Plaintiffs do not

[6] Plaintiffs also cite "Cal. Civ. § 1780.100(a)(1)" for the proposition that "California law also requires Defendant to disclose '[t]he categories of personal information to be collected and the purposes for which the categories of personal information are collected or used and whether that information is sold or shared.'' Opp. at 15. However, Cal. Civ. Code § 1780.100(a)(1) does not exist. Even if it did, the quote does not creates a duty to investigate. Further, to the extent that Plaintiffs suggest that *Graham* or *Williams* found that either of Cal. Bus. & Prof. Code § 22575(a) or the non-existent Cal. Civ. § 1780.100(a)(1) created a duty to investigate and disclose whether a third party intercepts and uses the data for itself that, too, is misleading. Neither opinion addressed either alleged statute, discuss a duty to investigate at all, or even addressed the requisite intent under the statute. *See* Opp. at 15-16 (citing *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832–33 (N.D. Cal. 2021); *Willaims v. What If Holdings, LLC*, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022)). Nor have Plaintiffs adequately explained the connections to CIPA.

allege that Rack Room was exposed to, or otherwise had knowledge of, any of these statements—indeed, as Plaintiffs concede, many of these statements were "private" such that it's unclear if Rack Room even *could have* been aware of them. *See* Mot. at 10.

Similarly, Plaintiffs cannot invoke the "willful blindness" doctrine. As the sole case that Plaintiffs rely on to make this argument explains, to invoke the doctrine every jurisdiction has "two basic requirements: (1) The defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact." *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011). Neither of these basic requirements are alleged in the FAC. Further, this Court's opinion in *Smith* is directly contrary to Plaintiffs' position. There, the Court held that "[a]t the very least, [Section 631's statutory language] requires both knowledge of the conduct that will violate the statute and a purpose of aiding, agreeing with, or employing the third party to commit those acts." *Smith v. YETI Coolers, LLC*, No. 24-CV-01703-RFL, 2024 WL 4539578, at *4 (N.D. Cal. Oct. 21, 2024). Even assuming Plaintiffs properly allege that Rack Room had knowledge of conduct that will violate the statute (they do not), Plaintiffs do not even allege or argue that Rack Room had the "purpose of aiding, agreeing with, or employing the third party to commit" the conduct that violated the statute. Opp. at 14-16. In other words, Plaintiffs have not made a single factual allegation supporting the notion that Rack Room "integrat[ed]" the pixels on the website for the purpose of assisting the alleged third parties in violating the statute.[7]

**VI. CDAFA, Section 632 and the Wiretap Act Do Not Provide for Derivative Liability.**

Plaintiffs have not cited, and Rack Room has not found, a single case finding that the CDAFA provides for derivative liability—nor have they even attempted to distinguish the cases cited in the Motion holding that it does not. Mot. at 11 (citing *Oracle Corp. v. SAP AG*, 734 F. Supp. 2d 956, 967 (N.D. Cal. 2010)). Moreover, Plaintiffs are wrong that, because the CDAFA is

[7] Finally, Plaintiffs allege and argue only that Rack Room "intentionally integrate[d]" three of the eight companies' software. Opp. at 9 (citing FAC ¶¶ 63, 107, 125). So, even if Plaintiffs' argument is accepted by the Court (it should not be), it can only apply to Meta, Attentive, and LiveIntent; the claims against the other five companies that Plaintiffs have now limited their complaint to, must fail.

found in the penal code, it necessarily provides for derivative liability. As even the authority relied on in their brief recognizes, the legislature may "preclude…aider and abettor and conspirator liability [and] the applicability of Penal Code § 31". *Vera v. O'Keefe*, 791 F. Supp. 2d 959, 963 (S.D. Cal. 2011). This is precisely what the court in *Oracle* found that the legislature had done with respect to the CDAFA. *Oracle Corp.* 734 F. Supp. 2d at 966-67. Plaintiffs have provided no basis for this Court to find that the CDAFA provides for derivative liability here.

With respect the Wiretap Act, it is not accurate that, because the Ninth Circuit cited an irrelevant portion of the Wiretap Act which uses the word "procures," the Ninth Circuit "foreclosed" the position that the Wiretap Act does not provide for derivative liability. Opp. at 17 (citing *Campbell v. Facebook*, 951 F. 3d 1106, 1117 (9th Cir. 2020)). To the contrary, as the most-recent Ninth Circuit opinion on the issue clearly states, the Ninth Circuit has yet to "weigh in on the issue of whether [the Wiretap Act] permits this class of secondary liability claims". *Lefiti*, 2024 WL 4579237, at *2 (declining to find secondary liability for Wiretap Act claim). However, every other Circuit court considering the issue has correctly found that the 1986 amendments eliminated the availability of a civil action against a procurer. *See, e.g., Buckingham v. Gailor*, 2001 WL 34036325, at *6 (D. Md. Mar. 27, 2001), aff'd, 20 Fed.Appx. 243 (4th Cir. 2001) (per curiam); *Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 168 (5th Cir. 2000); *Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1246-47 (10th Cir. 2012). Indeed, even the solitary Northern District of Illinois case that Plaintiffs argue supports their position does not. Opp. at 17 (citing *Valentine v. WideOpen W. Fin., LLC*, 288 F.R.D. 407, 412 n. 3 (N.D. Ill. 2012). Rather, it, too, found that "this Court agrees with the ultimate holding of *Peavy* (that is, there is no secondary civil liability under the [Wiretap Act])." *Id.* Accordingly, Plaintiffs have not provided any authority that supports their argument that the Wiretap Act allows for derivative liability—because there is none. And, Plaintiffs' textual argument that, because 18 U.S.C. § 2511 uses the word "procures," there must be derivative liability for Plaintiffs' civil claims against Rack Room under the statute, misses the point. As the cases relied on in the Motion explain, it is because the 1986 amendments to the Wiretap Act specifically omitted the word "procures" *in the civil liability provision found at 18 U.S.C. § 2520* that there is no derivative liability against Rack

Room in this civil case. *In re Toys R Us, Inc., Privacy Litig.*, MDL No. M-00-1381-MMC, 2001 U.S. Dist. LEXIS 16947, *20-21 (N.D. Cal. Feb. 21, 2003).

Finally, with respect to the Section 632 claim, *Smith* did not address the argument here that, because Section 631 expressly provides for derivative liability and Section 632 does not, the doctrine of avoiding surplusage dictates that Section 632 does not provide for derivative liability. Further, because CIPA's civil liability provision expressly limits its application to violations of "this chapter" and Penal Code § 31 is not found in the same chapter as CIPA, CIPA's civil liability provision does not provide for civil liability for a violation of Penal Code § 31. Even if Section 637.2 *did* provide a civil right to sue for violations of Penal Code § 31, "to establish liability, Defendant must have knowledge of the other's conduct and must have provided substantial assistance." *Smith*, 2024 WL 4539578, at *4. No such knowledge is alleged here.

**VII. The Section 632 and Invasion of Privacy Claims Fail Because Internet Communications Are Presumptively Non-Confidential.**

Plaintiffs argue that, despite the well-established presumption of non-confidentiality for internet communications under Section 632, their communications here were "confidential" because (1) they misquote and misread the privacy policy to mean what it does not, and (2) Plaintiffs gave their "first name, email address, phone number, and delivery address" to Defendant. Opp. at 18-19. Both arguments are misguided. First, as discussed above, Plaintiffs cannot defeat the presumption of non-confidentiality by contorting the Privacy Policy to say what it does not. Indeed, Plaintiffs do not even attempt to address the principal case relied on in the Motion concerning this issue—*Rodriguez v. Google*, where the Court, correctly, found that a policy's representations about first-party data practices have no bearing on claims concerning third-party data practices. Mot. at 4, 12, 13 (citing 2021 WL 2026726 at *7). Second, Plaintiffs have not identified any authority finding that merely providing addressing information defeats the presumption against confidentiality. Indeed, the sole case cited in support—*In re Google RTB Cons. Priv. Litig,* 606 F. Supp. 3d 935, 946 (N.D. Cal. 2022)—did not involve a 632 claim.

**VIII. Pixel Software is Not a Device under CIPA Section 632.**

Plaintiffs baldly assert that Defendant is "wrong" that software is not a "device" under

Section 632 but fail to distinguish *Doe v. Microsoft Corp.,* 2023 WL 8780879, at *8 (W.D. Wash. Dec. 19, 2023) or the cases cited therein, which address the long-line of case law interpreting the word "device" in CIPA Section 637.7 to exclude "software." *See, e.g., In re Google Location Hist. Litig*., 428 F. Supp. 3d 185, 193 (N.D. Cal. 2019). Because courts "must also apply the presumption of consistent usage that 'a word or phrase is presumed to bear the same meaning throughout a text' " there is no reason to depart from these precedents. *United States v. Paulson*, 68 F.4th 528, 555 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 1029 (2024).

**IX. The CDAFA Claim Fails For Want of Basic Factual Allegations.**

Plaintiffs address none of the caselaw cited in the Motion barring their CDAFA claim and their arguments to the contrary do not suffice. First, Plaintiffs argue that Rack Room "accessed" their computers but cite only the allegation that "third-part[ies]" intercepted Plaintiffs' website information. Opp. at 19 (citing FAC ¶ 20). Even if these allegations sufficed (they do not), allegations concerning third parties' alleged access cannot satisfy the requirement with respect to Rack Room. Second, the weight of authority, including appellate authority, holds that the CDAFA "defines 'access' in terms redolent of 'hacking' or breaking into a computer." *Chrisman v. City of Los Angeles*, 155 Cal. App. 4th 29, 34 (2007). Although *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023) departed from this authority, that case is distinguishable because it concerned a software development kit provider hiding tracking code in its development software, not pixels on a single website. Third, Plaintiffs reliance on *Brown v. Google* for the proposition that Plaintiffs adequately allege "damage or loss" because they "can state an economic injury for their misappropriated data" is misplaced because there, unlike here, the Plaintiffs had "evidence that there is a market for their data—Google itself has piloted a program where it pays users $3.00 a day for their browsing history." *Brown v. Google LLC*, 685 F. Supp. 3d 909, 940 (N.D. Cal. 2023).

**X. The UCL and CLRA Claims Fail to Allege Economic Injury or Causation.**

Plaintiffs do no oppose the Motion's arguments that (1) the UCL unfairness claim was defective, (2) their UCL unlawfulness claim premised on the California Online Privacy

Protection Act, the California Consumer Privacy Act, and the Federal Trade Commission Act are defective, and (3) that Defendant did not cause any cognizable harm, only third parties did, insofar as they allegedly misappropriated and used the data at issue. Mot. at 15. Each is conceded. Further, Plaintiffs rely exclusively on cases against Google concerning internet-wide data and do not demonstrate how disclosure of single-website data at issue here has caused a loss in value of that information to Plaintiffs. *Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 538, 299 Cal.Rptr.3d 544 (2022), review denied (Dec. 14, 2022) (no diminution in value where plaintiffs did not allege they attempted to participate in a market for their PII). Additionally, Plaintiffs' reliance on *Cappello v. Walmart Inc.*, 394 F. Supp. 3d 1015, 1020 (N.D. Cal. 2019) to argue that they have UCL standing under a benefit of the bargain theory is misplaced. Opp. at 21. As an initial matter, the FAC pleads Plaintiffs have UCL standing based on a diminution in value theory—not a benefit of the bargain theory. FAC ¶¶ 215-17. Further, unlike in *Cappello*, Plaintiffs do not identify any contract term that was allegedly breached by Rack Room. Indeed, Plaintiffs assert that Privacy Policy made "misrepresentations"—not that any particular term was breached. *See, e.g.,* Opp. at 2-3 (citing FAC).[8] Moreover, Plaintiffs have also not alleged that privacy "was included in the cost of [Defendants'] goods" or "shown that they paid anything for the asserted privacy protections." *Gardiner v. Walmart Inc.*, No. 20 - 04618, 2021 WL 2520103, at *6 (N.D. Cal. Mar. 5, 2021) (collecting cases).

**XI. The Invasion of Privacy Claim Fails For Lack of a Cognizable Privacy Interest.**

Plaintiffs do not meaningfully address the Motion's argument that there is no legally protected privacy interest in nonsensitive data on a single website. Mot. at 15 (collecting cases). Although they cite *In re Vizio, Inc., Cons. Priv. Litig.*, 238 F. Supp. 3d 1204, 1233 (C.D. Cal. 2017), that case concerned Vizio's Smart TV tracking software that tracked users across the applications installed on the Smart TV—not single-website browsing data. Similarly, that case does not help Plaintiffs establish a highly offensive intrusion insofar as there, "even if consumers believed they had opted out of Vizio's data collection practices, Vizio was still collecting their

[8] While the privacy policy exists, it does not rise to the level of a detailed contract where specific "bargained-for" benefits can be clearly identified and valued. Plaintiffs do not show otherwise.

data for a considerable period." *Id.* Here, by contrast, there are no allegations that Plaintiffs opted-out of any data collection practices, or that Defendant disregarded any privacy choice.

**XII. The Tolling Allegations Should be Stricken.**

Plaintiffs are wrong that the request is procedurally improper; courts can, and do, strike tolling allegations where the factual predicate is not alleged. Mot. at 7 (citing, among others, *Garcia v. City of King*, 2017 WL 5194519, at *6 (N.D. Cal. Nov. 9, 2017)). Plaintiffs do not allege the time and manner of their alleged discovery. Unlike *Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1255 (N.D. Cal. 2024), Plaintiffs do not allege that the earliest they could have discovered their injury was shortly before filing. *See* FAC. Nor do they allege that they attribute their discovery to the investigation of their counsel. Further, it is Plaintiffs' inquiry knowledge, not counsel's that is relevant and, if counsel was able to learn the facts, Plaintiffs had inquiry knowledge. Further, the fact that Plaintiffs allege that opposite of what the policies disclose is irrelevant because a court may not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell*, 266 F.3d at 989. Finally, Plaintiffs' conclusory allegations do not state facts that could allege concealment with particularity.

**XIII. The Nationwide Class Claims Should be Stricken.**

Again, there is no "procedural defect;" the Court can and should strike the putative national class claims at the pleading stage. *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009); *Phan v. Sargento Foods, Inc.*, No. 20-09251, 2021 WL 2224260, at *3 (N.D. Cal. June 2, 2021). Further, Plaintiffs' argument that *Bristol-Myers* is inapplicable here because this case arises from federal question jurisdiction is, once again, defeated by the FAC. Opp. at 25 (citing *Sloan v. General Motors LLC*, 287 F. Supp. 3d 840, 859 (N.D. Cal. 2018)). The FAC alleges jurisdiction based on CAFA—not a federal question. FAC ¶ 11. And, as the *Sloan* court found in a subsequent order reconsidering the order Plaintiffs cite, where Plaintiffs plead CAFA jurisdiction, they cannot later argue that the Court has personal jurisdiction based on federal question jurisprudence. *Sloan v. Gen. Motors LLC*, 438 F. Supp. 3d 1017, 1021 (N.D. Cal. 2020) (dismissing out-of-state plaintiffs where CAFA pled). Thus, putative class members cannot rely on Defendant's contacts with the United States as a whole, as Plaintiffs argue.

DATED: February 27, 2025

BLANK ROME LLP

By: *<u>/s/Victor Sandoval</u>*
Ana Tagvoryan
Victor Sandoval
Attorneys for Defendant
RACK ROOM SHOES, INC.