UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEMETRIUS SMITH, et al.,<br>Plaintiffs,<br>v.<br>RACK ROOM SHOES, INC.,<br>Defendant. | Case No. 24-cv-06709-RFL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS, GRANTING IN PART REQUEST FOR JUDICIAL NOTICE, DENYING MOTION TO STRIKE, AND DENYING MOTION TO STAY AS MOOT**<br><br>Re: Dkt. Nos. 36, 37, 38, 42 |

Plaintiffs bring this putative class action for violation of privacy against Rack Room Shoes, Inc. after Rack Room allegedly permitted Meta and Attentive to intercept Plaintiffs' personally identifiable private communications without consent via trackers that Rack Room embedded in its own website. Rack Room moves to dismiss the Complaint for lack of standing and failure to state a claim, to strike certain portions of the Complaint, and to stay discovery.

For the reasons discussed below, Rack Room's motion to dismiss is **GRANTED WITH LEAVE TO AMEND** as to Plaintiffs' CDAFA, UCL, CLRA, and Wiretap Act claims, and **DENIED** as to all other claims. Furthermore, Rack Room's motion to strike is **DENIED**, its request for judicial notice is **GRANTED IN PART** and its motion to stay discovery is **DENIED AS MOOT**. This ruling assumes the reader is familiar with the facts, the applicable legal standard, and the arguments made by the parties.

## I. MOTION TO DISMISS[1]

***Consent***. Rack Room seeks to dismiss all claims on the basis that Plaintiffs consented to the disclosures of their data by continuing to use Rack Room's website after being notified of Rack Room's privacy policy, and because Plaintiffs allege that they consented to Facebook's privacy policy. The privacy policies at issue, however, contain ambiguities that prevent a finding of consent as a matter of law.

"In determining consent, courts consider whether the circumstances, considered as a whole, demonstrate that a reasonable person understood that an action would be carried out so that their acquiescence demonstrates knowing authorization." *Smith v. Facebook, Inc.*, 745 F. App'x 8, 8 (9th Cir. 2018). Consent is "generally limited to the specific conduct authorized." *Javier v. Assurance IQ, LLC*, 2021 WL 940319, at *2 (N.D. Cal. 2021). Therefore, the question is whether Plaintiffs have plausibly alleged that a reasonable reader would not understand the privacy policies as authorizing the actions that Meta and Attentive were permitted to carry out on Rack Room's website.

Plaintiffs allege that Rack Room has embedded the code of several third-party companies into its website, and that the third parties' code directs the browser of a person visiting the Rack Room website to send a message to the relevant third party's server. (*See, e.g.*, FAC ¶¶ 59, 63). Meta Pixel, one of the allegedly embedded codes, will send messages that can contain a "URL reveal[ing] the [visitor]'s search queries;" the "name of the button clicked and the name of the webpage;" items viewed and placed in cart; and "hashed values" corresponding to the visitor's name, address, phone number, and email. (*Id.* ¶¶ 66-72, 83.) If the Rack Room website visitor

---

[1] In support of their motion to dismiss, Rack Room requests judicial notice of the privacy policy on Rack Room's website (Exhibit 1) that Plaintiffs allegedly consented to. (Dkt. No. 38 at 2.) Rack Room's request is **GRANTED IN PART** as to Exhibit 1 because the privacy policy is incorporated by reference and relied on in the FAC, and because Plaintiffs do not dispute its accuracy or oppose judicial notice. Rack Room's request is otherwise denied because the remaining documents are not clearly judicially noticeable. The documents purport to be policies and agreements taken from third-party websites, and are "subject to reasonable dispute, or least some degree of discovery." *See St. Aubin v. Carbon Health Techs., Inc.*, No. 24-CV-00667-JST, 2024 WL 4369675, at *2-3 (N.D. Cal. Oct. 1, 2024); (*see also* Dkt. No. 46 at 3-4.). Furthermore, the documents are of marginal relevance at this stage.

has a Facebook profile, the Meta Pixel messages will also contain the visitor's Facebook ID in many circumstances. (*Id.* ¶¶ 74-80.) Attentive Tag, another embedded code, will send messages that can contain the full URL string visited, the product purchased, and the unencrypted phone number and email that the visitor entered when making a purchase. (*Id.* ¶¶ 109-10, 113.) Plaintiffs allege that Meta and Attentive use this data to provide Rack Room with services and for Meta and Attentive's own commercial use. (*See, e.g.*, *id.* ¶¶ 56-57, 96-101.)[2]

The parties agree that Plaintiffs each accepted Rack Room's privacy policy, which made the following disclosures:

> Rack Room Shoes collects information through cookies and beacons . . . but none of the information collected through cookies or beacons is personally identifiable . . .
>
> A cookie is a piece of data stored on the hard drive of your computer, containing information about you. Our usage of cookies is in no way linked to any Personal Information while on our site . . .
>
> We also allow third party companies such as Google Analytics to place beacons, cookies or tags on our Site. Google Analytics utilizes cookies to gather information regarding use of our Site, which Google uses to generate reports for us regarding our Site.

(Dkt. No. 38-1 at 3.) Plaintiffs allege that they also each consented to Facebook's privacy policy, which allegedly states that "[p]artners receive your data when you visit or use their services or through third parties they work with" and "**we require each of these partners to have lawful rights to collect, use and share your data before providing any data to us.**" (FAC ¶¶ 87, 89 (emphasis in original).) Plaintiffs do not allege that they had a contractual relationship with Attentive or any other third party at issue in the Complaint.

Plaintiffs have plausibly alleged that a reasonable user would not interpret the Rack Room privacy policy as authorizing the practices at issue. "[I]f the contract language at issue is

[2] Plaintiffs allege that a variety of other third parties have similar arrangements with Rack Room so that the third party's embedded code can also send some variation of the above information. (*Id.* ¶¶ 118, 120.) Because the allegations regarding other third parties are part of the same claims as the allegations regarding Meta and Attentive, and appear intended to bolster the principal claims involving Meta and Attentive, they do not affect the determination of this motion. For simplicity, this order refers only to Meta and Attentive.

reasonably susceptible to more than one interpretation, with one of those interpretations suggesting consent and another belying it, the Court cannot decide the consent issue in [Rack Room's] favor at the motion to dismiss stage." *See In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 789 (N.D. Cal. 2019). While the policy discloses that third parties may "place beacons, cookies or tags on our Site," and that at least one third party collects information about "use on our site," the policy does not disclose that third parties may collect, store, and analyze a visitor's browsing and purchase history in a way that is personally identifiable. The statements "none of the information collected through cookies or beacons is personally identifiable" and "[o]ur usage of cookies is in no way linked to any Personal Information while on our site" add to that ambiguity. Both those statements could reasonably be read to mean that the third parties with which Rack Room contracts for services are bound by this limitation. In addition, the privacy policy does not disclose that the collected data may be used for the third parties' own commercial purposes. To the contrary, as to Google Analytics, which is the only example of third-party data collection specifically discussed, the privacy policy describes the purpose of Google's data collection as "generat[ing] reports for us regarding our Site."[3]

Nor do the provisions of the privacy policy concerning collection of personal information cure this defect. The privacy policy allows Rack Room to collect voluntarily provided personal information including user's voluntarily provided name, phone number, shipping address, and email. (Dtk. No. 38-1 at 2.) It similarly authorizes the sharing of that information with Rack Room's service providers who perform functions on Rack Room's behalf, including for the purpose of "market[ing] products" to the visitor, and to "understand [the visitor's] product needs." (*Id.* at 4-5.) However, Plaintiffs' theory is based not on the unlawful disclosure of, for

[3] In contrast, where Google's privacy policy "explain[ed] that Google collects data about users' 'activity on third-party sites and apps that use Google's services'" the Ninth Circuit found that users had consented to the practice. *Hammerling v. Google, LLC*, No. 22-17024, 2024 WL 937247, at *2 (9th Cir. Mar. 5, 2024) (cleaned up).

example, their phone number in isolation, but on the disclosure of that phone number bundled with their browsing and purchase information in a way that makes the browsing and purchase information personally identifiable. (*See, e.g.*, *id.* ¶¶ 84, 107 ("Pixel pairs event data with personally identifiable information and sends that bundle to Meta so the social media site can match the website activity to a specific user" and "Defendant integrated into its website code from Attentive . . . for the purpose of 'capturing behavioral data' and linking it to personally identifiable information.") Plaintiffs plausibly allege, for the reasons explained above, that a reasonable user would not understand Rack Room's privacy policy to authorize such disclosure.

Plaintiffs have also adequately alleged that they did not consent to the collection of their data through an agreement with a third party. They allege that their agreement with Meta required Rack Room to be authorized to "use and share [their] data before providing any data to [Meta]," and for the reasons explained above, Plaintiffs have plausibly alleged Rack Room lacked such authorization. Plaintiffs do not allege, and Rack Room does not argue, that Plaintiffs consented through any other third-party agreements. Accordingly, the motion to dismiss all claims based on consent is denied.[4]

***Invasion of Privacy (California Constitution)***. Rack Room's privacy policy plausibly creates "a reasonable expectation of privacy" in the bundled information that Rack Room permitted third parties to collect. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601-02 (9th Cir. 2020). Plaintiffs allege that third parties collect detailed information about the items Plaintiffs browsed and purchased, and pair that information with either Plaintiffs' phone number, email, and home address or with their Facebook ID. This is the specific type of information that Plaintiffs plausibly alleged Rack Room promised would not be collected when it stated that "none of the information collected through cookies or beacons is *personally identifiable*." Therefore, Plaintiffs have pled the first prong of an invasion of privacy claim.

Whether the alleged disclosures were "highly offensive," the second prong of an invasion

[4] Rack Room raises the same consent-related arguments in its motion to strike, which are denied for the same reasons. (Dkt. No. 37-1 at 6-7.)

of privacy claim, is not susceptible to determination at the pleadings stage. Determining whether an intrusion is "highly offensive" requires a fact-intensive inquiry that "examine[s] all of the surrounding circumstances." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 295 (2009). As the Ninth Circuit explained in *In re Facebook, Inc. Internet Tracking Litig.*, such an inquiry cannot be conducted at the motion to dismiss stage where there are open factual questions such as "the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive." 956 F.3d at 606. Plaintiffs allege that Rack Room provided third parties with Plaintiffs' personally identifiable browsing and purchase history from Rack Room's website, and that the third parties used the information as a building block in their effort to compile detailed profiles of all Plaintiffs' online activity. Taking Plaintiffs' allegations as true and making all reasonable inferences in Plaintiffs' favor, this is "sufficient to survive a dismissal motion on the issue." *See id.* at 601, 606.

Therefore, the Court denies Rack Room's motion to dismiss Plaintiffs' invasion of privacy claim.

***CIPA § 631***. Under this section, there is a private right of action against a person who aids and abets another who "willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any . . . communication while the same is in transit." Cal. Penal Code § 631(a). Rack Room argues that Plaintiffs fail to allege an underlying violation because Meta Pixel and Attentive Tag are not "unauthorized third parties" but instead are "extensions" of Rack Room, which is undisputedly a party to the alleged communications. (Dkt. No. 36, "MTD" at 13 (citing *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832-33 (N.D. Cal. 2021)).) Plaintiffs counter that Meta and Attentive are third parties under the "capability" test described in *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891 (N.D. Cal. 2023), because the FAC alleges that they can use the collected data for their own purposes. (*See*, *e.g.*, FAC ¶¶ 55-56, 62, 105.) The Court will follow the capability test for reasons described in *Ambriz v. Google*, No. 23-cv-05437-RFL,

2025 WL 830450, at *3 (N.D. Cal. Feb. 10, 2025). Under this test, Plaintiffs have pled that Meta and Attentive were third parties to the alleged communications because they have the capability of using the data collected through Rack Room's website for their own commercial purposes.

Rack Room next argues that Meta and Attentive are not alleged to have collected the "contents or meaning of any . . . communication" under the meaning of the statute. The "content" of a communication is "the intended message conveyed by the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014); *see also* 18 U.S.C. § 2510(8) ("content" means "any information concerning the substance, purport, or meaning of [a] communication). Content does not include "record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d at 1106. As an example, an email address is generally "content" where it is part of the body of an email, and generally not "content" where it is used in the "to" line to direct the email to its intended recipient. Likewise, a basic URL that directs to the homepage of a website is often found not to be content, while detailed URLs reflecting users' queries can be "content." *St. Aubin*, 2024 WL 4369675, at *4 (URL containing information about patient's medical appointment was "content" under CIPA).

Plaintiffs have adequately alleged that the "content" of their "communications" was disclosed. They allege that, at minimum, Attentive collected readable versions of their personal identifying information—names, addresses, and telephone numbers—generated when they entered that information into a website form.[5] In this context, the information was plausibly "content." *See, e.g.*, *M.G. v. Therapymatch, Inc.*, No. 23-cv-04422-AMO, 2024 WL 4219992, at *3 (N.D. Cal. Sept. 16, 2024) ("names, addresses, telephone numbers, and email addresses—may be 'contents' of a communication where the user communicates with a website by entering his

[5] Rack Room also argues that certain data Meta received was "hashed" and therefore Meta could not "attempt" to, or actually "read," such data under the meaning of the statute. (MTD at 15-16.) The Court does not reach that issue because Plaintiffs have alleged that Meta received other, readable, content of communications and Attentive received exclusively un-hashed data. (*See, e.g.*, FAC ¶¶ 66, 110.)

information into a form provided by the website"). Likewise, they allege that Meta and Attentive collected their URLs, button clicks, and viewing and cart history. This information discloses Plaintiffs' "personal interests, queries, and habits," which is plausibly alleged to be content. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 605. Plaintiffs have also adequately alleged, in detail, that the interception occurred "in transit." *See James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 960-62 (N.D. Cal. 2023) (finding similar allegations sufficient to allege interception occurred "in transit"); *St. Aubin*, 2024 WL 4369675, at *6 (same).

Even though third-party violations by Meta and Attentive are plausibly alleged, Rack Room is only derivatively liable if Plaintiffs adequately allege knowledge and intent. In the context of section 631(a), Rack Room "must be acting with the third party *in order to* have the third party perform acts that violate the statute." *See Smith v. YETI Coolers, LLC*, No. 24-CV-01703-RFL, 2024 WL 4539578, at *4 (N.D. Cal. Oct. 21, 2024) (emphasis in original). At minimum, Rack Room must have knowledge that Meta or Attentive intercepts Plaintiffs' personally identifiable communications—with the capability of using the collected data for its own purposes—and Rack Room must have the purpose of aiding, agreeing with, or employing Meta or Attentive to commit those acts. *See id.*

Plaintiffs have adequately alleged intent. First, Plaintiffs allege that Rack Room affirmatively embedded Meta Pixel and Attentive Tag into its website. (FAC ¶¶ 63, 107.) Second, Plaintiffs allege that the purpose of Meta and Attentive's code is to "track[] the people and type of actions they take" and provide "a treasure trove of insights about [] customers' shopping habits, like their browsing and purchasing history." (FAC ¶¶ 59; 97.) Therefore, it is plausible to infer from Rack Room's alleged affirmative act of integrating the third-party code into its website that it knew Meta and Attentive would intercept personally identifiable information and that Rack Room had the purpose of employing Meta and Attentive to do so. *See James*, 701 F. Supp. at 954 (intent demonstrated where company entered into a contract so that third party could provide services that included intercepting communications). Finally, Plaintiffs allege that "all retailers that use Attentive's platform, . . . must provide Attentive with a license

to copy, process and transmit the data, information and other materials transmitted to or through the Platform," including "Customer Data" like "telephone numbers" and "email addresses" for purposes that include "improving the [S]ervices" of Attentive. (FAC ¶ 106.) This allegation is sufficient to plead that Rack Room knew, at least with respect to Attentive, that Attentive had the capability of using the collected data for its own commercial purpose. *See Ambriz*, 2025 WL 830450, at *3.

Because Plaintiffs have stated a claim under section 631(a), Rack Room's motion to dismiss the section 631 claim is denied.

***CIPA § 632***. CIPA also prohibits "intentionally and without the consent of all parties to a confidential communication, us[ing] a[] . . . recording device to . . . record [] confidential communication . . ." Cal. Penal Code § 632(a). Rack Room argues that Plaintiffs have failed to allege (i) confidential communications or (ii) use of a recording "device." (MTD at 20-21.) It also argues that there is no derivative liability under section 632.

First, Plaintiffs have adequately alleged a confidential communication. "[A] conversation is confidential under section 632 if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded." *Flanagan v. Flanagan*, 27 Cal. 4th 766, 776-77 (2002). This is a "fact-intensive inquiry" that is often too difficult to resolve at the pleadings stage. *See Brown v. Google LLC*, 685 F. Supp. 3d 909, 937 (N.D. Cal. 2023). As discussed *supra*, Plaintiffs have alleged that they had a reasonable expectation of privacy in their personally identifiable browsing history as a result of the disclosures and promises in Rack Room's privacy policy, which can be read to promise that third parties would not intercept or use said bundled information. This is sufficient to satisfy the confidentiality requirement at this stage of the proceedings.

Second, software can be a "device" under the statute for the reasons described in *Gladstone v. Amazon Web Servs., Inc.*, 739 F. Supp. 3d 846, 856-57 (W.D. Wash. 2024); *see also Libman v. Apple, Inc.*, No. 22-cv-07069-EJD, 2024 WL 4314791, at *13 (N.D. Cal. Sept. 26, 2024) (collecting cases finding that "software is a device under section 632(a)"). Plaintiffs

have adequately alleged that the software at issue is a device under the meaning of the statute. *See Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1080 (N.D. Cal. 2023) ("Pixel software is a device under section 632(a)").

Plaintiffs have also alleged derivative liability. Unlike the fourth clause of section 631(a), the text of section 632 does not expressly provide for derivative liability. However, under California Penal Code section 31, "[a]ll persons concerned in the commission of a crime . . . or [who] aid and abet in its commission . . . are principals in any crime so committed." Nothing in the language of CIPA explicitly limits the application of section 31. *See Vera v. O'Keefe*, 791 F. Supp. 2d 959, 963 (S.D. Cal. 2011) (holding that "there is no exclusion to the applicability of Penal Code § 31 with respect to Penal Code § 632").[6] In civil lawsuits for violations of section 632, courts have therefore imputed the civil liability standard for aiding and abetting to determine the scope of derivative liability. At common law, a person aids and abets the commission of a crime when they "(a) know the other's conduct constitutes a breach of duty and give substantial assistance or encouragement to the other to so act or (b) give substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." *Esparza v. UAG Escondido A1 Inc.*, No. 23-cv-0102, 2024 WL 559241, at *6 (S.D. Cal. Feb. 12, 2024) (citing *Saunders v. Superior Ct.*, 27 Cal. App. 4th 832, 845 (1994)) (cleaned up). Thus, to establish liability, Rack Room must have knowledge of Meta and Attentive's breach of duty and must have provided substantial assistance. As discussed above, Plaintiffs adequately allege that Rack Room knew that Meta and Attentive's data collection had the purpose of tracking individually identifiable user habits, despite provisions of Rack Room's policy that created a contrary expectation. Furthermore, the allegation that Rack Room knowingly and affirmatively

[6] Derivative liability is also proper under the CDAFA, as both statutes have virtually identical language creating a private right of action. *Compare* Cal. Penal Code § 637.2(a) ("any person who has been injured by a violation of this chapter may bring an action against the person who committed the violation . . .") *with* Cal. Penal Code § 502(e)(1) (party injured by "violation of any of the provisions of subdivision (c) may bring a civil action against the violator")

embedded Meta and Attentive's code into its website is sufficient to plead substantial participation. As such, the motion to dismiss is denied as to Plaintiffs' section 632 claim.

***CDAFA***. A person who "[k]nowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation . . ." violates the CDAFA. Cal. Penal Code § 502(c)(2). Rack Room argues that Plaintiffs' claim fails because they have not adequately alleged (i) "access," (ii) "without permission," or (iii) the requisite "damage or loss." (MTD at 21-22.) Rack Room also argues that Plaintiffs fail to plead that it had the requisite intent for derivative liability.

Plaintiffs have adequately alleged that a third-party code instructed their browser to send their information to third-party servers—which constitutes "access" of that data. *See* Cal. Penal Code § 502(b)(1) (defining "access" to include to "instruct" or "cause output from" or "communicate with" a "computer, computer system, or computer network").

Plaintiffs have also adequately alleged that Meta and Attentive's actions were "without permission." As detailed above, the Complaint plausibly alleges that a reasonable consumer would not believe that they had consented to either Rack Room or third parties "tak[ing] or "mak[ing] use of" their personally identifiable data. The plain meaning of the term "without permission" does not require Plaintiffs to plead that the acting party "overc[ame] technical or code-based barrier[s]," as Rack Room argues. *See Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2021 WL 2026726, at *7 (N.D. Cal. May 21, 2021) (CDAFA claim stated based on "Google's knowing access to, and unpermitted taking of, plaintiffs' app activity data"). It is enough that Rack Room allegedly inserted third-party code into its website that allowed third parties to use technological means to access that data without permission. *Id.*; *contrast Facebook, Inc. v. Power Ventures, Inc.*, No. 08-cv-05780-JW, 2010 WL 3291750, at *11 (N.D. Cal. July 20, 2010) (declining to find data was accessed "without permission" when a user accessed data in a manner that did not comply with the website's terms of use, of which the user was unaware, because that conduct was not alleged to involve the knowing use of "technical

skill" to gain unauthorized access).

Plaintiffs have also adequately alleged derivative liability of Rack Room pursuant to California Penal Code section 31. Plaintiffs have plausibly pled that Rack Room (i) knew its privacy policy prohibited it from granting third parties access to its visitors' personally identifiable browsing and purchased data, and that it (ii) knowingly provided substantial assistance by embedding Meta and Attentive's code into its website for the purpose of collecting the bundled data.

However, the FAC does not plausibly allege the element of "damage or loss by reason of the violation." Penal Code § 502(e)(2). Plaintiffs argue that under the CDAFA they "can state an economic injury for their misappropriated data." (Dkt. No. 45, "Opp." at 25 (citing *Brown*, 685 F. Supp. 3d at 940).) While economic injury can be a basis for "damage or loss" under the CDAFA, for the reasons discussed below, the existing allegations of economic injury in the FAC are conclusory. Because Plaintiffs have failed to plausibly allege injury or loss, Rack Room's motion to dismiss Plaintiffs' CDAFA claim is granted with leave to amend.

***UCL and CLRA***. Plaintiffs' have failed to plead economic injury as required under the UCL and CLRA. (*See* FAC ¶¶ 215-16, 223-34); *see also Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015). The FAC alleges a "diminution of value" theory, but these allegations are conclusory, as the Complaint does not allege facts supporting that Plaintiffs have not been able to capture the full value of their information as a result of Rack Room's alleged conduct. *See Lau v. Gen Digital Inc.*, No. 22-cv-08981-RFL, 2024 WL 1880161, at *4 (N.D. Cal. Apr. 3, 2024); *Toy v. Life Line Screening of Am. Ltd.*, No. 23-cv-04651-RFL, 2024 WL 1701263, at *1 (N.D. Cal. Mar. 19, 2024). Furthermore, while Plaintiffs allege a "property right to control the dissemination and use of their personal information and communications" (FAC ¶ 216), "the misappropriation of private information alone does not constitute economic injury." *See Lau*, 2024 WL 1880161, at *4 (citing *Moore v. Centrelake Med Grp., Inc.*, 299 Cal. Rptr. 3d 544, 566 & n.13 (Ct. App. 2022)). Finally, while Plaintiffs argue in opposition that they can establish economic injury under the "benefit of the bargain theory" (Opp. at 27), the FAC does not allege

such a theory. Moreover, to the extent Plaintiffs rest their UCL claim for unlawful conduct on claims that the Court has dismissed in this order, those portions of that claim must also be dismissed on this additional basis.[7] *See Arena Rest. & Lounge LLC v. S. Glazer's Wine & Spirits, LLC*, No. 17-cv-03805-LHK, 2018 WL 1805516, at *13 (N.D. Cal. Apr. 16, 2018).

Plaintiffs' claims under the UCL and CLRA are dismissed with leave to amend.

***Wiretap Act***. The Wiretap Act creates both criminal and civil liability for violation of its provisions. The private right of action is found in 18 U.S.C. § 2520. Under section 2520, "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, . . . which engaged in that violation." Plaintiffs do not allege that Rack Room's own access to their communications was unlawful, and they concede that Rack Room was the intended recipient of Plaintiffs' communications. (*See, e.g.*, Opp. at 12.) Instead, Plaintiffs allege that Rack Room "assist[ed] third parties with intercepting communications that [Rack Room] promised to keep confidential." (*See* FAC ¶¶ 4, 140; *see also id.* ¶ 162 (Rack Room "intentionally procured Meta, Attentive, and other third parties to intercept electronic communications"); *id.* ¶ 83 ("[Rack Room] assists Meta with intercepting" data); *id.* ¶ 115 ("[Rack Room] assists Attentive with intercepting" data).) This Court is in agreement with the majority of courts that have found that defendants cannot be liable under section 2520 for "procuring" an interception, because in 1986 Congress amended the section to remove the phrase "or procures any other person to intercept, disclose, or use such communications" as a basis for civil liability. *See Shefts v. Petrakis*, 954 F. Supp. 2d 769, 774-77 (E.D. Ill. 2013) (collecting cases); *see also In re Toys R Us, Inc. Privacy Litigation*, No. 00-cv-2746, 2001 WL 34517252, * (N. D. Cal. Oct. 9, 2001) (dismissing Wiretap Act claim as to Toys R Us regarding allegations of a third-party code that intercepted information from visitors to Toys R Us website). Therefore, Plaintiffs' claim that Rack Room

[7] While it does not reach this insufficiently briefed issue, the Court also notes that Plaintiffs did not address Rack Room's arguments that, for various reasons, alleged UCL, FTCA, CCPA, and COPPA violations cannot serve as the predicate for Plaintiffs' UCL claim. (MTD at 22 nn. 15-16.)

violated the Wiretap Act when it "procured" Meta and Attentive to intercept communication fails as a matter of law.

Plaintiffs also fail to allege that the crime-tort exception applies. 18 U.S.C. § 2520(d) states that "[i]t shall not be unlawful . . . to *intercept* a wire, oral, or electronic communication where such person *is a party* to the communication . . . unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." Plaintiffs have not alleged that Rack Room "intercepted" their communications; instead, they allege that they provided the relevant information to Rack Room voluntarily and understood that it would be received by Rack Room via its website. *See, e.g.*, *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1269 (N.D. Cal. 2001) (when plaintiff purchased goods on Amazon website, Amazon merely received the information but did not "intercept" it). Therefore, Plaintiffs have not alleged that the exception applies.

Because Plaintiffs allege that they voluntarily disclosed their communications to Rack Room, and do not allege that Rack Room itself intercepted their communications, Plaintiffs do not state a claim under the Wiretap Act against Rack Room. Rack Room's motion to dismiss Plaintiffs' Wiretap Act claim is granted with leave to amend.

## II. MOTION TO STRIKE

***Statute of Limitations Allegations***. Rack Room asks the Court to strike "the Tolling Section" of the FAC. (Dkt. No. 37-1 at 7.) Rack Room argues that Plaintiffs have not adequately pled that they are entitled to tolling under the discovery rule because (i) the discovery rule is inapplicable in UCL claims, (ii) Plaintiffs were on inquiry notice of the alleged violations when they made their purchases in 2024, and (iii) their allegations are impermissibly vague. (Dkt. No. 37-1 at 8.) Without reaching the merits of these arguments, Rack Room does not satisfy the requirements under Rule 12(f) to strike these allegations as "redundant, immaterial, impertinent, or scandalous." *See* Rule 12(f); *see also Sapiro v. Encompass Ins.*, 221 F.R.D. 513, 517 (N.D. Cal. 2004) (explaining that motions to strike are rarely granted and "courts should only strike a pleading 'when necessary to discourage parties from raising allegations completely

unrelated to the relevant claims and when the interests of justice so require'"). Nor does Rack Room challenge the timeliness of Plaintiffs' claims absent tolling. The motion to strike these allegations is therefore denied.

***Nationwide Class***. Because the Wiretap Act claim is dismissed, the Court does not reach the question of whether it lacks personal jurisdiction over Rack Room with regard to the nationwide class claims.

## III. MOTION TO STAY

Rack Room seeks to stay discovery "pending the resolution of its Motion to Dismiss and its Motion to Strike." (Dkt. No. 42 at 16.) Because this Order disposes of Rack Room's pending motions, the motion to stay is denied as moot.

## IV. CONCLUSION

For the reasons discussed above, Rack Room's motion to dismiss is **GRANTED WITH LEAVE TO AMEND** as to Plaintiffs' CDAFA, UCL, CLRA, and Wiretap Act claims and **DENIED** as to all other claims. Furthermore, Rack Room's motion to strike is **DENIED**, its request for judicial notice is **GRANTED IN PART** and its motion to stay discovery is **DENIED AS MOOT**.

If Plaintiffs wish to file an amended complaint correcting the deficiencies identified above, counsel shall do so by **April 25, 2025**. The amended complaint may not add new claims or parties, or otherwise change the allegations except to correct the identified deficiencies, absent leave of the Court or stipulation by the parties pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated: April 4, 2025

RITA F. LIN
United States District Judge