BLANK ROME LLP
Ana Tagvoryan (SBN 246536)
ana.tagvoryan@blankrome.com
Harrison Brown (SBN 291503)
Harrison.brown@blankrome.com
Victor Sandoval (SBN 344461)
victor.sandoval@blankrome.com
2029 Century Park East | 6th Floor
Los Angeles, CA 90067
Telephone: 424.239.3400
Facsimile: 424.239.3434

*Attorneys for Defendant*
Rack Room Shoes, Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION**

| | |
|---|---|
| DEMETRIUS SMITH, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>RACK ROOM SHOES, INC.,<br><br>Defendant. | Case No. 3:24-cv-06709-RFL<br><br>[*Assigned to Judge Rita F. Lin*]<br><br>**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE SECOND AMENDED COMPLAINT**<br><br>Date: July 8, 2025<br>Time: 10:00 a.m.<br>Courtroom: 15<br><br>Complaint Filed: September 24, 2024<br>Complaint Served: October 9, 2024<br>Trial Date: None set |

# I. INTRODUCTION

As detailed below and in the opening brief, Plaintiffs' claims under the Comprehensive Computer Data Access and Fraud Act ("CDAFA"), Unfair Competition Law ("UCL"), and Consumers Legal Remedies Act ("CLRA") must be dismissed for failure to plead economic injury and causation. In addition, Plaintiffs' federal Wiretap Act claim is not viable as a matter of law, and their attempt to maintain nationwide class allegations is improper and unsupported.

# II. PLAINTIFFS FAIL TO ALLEGE ECONOMIC INJURY OR LOSS SUFFICIENT TO SUPPORT THEIR CDAFA, UCL, AND CLRA CLAIMS

## A. The SAC Does Not Cure the Deficiencies Identified by the Court.

The Court previously dismissed Plaintiffs' CDAFA, UCL, and CLRA claims for failure to plausibly allege economic injury, finding that the "diminution in value" theory was too conclusory and unsupported by facts showing that Plaintiffs were unable to capture the value of their information as a result of Rack Room's conduct. *See* ECF 59-1 ("Mot." or "Motion") at 8-13 (citing Order at 12). Plaintiffs' SAC does not cure these deficiencies. Plaintiffs have thus effectively abandoned their "benefit of the bargain," "diminution-in-value," and "misappropriation of information" theories of economic injury.

Instead, the only factual allegations added to the SAC are citations to irrelevant articles about the value of aggregated or cross-platform data, none of which are relevant to single-website browsing or purchase data at issue here. SAC ¶¶ 143-148. And, Plaintiffs' opposition brief does not even attempt to address how these articles are relevant, at all. *See* ECF No. 68 ("Opp." or "Opposition"). Instead, they conclusorily assert that they have established that "their activity on Defendant's website 'has financial value,' and that Defendant and the third parties 'reaped unjust profits and revenue.'" Opp. at 6. However, as explained in the Motion (and not responded to in the Opposition), these articles do not support the notion that Plaintiffs' activity on Rack Room's website had sufficient financial value which somehow translated to profits—and Plaintiffs fail to make any connection between the general articles they cite, Rack Room, and the third parties in question. Plaintiffs' attempt to extrapolate from these sources to their own isolated data is speculative and unsupported. Because this is the only substantive addition to the

SAC, and it is irrelevant, the Court can adopt the findings from its prior order and dismiss the SAC's Wiretap Act, UCL, CDAFA, and CLRA claims. To the extent that the Court chooses to parse the Opposition's unfounded legal arguments, each should be rejected.

**B. Plaintiffs' "Unjust Profits" Theory Is Legally and Factually Insufficient**

Plaintiffs repackage their economic injury theory as one of "unjust profits"—that is, Plaintiffs have "suffered economic injury through unjust enrichment" because California recognizes a legal interest in unjustly earned profits. In other words, Plaintiffs attempt to use *equitable* relief principles of disgorgement against Rack Room to support their argument that they have been economically injured. This theory fails for several reasons.

First, Plaintiffs conflate unjust enrichment, which looks to restitutionary relief principles arising from loss, with disgorgement of profits—the latter which is not a recognized legal theory of recovery absent restitution. Second, here, the only plea for unjust enrichment is found under Plaintiffs' UCL claim, which can be pursued only if Plaintiffs can show loss of money or property in the first instance. Plaintiffs' argument that their references to unjust enrichment supports the economic loss requirement turns the statute on its head. Third, Plaintiffs cannot use an *equitable* theory of recovery to support a *legal* claim for damages under the CDAFA.

Aside from all of this, Plaintiffs' assertion that they are entitled to restitutionary disgorgement of profits unjustly earned by third parties *from Rack Room* is unsupported by law. Restitution is limited to the return of property or funds in which the plaintiff has an ownership interest. Plaintiffs cannot claim unjust enrichment arising out of transactions between third parties and Defendant. *See* Mot. at 15 (citing *Madrid v. Perot Sys. Corp.*, 130 Cal.App.4th 440 (Ct.App.2005) ("[I]n the context of the UCL, 'restitution' is limited to the return of property or funds in which the plaintiff has an ownership interest"). *Shah*, which is relied on in the Motion and unaddressed in the Opposition, is directly on-point. *Id.* (citing *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1041 (N.D. Cal. 2025)). There, plaintiffs asserted UCL and CDAFA claims for a financial institution's use of third-party website analytics technologies which allegedly sent sensitive financial data to third parties. *Shah*, 768 F. Supp. 3d at 1041. Defendant, in turn, allegedly used those third parties' services to enhance its marketing and sales activities.

*Id.* The Court rejected the exact argument that Plaintiffs advance here—finding that the profit that Defendant made as a result of disclosing plaintiff's data to third parties is insufficient to demonstrate a loss *to Plaintiffs*. *Id.* at 1047-48 (citing, among others, *Hazel v. Prudential Fin., Inc.*, No. 22-cv-07465-CRB, 2023 WL 3933073, at *6 (N.D. Cal. June 9, 2023) (explaining that even if a company made money off of the sharing or use of a plaintiff's information, that company's gain of money does not equal a plaintiff's loss of money or property)).[1]

Further, although Plaintiffs baldly assert that *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020) is "directly on point" and supports their argument, that case is materially distinguishable and does not support an economic injury here. Opp. at 5-7. As a threshold matter, the Ninth Circuit's analysis of economic injury vis-à-vis unjust enrichment arose out of the issue of Article III standing, a jurisdictional question that did not relate directly to the economic damages element of the claims asserted. *In re Facebook,* 956 F.3d at 599-601. Moreover, *In re Facebook* involved allegations of cross-site tracking and aggregation of data across the internet, **and a defendant who had *directly* benefitted from that data** (Meta), not the isolated, single-website data and a defendant who has not directly benefited from the data (Rack Room) at issue here. *See, e.g., Saeedy v. Microsoft Corp*., 2023 WL 8828852, at *5 (W.D. Wash. Dec. 21, 2023) (distinguishing *Facebook Tracking* because Facebook engaged in "comprehensive" tracking and selling personal profiles to advertisers to generate revenue); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1086 (C.D. Cal. 2021) (distinguishing *Facebook Tracking* because Facebook collected browsing data "across the internet" and not "only while users interact with the website of the defendant company"). Indeed, although the Ninth Circuit found that a plaintiff need not allege that "direct[]" connection between the unjust enrichment and the corresponding loss; the defendant must still be "unjustly enriched **at the expense of**" Plaintiffs. *In re Facebook*, 956 F.3d at 600 (emphasis supplied; citation omitted); *Peterson v.*

[1] Plaintiffs assert that none of the cases cited addressed economic injury through unjust enrichment. Opp. at 7. Untrue. *Shah* addressed materially indistinguishable allegations for purposes of the UCL claim. *See Shah,* 3:24-cv-05985, ECF No. 1 ¶ 286 ("As a direct and proximate result of its unfair and unlawful business practices, Defendant has each been unjustly enriched…."); *see also Shah*, 768 F. Supp. 3d at 1041, 1051.

*Cellco P'ship,* 164 Cal.App.4th 1583, 1593 (2008) (unjust enrichment requires the unjust retention of the benefit at the expense of another).

Here, at best, Plaintiffs allege that Meta and Attentive were unjustly enriched at Plaintiffs' expense—not that Rack Room was unjustly enriched at Plaintiffs' expense. Although Plaintiffs also conclusory assert that Rack Room itself profited from the acquisition of their data—the profit from Rack Room's enhanced marketing is not directly connected to Plaintiffs or their data, nor do Plaintiffs allege how this is illegal or unjust given that they voluntarily provided this information to Rack Room in the context of doing business with it online. Put differently, Plaintiffs need not only allege an economic injury, but that *Defendant caused* that economic injury, and Plaintiffs here have alleged only that non-parties Meta and Attentive caused their alleged economic injury. *Kwikset Corp. v. Superior Ct.,* 51 Cal. 4th 310, 322 (2011).

Similarly both of *Rodriguez v. Google*, 2025 WL 50425, at *10 (N.D. Cal. Jan. 7, 2025) and *Frasco v. Flo Health et al.*, 2024 WL 4280933, at *2 (N.D. Cal. Sept. 23, 2024) addressed situations where the Plaintiff had sued Google and alleged that Google misappropriated their data and profited from the misappropriation of their data—neither address a situation like that at issue here, where Plaintiffs allege that third parties Meta and Attentive misappropriated their data, and attempt to assert an unjust enrichment theory of economic injury against another party, like Rack Room. Accordingly, Plaintiffs have not established an economic injury caused by Rack Room and their UCL, CLRA, and CDAFA claims should be dismissed on the same basis as previously dismissed. Because further amendment would be futile, with prejudice.

### C. Plaintiffs' "Vicarious Liability" Theory Under the UCL Fails.

Plaintiffs' new theory that Rack Room is vicariously liable for third parties' violations of the UCL not only violates the Court's order limiting amendments to correcting identified deficiencies, but also fails as a matter of law. *Decarlo v. Costco Wholesale Corp*., 2020 WL 1332539, at *5 (S.D. Cal. Mar. 23, 2020). Although Plaintiffs are correct that UCL *does* allow for aiding and abetting liability, the SAC *does not* allege that Rack Room aided and abetted any

third parties' alleged UCL violation. *See* SAC ¶ 227.[2] But, even if Plaintiffs had asserted that Rack Room aided and abetted the third parties' UCL violations, they would not have adequately alleged facts supporting the standard necessary for aiding and abetting liability. *See, e.g., Esparza v. UAG Escondido A1 Inc.*, 2024 WL 559241, at *6 (S.D. Cal. Feb. 12, 2024) (applying common law aiding and abetting standard and finding similar allegations as those at issue here insufficient to satisfy that standard) (citation omitted). Indeed, in addressing whether Plaintiffs had pleaded a Section 631 violation, the Order cited *YETI Coolers*, where this Court found that Section 631's vicarious liability provision *did not* incorporate the common law requirement for aiding and abetting, and instead, incorporated a lesser standard, to find that Plaintiff's allegations were sufficient here. Order at 8 (citing *Smith v. YETI Coolers, LLC*, 2024 WL 4539578, at *4 (N.D. Cal. Oct. 21, 2024) (disagreeing with *UAG Escondido A1 Inc.*, 2024 WL 559241's conclusion). Plaintiffs have not made any additional factual allegations with which this Court could find that the higher standing for aiding and abetting liability is satisfied here.

## III. PLAINTIFFS FAIL TO ALLEGE UNLAWFUL OR UNFAIR CONDUCT SUFFICIENT TO SUPPORT THEIR UCL CLAIM

Plaintiffs allege only that "[p]ut together" the statutes identified in the Complaint indicate that a company cannot engaged in the conduct alleged in the SAC. Mot. at 16-17 (citing, among others, *Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1203 (9th Cir. 2001)). This is insufficient. Accordingly, Plaintiffs have failed to adequately plead a predicate violation.

Further, Plaintiffs' reliance on *Rubenstein v. The Gap, Inc.*, 14 Cal. App. 5th 870, 880 (2017) to assert that they have adequately alleged an unfair business practice is misplaced. That case noted that the test for determining whether a business practice is unfair in consumer cases

[2] The distinction between vicarious liability and aiding and abetting liability is significant here. Vicarious liability, also known as derivative liability, is a form of responsibility where a person is held liable for the actions of another. Under vicarious liability, the person does not need to have knowledge of or participation in the wrongful act. *See, e.g., Inter Mountain Mortg., Inc. v. Sulimen,* 78 Cal.App.4th 1434 (2000). Aiding and abetting liability, on the other hand, requires active participation i.e., "substantial assistance or encouragement" in the commission of a wrongful act. The aider and abettor's liability is not entirely vicarious; it is based on a combination of the direct perpetrator's acts and the aider and abettor's own acts and mental state. *People v. McCoy*, 25 Cal.4th 1111 (2001).

arising under the UCL is the same as that used under the FTCA. *Id.* It does not, as Plaintiffs argue, hold that pleading a violation of the FTCA necessarily sufficiently alleges a violation of the "unfair" prong. Indeed, that Court ultimately found that plaintiffs had failed to allege an unfair business practice under both the FTCA and the UCL's standards. *Id.* As should this Court.

## IV. PLAINTIFFS' WIRETAP ACT CLAIM FAILS AS A MATTER OF LAW

### A. No Direct Liability Against Rack Room for "Engaging In" A Violation.

Plaintiffs try to resuscitate their Wiretap Act claim by arguing that they have established direct liability against Rack Room for "engaging in" violations of the Wiretap Act. However, the only support they provide for this position is a misrepresentation of the Sixth Circuit's opinion in *Zang*, and a clear misreading of the statute.

As an initial matter, the SAC *does not* allege that Rack Room is directly liable under the Wiretap Act for "engaging in" violations of the Wiretap Act. SAC ¶ 169 (alleging only that Rack Room "engaged in such conduct for unlawful and tortious purposes;" not that "engaging in" is a basis for liability). Even if it had, Plaintiffs' position is unsupportable. Put simply, Plaintiffs' position is that because the Wiretap Act's private right of action reads, in relevant part, "any person whose … communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity … **which engaged in that violation**" Plaintiffs need not allege that Rack Room intercepted, disclosed, or intentionally used their communications, they only need to allege that Rack Room "engaged in" a violation of the Wiretap Act. 18 U.S.C. § 2520 (emphasis added). Far from supporting Plaintiffs' position, the "which engaged in that violation" language, defeats it. Rather than creating a fourth basis for liability, it limits the target of the private right of action to only those who directly intercept, disclose, or intentionally use communications. Indeed, in *Luis v. Zang*, the Sixth Circuit found that because the private right of action was limited to those who "engaged in [a] violation" plaintiff could not sue for "simply possess[ing] a wiretapping device," despite the prohibition on possession of a wiretapping device found in 18 U.S.C. § 2512(1)(b). 833 F. 3d 619, 634-37 (6th Cir. 2016). In other words, that language limited the application of the private right of action, not broadened it, as Plaintiffs argue here.

Further, Plaintiffs' attempt to contort *Luis*, 833 F. 3d at, 636 as "straightforward[ly]" supporting their position should not be well taken. That case *did not* create a freewheeling cause of action for those who "engage in" a violation as Plaintiffs argue. Rather, it found that where the plaintiff alleged a violation of 18 U.S.C. § 2512(1)(b)'s prohibition on the manufacture of a device primarily used to intercept communications, it could be enforced through Section 2520's private right of action *only if* it was also alleged that the manufacturer had also "play[ed] an active role in the operation of the device to 'intercept, disclose, or intentionally use' a plaintiff's electronic communications. Put differently, the active operation of the device establishes that a defendant who has manufactured, marketed, and sold the device at issue (in violation of § 2512) has in fact participated in the interception, disclosure, or use of a plaintiff's communications to such a degree that the defendant has 'engaged in' the underlying violation." *Id*. at 639. Here, by contrast, Plaintiffs have not alleged a predicate violation 18 U.S.C. § 2512, or any other provision of the Wiretap Act, nor have Plaintiffs alleged that Rack Room also "active[ly] operat[ed]" the device at issue. And, even if they had, *Luis* is not the law of this circuit, and Courts in this Circuit have directly disagreed with its holding. *See, e.g. Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1084–85 (C.D. Cal. 2021) (disagreeing with *Luis* and finding "there is no private right of action for the violation of § 2512(1) of the Wiretap Act"). Accordingly, Plaintiffs have not alleged or established that Defendant directly violated the Act by engaging in a violation—nor can they.

**B. No Direct Liability for Playing an Active Role in Possessing or Assembling a Wiretapping Device**

Next, Plaintiffs try to establish direct liability against Rack Room because it allegedly possessed or assembled the wiretapping devices and played an active role through such possession or assembly. This, too, is misguided and unsupported.

Again, as an initial matter, and another example of Plaintiffs' ever-moving ball, the SAC *does not* allege that Rack Room is directly liable for assembling or possessing a wiretapping device. The words are not used, 18 U.S.C. § 2512 (which under certain conditions prohibits the possession or assembly of a wiretapping device) is not cited, and there are no supporting facts.

But, even if Plaintiffs had made these allegations (and they do not) they would fail. Plaintiffs misrepresent *Luis* again as holding that one can be liable under section 2520 for mere possession if the defendant also "plays an active role". Opp. at 11 (citing *Luis*, 833 F. 3d at 637). Untrue. It held plainly that possession is not civilly actionable—as have countless other courts. *See, e.g., Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 522 (C.D. Cal. 2021) (noting that the Eleventh Circuit found that there is not "a private right of action for mere possession, in part because that construction would be 'constitutionally problematic.'") (citing *DirecTV, Inc. v. Treworgy*, 373 F.3d 1124, 1127 (11th Cir. 2004) and *Luis*, 833 F.3d at 636-37).

Similarly, *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1011 (N.D. Cal. 2024) does not support Plaintiffs' argument. That case involved Meta's alleged collection of plaintiff's personal financial data through tracking tools installed on tax preparation websites, Meta's development of the Meta Pixel, and alleged violations of 18 U.S.C. § 2512. *Id.* at 999, 1010-11. Given these allegations, the Court found that Meta had played an active role in the unlawful interception, disclosure, or use of the plaintiff's communications because "Meta did not just develop the Pixel and post its source code online for other parties to use but instead, according to plaintiffs' allegations, continued to play an active role in hosting and operating the Pixel and in receiving and using the data it collected." *Id.* at 1011. None of these facts are alleged here—nor can they be. Accordingly, even if Plaintiffs had alleged that Rack Room is directly liable for possessing or assembling a wiretap device and playing an active role in interceptions (and they have not), Plaintiffs' latest theory of liability would fail.

### C. The Crime-Tort Exception is Inapplicable and Defendant is Not Liable for Use

Next, Plaintiffs argue that Rack Room is liable for "us[ing]" intercepted communications because the Crime-Tort Exception is met, despite the fact that the Order found that it was not, and Plaintiffs have alleged no additional facts with which that conclusion could be altered.

As an initial matter, Plaintiffs' argument rests on the unsupported assumption that they have established that the "original interception" was unlawful. Opp. at 11-12. They have not because, as detailed in the Motion and responded to the in the Opposition, the Federal Wiretap Act does not apply "when at least one party to the communication" consents and because

Plaintiffs allege Defendant chose to deploy the tools on the Website, it necessarily follows that "one of the parties to the communication," Defendant, gave "prior consent to such interception." Mot. at 17 (quotations omitted). And, Plaintiffs' argument that the third-parties association of Plaintiffs' information with identify graphs and consumer profiles was unlawful because it was done "in a manner that exceeds what Defendant promised Plaintiffs" does not speak to *the third parties'* alleged criminal or tortious purposes. Opp. at 12 (citing SAC ¶ 169) Unlike *Brown v. Google*, where the court found that Google had a criminal or tortious purpose because Google funneled information it intercepted into Google's consumer profiles in contravention of what Google had promised consumers, Plaintiffs do not allege that any third party funneled information into consumer profiles in contravention of a promise that the third party made. *Brown*, 525 F. Supp. 3d at 1067. Rather, it is the third parties who allegedly funnel information into their own consumer profiles, and it is Rack Room who allegedly made unkept promises to Plaintiffs. Thus, these allegations cannot allege a criminal or tortious purpose against either Rack Room or the third parties. Indeed, Plaintiffs do not allege that Rack Room had knowledge of any of the third parties' practices—or that the third parties had knowledge of Rack Room's.[3]

Moreover, to the extent that Plaintiffs now claim that Rack Room's use of communications was unlawful, as this Court found in its order, Plaintiffs "allege that they provided the relevant information to Rack Room voluntarily and understood that it would be received by Rack Room via its website. Therefore, Plaintiffs have not alleged that the [crime-tort] exception applies." Order at 14 (citation omitted). This conclusion is not changed because Plaintiffs now focus on "use" instead of "interception." Indeed, Plaintiffs also understood that Rack Room would use the information voluntarily provided to it. And, the only case that

---

[3] Furthermore, neither of *Marden v. LMND Med. Grp., Inc.*, No. 23-CV-03288-RFL, 2024 WL 4448684, at *3 (N.D. Cal. July 3, 2024) nor *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 902 (C.D. Cal. 2024) found that the association of Plaintiffs' data with preexisting user profiles satisfies the crime-tort exception, as Plaintiffs argue (and indeed, Plaintiffs have not cited, nor has Defendant found, any case applying the crime tort exception to a party on the basis of a third-parties' acts—let alone on the basis of a third parties' acts that the party may not even be aware of). Rather, both cases found that the crime-tort exception was satisfied where the defendant had the purpose of sharing protected health information with third parties. There is no protected health information at issue in this case, and those cases, too, are inapposite.

Plaintiffs cite which purports to support their position that they can allege a "use" claim in this context is inapposite, because it arose under Florida's wiretapping statute, which unlike the Wiretap Act, is a two-party consent statute. *Alhadeff v. Experian Info. Sols., Inc*., 541 F. Supp. 3d 1041, 1043-45 (C.D. Cal. 2021) (use claim plead against party found to have intercepted a communication made directly to it). Even if these issues did not exist, section 2520 only permits civil liability if Plaintiffs can allege facts supporting that Rack Room "intentionally uses" an intercepted communication. 18 U.S. Code § 2520. Here, the SAC does not even allege that Rack Room "intentionally" used such communications—let alone any facts supporting such "intent." SAC ¶ 175 (alleging only that "knowingly and unlawfully used" intercepted communications); *see also* Mot. at 19 (citing *Margolis v. Apple Inc*., 743 F. Supp. 3d 1124, 1133 (N.D. Cal. 2024) (discussing the distinction between acting "intentionally" and "knowingly").

## V. THE NATIONWIDE WIRETAP ACT CLASS MISCELANOUS THIRD PARTY ALLEGATIONS SHOULD BE STRICKEN

Plaintiffs' argument that *Bristol-Myers* is inapplicable here because this case arises from federal question jurisdiction is defeated by the SAC. Opp. at 13-15 (citing *Sloan v. General Motors LLC*, 287 F. Supp. 3d 840, 859 (N.D. Cal. 2018)). The SAC alleges jurisdiction based on CAFA—not a federal question. SAC ¶ 11. And, as the *Sloan* court found in a subsequent order reconsidering the order Plaintiffs cite, that where plaintiffs plead CAFA jurisdiction, they cannot later argue that the Court has personal jurisdiction based on federal question jurisprudence. *Sloan v. Gen. Motors LLC*, 438 F. Supp. 3d 1017, 1021 (N.D. Cal. 2020) (dismissing out-of-state plaintiffs where CAFA pled). Thus, putative class members cannot rely on Defendant's contacts with the United States as a whole. Further, the Court should strike the miscellaneous third parties allegations to streamline the litigation and prevent prejudice to Rack Room. Mot. at 21-22.

## VI. CONCLUSION

Plaintiffs' Wiretap Act, UCL, CLRA, and CDAFA claims should be dismissed, with prejudice. If the Wiretap Act claim is not dismissed with prejudice, the nationwide class and miscellaneous third party allegations should be stricken—as should the allegations related to third parties other than Meta and Attentive.

DATED: June 24, 2025

BLANK ROME LLP

By: */s/ Ana Tagvoryan*
Ana Tagvoryan
Victor Sandoval
Attorneys for Defendant
RACK ROOM SHOES, INC.