**BLANK ROME LLP**
Ana Tagvoryan (SBN 246536)
ana.tagvoryan@blankrome.com
Harrison M. Brown (SBN 291503)
Harrison.brown@blankrome.com
Victor Sandoval (SBN 344461)
victor.sandoval@blankrome.com
2029 Century Park East | 6th Floor
Los Angeles, CA 90067
Telephone:    424.239.3400
Facsimile:     424.239.3434

*Attorneys for Defendant*
Rack Room Shoes, Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION**

| | |
|---|---|
| DEMETRIUS SMITH, ROBIN SAVAGE, and MAIA WILLIAMS,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　v.<br><br>RACK ROOM SHOES, INC.,<br><br>　　　　　　　　　　Defendant. | Case No.  3:24-cv-06709-RFL<br><br>*[Assigned to Judge Rita F. Lin]*<br><br>**DEFENDANT RACK ROOM SHOES, INC.'S NOTICE OF MOTION AND MOTION TO CERTIFY ORDER FOR AN INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(B); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: October 7, 2025<br>Time: 10:00 a.m.<br>Courtroom: 15<br><br>Complaint Filed: September 24, 2024<br>Trial Date: None set |

|   |   |
|---|---|
| 1 | TO ALL PARTIES AND THEIR COUNSEL OF RECORD: |
| 2 | PLEASE TAKE NOTICE that on October 7, 2025 at 10:00 a.m., or as soon thereafter as the |
| 3 | matter may be heard, in Courtroom 15 of the United States District Court for the Northern District of |
| 4 | California, located at 450 Golden Gate Avenue, San Francisco, California, 94102, before the Honorable |
| 5 | Rita F. Lin, Defendant Rack Room Shoes, Inc. ("Rack Room") will and hereby does move, under 28 |
| 6 | U.S.C. § 1292(b) and Civil Local Rule 7-2, for an order certifying the Court's August 4, 2025 Order |
| 7 | Granting in Part and Denying in Part Defendant's Motion to Dismiss (ECF 85, the "Order") for |
| 8 | interlocutory appeal and for a corresponding stay of proceedings. |
| 9 | This motion is based on this Notice, the accompanying Memorandum of Points and Authorities, |
| 10 | all pleadings and papers on file, the arguments of counsel, and such additional matters as the Court |
| 11 | may consider. |

### I.    INTRODUCTION

The Court's Order denied Rack Room's motion to dismiss Plaintiffs' Wiretap Act claim, holding for the first time in this Circuit that a website owner *"engages in"* an interception within the meaning of 18 U.S.C. §§ 2511 and 2520 merely by installing and configuring third-party analytic code. Order at 6-8. Relying principally on an out of circuit decision, *Luis v. Zang*, 833 F.3d 619 (6th Cir. 2016), which involved Section 2512, the Court further concluded that (1) Rack Room thereby became a direct "interceptor" under Section 2511 notwithstanding that the code is written, hosted, and operated by independent third parties, and (2) the crime-tort exception of Section 2511(2)(d) was satisfied because Rack Room allegedly installed the code "for the purpose of" violating California privacy statutes and common-law privacy duties. *Id.* at 8-9.

This novel ruling presents two issues for consideration. First, whether the Court's finding that a defendant-participant can "engage in" an interception by virtue of installation and configuration--when such conduct is not a part of the Wiretap Act and particularly not covered by Section 2511 (or Section 2512). Second, whether the crime-tort exception can be satisfied by reference to other privacy violations either not at issue in the case or not sufficiently distinguishable from the interception itself. These are pure questions of statutory interpretation on which district courts are and will be sharply divided and which have not been resolved by the Ninth Circuit. An immediate appeal will materially

1 advance the ultimate resolution of this putative nationwide class action because the Wiretap Act is the
2 sole federal claim, the only basis for nationwide class allegations, and the foundation for extensive
3 discovery that will otherwise proceed. The Court should therefore certify the Order for interlocutory
4 review under 28 U.S.C. § 1292(b) and stay proceedings pending appeal.

5 **II.     BACKGROUND**

6 **a.  The Pleadings and Dismissal Motion**

7 Plaintiffs allege Rack Room embedded Meta Pixel, Attentive Tag, and other third-party
8 "tracking" scripts on its website. Plaintiffs concede the scripts are authored, hosted, and executed by
9 the third parties, not Rack Room. SAC ¶¶ 85-89, 116-135. Plaintiffs nonetheless claim Rack Room
10 violated the Wiretap Act by "customizing and deploying" the scripts. *Id*. ¶ 169.

11 **b.  The Court's Order**

12 The Court issued an order on Defendant's motion to dismiss the Second Amended Complaint
13 ("SAC"), finding that Defendant had "engaged in" a violation of the Wiretap Act under the meaning
14 of 18 U.S.C. § 2520(a) because it played an active role and provided close assistance in the installation
15 and configuration of the devices that unlawfully intercepted Plaintiffs' communications, citing *Luis v.*
16 *Zang*, 833 F. 3d 619 (6th Cir. 2016). In other words, the Court found that Rack Room had engaged in
17 an interception itself under Section 2511 by reference to a Sixth Circuit analysis that asked the question
18 of whether a private right of action existed for violations of a different section, Section 2512. Under
19 this reasoning, the court found the crime-tort exception of 18 U.S.C. § 2511(d) was met—and thus the
20 interception was "unlawful"—because Rack Room allegedly engaged in the interception for the
21 purpose of committing a violation of state privacy laws, namely, CDAFA and common law privacy.

22 The Court relied on Section 2520(a)'s language allowing suit against any entity that "engaged
23 in" a violation to find an interception under Section 2511; and held that Rack Room's configuration
24 assistance rendered it a direct interceptor under Section 2511, despite that configuration assistance is
25 not pled in the SAC and is otherwise not independently covered or actionable under the Wiretap Act.
26 Because configuration assistance is not independently covered in the Wiretap Act, the question of
27 whether such assistance would satisfy the "engaged in" inquiry under the private right of action and
28 simultaneously satisfy the interception requirement is an issue of first impression.

Then, because Rack Room was deemed an interceptor, the Court held that the Section 2511(2)(d) party-consent defense failed under the crime-tort exception: Rack Room purportedly acted "for the purpose" of violating the California CDAFA and common-law privacy. Order at 8-9.

The ruling creates expansive Wiretap Act exposure to any website owner that merely embeds a standard analytics tag, and it transforms routine business objectives—online marketing—into "tortious purposes" nullifying statutory consent. The Court should certify the Order for immediate appeal.

### III.  LEGAL STANDARD

Certification is appropriate when an order (1) involves a controlling question of law, (2) substantial grounds for difference of opinion exist, and (3) immediate appeal may materially advance the termination of the litigation. 28 U.S.C. § 1292(b). All three elements are met.

### IV.  ARGUMENT

#### a. The Order Presents Controlling Questions of Law

##### i. Scope of Direct Liability

*Whether a website operator "engages in" an interception, for purposes of §§ 2511 and 2520, by merely installing and configuring a third-party script that independently collects data, or whether such conduct falls outside the scope of direct civil liability under the Wiretap Act.*

The Court's Order, relying on *Luis v. Zang*, 833 F.3d 619 (6th Cir. 2016), held that Rack Room "engaged in" a violation of the Wiretap Act by providing close assistance in the installation and configuration of third-party code. In other words, the Court found that Rack Room stepped into the third party's role as interceptor by virtue of purported "active role." However, courts in this Circuit and others have repeatedly rejected the argument that installation or configuration of interception devices, without operation or direct interception, is sufficient for civil liability under the Wiretap Act. *See, e.g., Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1084–85 (C.D. Cal. 2021) (disagreeing with *Luis* and finding no private right of action for mere manufacture, assembly, possession or sale of devices used to intercept communications); *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1011 (N.D. Cal. 2024) (agreeing with *Luis's* "narrow" holding that where a defendant "manufactured, marketed, sold, and *actively operated* the violative device, all while *knowing* that its device was to be used primarily for the surreptitious interception of electronic communications" a claim could be stated

against Meta—the alleged manufacturer of the violative device); *see also Saleh v. Nike, Inc.,* 562 F. Supp. 3d 503, 523 (C.D. Cal. 2021) (finding *Luis* distinguishable "because Plaintiff here does not allege [the website operator] manufactured, marketed, or sold [the marketing technology provider]'s code . . . Plaintiff at most alleges [the website provider] possessed the code").

The Sixth Circuit's approach in *Luis* is not the law of this Circuit, is clearly distinguishable and not analogous, and courts here have expressly disagreed with its reasoning. *See Yoon*, 549 F. Supp. 3d at 1084–85. The *Luis* court assessed the plaintiff's Section 2512(1)(b) claim, *not* Section 2511, and addressed the question of whether the defendant's alleged manufacture, marketing, sale and operation of the technology under Section 2512 caused it to be "engaged in [a] violation" for purposes of a private right of action under Section 2520. *Luis*, 833 F.3d at 635. The *Luis* court concluded that it did, not because of an independent "active role" that would make the defendant an interceptor for purposes of Section 2511, but rather, because of the active role in the manufacturing, marketing, and selling a violative device under Section 2512. The Court's holding was limited to whether the defendant, a third party having a claim against it for violation of Section 2512, is subject to a private suit under Section 2520 where that defendant also played an active role in the *operation* of the relevant device to intercept, disclose, or intentionally use a plaintiff's electronic communications. *Id.* at 637. The Northern District Court of California, in *In re Meta Pixel Tax Filing Cases*, *did not* broaden this ruling and *did not* extend it to the participant of a communication or to a person that had not operated, manufactured or sold the device. 724 F. Supp. 3d at 1011. Rather, the Court applied *Luis* to Meta, a third party with a claim under Section 2512*,* where Meta "did not just develop the Pixel and post its source code online for other parties to use but […also] continued to play an active role in hosting and operating the Pixel and in receiving and using the data it collected." *Id*. Rack Room is not a third party, does not have a Section 2512 claim plead against it and the Court has not found that it operated, manufactured, marketed or sold any device used in the alleged interception.

The Ninth Circuit should address these issues, and this Court's novel ruling of whether "installation and configuration" by a party participant can constitute "engaging in" an interception/violation. The weight of authority holds that only active operation or direct interception is actionable. *DirecTV, Inc. v. Treworgy*, 373 F.3d 1124, 1127 (11th Cir. 2004); *DIRECTV, Inc. v.*

*Robson*, 420 F.3d 532, 539 & n.31 (5th Cir. 2005); *see also Flowers v. Tandy Corp.*, 773 F.2d 585 (4th Cir. 1985) (no private right of action for mere possession); *In re Cases Filed by DIRECTV, Inc.*, 344 F. Supp. 2d 636, 644 (D. Ariz. 2004) (no private right for assembly).

### ii. Application of the Crime-Tort Exception

*Whether the § 2511(2)(d) exception is satisfied where the alleged "purpose" is to violate the same state privacy statutes that Plaintiffs invoke as civil claims, i.e., without an independent criminal or tortious objective.*

The Ninth Circuit and other courts have made clear that the crime-tort exception is not met where the alleged criminal or tortious purpose is not independently actionable absent the interception itself. *See Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022) (crime-tort exception requires a purpose separate and independent from the act of interception); *Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112, 1118 (S.D. Cal. 2023) (alleged violation of state privacy law is not a sufficient independent purpose); *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1095–96 (W.D. Wash. 2024); *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1065 (C.D. Cal. 2024); *Saedi v. SPD Swiss Precision Diagnostics GmbH*, 2025 WL 1141168, at *13–14 (C.D. Cal. Feb. 27, 2025); *Weston v. Lefiti*, 2024 WL 4579237, at *2 (9th Cir. Oct. 25, 2024) (affirming dismissal where the underlying conduct was not an independent purpose). The Court's Order thus presents a controlling question of law as to the proper interpretation and application of the crime-tort exception under the Wiretap Act under the statutory text and law.

The Court found that disclosure or use of information can be a separate tort. The Ninth Circuit should weigh in. Even if Plaintiffs alleged that Rack Room disclosed or used information obtained through the third-party code, such conduct does not constitute an independent tortious or criminal act sufficient to satisfy the crime-tort exception. First, 'disclosure and use' is not the genesis of any cause of action in the SAC. Second, it is not an independent tort and forms no basis for violation of the CDAFA or Invasion of Privacy. The Court did not engage in an analysis of whether disclosure and use can be tortious or criminal, other than to state that "Rack Room's alleged disclosure and use of Plaintiffs' personally identifiable information for advertising, in contradiction the commitments it made in its privacy policy, can plausibly constitute a further invasion of privacy beyond the act of

intercepting the information alone." Order, at 8. Respectfully, the Court's analysis is akin to a breach of contract claim—that being breach of the privacy policy—which is neither a tort nor a criminal act (and breach of contract is not a claim in this action in any event).

Moreover, while Plaintiffs' theory is that Rack Room's disclosure and use of information for marketing or analytics purposes violates state privacy statutes or common law privacy, these allegations do not fit any recognized tort-related cause of action independent of the alleged interception. The mere use or disclosure of information for commercial purposes, without more, does not amount to an actionable tort such as intrusion upon seclusion, public disclosure of private facts, or any other established tort. Nor are these claims asserted in the SAC. As such, the Court should not have allowed Plaintiffs to satisfy the crime-tort exception by simply recharacterizing the alleged use or disclosure of information as a tortious act when it is not independently actionable under tort law. *See Pena*, 670 F. Supp. 3d at 1118; *Nienaber*, 733 F. Supp. 3d at 1095–96. The Ninth Circuit should weigh in on whether a court needs to engage in an analysis of whether certain conduct is adequately pled to be tortious or criminal.

Resolution of either question could dispose of the entire federal claim and the nationwide class allegations. They are therefore controlling and will materially advance the litigation. *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011).

### b. There is Substantial Ground for Difference of Opinion

#### i. National and intra-district split on "engage[d] in".

The Order adopts and expands the Sixth Circuit's approach in *Luis v. Zang*, but courts in this Circuit have expressly rejected the notion that a party-participant's installation or configuration of interception devices, without active operation, is sufficient for civil liability under the Wiretap Act. *See Saleh,* 562 F. Supp. 3d at 523; *see also Yoon*, 549 F. Supp. 3d at 1084–85. Configuring or installing a device does not equate to operation of the device, or the manufacture of a device. The Ninth Circuit has not squarely addressed this issue, and there is a clear split among district courts.

///

//

//

### ii. Conflict over crime-tort exception.

The Order holds that an alleged purpose to violate state privacy statutes (such as CDAFA or common-law privacy) is sufficient to invoke the crime-tort exception. However, the Ninth Circuit and other courts have held that the exception requires a purpose that is separate and independent from the act of interception itself. *See Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022) (the purpose of violating the RICO statute was not sufficiently separate and independent from the alleged purpose of violating the Wiretap Act); *Pena*, 670 F. Supp. 3d at 1118; *Nienaber*, 733 F. Supp. 3d at 1095–96; *Saedi*, 2025 WL 1141168, at *13–14; *Weston v. Lefiti*, 2024 WL 4579237, at *2. Courts have warned that allowing plaintiffs to rely on the same alleged privacy violation to satisfy the crime-tort exception would "allow the exception to swallow the rule." *See Saedi*, 2025 WL 1141168, at *14.

The Court found an independent violation by virtue of "use and disclosure;" however, the Court did not analyze whether such use or disclosure would satisfy the elements of an independent tort or crime. *See, e.g., Kurowski v. Rush System for Health*, 683 F.Supp.3d 836, 843 (N.D. Ill. 2025). It would not. Use and disclosure have no place in any privacy claim or the CDAFA; rather, the Court found it relevant only to the question of whether Rack Room violated its own privacy policy. Then, the Court found the allegations to be "analogous to the purpose of engaging in a HIPPA violation, which courts consistently find constitutes an independent prohibited purpose." Order, at 8.

But the case relied on by the Court, *R.S. v. Prime Healthcare Services, Inc*., 2025 WL 103488, at *4 (C.D. Cal. Jan. 13, 2025), is not controlling. Other courts have taken a different stance on whether simultaneous disclosure by virtue of an interception is an independent act. *Nienaber*, 733 F. Supp. 3d at 1095–96; *Saedi*, 2025 WL 1141168, at *13–14; *Weston*, 2024 WL 4579237, at *2; *In re Google Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 145 (3d Cir. 2015).

Moreover, as this Court itself acknowledged, courts in this Circuit and elsewhere disagree on the question of whether a primary financial motivation shields an intercepting party from liability under the Wiretap Act because it negates the intent to injure the plaintiff tortiously or criminally. Order at 9; *R.S*, 2025 WL 103488 at *6 (collecting cases); *Riganian v. LiveRamp Holdings, Inc.*, 2025 WL

2021802 at *9-10 (N.D. Cal. 2025). The substantial disagreement among courts on these issues confirms that interlocutory review is warranted.

## V.  IMMEDIATE APPEAL WILL MATERIALY ADVANCE THE LITIGATION

Immediate appellate review will materially advance the litigation because the Wiretap Act claim is the only federal claim and the sole basis for Plaintiffs' nationwide class allegations. If the Ninth Circuit reverses on the legal issues presented, the claim will be dismissed, eliminating the need for nationwide discovery, reducing the scope of class certification, and streamlining—or potentially ending—the case. Conversely, an affirmance would clarify the governing law and guide the parties toward focused merits discovery and potential resolution. Given the significant costs and burdens associated with discovery and class proceedings tied to the Wiretap Act theory, prompt appellate guidance is essential to judicial economy and fairness to the parties. This is especially important here where the only genesis to finding a cause of action under a federal statute for out-of-state plaintiffs is the purported violation of analogous *California* state laws.

## VI.  REQUEST FOR A STAY

Certification will be futile unless proceedings are stayed. Moreover, Plaintiffs have filed a motion to amend the complaint, and allowing an amended complaint to be filed would further complicate the proceedings on this issue. In addition, discovery concerning hundreds of records, dozens of third parties, and classwide damages (all tethered to the Wiretap Act theory) will impose enormous costs. A brief stay preserves resources and serves judicial economy.

## VII.  CONCLUSION

For the foregoing reasons, and in light of the substantial legal disagreement and controlling questions presented by the Court's Order, Rack Room respectfully requests that the Court:

Certify the Order (ECF 85) for interlocutory appeal under 28 U.S.C. § 1292(b) on the following questions: (a) Whether a website operator "engages in" a violation of the Wiretap Act Section 2511 (interception) by installing and configuring third-party code, absent active operation or direct interception; (b) Whether the crime-tort exception of 18 U.S.C. § 2511(2)(d) is satisfied where the alleged, but not primary, purpose is to violate state privacy statutes and the use and disclosure are not sufficiently independently actionable absent the interception itself;

8
MOTION TO CERTIFY ORDER FOR AN INTERLOCUTORY APPEAL

1  Stay all proceedings pending disposition of the appeal; and

2  Grant such other relief as the Court deems appropriate.

DATED:  August 29, 2025                **BLANK ROME LLP**


By: */s/ Ana Tagvoryan*
Ana Tagvoryan
Victor Sandoval
Attorneys for Defendant
RACK ROOM SHOES, INC.