**BLANK ROME LLP**
Ana Tagvoryan (SBN 246536)
ana.tagvoryan@blankrome.com
Harrison Brown (SBN 344461)
harrison.brown@blankrome.com
Victor Sandoval (SBN 344461)
victor.sandoval@blankrome.com
2029 Century Park East | 6th Floor
Los Angeles, CA 90067
Telephone: 424.239.3400
Facsimile: 424.239.3434

*Attorneys for Defendant*
Rack Room Shoes, Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION**

DEMETRIUS SMITH, ROBIN SAVAGE, and MAIA WILLIAMS,

Plaintiffs,

v.

RACK ROOM SHOES, INC.,

Defendant.

Case No. 3:24-cv-06709-RFL

**DEFENDANT RACK ROOM SHOES, INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO FILE THIRD AMENDED COMPLAINT**

Complaint Filed: September 24, 2024

Trial Date: None set

**TABLE OF CONTENTS**

**Page(s)**

I. INTRODUCTION .......... 1
II. RELEVANT PROCEDURAL HISTORY .......... 2
III. LEGAL STANDARD .......... 4
IV. ARGUMENT .......... 4
A. Plaintiffs Unduly Delayed in Seeking Amendment .......... 5
B. The Proposed Amendment Is Brought in Bad Faith .......... 7
C. Allowing the Amendment Would Severely Prejudice Defendant .......... 10
D. The Proposed Amendments Are Futile .......... 12
E. Plaintiffs Have Already Amended Repeatedly .......... 13
V. CONCLUSION .......... 14

# TABLE OF AUTHORITIES


Page(s)

**Cases**

*Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393 (9th Cir. 1986) .... 4, 10

*AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946 (9th Cir. 2006) .... 1, 4, 6, 10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .... 12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .... 12

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990 (9th Cir. 2014) .... 12

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003) .... 11

*Foman v. Davis*, 371 U.S. 178 (1962) .... 1

*Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877 (9th Cir. 1999) .... 6

*Jackson v. Bank of Hawaii*, 902 F.2d 1385 (9th Cir. 1990) .... 4, 10, 11

*Johnson v. Buckley*, 356 F.3d 1067 (9th Cir. 2004) .... 3

*Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604 (9th Cir. 1992) .... 6, 10

*Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276 (9th Cir. 1983) .... 12

*Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980 (9th Cir. 1999) .... 3, 10, 11

*NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938 (N.D. Cal. 2014) .... 12

*Royal Ins. Co. of Am. v. Southwest Marine*, 194 F.3d 1009 (9th Cir. 1999) .... 6

*Solomon v. North Am. Life & Cas. Ins. Co.*,
151 F.3d 1132 (9th Cir. 1998) ........ 11

*TI, Ltd. v. Chavez*,
2021 WL 5862106 (S.D. Cal. May 10, 2021) ........ 6, 11

*In re W. Coast Lamps*,
755 F.3d 1142 (9th Cir. 2014) ........ 6

**Other Authorities**

Fed. R. Civ. P.
8 ........ 12
12 ........ *passim*
15 ........ *passim*
16(b)(4) ........ 10

## I. INTRODUCTION

After nearly a year of motion practice, three rounds of pleadings, and two separate Rule 12 orders, Plaintiffs now seek a fourth iteration of the Complaint, not to add additional causes of action, but to further complicate this case with un-substantiated accusations. Their proposed Third Amended Complaint ("PTAC") adds more than sixty paragraphs of new allegations, virtually all of which are out of context quotations from publicly available websites, and all of which represent a fundamental misunderstanding of e-commerce, and many of which are completely unsubstantiated and blatantly false. Plaintiffs' newly minted accusations are not merely expansive; they are intentionally inflammatory and highly prejudicial because they recast routine, consumer-initiated marketing functionality as covert electronic espionage. For example, in the ordinary course of e-commerce, a shopper who elects to create an account, enroll in a loyalty program, or complete a purchase necessarily and voluntarily supplies an email address—often in response to a conspicuous sign-up unit, or a request for order confirmation information. Retailers then transmit that self-provided contact data to their customer-relationship or email-service platforms for the expected purpose of sending receipts, shipping updates, product announcements, or promotional offers that the consumer expressly requested. Plaintiffs now attempt to transform this commonplace, consent-driven data flow into a "surreptitious interception of confidential communications," invoking criminal wiretap language to describe nothing more nefarious than the automated routing of an email address to a marketing database. By labeling an ordinary retail practice as covert surveillance, based on conjecture and speculation, Plaintiffs inject needless hostility, distort the factual landscape, and unfairly prejudice the Court against Defendant, all while offering no plausible link between the challenged conduct and any actionable harm.

To be sure, Plaintiffs' proposed amendments do not demonstrate how the new allegations regarding additional third parties, technical features, or speculative harms fit into or support the elements of the causes of action asserted. The PTAC fails to allege with particularity what conduct by each new third party violated the law, how Plaintiffs were harmed, or how the statutory elements are met. Instead, Plaintiffs rely on group pleading, speculation, and irrelevant material, which does not satisfy the pleading standards and only serves to complicate and prejudice the proceedings.

Moreover, the "new" allegations could—and should—have been pleaded long ago. ***None*** of the proposed substantive allegations rests on discovery produced in this case; ***none*** derives from information that was previously unavailable; and ***none*** meaningfully advances Plaintiffs' claims. To the contrary, the PTAC is an amalgamation of publicly-available marketing copy, years-old trade-press articles, generic industry surveys, and speculative "information and belief" assertions untethered to any concrete facts or investigation. Plaintiffs utterly fail to incorporate any evidence from this case or the website to substantiate their claims of additional third party technologies or integrations. Granting leave to amend under these circumstances would reward delay, inject substantial and unnecessary prejudice, and perpetuate a pleading carousel that Rule 15 does not require the Court to tolerate.

Under *Foman v. Davis*, 371 U.S. 178, 182 (1962), the Court considers five factors in deciding whether to permit a further amendment: (1) undue delay, (2) bad faith, (3) prejudice, (4) futility, and (5) prior amendments. When, as here, the request comes after the Court's rulings on the claims already asserted, and when the new pleading neither cures existing defects nor reflects newly-discovered evidence, the Ninth Circuit routinely affirms denial of leave. *See AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (affirming denial where movant possessed the relevant information "from the start of the lawsuit"). Because each *Foman* factor weighs decisively against Plaintiffs, the motion should be denied.

## II. RELEVANT PROCEDURAL HISTORY

The record reflects a pattern of serial amendments, each time seeking to expand the scope of the case with allegations and theories that could have been raised earlier, and which lack basic, evidentiary foundation.

**Original Complaint (September 2024)** — Plaintiffs filed their initial complaint on September 24, 2024, focusing exclusively on the use of the Meta Pixel and Attentive Tag, and asserting claims solely under California's Invasion of Privacy Act (CIPA) §§ 631 and 632. ECF No. 1. Defendant moved to dismiss, and rather than oppose the motion, Plaintiffs filed the First Amended Complaint. ECF Nos. 19, 20.

**First Amended Complaint (December 2024)** — On December 18, 2024, Plaintiffs filed the First Amended Complaint, adding a Wiretap Act claim and referencing, in passing, the existence of

other "third-party interceptors." .ECF No. 27. However, the factual allegations remained centered on Meta and Attentive, with only superficial references to other third party software with no meaningful detail or specificity. Defendant moved to dismiss the First Amended Complaint. ECF No. 36. The Court granted the motion with respect to Plaintiffs' CDAFA, UCL, CLRA, and Wiretap Act claims. ECF No. 52.

**Second Amended Complaint (April 2025)** — Plaintiffs filed the Second Amended Complaint on April 25, 2025, further broadening the narrative but continuing to rely on the same core factual allegations. ECF No. 53. Defendant again moved to dismiss. ECF No. 59. In the meantime, the Parties attended a scheduling conference at which the Court stated that, because the allegations related to third parties other than Meta and Attentive were insufficient to state an independent claim, "the scope of permissible discovery concerns the allegations about the Meta and Attentive trackers as used by Rack Room" with only some limited permissible discovery into the other third party trackers insofar as they relate to "Rack Room's intent as to the Meta and Attentive trackers and their knowledge about what those trackers did." ECF No. 84-3 at 5:19 6:2. On August 4, 2025, the Court issued an order dismissing the consumer protection claims and narrowing the case to a limited set of theories. ECF No. 85.

**Original Deadline to Amend (July 28, 2025)** — The Court's scheduling order set July 28, 2025 as the deadline for any further amendments to the pleadings. ECF No. 61. Plaintiffs failed to meet this deadline and subsequently sought, and received, an extension. ECF No. 83. However this additional time was unnecessary, insofar as Plaintiffs introduce a host of new allegations based on information that has long been publicly available.

**Current Motion (August 2025)** — Plaintiffs' present motion, filed August 18, 2025, seeks leave to file a Third Amended Complaint that would inject a substantial volume of new allegations regarding at least a dozen *additional* third parties (including Google, Taboola, Adobe, Criteo, Zeta, LiveRamp, Neustar, AtData, Throtle, Sovrn, Microsoft, and others), as well as new statutory background concerning the Wiretap Act and CIPA (which causes of action the Court declined to dismiss) and speculative assertions about Salesforce, Cordial, and AtData webinars.

The current motion represents yet another attempt to reframe the case at a late stage, without any showing of diligence or newly discovered evidence. As set forth below, such tactics do not warrant further amendment under the standards of Rule 15.

## III. LEGAL STANDARD

Courts consider five factors in determining whether to allow amendment under Rule 15(a): "bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004) (citation omitted). Although Rule 15(a)(2) instructs courts to "freely" grant leave "when justice so requires," that generosity evaporates where, as here, amendment would cause undue delay, prejudice, and futility—especially when Plaintiffs have already availed themselves of multiple opportunities to perfect their claims. *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) (delay coupled with prejudice, bad faith, or futility defeats Rule 15 motion). Indeed, delay in seeking amendment is particularly relevant when no reason is given for the delay *Id.* (citing *Swanson v. United States Forest Serv.*, 87 F.3d 339, 345 (9th Cir.1996)).

## IV. ARGUMENT

The Third Amended Complaint significantly broadens the factual and legal allegations against Rack Room Shoes, adding new third-party actors, general technical detail, and expanded claims regarding the use and sharing of consumer data, generally, but does not tie any of this to the Plaintiffs or the relevant time period, or to elements of the causes of action asserted—interception of communications and personal information by Meta and Attentive—as the Court required Plaintiffs to do at the case management conference to the extent Plaintiffs put any other third party at issue. The Court has already defined the scope of the claims as limited to Meta and Attentive, and Plaintiffs' attempts to add new third parties, new platforms, or new legal theories (as in the PTAC) are contrary to the Court's guidance and risk unreasonably broadening the litigation. The proposed amendment is not based on newly discovered facts but is an attempt to relitigate or expand the case in ways the Court has already cautioned against. Plaintiffs ignore the Court's repeated emphasis on proportionality and the need to avoid unnecessary burden and prejudice to the Defendant (ECF 84-3, CMC Transcript, p.6, 12). The proposed amendment, which introduces superfluous, unsubstantiated, and misguided

allegations, would cause undue delay, prejudice, and unnecessary complication, in direct contravention of the Court's instructions.

### A. Plaintiffs Unduly Delayed in Seeking Amendment

Undue delay occurs when a party fails to seek amendment reasonably promptly after they "knew or should have known" the facts or theories underlying the amendment. *AmerisourceBergen Corp.*, 465 F.3d at 953; *see also Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990). (undue delay found where "the moving party knew or should have known the facts and theories raised by the amendment in the original pleading."). In other words, "late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986). Here, with the exception of a webinar concerning the post-filing transition from Salesforce to Cordial (which does not have any meaningful connection with Plaintiffs' claims during the relevant time period) and an irrelevant post-filing webinar concerning AtData, the allegations in the PTAC are derived from publicly available websites that were accessible to Plaintiffs before they even initiated this litigation—and which could have been included in the original complaint, first amended complaint, or second amended complaint, but were not:

- **2019 Rack Room Presentation. PTAC ¶ 30.**[1] The unauthenticated 2019 Rack Room Shoes presentation cited in the PTAC has been publicly accessible for over five years, well before the initiation of this lawsuit. Plaintiffs' reliance on this presentation to support their claims demonstrates that the information was not only available, but also discoverable through basic internet research or diligence at the outset of the case. There is no indication that the presentation was hidden, confidential, or otherwise unavailable to Plaintiffs or their counsel prior to filing the original complaint or any subsequent amendments. The fact that Plaintiffs waited until the proposed third amended complaint (PTAC) to reference this document underscores a lack of diligence, as the presentation could have been incorporated into the original or earlier amended pleadings.

- **Background on CIPA and Wiretap Act. PTAC ¶¶ 40–45.** The legal background and statutory history of the California Invasion of Privacy Act (CIPA) and the federal Wiretap Act, as set forth in these paragraphs, are not new or novel. These statutes have been in existence for decades, and their legislative history, judicial interpretation, and statutory text are matters of public record. Plaintiffs' inclusion of this background in the PTAC does not reflect any newly discovered facts or developments, but rather a

[1] Plaintiffs do not provide a citation for this slideshow. It is accessible at https://blog.asug.com/hubfs/ASUG83152%20-%20The%20Perfect%20Fit%20Racking%20Up%20New%20Sales%20with%20SAP%20Commerce%20for%20B2C%20Shopping.pdf.

recitation of well-known legal principles that were available to Plaintiffs at the inception of this litigation. Amendments based on longstanding legal authority do not justify delay. Nor are they necessary to the pleading at this late stage.

- **Attentive Help-Center Article. PTAC ¶ 125.** The Attentive help-center article referenced in the PTAC was published and publicly accessible prior to the filing of this lawsuit. Plaintiffs' counsel could have located and reviewed this article through a simple search of Attentive's website or a general internet search. The article's content, which describes Attentive's transactional email list functionality, was not concealed or newly released, and thus could have been included in the original or earlier amended complaints. Attentive, moreover, was always the primary third party at issue and thus supplementation is not necessary here.

- **Zeta Website Copy; "Zeta Tag" Description. PTAC ¶¶ 126–128, 130–135.** The allegations regarding Zeta's business practices, including the description of the "Zeta Tag," are derived from Zeta's own marketing materials and website copy, which have been available online for years. Plaintiffs' reliance on these materials in the PTAC demonstrates that the information was not only public, but also easily accessible to anyone conducting reasonable pre-suit investigation. There is no suggestion that Zeta's website or the relevant product descriptions were updated or made available only after the filing of the original or amended complaints. And, as discussed below, Figures 34 to 36 were previously included in Plaintiffs' complaint, but allegedly related to LiveInent, not Zeta. Plaintiffs' delay in raising these allegations is therefore unjustified.

- **AtData Marketing Pages. PTAC ¶¶ 140–141**. The AtData marketing pages cited in the PTAC are generic promotional materials that have been available on AtData's website well before the commencement of this action. These pages describe AtData's services and the value of email addresses in digital marketing—information that is not unique to this litigation and was not newly discovered. Plaintiffs' decision to wait until the PTAC to reference these materials, despite their longstanding public availability, further supports a finding of undue delay.

- **Google, Taboola, Adobe, Criteo descriptions. PTAC ¶¶ 154–165.** The PTAC's allegations regarding Google, Taboola, Adobe, and Criteo are based on generic product descriptions and marketing materials that have been available on these companies' websites for years. These materials are not specific to Rack Room Shoes or this litigation, and Plaintiffs could have accessed and cited them at any point prior to the PTAC. The use of such widely available, non-specific information does not justify the late amendment, as Plaintiffs "should have known" of these facts at the time of the original or earlier pleadings.

- **Salesforce Articles from 2017-2018. PTAC ¶¶ 172–180.** The Salesforce articles and marketing materials cited in these paragraphs were published between 2017 and 2018, years before this lawsuit was filed. These materials are general in nature, discussing Salesforce's marketing cloud and customer engagement strategies, and do not reference the specific Pixel-based data sharing or interception alleged by Plaintiffs. Plaintiffs' reliance on these outdated, publicly available articles—none of which provide new or case-specific facts—demonstrates a lack of diligence and supports a finding of undue delay.

- **Speculative Cordial, Salesforce, and Zeta Allegations. PTAC ¶¶ 181–187.** The allegations in these paragraphs are speculative and pleaded solely on "information and belief," without any citation to new evidence or recently discovered facts. Plaintiffs do not identify any newly obtained documents, discovery responses, or other sources that would justify the timing of these allegations. Instead, the claims are based on conjecture and inference, further highlighting the absence of diligence or good cause for amendment.

- **July 2025 AtData Webinar. PTAC ¶ 139.** The July 2025 AtData webinar is the only post-filing publicly available document cited in the PTAC. However, as the PTAC itself concedes, the webinar merely contains a general statement about the marketing value of email addresses and does not provide any new facts relevant to Plaintiffs' core claims of interception or improper disclosure of data. The webinar does not discuss Rack Room Shoes, the alleged conduct at issue, or any new technological developments. As such, it cannot serve as a basis for justifying the late amendment.

The new allegations in Plaintiffs' PTAC are derived entirely from public websites, making clear that the information was at counsel's fingertips from day one, prior to the filing of this lawsuit and prior amendments. The Ninth Circuit has repeatedly held that waiting months to add facts a plaintiff "should have known" earlier constitutes undue delay. *See, e.g., In re W. Coast Lamps*, 755 F.3d 1142, 1147 (9th Cir. 2014); *AmerisourceBergen Corp.*, 465 F.3d at 953; *Royal Ins. Co. of Am. v. Southwest Marine*, 194 F.3d 1009, 1016–17 (9th Cir. 1999). And, Courts regularly find undue delay where, as here "the evidence from internet websites was publicly available" at the time of the operative pleading. *TI, Ltd. v. Chavez*, 2021 WL 5862106, at *3 4 (S.D. Cal. May 10, 2021) (collecting cases).

The Court's Scheduling Order required amendments by July 28, 2025. Plaintiffs did not move to extend based on any new evidence or good-cause discovery developments; instead, they sought to keep their options open pending this Court's Rule 12 ruling. Strategic delay, without a showing of diligence or newly discovered evidence, is not a basis for leave to amend. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

### B. The Proposed Amendment Is Brought in Bad Faith

Bad faith exists where a party moves to amend "to prolong the litigation by adding new but baseless legal theories" or to exert strategic leverage in mediation or otherwise. *See Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 881 (9th Cir. 1999). Here, the PTAC appears calculated to do both.

First, the PTAC balloons the case to new vendors and entirely new product categories (e-mail marketing, SMS, phone apps, server-side communications) that were never part of the dispute and have

no basis becoming part of this suit. For example, the PTAC makes many new allegations concerning Zeta—who was not even listed as a third-party in Plaintiffs' prior complaints. However, Plaintiff has not provided any factual support that the so-called Zeta-tag was even implemented on the website—and it was not. Indeed, figures 34 to 36 in the PTAC are allegedly related to Zeta, but **they are the same figures that previously were allegedly related to LiveIntent**—all that Plaintiffs have done, is change the word "LiveIntent" to "Zeta." *Compare* SAC ¶ 132 Figs. 35-37 *with* PTAC ¶ 136 Figs. 34-36. Further, Plaintiffs allege that "Defendant also integrates server-side code from Zeta to help intercept consumers' communications and personally identifiable information" but, does not provide any factual allegations or investigation supporting the notion that this is plausibly true or how the "server side code" acts as a third party code for purposes of intercepting communications while in transit. And, beyond using the word "intercept", Plaintiffs provide no detail concerning this newfound legal theory, which would substantially expand the scope of this litigation past the current pixel related claims. Under the pixel theory, the dispute centers on the use of client-side tracking technologies—such as pixels, cookies, or JavaScript tags—embedded in a website's code, which transmit user data directly from the user's browser to third-party vendors. Discovery in such cases focuses on the website's front-end code, the configuration and deployment of pixels, the categories of data transmitted, and the relationships with third-party pixel vendors.

In contrast, the Zeta server-side tracking theory alleges that Defendant integrates server-side code from Zeta to intercept consumer communications and personally identifiable information. Unlike pixels, server-side tracking does not rely on code running in the user's browser; instead, it involves the website's backend systems communicating directly with third-party servers, often without any visible client-side component. This theory would dramatically expand the scope of the litigation in several irrelevant ways. The legal theory underlying server-side tracking is distinct from pixel-based claims. To the extent Defendant even used server-side tracking technology, which it did not, the shift from pixel to server-side theories would substantially increase the complexity, cost, and duration of discovery. It would require both parties to engage in more technical and resource-intensive investigations, potentially involving the review of proprietary server code, network logs, and business

records that are not relevant to pixel-based claims. Plaintiffs have provide zero evidence that this technology is reasonably at issue- it is not. *See* Tagvoryan Decl., ¶¶ 11-12.

Fundamentally, Plaintiffs allegations concerning Defendant's use of Zeta, are not grounded in investigation, fact or any information produced in discovery, and are further evidence of a bad faith. *Id.* ¶¶ 2-7, 9-10. The same is true about the references to the other third parties. *See id.* at ¶ 8.

Similarly, Plaintiffs' attempt to scoop up e-mail marketing, SMS, and phone app based tools would unnecessarily expand the scope of this litigation, and discovery, into such tools, when they have never been, and should never be, the subject of this litigation. Indeed, the original claims and allegations in this matter are rooted in the alleged use of web-based pixel tracking technologies—tools that operate within the context of a user's interaction with a website via a browser. E-mail marketing platforms, SMS communication tools, and mobile application analytics, by contrast, are fundamentally different in both their technical operation and their relationship to user communications. E-mail marketing involves the sending and tracking of e-mails, often through third-party platforms, while SMS tools manage text message communications, and phone app analytics operate within the closed environment of a mobile application. None of these tools interact with website pixels or the browser-based tracking mechanisms at issue in the original complaint. Expanding discovery to these areas would require the parties to investigate and produce information about entirely different systems, vendors, and data flows, none of which are relevant to the pixel-based claims. The legal theories underpinning the original litigation—such as alleged wiretap or privacy violations arising from the interception of website communications via pixels—do not apply to e-mail, SMS, or mobile app tools. These tools do not "intercept" browser-based communications in transit, nor do they operate as third-party code embedded in a website. Including them would conflate distinct legal and technical issues, leading to confusion and unnecessary complexity. And, discovery into e-mail, SMS, and app-based tools would be highly burdensome and disproportionate to the needs of the case. It would also risk significant delays as the parties and the Court are forced to address a host of new factual and legal issues far afield from the original dispute.

Moreover, as with the server side tracking allegations, Plaintiffs have not alleged any ***facts*** suggesting that e-mail marketing, SMS, or phone app tools were used in a manner analogous to pixels,

or that they played any role in the alleged interception of website communications. The attempt to include these tools appears to be speculative and unsupported, further underscoring the impropriety of expanding the litigation in this manner.

If allowed, the amendment would require Defendant to embark on expansive discovery, forensic analysis, and expert review—efforts Plaintiffs know are disproportionate to the issues because none of these newly mentioned third parties or tools are "representative" of the allegations concerning Meta and Attentive. [ECF 84-3, at p. 12] By way of further example, Plaintiffs' allegations regarding Throtle's purported ability to make health inferences continue to be wholly irrelevant and unsubstantiated. Rack Room Shoes is a shoe retailer, not a healthcare provider, and there is no allegation that it collects or transmits health data, or that any health inferences were made about any class member. Plaintiffs cite only to Throtle's general marketing language, not to any facts specific to this case, and repeat those allegations in the PTAC. The inclusion of these inflammatory and baseless allegations is a transparent attempt to prejudice the Court and expand the scope of this litigation in bad faith, contrary to the Court's repeated instructions to keep the case focused and proportional.

Plaintiffs' ever-changing goal posts in discovery and tactical maneuvering by way of pleading is quintessential bad faith. *Lockheed Martin,* 194 F.3d at 986; *AmerisourceBergen,* 465 F.3d at 951.

**C. Allowing the Amendment Would Severely Prejudice Defendant**

While a plaintiff's lack of diligence precludes granting a motion for leave to amend under Fed. R. Civ. P. 16(b)(4), "the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny the motion." *Johnson*, 975 F.2d at 609. Prejudice can arise through "the nullification of prior discovery, the burden of necessary future discovery, and the relitigation of a suit...." *Jackson*, 902 F.2d at 1387; *see also Acri*, 781 F.2d at 1399. "[A]dditional discovery [must] be undertaken" when "additional claims advance different legal theories and require proof of different facts." *Jackson*, 902 F.2d at 1387. Here, such prejudice exists in a substantial degree.

Defendant has produced core materials regarding Meta and Attentive and has conducted a large-scale ESI review of further documents concerning the same and concerning the previously identified third parties. The PTAC's new allegations are calculated to force additional discovery covering wholly distinct tools (Zeta, Cordial, Salesforce Marking Cloud, Google Analytics, Taboola, Adobe Experience

Cloud, SMS and email marketing tools, and server side tools), new custodians, and different time periods. ESI discovery would need to be redone and custodians re-searched—postponing resolution for months and resulting in substantial prejudice to Defendant in terms of cost and relevance. *See Jackson*, 902 F.2d at 1387–88.

Plaintiffs insert sprawling background on third parties like Zeta **whom it has no evidence was ever even deployed on the website**—not to fix pleading deficiencies but to resurrect claims the Court has already curtailed concerning the expansive list to third parties Plaintiffs attempt to put at issue other than Meta and Attentive—and needlessly expand the scope of discovery. Preparing new Rule 12 briefing and engaging in protracted discovery and related disputes imposes needless cost. *See Solomon v. North Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir. 1998) (affirming denial of leave to amend where amendment would require additional discovery and delay resolution).

With the current schedule, dispositive motions and class certification planning is underway. Injecting new entities and theories beyond the core pixel allegations, into allegations concerning server side tracking, SMS marketing, email marketing, and CRM platforms, at this stage would derail case management and effectively restart litigation over a year in based on publicly accessible documents that existed long-before Plaintiffs filed this lawsuit, filed their first amended complaint, or filed their second amended complaint. *See Lockheed Martin*, 194 F.3d at 986 (prejudice is heightened where amendment would require extensive new discovery and delay trial); *see also* Sec. IV.B *supra*. The addition of new third parties and new theories of interception concerning SMS and email marketing tools, and server-side tools would "advance different legal theories and require proof of different facts." *Jackson*, 902 F.2d at 1387; *see also* Sec. IV.B *supra*. Putting Defendant "through the time and expense of continued litigation on a new theory, with the possibility of additional discovery, would be manifestly unfair and unduly prejudicial." *Jackson*, 902 F.2d at 1387; *see also Chavez,* WL 5862106, at *4 (finding same where, as here, basis of amendment was predominately derived from publicly available resources).

Further, Plaintiffs publicly file speculative accusations that Defendant "licensed" customers' data to Zeta, that Defendant "entered a contract with Zeta" and Defendant "integrated" Salesforce with Facebook—assertions which are demonstrably false, and are not based in fact, investigation, or any

information produced in discovery, yet which are harmful to Defendant's goodwill. The Ninth Circuit recognizes that prejudice includes reputational harm and the burden of defending against baseless claims. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). In sum, allowing amendment would severely prejudice Defendant and only serve to needlessly prolong this litigation.

**D. The Proposed Amendments Are Futile**

"[F]utile amendments should not be permitted." *Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1293 (9th Cir. 1983). Even if added, the new allegations would not survive a Rule 12 challenge for the following, and additional, reasons:

- For Zeta, Google, Taboola, Adobe, and Criteo, Plaintiffs recite generic product descriptions but plead no facts showing that Rack Room enabled, configured, or even used the challenged functionality—let alone fact supporting the elements of their claims. Indeed, although Plaintiffs' original complaints displayed HTTP requests indicating that Meta and Attentive were in-fact operating on the website, rather than doing the same with respect to, for example, Zeta, Plaintiffs merely delete the word "LiveIntent" and replace it with "Zeta."

- Paragraph 144 asserts, with no basis, that Rack Room "entered a contract with Zeta" granting a worldwide license to customer data. The only source is Zeta's form SaaS agreement—a publicly posted template that applies, if at all, to Zeta's own customers—and there is no basis for the allegation that Rack Room is such a customer. Plaintiffs' conjecture that Rack Room executed the form contract is unfounded and cannot support a plausible claim. *See Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.")

- Plaintiffs' allegations concerning Rack Room's use of Salesforce Marketing Cloud are based only on "information and on belief," and mere "on-information-and-belief" allegations are insufficient under Rule 8. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

- The cited Salesforce, Cordial, and AtData materials discuss e-mail or SMS marketing—channels unrelated to the "pixel-based" real-time interception theory underpinning the surviving claims. Allegations about historical e-mail campaigns (fn. 132) or SMS notifications fall outside the "communication while in transit" element of both CIPA § 631 and the Wiretap Act. *See NovelPoster v. Javitch Canfield Grp.,* 140 F. Supp. 3d 938, 952 (N.D. Cal. 2014) (acquisition of e-mail stored on an electronic communication service provider's systems not intercepted because not acquired contemporaneously with transmission) (citing *Konop v. Hawaii Airlines, Inc.,* 302 F.3d 868, 878 (9th Cir.2002).

- Plaintiffs trumpet a July 2025 webinar in which Rack Room's Chief Digital Officer's remarked that email addresses are a "very high signal … personal identifier for us." PTAC ¶ 139. That mundane truism is not only generic and unrelated to any alleged interception claim or improper disclosure, but also post-dates the events at issue, and does not support any element of Plaintiffs' claims. The fact that email addresses are useful for marketing—is not evidence of any statutory violation, and Plaintiffs admit to having submitted their email address to Rack Room via online purchases.

- Legal history does not transform deficient facts into actionable conduct. PTAC ¶¶ 40-45. The Court has already evaluated Plaintiffs' statutory theories based on existing allegations. The inclusion of legislative history concerning and excerpts of the Wiretap Act add nothing to Plaintiffs' claims—particularly insofar as the Court has already allowed these claims to proceed passed the pleading stage.

In sum, Plaintiffs do not adequately demonstrate how the new allegations in the PTAC fit into and support the elements of the causes of action asserted. The allegations are largely conclusory, speculative, and not particularized to the Plaintiffs or even the relevant time period—indeed, Plaintiffs have not explained how they would be adequate class representatives for the allegations relating to events that allegedly occurred post filing, nor can they. The PTAC does not show how the alleged conduct of these new third parties resulted in harm to Plaintiffs, or how they can plausibly supports the "in transit," "without consent," "criminal/tortious purpose," or "serious invasion" elements. The allegations are generic and not tied to the named Plaintiffs' experiences. Moreover, the PTAC does not distinguish which third parties are alleged to have acted as "interceptors," which as "users," which as "aiding and abetting," or which as "conspirators." Nor do Plaintiffs sufficiently allege that the new third parties lacked consent, or that Rack Room Shoes knew or intended that these third parties would intercept confidential communications in violation of the law. This lack of specificity undermines the ability to assess whether the allegations are relevant, proportional, or if the elements are met.

Because the PTAC introduces new, legally infirm theories, amendment would be futile. [2]

### E. Plaintiffs Have Already Amended Repeatedly

Rule 15's liberality diminishes with each successive amendment. Plaintiffs are on their **third** iteration (fourth complaint overall). Subject to a ruling on the recently filed motion for interlocutory appeal, the causes of action were ruled upon with finality by the Court and the purported PTAC does

[2] If Plaintiffs are allowed to amend their complaint, Defendant reserves the right to raise these and other issues more fulsomely in a motion to dismiss the PTAC.

not add any new causes of action. Instead, the PTAC still relies on conjecture and years-old public information. The Court is well within its discretion to put an end to Plaintiffs' serial pleading.

**V. CONCLUSION**

Plaintiffs' motion exemplifies the very "undue delay" and "prejudice" the Ninth Circuit cautions against. They seek to inject stale, speculative, and irrelevant material that could have been presented from the outset, while imposing significant discovery and case-management burdens on Defendant. Because every *Foman* factor—undue delay, bad faith, prejudice, futility, and repeated amendments—decisively counsels against leave, the Court should deny Plaintiffs' motion in its entirety.

DATED: September 2, 2025 **BLANK ROME LLP**

By: */s/ Ana Tagvoryan*
Ana Tagvoryan
Victor Sandoval
Attorneys for Defendant
RACK ROOM SHOES, INC.