BLANK ROME LLP
Ana Tagvoryan (SBN 246536)
ana.tagvoryan@blankrome.com
Harrison Brown (SBN 291503)
Harrison.brown@blankrome.com
Victor Sandoval (SBN 344461)
victor.sandoval@blankrome.com
2029 Century Park East | 6th Floor
Los Angeles, CA 90067
Telephone:    424.239.3400
Facsimile:    424.239.3434

*Attorneys for Defendant*
Rack Room Shoes, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| DEMETRIUS SMITH, et al.,<br><br>                    Plaintiffs,<br><br>    v.<br><br>RACK ROOM SHOES, INC.,<br><br>                    Defendant. | Case No. 3:24-cv-06709-RFL<br><br>[*Assigned to Judge Rita F. Lin*]<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE THIRD AMENDED COMPLAINT**<br><br>(*Filed concurrently with Notice of Motion and Motion to Dismiss and [Proposed] Order*)<br><br>Date: January 13, 2026<br>Time: 10:00 a.m.<br>Courtroom: 15<br><br>Complaint Filed: September 24, 2024<br>Complaint Served: October 9, 2024<br>Trial Date: None set |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE TAC**

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ....................................................................................................1

II.     BACKGROUND AND NEW ALLEGATIONS...................................................1

III.    ARGUMENT .........................................................................................................3

    A.    Plaintiffs' Wiretap Act Claim Should Be Dismissed...............................4

        a.    Plaintiffs fail to identify a statutory basis for their Wiretap Act claim........4

        b.    Plaintiffs do not allege a "use" claim under Section 2511(1)(d). ................5

        c.    Plaintiffs fail to allege an unlawful interception.........................................7

        d.    Rack Room did not "engage in" a violation of the Wiretap Act. ................8

        e.    The crime-tort exception does not apply, and even if it did, Plaintiffs fail to plead it........................................................................................9

    B.    The CDAFA Claim Fails .......................................................................11

    C.    Plaintiffs' New CIPA § 631(a) Theories Fail .........................................12

        a.    The CIPA § 631(a) "Use" Claim Fails.........................................................12

            i.    No allegation of unlawful use of the contents of intercepted communications ............................................................12

        b.    The CIPA § 631(a) Server-Side Interception Claim Fails ........................13

            i.    Plaintiffs fail to allege contemporaneous interception...................14

            ii.    There are no factual allegation that server-side tracking captures content ..........................................................................15

IV.     CONCLUSION.....................................................................................................15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
7 Cal. 4th 503 (1994) ...................................................................................................10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................2, 3, 6

*Askins v. U.S. Dep't of Homeland Sec.*,
899 F.3d 1035 (9th Cir. 2018) .......................................................................................4

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
459 U.S. 519 (1983)........................................................................................................5

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................................................3

*Bunnell v. Mot. Picture Ass'n of Am.*
567 F.Supp.2d 1148 (C.D. Cal. 2007) .........................................................................14

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) .........................................................................7, 8

*In re Del Rosario*,
668 B.R. 618 (B.A.P. 9th Cir. 2025).............................................................................7

*DirecTV, Inc. v. Treworgy*,
373 F.3d 1124 (11th Cir. 2004) .....................................................................................9

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .........................................................................................8

*Fantasy, Inc. v. Fogerty*,
984 F.2d 1524 (9th Cir.1993) ........................................................................................4

*Genentech, Inc. v. JHL Biotech, Inc.*,
2019 WL 1045911 (N.D. Cal. Mar. 5, 2019)...............................................................11

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ....................................................................6, 12

*Graham v. Noom*,
533 F.Supp.3d 823 (N.D. Cal. 2021) ...........................................................................15

ii

MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE TAC

*Heiting v. Taro Pharmaceuticals USA, Inc.*,
    709 F.Supp.3d 1007 (2023) .................................................................................................12

*Jones v. Tonal Sys., Inc.*,
    751 F. Supp. 3d 1025 (S.D. Cal. 2024).................................................................................15

*Klobus v. Akero Therapeutics, Inc.*,
    2025 WL 2646877 (N.D. Cal. Aug. 15, 2025) ........................................................................7

*Konop v. Hawaiian Airlines, Inc.*,
    302 F.3d (9th Cir. 2002) ......................................................................................................14

*Kurowski v. Rush System for Health*,
    683 F.Supp.3d 836 (N.D. Ill. 2025) .....................................................................................10

*Luis v. Zang*,
    833 F.3d 619 (6th Cir. 2016) .............................................................................................8, 9

*Magdaleno v. Indymac Bancorp, Inc.*,
    853 F. Supp. 2d 983 (E.D. Cal. 2011)....................................................................................4

*In re Meta Pixel Healthcare Litig.*,
    647 F. Supp. 3d 778 (N.D. Cal. 2022) .................................................................................10

*In re Meta Pixel Tax Filing Cases*,
    724 F. Supp. 3d 987 (N.D. Cal. 2024) ................................................................................8, 9

*Noel v. Hall*,
    568 F.3d 743 (9th Cir. 2009) ..............................................................................................6, 7

*NovelPoster v. Javitch Canfield Grp.*,
    140 F. Supp. 3d 938 (N.D. Cal. 2014) .................................................................................14

*Oracle Corp. v. SAP AG*,
    734 F. Supp. 2d 956 (N.D. Cal. 2010) .................................................................................11

*Pena v. GameStop, Inc.*,
    670 F. Supp. 3d 1112 (S.D. Cal. 2023).................................................................................10

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
    51 F.4th 1125 (9th Cir. 2022) .......................................................................................7, 9, 10

*Rodriguez v. Google LLC*,
    2022 WL 214552 (N.D. Cal. Jan. 25, 2022) ........................................................................14

*Roe v. Amgen Inc.*,
    2024 WL 2873482 (C.D. Cal. June 5, 2024) ........................................................................10

iii

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE TAC**

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
   2025 WL 1141168 (C.D. Cal. Feb. 27, 2025)........................................................................10

*Saleh v. Nike, Inc.*,
   562 F. Supp. 3d 503 (C.D. Cal. 2021) ................................................................................8, 9

*Valenzuela v. Keurig Green Mountain, Inc.*,
   674 F. Supp. 3d 751 (N.D. Cal. 2023) ..................................................................................14

*In re Vizio, Inc., Consumer Priv. Litig.*,
   238 F. Supp. 3d 1204 (C.D. Cal. 2017) ................................................................................14

*Weston v. Lefiti*,
   2024 WL 4579237 (9th Cir. Oct. 25, 2024)...........................................................................10

*Yoon v. Lululemon USA, Inc.*,
   549 F. Supp. 3d 1073 (C.D. Cal. 2021) ................................................................................15

*In re Zynga Privacy Litig.*,
   750 F.3d 1098 (9th Cir. 2014) .................................................................................6, 13, 15

**Statutes**

18 U.S.C. § 2512................................................................................................................8

18 U.S.C. § 2520........................................................................................................1, 4, 8

18 U.S.C. § 2511 .................................................................................................... *passim*

Cal. Bus. & Prof. Code § 17200, et. seq. ...........................................................................2

Cal. Civ. Code § 1782, et. seq..........................................................................................2

Cal. Penal Code § 631............................................................................................ *passim*

Cal. Penal Code § 632................................................................................................1

Cal. Penal Code § 502...............................................................................................11

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE TAC**

**Issues to Be Decided**

1.    Can Plaintiffs plead a violation of the Wiretap Act where the Third Amended Complaint does not identify which statutory provision of the Wiretap Act was violated and how that violation extends to a private right of action against Defendant under 18 U.S.C. § 2520?

2.    Do Plaintiffs adequately allege a "use" claim under 18 U.S.C. § 2511(1)(d)?

3.    Do Plaintiffs adequately allege an "interception" claim under 18 U.S.C. §2511(1)(a)?

4.    Can Plaintiffs plead that Defendant "engaged in" an interception under 18 U.S.C. § 2520?

5.    Do Plaintiffs adequately allege that the Crime-Tort exception applies?

6.    Does the California Comprehensive Computer Data Access and Fraud Act impose liability on Defendant for the acts of others?

7.    Do Plaintiffs plead a violation of California Invasion of Privacy Act section 631(a)'s "use" clause?

8.    Do Plaintiffs plead a violation of California Invasion of Privacy Act section 631(a) by alleging server-side "interception" claims?

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE TAC**

## I.    INTRODUCTION

Plaintiffs Demetrius Smith, Robin Savage, and Maia Williams' ("Plaintiffs") Third Amended Complaint ("TAC," ECF No. 128) adds new and deficient theories of liability under the California Invasion of Privacy Act ("CIPA"), and still fails to adequately plead claims against Defendant Rack Room Shoes, Inc. ("Defendant" or "Rack Room") under the Electronic Communications Privacy Act ("ECPA" or "Wiretap Act") and California Comprehensive Computer Data Access and Fraud Act ("CDAFA").

The Wiretap Act claim fails at a threshold level because the TAC does not identify which statutory provision of the Wiretap Act was violated and how that violation extends to a private right of action under 18 U.S.C. § 2520. Plaintiffs also inadequately allege a claim.

Next, the CDAFA claim is equally deficient: Plaintiffs attempt to impose liability on Defendant for the acts of others—an approach not permitted under the statute.

Lastly, the newfound CIPA theories of liability, particularly the "use" theory, is not supported by any factual allegation. Defendant did not *use* the contents of a communication obtained through unlawful interception; nor do Plaintiffs allege Defendant had the requisite knowledge that any such information was obtained by illegal means in the first place. Plaintiffs' "server-side interception" theory fares no better, as Plaintiffs do not allege a contemporaneous interception of the contents of communications. At most, they describe routine server-side forwarding, which does not constitute an unlawful interception under CIPA.

The Court should dismiss Plaintiffs' claims under Wiretap Act, CDAFA, and CIPA to the extent CIPA violations are based on "use" or "server-side" interception.

## II.    BACKGROUND AND NEW ALLEGATIONS

Plaintiffs filed their initial Complaint on September 24, 2024, asserting only two California class claims under California's Invasion of Privacy Act ("CIPA"), Penal Code §§ 631 and 632. ECF No. 1. Instead of opposing Defendant's motion to dismiss, Plaintiffs filed an amended complaint, with factual allegations which were largely consistent with its original complaint, but adding claims for alleged violations of (i) the federal Wiretap Act, 18 U.S.C. § 2510, et. seq ("Wiretap Act"), (ii) the Comprehensive Computer Data and Access and Fraud Act,

1

Cal. Penal Code § 502, et. seq. ("CDAFA"), (iii) common law invasion of privacy, (iv) the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et. seq. ("UCL"), and (v) the Consumers Legal Remedies Act, Cal. Civ. Code § 1782, et. seq. ("CLRA"), with an added putative nationwide class under the federal Wiretap Act claim. ECF Nos. 19, 27. The Court initially dismissed Plaintiffs' CDAFA, UCL, CLRA, and Wiretap Act claims with leave to amend. ECF No. 52. Plaintiffs' second amended complaint was, again, largely consistent with its first amended complaint, except that it added factual allegations concerning the alleged economic value of Plaintiffs' information. ECF No. 53 ¶¶ 143-48. However, the Court denied Rack Room's motion to dismiss as to Plaintiffs' CDAFA and federal Wiretap Act claims, and granted it without leave to amend as to Plaintiffs' UCL and CLRA claims. ECF No. 85.

Plaintiffs have again, with the filing of the TAC, expanded the purported third parties who they claim either intercepted or helped use data, and expanded on the theories of liability under the causes of action at issue. While Plaintiffs' first three complaints focused on the use of Meta and Attentive's pixels, with illustrative examples of other third party technologies that they claimed supported knowledge and intent, the TAC expands the list of third parties further to include Rack Room's Customer Relationship Management ("CRM") platforms, provided by Salesforce and, more recently, Cordial (TAC ¶¶ 172-87)[1] and Zeta's "server-side tracking code," (id. ¶¶ 130-135).[2] With respect to CRM usage, although Plaintiffs spend many paragraphs quoting out-of-context Salesforce help articles that are entirely unconnected to Rack Room, the

---

[1] Plaintiffs also reference Zeta's Customer Data Platform but do not explain its relevance, or how it operates, except to say Defendant uses it to leverage an identifier which provides some sort of linking function. TAC ¶ 131. Because Plaintiffs allege that Defendant "used these intercepted communications to run advertising and marketing campaigns through Salesforce, Cordial, and Zeta Global" Defendant assumes that Plaintiffs are alleging that Zeta's Customer Data Platform operates similarly and treats them together. TAC ¶ 236. However, in general, Plaintiffs allegations concerning use through Zeta are far too conclusory to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] The TAC also provides repetitive conclusory, non-substantive allegations concerning "code" provided by Google, Taboola, Criteo, and Adobe, which Defendant allegedly integrated into its Website. TAC ¶¶ 149-171. None of these allegations adequately state a claim relating to these third parties because they are entirely conclusory. Indeed, Plaintiffs do not even attempt to describe what Figures 48 through 51 show because they are each meaningless and incomplete.

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE TAC**

factual allegations concerning Rack Room's allegedly unlawful use of CRM platforms is limited to alleging that (i) "Defendant integrated Attentive with Salesforce Marketing Cloud so that Salesforce could receive intercepted communications—including contact information submitted into sign-up units while checking out or signing up for rewards—to augment its marketing and advertising efforts," (ii) "Defendant integrated Salesforce with Facebook to create 'relevant content targeted to specific members' on the social media platform," and (iii) "Defendant integrated Zeta Global with Salesforce Marketing Cloud to run campaigns using Zeta's identifier and the intercepted content of electronic communications." *Id.* ¶¶ 177-79; *see also id.* ¶¶ 181-85 (alleging Cordial operates similarly with respect to Zeta).

The allegations concerning Zeta's server-side tracking code are even more sparse. Plaintiffs allege only that Defendant "integrates server-side code from Zeta to help intercept consumers' communications and personally identifiable information. Unlike client-side tracking, server-to-server tracking operates akin to an automatic routing device, allowing Defendant to directly forward electronic communications and personally identifiable information to Zeta's servers as consumers navigate its website," and that "[t]hrough client-side and server-side tracking tools, Defendant helps Zeta intercept the content of consumers' electronic communications—including full-string URLs, button clicks, and form-field entries—alongside personally identifiable information like hashed email addresses and universal user IDs ("UUIDs") that link to consumer profiles." *Id.* ¶¶ 134-35. From these threadbare and conclusory allegations, Plaintiffs attempt to assert claims under CIPA § 631(a) for (1) use of Plaintiffs' allegedly intercepted communications, and (2) interception of Plaintiffs' communications through server-side tracking tools. *Id.* ¶¶ 236, 231. For the reasons discussed below, these claims should not survive. Further, Plaintiffs' Wiretap Act and CDAFA claims are also deficient for the reasons discussed below.

**III.    ARGUMENT**

A complaint should be dismissed if it does not state a cognizable legal theory or sufficient facts establishing a claim to relief that is "plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court "may order stricken

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE TAC**

from any pleading . . . any redundant, immaterial, impertinent, or scandalous matter" to "avoid the expenditure of time and money that must arise from litigating spurious issues[.]" *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.1993); Fed. R. Civ. Proc. 12(f).

### A.    Plaintiffs' Wiretap Act Claim Should Be Dismissed.[3]

Plaintiffs label one count of the TAC as arising under the Wiretap Act, but they fail to allege a viable cause of action because they fail to plead a statutory basis for the claim that would support a private right of action under 18 U.S.C. § 2520, do not allege facts to support any "use" of intercepted communications under 18 U.S.C. § 2511(1)(d), and do not allege facts amounting to an unlawful interception under the Wiretap Act that would otherwise support a "use" claim or a private right of action by virtue of having "engage[d] in" a violation. Further, Plaintiffs fail to overcome the one-party consent rule via the "crime-tort" exception. That exception does not apply in this case; and even if it did, Plaintiffs fail to plead it. The claim should be dismissed.

### a.    Plaintiffs fail to identify a statutory basis for their Wiretap Act claim.

The TAC's Wiretap Act claim is impermissibly vague because it does not adequately specify which statutory provision of the Wiretap Act was violated. Indeed, Plaintiffs do not cite a *single* statutory section that was allegedly violated—they only cite to the private right of action under 18 U.S.C. § 2520. Therefore, it is ***entirely unclear*** what is supporting the claim for damages under Section 2520. The private right of action under Section 2520 requires a "violation of this chapter," but Plaintiffs fail to identify which violation they are hinging their claim on. 18 U.S. Code § 2520. This omission is not a mere technicality; it obscures the nature of the claim and forces Defendant to guess which legal standards apply. Because Plaintiffs have not identified a statutory basis for their Wiretap Act claim which Defendant can properly respond to or

---

[3] Defendant understands that the Court's granting of Plaintiffs' Motion for Leave to File the Third Amended Complaint (ECF No. 127), and the filing thereof, moots Defendant's Motion to Certify the previous order on the  Second Amended Complaint for interlocutory appeal. ECF No. 100.  And while the Court previously denied Defendant's motion to dismiss the ECPA claim in the Second Amended Complaint, that complaint has been superseded by the TAC. The filing of the TAC provides the Court with a renewed opportunity to address the ECPA claim under the arguments herein as well as those raised in the Motion to Certify. *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1043 (9th Cir. 2018).

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE TAC**

Answer, the claim should be dismissed. *Magdaleno v. Indymac Bancorp, Inc.*, 853 F. Supp. 2d 983, 988–89 (E.D. Cal. 2011) (in ruling on a motion to dismiss "it is inappropriate to assume that … 'the defendants have violated the...laws in ways that have not been alleged.'") (quoting *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Counc. of Carpenters*, 459 U.S. 519, 526 (1983)).

### b.    Plaintiffs do not allege a "use" claim under Section 2511(1)(d).

To the extent Plaintiffs rely on a predicate violation of 18 U.S.C. § 2511(1)(d), Plaintiffs do not allege such a claim. 18 U.S.C. § 2511(1)(d) makes it unlawful to "use the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through [an] interception" "in violation of the [Act]". But, the TAC contains no reference to § 2511(1)(d) at all. And, although the Court previously found with respect to Plaintiffs' ECPA claim that "use is adequately pled," ECF No. 85 at 7, that is not accurate. Instead, it is only Plaintiffs' CIPA § 631 claim that alleges that "Defendant intentionally used these intercepted communications to run advertising and marketing campaigns through Salesforce, Cordial, and Zeta Global." TAC ¶ 236. Plaintiffs do not mention Salesforce or Cordial or their CRM platforms, at all in their Wiretap Act claim. TAC ¶¶ 223.[4]

Further, there are insufficient factual allegations to support a "use" claim under Section 2511(d). A claim under § 2511(1)(d) requires pleading that: (1) the defendant used the "contents of any… electronic communication"; (2) the contents were "obtained through the interception of a…electronic communication in violation of" § 2511(1)(a); and (3) the defendant "kn[ew] or ha[d] reason to know that the information was obtained" via an illegal interception. 18 U.S.C. § 2511(1)(d).

Even assuming the TAC could be read to assert a Wiretap Act "use" claim under § 2511(1)(d), which it cannot, that claim is not supported by well-pled facts. Plaintiffs make only vague allegations that Defendant "used" the content of Plaintiffs' unlawfully intercepted communications. For example, they suggest that Defendant may have utilized information from their online interactions for consumer profiles. TAC ¶¶ 172-87. But, Plaintiffs do not identify

---

[4] Plaintiffs do mention Zeta in their Wiretap Act claim, but Zeta is also alleged to have provided a pixel. TAC ¶ 132.

5

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE TAC**

any specific "contents" of an intercepted wire or electronic communication that Defendant supposedly used in these profiles. Rather, they allege only that Rack Room "integrated Attentive with Salesforce Marketing Cloud so that Salesforce could receive intercepted communications—including contact information submitted into sign-up units while checking out or signing up for rewards[.]" TAC ¶ 177. However, such addressing information is quintessential "record information"—the antithesis of the requisite "contents of communications." *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1105-09 (9th Cir. 2014) ("Contents" means "the intended message conveyed by the communication" as opposed to "record information regarding the characteristics of the message;" "basic identification and address information" is not "content").[5]  Similarly, Plaintiffs make no attempt to differentiate between information used in Salesforce and Cordial's consumer profiles that was "obtained through" an unlawful interception and any other information which may be in those databases as a result of customer record management. Rather, they conclusorily allege only that Defendant used intercepted communications to "augment [Defendant's] marketing and advertising efforts" without alleging *how* the intercepted communications assist in Defendant's marketing and without alleging any *facts* supporting the allegation that such content communications are used, at all. TAC ¶ 177.

Furthermore, Plaintiffs do not allege facts supporting the requisite knowledge element. There is no allegation that Defendant knew (or had reason to know) that any information it used was derived from an unlawful interception. *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 819 (N.D. Cal. 2020) (indicating that use claims require allegations "that Defendants knew each recording was the product of an unauthorized interception at the time of their alleged use and disclosure" to survive dismissal). This is unsurprising, since, as discussed next, Plaintiffs have not alleged any unlawful interception at all. At most, Plaintiffs assert that Defendant collected data during Plaintiffs' visits to a website—conduct which, as pleaded, would make Defendant an intended recipient of the communications rather than an illegal interceptor. Using

---

[5] With respect to Meta and Zeta, Plaintiffs do not allege any specific allegedly intercepted communications used, at all. TAC ¶¶ 178-79. Such allegations are too conclusory to state a claim. *Iqbal*, 556 U.S. at 678.

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE TAC**

data one lawfully receives is not a violation of § 2511(1)(d). *Noel v. Hall*, 568 F.3d 743, 751 (9th Cir. 2009) (no liability for using information where there is no predicate "*unlawful[]*" interception) (emphasis in original). Because Plaintiffs fail to allege the core elements of a "use" violation, their claim should fail even under the most liberal pleading standards.

### c.      Plaintiffs fail to allege an unlawful interception.

Further, Plaintiffs cannot plead a "use" claim because they do not allege an unlawful "interception" under the Wiretap Act. A "use" claim under Section 2511(1)(d) is inherently tied to the interception provisions of Section 2511(1)(a). If the initial interception is not unlawful, there can be no liability for use under Section 2511(1)(d). *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 840 (N.D. Cal. 2014) (Wiretap Act's use "prohibition applies only if the interception itself is unlawful under section 2511(1)(a)."); *Noel*, 568 F.3d at 751 (same).

Here, Plaintiffs do not plead an unlawful interception because, as the Court has previously correctly noted, they do not allege that the alleged interceptors had a criminal or tortious purpose. The Ninth Circuit has held that, for the crime-tort exception to apply, the intercepting party must "have the independent criminal or tortious purpose at the time the [interception] was made." *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022) (citations omitted). Plaintiffs allege that the intercepting parties are Meta, Attentive, and the other alleged third party trackers. TAC ¶ 217. And, as this Court previously observed, Plaintiffs have not "adequately alleged that Attentive, Meta, or the other third-parties acted with tortious purpose, because Plaintiffs have not alleged that the third parties were aware that Rack Room" had allegedly exceeded the scope of the consent provided. ECF No. 85 at 8. Accordingly, Plaintiffs cannot plead an unlawful interception because they do not allege that the alleged "intercepting party" had the requisite wrongful purpose. *Id.* Defendant's purported wrongful purpose cannot be imputed on the third parties. *Klobus v. Akero Therapeutics, Inc.*, 2025 WL 2646877, at *7 n.7 (N.D. Cal. Aug. 15, 2025) (noting that a third party's report "says nothing about defendants' state of mind" and can't be imputed to the defendants); *see also In re Del Rosario*, 668 B.R. 618, 624 (B.A.P. 9th Cir. 2025) (refusing to impute intent of the tortfeasor to the third-party under vicarious liability principles).

7

In short, Plaintiffs fail to allege an unlawful interception. So, there can be no claim premised on use of intercepted communications. *Campbell,* 77 F. Supp. 3d at 840.

### d.    Rack Room did not "engage in" a violation of the Wiretap Act.

Plaintiffs also cannot salvage their Wiretap Act claim by invoking cases such as *Luis v. Zang*, 833 F.3d 619 (6th Cir. 2016) and asserting that Rack Room "engaged in" a violation.

Here, as discussed above, there is no unlawfully intercepted communication—the third parties are said to have intercepted and they did not have a wrongful purpose. ECF No. 85 at 8. While Defendant could have "engaged in" the interception itself by assisting the third parties, that interception was lawful as per the above. Accordingly, the "engaged in" test fails to confer liability onto Defendant, a party participant. *See Saleh v. Nike, Inc.,* 562 F. Supp. 3d 503, 519 (C.D. Cal. 2021) (refusing to find that a party participant "engaged in the unauthorized duplication and forwarding of unknowing users' information to third parties" and distinguishing *In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d 589, 608 (9th Cir. 2020) on the grounds that it did not involve a party participant).

In *Luis*, the out of state appellate court assessed the plaintiff's claim under Section 2512(1)(b)(a section not at issue here), and addressed the question of whether the defendant's manufacture, marketing, sale and operation of the technology under Section 2512 caused it to be "engaged in [a] violation" for purposes of a private right of action under Section 2520. *Luis*, 833 F.3d at 635. The *Luis* court concluded that it did, not because of an independent "active role" that would make the defendant an interceptor for purposes of Section 2511, but rather, because of the active role in the manufacturing, marketing, selling, and use of a violative device under Section 2512. *Id*. at 637. The Court's holding was limited to whether the defendant, a third party, is subject to a private suit under Section 2520 where that defendant also played an active role in the operation of the relevant device to unlawfully intercept, disclose, or intentionally use a plaintiff's electronic communications. *Id*.

Similarly, *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1011 (N.D. Cal. 2024) countenances against finding that Defendant "engaged in" a violation. That case involved Meta's alleged collection of plaintiff's personal financial data through tracking tools installed on tax

8

MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE TAC

preparation websites, Meta's development of the Meta Pixel, and alleged violations of 18 U.S.C. § 2512. *Id.* at 999, 1010-11. Given these allegations, the Court found that Meta had played an active role in the unlawful interception, of the plaintiff's communications, where Meta "did not just develop the Pixel and post its source code online for other parties to use but […also] continued to play an active role in hosting and operating the Pixel and in receiving and using the data it collected." *Id.* at 1011.

By contrast, in the present case, there are no allegations of manufacture or active operation as against Defendant. Rather, Defendant's alleged conduct consists of configuring the subject pixels. TAC ¶ 21. Nothing in *Luis* suggests that a party to a communication violates Wiretap Act by such acts. Indeed, *Luis* addressed a very different factual context and a different defendant (a spyware vendor), making it wholly distinguishable from the allegations here. Whatever limited relevance *Luis v. Zang* and cases in accord might have in other contexts, they do not rescue Plaintiffs' deficient Wiretap Act claim in this context. Indeed, in *Saleh,* 562 F. Supp. 3d at 523 the court found that "*Luis* is distinguishable…because Plaintiff here does not allege [the website operator] manufactured, marketed, or sold [the alleged interceptor]'s code." At most, Plaintiffs allege that Defendant possessed the code. However, Courts have consistently found that there is no private right of action for mere possession. *Id.* (citing *DirecTV, Inc. v. Treworgy*, 373 F.3d 1124, 1127 (11th Cir. 2004)). Thus, any reliance on *Luis* is misplaced in this context. *Id.*

> **e.    The crime-tort exception does not apply, and even if it did, Plaintiffs fail to plead it.**

Plaintiffs invoke the Wiretap Act's exception to the general rule that a party participant cannot be liable for unlawful interception—namely, the "crime-tort exception." *See* 18 U.S.C. § 2511(2)(d), However, as discussed above, that exception extends only to an interceptor, and for the crime-tort exception to apply, the intercepting party must "have the independent criminal or tortious purpose at the time the [interception] was made." *Newman*, 51 F.4th at 1136 (citations omitted). Plaintiffs allege that the intercepting parties are Meta, Attentive, and the other third parties. *See, e.g.,* TAC ¶¶ 217, 222-223. And, as this Court previously observed, Plaintiffs have

9

not "adequately alleged that Attentive, Meta, or the other third-parties acted with tortious purpose, because Plaintiffs have not alleged that the third parties were aware that Rack Room" had allegedly exceeded the scope of the consent provided. ECF No. 85 at 8. The analysis should stop there.

But, even if that were not the case, and the Court adopts the circular argument that Rack Room is the interceptor by virtue of "engaging in" an unlawful interception, Plaintiffs have failed to allege the purpose to commit a separate tort. To the extent that the independent tort is a violation of the privacy policy, that would amount to a breach of contract, which  is not a tort. *See, e.g., Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 515 (1994) (discussing differences). At bottom, the alleged use or disclosure of information in excess of alleged privacy promises is not a sufficiently plead independent criminal or tortious act but is rather just a breach of contract claim. *Cf. Kurowski v. Rush System for Health*, 683 F.Supp.3d 836, 843-44, 850-53 (N.D. Ill. 2025). And, to the extent that the separate tort is a breach of any of the alleged common law torts, they are not sufficiently separate from the interception itself. *See Newman*, 51 F.4th at 1136 (crime-tort exception requires a purpose separate and independent from the act of interception); *see also Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112, 1119-20 (S.D. Cal. 2023) (alleged violation of state privacy law is not a sufficient independent purpose); *Saedi v. SPD Swiss Precision Diagnostics GmbH*, 2025 WL 1141168, at *13–14 (C.D. Cal. Feb. 27, 2025) (same); *Weston v. Lefiti*, 2024 WL 4579237, at *2 n.2 (9th Cir. Oct. 25, 2024) (affirming dismissal where the underlying conduct was not sufficiently independent or detailed). This is because the common law claim is premised on the same conduct and, allowing plaintiffs to rely on the same alleged privacy violation to satisfy the crime-tort exception would "allow the exception to swallow the rule." *See Saedi*, 2025 WL 1141168, at *14. There are no other torts alleged. Accordingly, Plaintiffs fail to allege an independent criminal or tortious purpose.

At most, the TAC asserts that Defendant's purpose was commercial—to collect data for analytics or advertising benefit. However, the "crime-tort exception is inapplicable where a defendant's primary motivation is to make money rather than to injure plaintiffs tortiously or criminally." *Roe v. Amgen Inc.*, 2024 WL 2873482, at *6 (C.D. Cal. June 5, 2024); *see, e.g., In*

10

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE TAC**

*re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) ("Multiple courts ... have found that the crime-tort exception ... is inapplicable where the defendant's primary motivation was to make money, not to injure plaintiffs tortiously.") (citations omitted).

The crime-tort exception does not apply. Defendant's status as a party to the communications (and/or the consent obtained through Plaintiffs' decision to communicate with Defendant's systems) remains a complete defense under the Wiretap Act. For this additional reason, Plaintiffs' Wiretap Act claim should be dismissed.

## B.    The CDAFA Claim Fails

Plaintiffs' attempt to assert a claim under the CDAFA, Cal. Penal Code § 502, is also deficient because Plaintiffs improperly attempt to hold Defendant secondarily liable for another party's conduct, even though CDAFA does not recognize secondary liability in the form of aiding and abetting or conspiracy for a private cause of action.

The thrust of the TAC is that some unauthorized access or taking of data occurred through the use of third-parties' tracking code. TAC ¶ 248. Plaintiffs seek to hold Defendant liable for allegedly causing the alleged third parties' permissionless access to Plaintiffs' computer systems. *Id.* ¶ 247-48. In other words, Plaintiffs treat Defendant as if it were an aider and abettor or co-conspirator in a CDAFA violation carried out by someone else.

However, CDAFA, by its terms, targets the one who knowingly accesses, takes, or uses data without permission. *See* Cal. Penal Code § 502(c). The statute's civil remedies extend to those who themselves commit the unlawful acts defined in § 502(c). There is no provision in CDAFA that creates civil liability for aiding and abetting another's violation, nor does the statute impose liability on parties who merely facilitate or benefit from someone else's unauthorized access. *Oracle Corp. v. SAP AG*, 734 F. Supp. 2d 956, 967 (N.D. Cal. 2010). To hold Defendant liable for Meta and Attentive's (and the others') alleged conduct requires allegations that they acted as Defendant's agent. *Id.*; *see also Genentech, Inc. v. JHL Biotech, Inc.*, 2019 WL 1045911, at *14 (N.D. Cal. Mar. 5, 2019) (same). The TAC fails to plead the same.

In sum, Plaintiffs are trying to fit a square peg into a round hole: CDAFA does not support a claim for secondary liability—only agency liability—and any attempt to hold

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE TAC**

Defendant liable for aiding or allowing someone else's unauthorized data access fails as a matter of law. For this reason, the CDAFA claim should be dismissed.

### C.    Plaintiffs' New CIPA § 631(a) Theories Fail

Plaintiffs' TAC asserts two distinct new theories under § 631(a): one for unlawful "use" of information, and one for unlawful interception via a "server-side" tracking. Plaintiffs' § 631(a) use claim fails because (1) the TAC does not allege any unlawful use of the contents of a communication, and (2) Plaintiffs do not link any supposed use of information to a prior unlawful acquisition of that information by Defendant. Without pleading those critical facts, Plaintiffs cannot state a claim under the "use" provision of CIPA.

#### a.    The CIPA § 631(a) "Use" Claim Fails

##### i.    No allegation of unlawful use of the contents of intercepted communications

Plaintiffs have not alleged that Defendant "used" any information obtained through an illegal wiretap, as required by the statutory text of § 631(a).

The relevant portion of § 631(a) imposes liability on anyone who "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any manner, any information so obtained" by means of an unlawful interception. Accordingly, use claims specifically targets the use of information obtained through violations of the first two clauses, making it narrower in scope than the interception-focused clauses. *Heiting v. Taro Pharmaceuticals USA, Inc.*, 709 F.Supp.3d 1007, 1015 (2023). Courts have consistently required plaintiffs to demonstrate a connection between the alleged use of information and its unlawful acquisition under the first or second clauses to survive a motion to dismiss. *In re Google*, 457 F.Supp.3d at 827.

Plaintiffs have not done so here—they nowhere allege the specific contents of the communications intercepted are used in the alleged consumer profiles. TAC ¶¶ 172-82. Plaintiffs vaguely allege that "Defendant integrated Attentive [Facebook, and Zeta] with Salesforce Marketing Cloud so that Salesforce could receive intercepted communications." TAC ¶ 177, 178, 179. And that, "Defendant intentionally used these intercepted communications to run advertising and marketing campaigns through Salesforce, Cordial, and Zeta Global." TAC ¶ 236.

12

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE TAC**

However, Plaintiffs do not identify any specific contents of a communication that Defendant allegedly used, which were obtained in violation of the Act, except to allege only that Salesforce received "contact information" through Attentive. TAC ¶ 177. However, as discussed above, such contact information is quintessential "record information." *In re Zynga Privacy Litig.*, 750 F.3d at 1105-09. They also vaguely assert that Defendant benefited from user data generally, but they fail to articulate what that data was, where it was derived from, and crucially, how it qualifies as the "contents" of a communication that was intercepted.

The term "contents" in the context of CIPA (and Wiretap Act) refers to the intended message conveyed, such as the words spoken in a call, the text of an email or chat—not ancillary data like contact information, routing information, or IP addresses. *Id.* at 1105-06 ("Contents" means "the intended message conveyed by the communication" as opposed to "record information regarding the characteristics of the message"). Plaintiffs do not allege, for example, that Defendant obtained the actual text of their private messages or the substance of any communication and then used those for marketing purposes. All that Plaintiffs allege is that Defendant uses non-content contact information. Without an allegation that contents were obtained and used, there is no viable "use" claim under § 631(a).

### b.    The CIPA § 631(a) Server-Side Interception Claim Fails

Plaintiffs' second new theory under CIPA § 631(a) appears to be that Defendant is liable for "intercepting" their communications through some server-side mechanism. In essence, they allege that when Plaintiffs communicated with Defendant's website or application, Defendant received these communications, then routed or forwarded those communications to a third party in a manner that constitutes a violation of CIPA. TAC ¶¶ 134. This theory fails for multiple reasons. First, Plaintiffs do not allege the essential element of an "in transit" interception of their communications; the facts suggest any data collection occurred after the communications were received, not while they were "in transit". Cal. Pen. Code § 631. Second, Plaintiffs do not plead that the supposed tracking or forwarding involved the acquisition of content from their communications, as opposed to non-content data. Each of these deficiencies independently warrant dismissal of the server-side § 631(a) interception claim.

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE TAC**

### i.     Plaintiffs fail to allege contemporaneous interception

First, and most fundamentally, Plaintiffs have not alleged and cannot allege that any server-side "interception" occurred while it was "in transit," as required for a claim under Cal. Penal Code § 631(a). Courts applying Section 631 (and, as discussed, the federal Wiretap Act) have acknowledged that, given the speed of modern internet communications, the acts' "application to that form of electronic communication is undoubtedly limited." *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 951 (N.D. Cal. 2014) (dismissing Wiretap Act and Section 631(a) claims for insufficiently alleging interception while in transit). The "in transit" requirement was intended to be narrowly construed and for it to be satisfied, a communication "must be acquired during transmission, not while it is in electronic storage." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d, 868, 878 (9th Cir. 2002). Once the destination server receives a communication, a communication becomes "stored" and interception "in transit" is not possible. *See NovelPoster*, 140 F. Supp. 3d at 952. It does not matter if forwarding occurred within "milliseconds"—if the destination server received the communication, it was not "in transmission." *Bunnell v. Mot. Picture Ass'n of Am.* 567 F.Supp.2d 1148, 1154 (C.D. Cal. 2007).

With respect to the server-side interception claim, all that Plaintiffs allege is that, in the context of server-side tracking Defendant "directly forward[s] electronic communications" to Zeta's servers. TAC ¶ 134. [6] In other words, Defendant necessarily sends the information to Zeta *after* Plaintiffs' alleged communications reach Rack Room's servers. Therefore, the allegations do not meet CIPA's "in transit" element. Plaintiffs simply do not claim that their messages or interactions were captured during transmission. Instead, they assert that Defendant's server—the very server to which Plaintiffs were sending their communications—later forwarded some of the

---

[6] Any other allegations concerning server side tracking merely "restate[s] the pleading requirement of real time interception." *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023). And, "[u]sing the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible [someone] is intercepting [the plaintiff's] data in transit." *Rodriguez v. Google LLC*, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022); *see also In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) (dismissing for failure to plead contemporaneous interception where plaintiffs have not "articulated with sufficient clarity when [the defendant] supposedly intercepted their communications.").

14

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE TAC**

received data elsewhere. By the time this supposed forwarding occurred, Plaintiffs' communications had already arrived at the intended destination (Defendant). *Jones v. Tonal Sys., Inc.*, 751 F. Supp. 3d 1025, 1037 (S.D. Cal. 2024). An act of forwarding data after receipt is, by definition, post-transmission. There is no contemporaneous interception, because the communication had completed its journey to Defendant.

### ii.    There are no factual allegation that server-side tracking captures content

Finally, even setting aside the above, Plaintiffs do not allege that the supposed server-side tracking or forwarding captured the contents of any communication. "Contents" of communications are "any information concerning the substance, purport, or meaning of [a] communication," which does not include record information like a consumer's name, address, and subscriber number (such as a Facebook ID). *In re Zynga*, 750 F.3d at 1105-09 ("basic identification and address information" is not "content"); *see also Graham v. Noom*, 533 F.Supp.3d 823, 833 (N.D. Cal. 2021) ("'contents' of a communication under CIPA and the federal Wiretap Act are the same.").

The TAC is conspicuously silent on what, exactly, was purportedly intercepted and forwarded by Defendant's servers to Zeta (or any other third party). Rather, Plaintiffs purposefully group together client-side and server-side tracking tools to obfuscate the fact that Plaintiffs cannot allege basic facts about content of communication with respect to their allegation that server-side tracking constitutes a violation of section 631(a).  *See* TAC ¶ 135.

Because Plaintiffs have not identified any content that was allegedly intercepted by Defendant's conduct, they have failed to plead an essential element of a § 631(a) claim with respect to their server-side tracking allegations. This omission is yet another independent reason why the CIPA claim should be dismissed. *See, e.g., Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021) (dismissing CIPA 631 claim for failure to allege contents).

## IV.    CONCLUSION

The ECPA and CDAFA claims should be dismissed, with prejudice. The server-side interception and use claims should also be dismissed with prejudice, or stricken under Rule 12(f).

15

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE TAC**

DATED:  November 7, 2025          BLANK ROME LLP


By: */s/ Victor Sandoval*
        Ana Tagvoryan
        Harrison Brown
        Victor Sandoval
Attorneys for Defendant
RACK ROOM SHOES, INC.

16

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE TAC**