**MARCUS RASHBAUM PINEIRO & MEYERS LLP**
Michael A. Pineiro (*pro hac vice*)
Christopher R. Reilly (*pro hac vice*)
2 South Biscayne Blvd., Suite 2530
Miami, FL 33131
Telephone: (305) 400-4260
E-Mail: mpineiro@mrpfirm.com
creilly@mrpfirm.com

**LEVIN LAW, P.A.**
Brian Levin (*pro hac vice*)
Jacob Polin (Cal. Bar No. 311203)
2665 S. Bayshore Dr., Ph. 2B
Miami, FL 33133
Telephone: (305) 402-9050
E-Mail: brian@levinlawpa.com
E-Mail: jpolin@levinlawpa.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

DEMETRIUS SMITH, ROBIN SAVAGE, and MIA WILLIAMS

Plaintiffs,

v.

RACK ROOM SHOES, INC.

Defendant.

Case No. 3:24-cv-06709-RFL

[*Assigned to Judge Rita F. Lin*]

PLAINTIFFS' RESPONSE BRIEF TO DEFENDANT'S MOTIONS TO DISMISS AND STRIKE

Date: January 13, 2026
Time: 10:00 AM
Courtroom: 15, 18th Floor

Complaint Filed: September 24, 2024
Complaint Served: October 9, 2024
Trial Date: None set

**TABLE OF CONTENTS**


INTRODUCTION ........ 1

LEGAL STANDARD ........ 2

ARGUMENT ........ 2

I. PLAINTIFFS ADEQUATELY ALLEGE THEIR WIRETAP ACT CLAIM ........ 2

A. Plaintiffs' Allegations are Sufficiently Specific ........ 3

B. Plaintiffs Properly Allege an Actionable Interception ........ 4

*i. Defendant's Intent Dictates the Interception's Purpose* ........ 4

*ii. The Interception's Purpose was Unlawful and Tortious* ........ 6

C. Defendant "Engaged in Violations" of the Wiretap Act by Providing Substantial Assistance to the Third-Party Interceptors ........ 7

D. Defendant "Engaged In" Violations by Playing an Active Role in the Interception ........ 9

E. Plaintiffs Establish that Defendant Intentionally Used Intercepted Communications ........ 11

II. PLAINTIFFS ADEQUATELY ALLEGE A CLAIM UNDER CDAFA ........ 12

III. PLAINTIFFS ADEQUATELY ALLEGE A CIPA CLAIM ........ 13

A. Plaintiffs Adequately Allege Intentional Use ........ 13

B. Plaintiffs Establish the Server-Side Interceptions Occurred in Transit ........ 13

C. Defendant's Interceptions Contain the Content of Electronic Communications ........ 15

CONCLUSION ........ 15

## TABLE OF AUTHORITIES

*Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 462 (2002) ........ 11
*Bartenwerfer v. Buckley*, 598 U.S. 69, 75 (2023) ........ 8
*BedRoc Ltd., LLC v. United States*, 541 U.S. 174, 177 (2004) ........ 7
*Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021) ........ 9
*Brown v. Google LLC*, 685 F. Supp. 3d 909, 933 (N.D. Cal. 2023) ........ 7
*Campbell v. Facebook, Inc.*, 77 F. Supp. 3d 836, 840 (N.D. Cal. 2014) ........ 7
*Concrete Pipe and Products of Cal., Inc. v. Constr. Laborers Pension Trust for Southern Cal.*, 508 U.S. 602, 637 (1993) ........ 5
*C.F.P.B. v. Nat'l Coll. Master Student Loan*, 96 F. 4th 599, 611 (3d Cir. 2024) ........ 10, 11
*Dean v. United States*, 556 U.S. 556 U.S. 568, 579 (2009) ........ 8
*Gonzalez v. Arizona*, 677 F. 3d 383, 389 n. 4 (9th Cir. 2012) ........ 5
*Griffin v. Cedar Fair, L.P.*, 817 F. Supp. 2d 1152, 1156 (N.D. Cal. 2011) ........ 6
*Hegler v. Borg*, 50 F. 3d 1472, 1475 (9th Cir. 1995) ........ 5
*Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 26 (1994 ........ 10
*In re Facebook, Inc. Internet Tracking Litigation*, 956 F. 3d 589, (9th Cir. 2020) ........ 16
*In re Google Inc. Cookie Placement Cons. Priv. Litig.*, 806 F. 3d 125, 137 (3d Cir. 2015) ........ 14
*In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 796 (N.D. Cal. 2022) ........ 7
*In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 2d 987, 1011 (N.D. Cal. 2024) ........ 12, 13
*Klumb v. Goan*, 844 F. Supp. 2d 644, 661 (E.D. Tenn. 2012) ........ 17
*Luis v. Zang*, 833 F. 3d 619, 636 (6th Cir. 2016) ........ 10, 12, 16
*Marx v. General Revenue Corp.*, 568 U.S. 371, 386 (2013) ........ 11
*Moore v. Telfon Communications Corp.*, 589 F. 2d 959, n. 3 (9th Cir. 1978) ........ 8
*Navarro v. Block*, 250 F. 3d 729, 732 (9th Cir. 2001) ........ 16
*Pena v. GameStop*, 670 F. Supp. 3d 1112, 1120 (S.D. Cal. 2023) ........ 17
*Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1090 (N.D. Cal. 2025) ........ 7
*Sagan v. Apple Computer, Inc.*, 874 F. Supp. 1072, 1077 (C.D. Cal. 1994) ........ 6
*Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503 (C.D. Cal. 2021) ........ 13, 14

*Shah v. Capital One Financial Corp.*, 768 F. Supp. 2d 1033, 1048 (N.D. Cal. 2025) .................. 9
*Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, (N.D. Cal. Apr. 4, 2025 .................... passim
*Smith v. Rack Room Shoes, Inc.*, 2025 WL 2210002, (N.D. Cal. Aug. 4, 2025) .................. passim
*Sussman v. Am. Broad. Co.*, 186 F. 3d 1200, 1202 (9th Cir. 1999) ............................................... 8
*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ............................................................. 6
*United States v. Councilman*, 418 F. 3d 67, 85 (1st Cir. 2005) .................................................... 16
*United States v. Garcia*, 77 F. 3d 274, 276 (9th Cir. 1996) .......................................................... 5
*United States v. Iron Mountain Mines, Inc.*, 987 F. Supp. 1244, 1246 (E.D. Cal. 1997). ............. 5
*United States v. Smith*, 155 F. 3d 1051, 1055 (9th Cir. 1998) ....................................................... 6
*United States v. Steiger*, 318 F. 3d 1039, 1050 (11th Cir. 2003) ................................................. 16
*United States v. Szymuszkiewicz*, 622 F. 3d 701, 706 (7th Cir. 2010) .................................. 16, 17
*Vaccaro v. Altais*, 2023 WL 7003211, at *5 (C.D. Cal. Oct. 23, 2023) ..................................... 15
*Vera v. O'Keefe*, 791 F. Supp. 2d 959, 964 (N.D. Cal. 2011) ..................................................... 15
*Zaratzian v. Abadir*, 2014 WL 4467919, at *6 (S.D.N.Y. Sept. 2, 2014) .................................. 18
*Zeyen v. Bonneville Joint Dist. # 93,* 114 F. 4th 1129, 1137 (9th Cir. 2024) ............................... 5

**Statutes**

18 U.S.C. § 2511(2)(a)(ii) ........................................................................................................ 11
18 U.S.C. § 2511(2)(a)(ii)(d) ........................................................................................................ 8
18 U.S.C. § 2512(1)(b) ............................................................................................................... 12
Fed. R. Civ. P. Rule 8(d)(2) ......................................................................................................... 16

# **INTRODUCTION**

Defendant's motion can be rejected with ease. Over the course of two decisions in this action, the Court has upheld every single claim that Defendant currently seeks to dismiss or strike. *See Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *3–5 (N.D. Cal. Apr. 4, 2025) (upholding Plaintiffs' claims under CIPA § 631, CIPA § 632, and invasion of privacy) (*Smith I*); *Smith v. Rack Room Shoes, Inc.*, 2025 WL 2210002, at *3–6 (N.D. Cal. Aug. 4, 2025) (upholding Plaintiffs' claims under the Wiretap Act and CDAFA) (*Smith II*).

Given the Court has upheld all of the claims at issue, one would expect that either Plaintiffs' allegations have fundamentally changed or that Defendant's arguments substantively differ from those raised in its prior motions to dismiss. Neither assumption would be true. Instead, Plaintiffs' allegations are largely the same as before, and Defendant has raised virtually all its current arguments in its prior motions to dismiss. In other words, Defendant's motion to dismiss effectively operates as a motion for reconsideration that challenges both of this Court's decisions. But under the law of the case doctrine, Defendant cannot simply recycle arguments even where reasonable minds may differ; instead, Defendant must demonstrate that the Court's decisions were clearly erroneous. Defendant falls woefully short in meeting that standard.

*First*, Defendant asserts that Plaintiffs fail to allege a claim under the Wiretap Act because they purportedly fail to establish the crime-tort exception. But as the Court previously held after rejecting the same argument, Plaintiffs adequately allege that "Rack Room's alleged purpose was tortious." *See Smith II*, 2025 WL 2210002, at *5. *Second*, Defendant argues that Plaintiffs cannot hold it derivatively liable under CDAFA. But here too, the Court has already held that Plaintiffs "adequately allege[] derivative liability of Rack Room pursuant to California Penal Code section 31." *See Smith I*, 2025 WL 1085169, at *6. And *third*, Defendant contends that Plaintiffs cannot state a claim under CIPA § 631 because they purportedly fail to allege that Defendant intentionally used intercepted communications. But once again, the Court has previously held the opposite, finding that Plaintiffs "plausibly allege[] that Rack Room 'intentionally used' 'intercepted' communications." *See Smith II*, 2025 WL 2210002, at *4.

Defendant could have—but did not—file motions for reconsideration. By rehashing the

same arguments with a scattershot and underdeveloped approach, Defendant wastes judicial resources and delays this action's resolution by halting the time to answer Plaintiffs' pleadings. Through the law of the case doctrine, this Court should reject Defendant's arguments out of hand.

## LEGAL STANDARD

"Under the law of the case doctrine, a court will generally refuse to reconsider an issue that has already been decided by the same court or a higher court in the same case." *See Gonzalez v. Arizona*, 677 F. 3d 383, 389 n. 4 (9th Cir. 2012). "This doctrine was founded upon the sound public policy that litigation must come to an end, and serves many purposes including aiding in the efficient operation of court affairs and advancing the principle that in order to maintain consistency during the course of a single lawsuit, reconsideration of legal questions previously decided should be avoided." *See Zeyen v. Bonneville Joint Dist. # 93,* 114 F. 4th 1129, 1137 (9th Cir. 2024) (internal quotations and brackets omitted). What is more, "the doctrine applies to a court's explicit decisions as well as those issued by necessary implication." *See Hegler v. Borg*, 50 F. 3d 1472, 1475 (9th Cir. 1995). More still, "so long as the issue was decided by necessary implication, it does not matter if the treatment of the issue was summary or somewhat ambiguous." *United States v. Iron Mountain Mines, Inc.*, 987 F. Supp. 1244, 1246 (E.D. Cal. 1997). "Although the observance of the doctrine is considered discretionary, … the prior decision should be followed unless":

> (1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial.

*See United States v. Garcia*, 77 F. 3d 274, 276 (9th Cir. 1996) (quotations omitted). "[T]he 'clearly erroneous' standard is significantly deferential, requiring a definite and firm conviction that a mistake has been committed." *Concrete Pipe and Products of Cal., Inc. v. Constr. Laborers Pension Trust for Southern Cal.*, 508 U.S. 602, 637 (1993) (quotations omitted).

## ARGUMENT

### I. PLAINTIFFS ADEQUATELY ALLEGE THEIR WIRETAP ACT CLAIM

As previously briefed and argued, Plaintiffs properly allege three bases to establish their claim under the Wiretap Act:

- *First*, "Defendant 'engaged in' violations of the Wiretap Act by 'assisting third parties with intercepting communications that it promised to keep confidential.'" *See* ECF No. 68 at 9:16–18 (quoting and citing SAC ¶ 4, 6–8, 111, 118, 122, 149, 169); *see also* ECF No. 128 ("TAC") ¶¶ 5, 7–9, 106, 113, 117, 217 (reproducing substantively identical allegations).
- *Second*, "Defendant also 'engaged in' violations of the Wiretap Act by possessing and assembling the wiretapping devices while simultaneously playing 'an active role in the use of the computer code to intercept Plaintiffs' and Class members' electronic communications.'" *See* ECF No. 68 at 11:4–6 (citing and quoting SAC ¶¶ 20, 63, 97, 108, 120, 127, 169); *see also* TAC ¶¶ 21, 68, 102, 113, 188, 217 (reproducing substantively identical allegations).
- *Third*, "Defendant violated the Wiretap Act by 'knowingly us[ing] the intercepted communications to run marketing and advertising campaigns that target[ed] consumers based on their activity on Defendant's website.'" *See* ECF No. 68 at 13:8–11 (citing and quoting SAC ¶¶ 85, 116, 135); *see also* TAC ¶¶ 90, 121, 138 (reproducing substantively identical allegations).

Reviewing these allegations in *Smith II*, this Court held that "Plaintiffs have adequately stated a claim under the Wiretap Act." *See Smith II*, 2025 WL 2210002, at *6. Seeking to challenge that holding, Defendant organizes its motion to dismiss in a way that needlessly complicates an already "complex, often convoluted, area of law." *See United States v. Smith*, 155 F. 3d 1051, 1055 (9th Cir. 1998); *see also* MTD at 7:12–28, 9:21–11:7 (addressing the crime-tort exception in two separate places). Rather than perpetuate that unnecessary complexity, Plaintiffs first address threshold questions—namely, whether their allegations are sufficiently specific and whether they satisfy the crime-tort exception—before turning to whether they adequately allege that Defendant "engaged in" violations of the Wiretap Act and intentionally "used" intercepted communications.

**A. Plaintiffs' Allegations are Sufficiently Specific**

Choosing to recycle the third iteration of the same argument, Defendant contends that "[t]he TAC's Wiretap Act claim is impermissibly vague because it does not adequately specify which statutory provision of the Wiretap Act was violated." *See* MTD at 4:14–15. That contention should be rejected for three reasons. *First*, Plaintiffs sufficiently delineate the theories of liability under the Wiretap Act, and they expressly bring their claim "pursuant to 18 U.S.C. § 2520." *See, e.g.*, TAC ¶ 224; *see also id.* ¶¶ 5, 90, 138, 138, 215–23. *Second*, "[p]arties are expected to use discovery, not the pleadings, to learn the specifics of the claims being asserted." *See, e.g.*, *Sagan v. Apple Computer, Inc.*, 874 F. Supp. 1072, 1077 (C.D. Cal. 1994). *Third*, though "disfavored and

rarely granted," the proper vehicle for Defendant's request is a motion for more definite statement, not motions to dismiss or strike. *See Griffin v. Cedar Fair, L.P.*, 817 F. Supp. 2d 1152, 1156 (N.D. Cal. 2011); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002).

**B. Plaintiffs Properly Allege an Actionable Interception**

Before establishing that Defendant used intercepted communications or "engaged in" violations of the Wiretap Act, Plaintiffs must first demonstrate that "the interception is itself unlawful under section 2511(1)(a)." *See Campbell v. Facebook, Inc.*, 77 F. Supp. 3d 836, 840 (N.D. Cal. 2014). Because "the Wiretap Act is a one-party consent statute," *see Brown v. Google LLC*, 685 F. Supp. 3d 909, 933 (N.D. Cal. 2023), Plaintiffs must allege that Defendant's consent to the interception "is nullified by the Act's crime-tort exception." *See Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1090 (N.D. Cal. 2025). As the name implies, the crime-tort exception "focuses on whether the purpose for the interception—its intended use—was criminal or tortious." *See In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 796 (N.D. Cal. 2022) (quotations omitted). Defendant argues that Plaintiffs fail to establish that exception for two reasons. *First*, Defendant argues that "Plaintiffs cannot plead an unlawful interception because they do not allege that the alleged intercepting party had the requisite wrongful purpose." *See* MTD at 7:22–23. *Second*, Defendant argues that "Plaintiffs have failed to allege the purpose to commit a separate tort." *See* MTD at 10:6–7. Neither argument has merit.

*i. Defendant's Intent Dictates the Interception's Purpose*

According to Defendant, Plaintiffs cannot establish the crime-tort exception without demonstrating that "the alleged interceptors had a criminal or tortious purpose." MTD at 7:13. In other words, even assuming Plaintiffs properly allege that Defendant facilitated the interceptions for the purpose of later using the intercepted communications to commit a crime or tort, they cannot satisfy the crime-tort exception without demonstrating that "[the] 'intercepting party' had the requisite wrongful purpose." *See* MTD at 7:23. As this Court previously held and as the statutory text makes clear, the interception's purpose—as opposed to the interceptor's purpose—governs the analysis for the crime-tort exception.

Because this analysis hinges on statutory interpretation, "[t]he inquiry begins with the

statutory text." *See BedRoc Ltd., LLC v. United States*, 541 U.S. 174, 177 (2004). Under the Wiretap Act, the crime-tort exception reads as follows:

> It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception <u>unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.</u>

18 U.S.C. § 2511(2)(a)(ii)(d) (emphasis added). Congress wrote the operative language here—"unless such communication <u>is intercepted</u> for the purpose of committing any criminal or tortious act"—using the passive voice. *Id.* (emphasis added). As a general concept, "[t]he passive voice focuses on an event that occurs without respect to a specific actor, and therefore without respect to any actor's intent or culpability." *Dean v. United States*, 556 U.S. 556 U.S. 568, 579 (2009). Because "[p]assive voice pulls the actor off the stage," *see Bartenwerfer v. Buckley*, 598 U.S. 69, 75 (2023), Congress focused the inquiry on whether the interception's purpose—not the interceptor's purpose—was to "commit[] any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." *See* 18 U.S.C. § 2511(2)(a)(ii)(d). Put differently, "the focus … is upon whether the purpose for the interception—its intended use—was criminal or tortious." *See Sussman v. Am. Broad. Co.*, 186 F. 3d 1200, 1202 (9th Cir. 1999).

After a hearing that addressed this precise question, *see* ECF Nos. 74, 77, the Court adopted that interpretation and found in Plaintiffs' favor:

> Given Rack Room's alleged active role in the act of intercepting, the interception was not done just by Attentive, Meta, or the other third parties, but also alleged to have been actively done by Rack Room. As such, Rack Room's purpose in engaging in that interception is sufficient to satisfy the crime-tort exception.

*See Smith II*, 2025 WL 2210002, at *5. Rather than offer textual analysis to support its argument that the Court's ruling was clearly erroneous, Defendant instead relies solely on *ipse dexit* and a stray citation to a Ninth Circuit case that never came close to addressing that question. *See* MTD at 7:12–28. Worse still, Defendant's interpretation would lead to absurd results and defeat the legislative intent. Under Defendant's interpretation, for example, "a party to the communication" would be prohibited from intercepting that communication for an unlawful purpose, *see* 18 U.S.C.

§ 2511(2)(a)(ii)(d), yet that same party participant could sidestep that prohibition by simply relying on an unwitting accomplice to intercept the communication in his or her stead. Given the crime-tort exception was enacted to prohibit that precise misconduct, Defendant's interpretation is untenable. *See, e.g.*, *Moore v. Telfon Communications Corp.*, 589 F. 2d 959, n. 3 (9th Cir. 1978) (analyzing the legislative history for the crime-tort exception and noting that the consent defense was deemed "too permissive" because it would "possibly allow[] one party to monitor the communication for 'insidious purposes'") (quoting 114 Cong. Rec. 14694 (1968)).

*ii. The Interception's Purpose was Unlawful and Tortious*

In *Smith II*, the Court held that "Rack Room's alleged purpose was tortious" because "[the] disclosure and use of Plaintiffs' personally identifiable information for advertising, in contradiction [to] the commitments it made in its privacy policy, can plausibly constitute a further invasion of privacy beyond the act of intercepting the information alone." *See Smith II*, 2025 WL 2210002, at *5. To rebut that conclusion, Defendant presents three arguments, two of which Defendant has already raised and the Court has already considered:

- "To the extent that the independent tort is a violation of the privacy policy, that would amount to a breach of contract, which is not a tort." *See* MTD at 10:7–8.
- "[T]o the extent that the separate tort is a breach of any of the alleged common law torts, they are not sufficiently separate from the interception itself." *See* MTD at 10:13–14; *see also* ECF No. 59, p. 19:14–15 (raising identical argument).
- "At most, the TAC asserts that Defendant's purpose was commercial[:] to collect data for analytics or advertising benefits." *See* MTD at 10:25–26; *see also* ECF No. 59, p. 19:16–17 (raising identical argument).

Whether new or recycled, all three arguments are meritless. *First*, there is neither a logical nor legal basis precluding courts from considering contractual misrepresentations when evaluating reasonable expectations of privacy. *See, e.g.*, *Shah v. Capital One Financial Corp.*, 768 F. Supp. 2d 1033, 1048 (N.D. Cal. 2025) (noting that courts can determine the "[a]ccepted community norms" for invasion of privacy claims by considering "advance notice to plaintiffs and whether plaintiffs had the opportunity to consent or reject the very thing that constitutes invasion").

*Second*, multiple courts—including this one—have recognized that "[t]he association of Plaintiffs' data with preexisting user profiles is a further use of Plaintiffs' data that satisfies [the

crime-tort] exception," because it "violate[s] state law, including the CDAFA, intrusion upon seclusion, and invasion of privacy." *See, e.g.*, *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021); *see also Smith II*, 2025 WL 2210002, at *5. Accordingly, as this Court held in *Smith II*, Plaintiffs "adequately allege[] that at the time of interception Rack Room had an independent prohibited purpose beyond the act of interception itself." *See id.*; TAC ¶¶ 217, 223.

*Third*, "a monetary purpose does not insulate a party from liability under the Wiretap Act." *Smith II*, 2025 WL 2210002, at *5. Instead, as this Court held in *Smith II*, Plaintiffs adequately allege that Defendant intentionally used their personally identifiable information—"in contradiction [to] the commitments it made in its privacy policy"—to invade their privacy. *See id.*; *see also Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 26 (1994) ("[T]he California constitutional right of privacy 'prevents government and business interests from [1] collecting and stockpiling unnecessary information about us and from [2] misusing information gathered for one purpose in order to serve other purposes or to embarrass us.") (sitting *en banc*) (emphasis added).

### C. Defendant "Engaged in Violations" of the Wiretap Act by Providing Substantial Assistance to the Third-Party Interceptors

Plaintiffs sufficiently allege that Defendant "engaged in" violations of the Wiretap Act by providing substantial assistance to the third-party interceptors, including Meta, Attentive, Zeta, Svorn, LiveRamp, Neustar, AtData, Throtle, Google, Adobe, Taboola, and Criteo.

In 1986, Congress added language to the Wiretap Act permitting recovery against those that "engaged in" unlawful interceptions. *Compare* Pub. L. 90-351, Tit. III § 802 *with* U.S.C. § 2520. As the Sixth Circuit explained, the amendment's takeaway is straightforward:

> If Congress had meant to restrict liability to only those persons or entities who make the specific decision to "intercept, disclose, or intentionally use" a communication, then Congress would have used those terms in defining the class of defendants subject to suit under § 2520. But as Luis notes, Congress eschewed that route. Congress instead chose to impose liability on any person or entity that "engaged in" the interception, disclosure or intentional use of the communication in question.

*See Luis v. Zang*, 833 F. 3d 619, 636 (6th Cir. 2016). That interpretation is confirmed by the plain meaning of the statutory text. As relevant here, "*Merriam-Webster's Dictionary* contemporaneously defines engage as 'to begin and carry on an enterprise or activity' and 'to do

or take part in something.'" *Consumer Fin. Protection Bureau v. Nat'l Coll. Master Student Loan*, 96 F. 4th 599, 611 (3d Cir. 2024). Moreover, "*Black's Law Dictionary* defines engage as: 'To employ or involve one's self; to take part in; to embark on.'" *Id.* Both definitions evince Congress's intent to expand liability beyond those who "intercept, disclose, or intentionally use" electronic communications. *See Luis*, 833 F. 3d at 636. And both definitions have also "remained remarkably consistent over time." *Nat'l Coll. Master Student Loan*, 96 F. 4th at 611. In other words, by adding the "engaged in" language, "Congress said what it meant and meant what it said." *Pettis v. Morris-Knudsen Co.*, 577 F. 2d 668, 672 (9th Cir. 1978). And "[w]hen the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 462 (2002) (internal quotations omitted).

Even if there was interpretative ambiguity, the statutory context confirms that consumers can hold entities liable for facilitating interceptions and providing the third-party interceptors with close assistance. The Wiretap Act attaches liability to those that "engaged in" violations of the statute "[e]xcept as provided in section 2511(2)(a)(ii)." *See* 18 U.S.C. § 2520(a). That exception—the only one referenced within the private right of action—provides a shield against liability for those who "provide information, facilities, or <u>technical assistance</u> to persons authorized by law to intercept wire, oral, or electronic communications." *See, e.g.*, 18 U.S.C. § 2511(2)(a)(ii) (emphasis added). If it were already impossible to hold someone liable for providing "technical assistance," then creating such an exception would be an exercise in superfluity. And as an interpretive principle, "the canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme." *See Marx v. General Revenue Corp.*, 568 U.S. 371, 386 (2013). Accordingly, consumers can hold entities liable for "engag[ing] in violations" of the Wiretap Act by alleging that they provided close assistance to third-party interceptors for the purpose of helping them effectuate the interception. *See, e.g.*, *Nat'l Coll. Master Student Loan*, 96 F. 4th at 610 (analyzing a statutory provision and answering the following question presented in the affirmative: "Does a person 'engage' in an activity if he contracts with a third party to do that activity on his behalf?").

As alleged, Plaintiffs establish that Defendant "engaged in" violations by enabling the

interceptions and providing close assistance to "Meta, Attentive, Zeta, Svorn, LiveRamp, Neustar, AtData, Throtle, Google, Adobe, Taboola, and Criteo." *See* TAC ¶¶ 7–9, 88, 116, 124, 197, 217.

### D. Defendant "Engaged In" Violations by Playing an Active Role in the Interception

Defendant also "engaged in" violations of the Wiretap by possessing and assembling the wiretapping devices while simultaneously playing "an active role in the use of the computer code to intercept Plaintiffs' and Class members' electronic communications." *See* TAC ¶ 21, 68, 102, 130, 188, 217; *see also Luis*, 833 F. 3d at 637 (noting that "§2520 does not support a cause of action against those who simply possess a wiretapping device, but that liability does attach "when that defendant also plays an active role in the use of the relevant device to intercept, disclose, or intentionally use a plaintiff's electronic communications"); *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 2d 987, 1011 (N.D. Cal. 2024) ("Section 2520 at the very least provides a private right of action to enforce Section 2512(1)(b) against a defendant who also played an active role in the unlawful interception, disclosure, or use of the plaintiff's communications"); *see generally* 18 U.S.C. § 2512(1)(b) (prohibiting any person from "assembl[ing]" or "possess[ing]" any electronic device "knowing or having reason to know that the design of such device renders it primarily useful for the purposefulness of the surreptitious interception of … electronic communications.").

In *Smith II*, the Court agreed: "Given Rack Room's alleged active role in the act of intercepting, the interception was not done just by Attentive, Meta, or the other third parties, but also alleged to have been actively done by Rack Room." *See Smith II*, 2025 WL 2210002, at *5. Seeking to revisit that determination, Defendant attempts to distinguish two cases—*Luis v. Zang*, 833 F. 3d 619 (6th Cir. 2016) and *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1011 (N.D. Cal. 2024)—that undermine its position. Both attempts are meritless.

To distinguish *Luis*, Defendant describes that case as "address[ing] the question of whether the defendant's manufacture, marketing, sale and operation of the [tracking] technology under Section 2512 caused it to be 'engaged in [a] violation' for purposes of a private right of action under Section 2520." *See* MTD at 8:15–19. But tellingly, Defendant never discusses why a predicate violation under section 2512 is even relevant to the analysis. *See id.* Instead, like in

*Luis*, Plaintiffs have alleged that they are "'person[s] whose … electronic communications [were] intercepted … in violation' of the Wiretap Act." *See Luis*, 833 F. 3d at 635 (18 U.S.C. § 2520). And just like the Sixth Circuit noted in *Luis*, Plaintiffs are thus "entitled to recover from the person or entity which engaged in that violation.'" *Id.* (quoting 18 U.S.C. § 2520). Accordingly, the core question in *Luis* is the same here: Do the allegations demonstrate that Defendant "engaged in" violations of the Wiretap Act? In *Luis*, the Sixth Circuit answered that question in the affirmative, finding that a non-interceptor "'engaged in' a violation of the Wiretap Act" by "play[ing] an active role in the use of the relevant device to intercept, disclose, or intentionally use a plaintiff's electronic communications." *Id.* And here, Plaintiffs likewise allege that Defendant played an "active role" in the unlawful interception by having "customized," "configured," "deployed," and "intentionally integrate[d]" the computer code that "intercept[ed] the content of consumers' electronic communications—including full-string URLs, button clicks, and form-field entries—alongside personally identifiable information." *See* TAC ¶¶ 21, 68, 102, 130, 135, 188, 217. These allegations—as this Court has already held—establish that Defendant "'played an active role in the use of the code to intercept Plaintiffs' communications.'" *See Smith*, 2025 WL 2210002, at *2 (internal brackets omitted) (quoting allegations from the SAC that Plaintiffs likewise include in the TAC). By extension, Plaintiffs properly allege that Defendant "engaged in" violations of the Wiretap Act.

Defendant attempts to distinguish the second case, *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1011 (N.D. Cal. 2024), by similarly arguing that "there are no allegations of manufacture or active operation as against Defendant." MTD at 9:7–8. As an initial matter, Plaintiffs may not use the exact term "active operation," but their allegations—that Defendant "customized," "configured," "deployed," and "intentionally integregate[d]" the wiretapping device—substantively amount to as much. *See* TAC ¶¶ 21, 68, 102, 130, 188, 217. More fundamentally, Defendant declines to explain why "engag[ing] in the interception" should hinge on whether the non-interceptor "operat[ed]" or "manufacture[d]" the wiretapping device. *See* MTD at 9:7–9. Worse still, not only does Defendant fail to specify why these distinctions should make a difference, but Defendant also explicitly recognizes that—at least conceptually—"[it]

could have 'engaged in' the interception itself by assisting the third parties." MTD at 8:8. That concession is dispositive.

As its lone support, Defendant cites to *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503 (C.D. Cal. 2021), for the proposition that "[c]ourts have consistently found that there is no private right of action for mere possession." MTD at 9:16–17. But that is not the question presented here; the question presented is whether Defendant's activities beyond mere possession—like, for example, integrating, configuring, customizing, and deploying the wiretapping device—suffice to establish that Defendant engaged in violations of the Wiretap Act by "play[ing] an active role" in the interception. *See* TAC ¶ 217. As a corollary, because the consumers in *Saleh* "at most allege[d] Nike possessed the code," that case is readily distinguishable. *See Saleh*, 562 F. Supp. 3d at 523.

**E. Plaintiffs Establish that Defendant Intentionally Used Intercepted Communications**

In *Smith II*, this Court held that Plaintiffs "plausibly allege[] that Rack Room 'intentionally used' 'intercepted' communications in violation of 18 U.S.C. § 2511(1)." *See Smith II*, 2025 WL 2210002, at *4. Attempting to challenge that holding, Defendant advances three arguments:

- "To the extent Plaintiffs rely on a predicate violation of 18 U.S.C. § 2511(1)(d), Plaintiffs do not allege such a claim." MTD at 5:7.
- "Plaintiffs do not identify any specific 'contents' of an intercepted wire or electronic communication that Defendant supposedly used." MTD at 5:26–6:2.
- "Plaintiffs do not allege facts supporting the requisite knowledge element." MTD at 6:17.

All three arguments are wrong. *First*, as previously noted, Plaintiffs sufficiently delineate the theories of liability under the Wiretap Act, and they expressly bring their claim "pursuant to 18 U.S.C. § 2520." *See*, *e.g.*, TAC ¶ 224; *see also id.* ¶¶ 5, 90, 138, 138, 215–23.

*Second*, even if Plaintiffs must specifically delineate the contents of communications that were used, they do exactly that by alleging that Defendant used "intercepted communications—including contact information submitted into sign-up units while checking out or signing up for rewards—to augment its marketing and advertising efforts." *See* TAC ¶ 177. Recognizing as much, Defendant asserts that "[s]uch addressing information is quintessential 'record information.'" MTD at 6:5-6. But as numerous courts—including this one—have noted:

> [A]ddresses, phone numbers, and URLs may be dialing, routing, addressing, or signaling information, but only when they are performing such a function. If an address, phone number, or URL is instead part of the substantive information conveyed to the recipient, then by definition it is "content."

*In re Google Inc. Cookie Placement Cons. Priv. Litig.*, 806 F. 3d 125, 137 (3d Cir. 2015); *see also Smith I*, 2025 WL 1085169, at *4 (noting that "an email address is generally 'content' when it is part of the body of an email," but not when "it is used in the 'to' line to direct the email").

*Third*, as this Court has previously held, Plaintiffs adequately allege that Defendant siphoned intercepted communications "into consumers profiles that were provided by the third party," and that Defendant "then used the consumer profiles, which it knew incorporated the intercepted communications, to guide its targeted advertisements." *See Smith II*, 2025 WL 2210002, at *4. Nothing more is needed to establish "knowledge." *See, e.g.*, TAC ¶¶ 5, 223.

## II. PLAINTIFFS ADEQUATELY ALLEGE A CLAIM UNDER CDAFA

Defendant asserts that "CDAFA does not recognize secondary liability in the form of aiding and abetting or conspiracy for a private cause of action." MTD at 11:11–12. Defendant raised the same argument in its first motion to dismiss, *see* ECF No. 45, and the Court expressly held that Plaintiffs "adequately alleged derivative liability of Rack Room pursuant to California Penal Code section 31." *See Smith I*, 2025 WL 10185169, at *5. Defendant also raised the same argument when challenging Plaintiffs' claim under section 632 of CIPA, *see* ECF No. 45, and the Court's analysis there is directly on point here:

> [CDAFA] does not expressly provide for derivative liability. However, under California Penal Code section 31, "[a]ll persons concerned in the commission of a crime … or [who] aid and abet in its commission … are principals in any crime so committed." Nothing in the language of [CDAFA] explicitly limits the application of section 31.

*See Smith I*, 2025 WL 1085169, at *5. Defendant declines to mention—let alone address—Cal. Penal Code § 31 and its applicability to CDAFA. *See generally* MTD at 11:9–12:2. Accordingly, the Court's holding in *Smith I* should control here too. *See, e.g.*, *Vera v. O'Keefe*, 791 F. Supp. 2d 959, 964 (N.D. Cal. 2011) (applying section 31 to a claim under section 632 of CIPA because "there is no exclusion to the applicability of Penal Code § 31 with respect to Penal Code § 632"); *Vaccaro v. Altais*, 2023 WL 7003211, at *5 (C.D. Cal. Oct. 23, 2023) (likewise applying section

31 to sections 632 and 632.7).

## III. PLAINTIFFS ADEQUATELY ALLEGE A CIPA CLAIM

### A. Plaintiffs Adequately Allege Intentional Use

Addressing Plaintiffs' claim under Cal. Penal Code § 631, Defendant argues that "Plaintiffs have not identify any specific contents of a communication that Defendant allegedly used." MTD at 13:1–4. For the same reasons previously articulated, that argument is incorrect. *See* section I.E.

### B. Plaintiffs Establish the Server-Side Interceptions Occurred in Transit

Defendant asserts that "Plaintiffs have not alleged and cannot allege that any server-side 'interception' occurred while it was 'in transit,' as required for a claim under Cal. Penal Code § 631(a)." MTD at 14:2–3. As an initial matter, "[a] Rule 12(b)(6) motion tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F. 3d 729, 732 (9th Cir. 2001). Because Defendant declines to challenge the client-side interceptions that the Court has already upheld, the analysis can begin and end there. *See, e.g.*, Fed. R. Civ. P. Rule 8(d)(2) ("If a party makes alternative statements, the pleading is sufficient if any of them is sufficient."). In any event, Defendant's argument runs headlong into authority from federal courts across the country, including the Ninth Circuit.

Addressing analogous software that forwarded email communications immediately upon receipt, the First, Sixth, Eleventh, and Seventh Circuits have all found that such "automatic routing software" sufficiently constitutes an interception "contemporaneous" with acquisition. *See, e.g.*, *United States v. Steiger*, 318 F. 3d 1039, 1050 (11th Cir. 2003) (internal quotations omitted); *Luis*, 833 F. 3d at 640 (finding an interception contemporaneous with transmission where the plaintiff alleged that his "instant messages, emails, and other electronic communications were allegedly forwarded to Awareness's own servers in California"); *United States v. Councilman*, 418 F. 3d 67, 85 (1st Cir. 2005) (*en banc*) ("[E]ven under a reading of the ECPA narrower than ours, automatic routing software that automatically forwarded duplicate copies of a user's messages *would* qualify as 'interception of E-mail within the prohibition of the ECPA.") (quotations omitted); *United States v. Szymuszkiewicz*, 622 F. 3d 701, 706 (7th Cir. 2010) (holding that interceptions by such automatic routing software are "contemporaneous by any standard").

The Ninth Circuit impliedly adopted that same approach in *In re Facebook, Inc. Internet*

*Tracking Litigation*, 956 F. 3d 589, (9th Cir. 2020). To be sure, *In re Facebook* principally discussed "the party exception" to CIPA and the Wiretap Act, but the Ninth Circuit's holding primarily hinged on the analysis in two cases—*In re Pharmatrak*, 329 F. 3d 9 (2003) and *United States v. Szymuskiewicz*, 622 F. 3d 701 (7th Cir. 2010)—addressing the "contemporaneity" requirement. *Id.* at 607. As the Ninth Circuit noted, *In re Pharmatrak* concerned "software that automatically duplicated part of the communication," whereas *United States v. Szymuszkiewicz* concerned "software that instructed [the] employer's email to duplicate and forward all emails the employer received to the defendant's own inbox." *Id.* In both circumstances, the First and Seventh Circuit rejected arguments concerning contemporaneity, finding instead that "the defendant had intercepted the communications and could be held liable." *Id.* By doing so, the Ninth Circuit reasoned that "[t]he First and Seventh Circuits have implicitly assumed that entities that surreptitiously duplicate transmissions between two parties are not parties to communications within the meaning of the Act." *Id.* at 607. After analyzing both cases, the Ninth Circuit then "adopt[ed] the First and Seventh Circuits' understanding that simultaneous, unknown duplication and communication of GET requests do not exempt a defendant from liability under the party exception." *Id.* at 608. To hold otherwise "would render permissible the most common methods of intrusion, allowing the exception to swallow the rule." *Id.*

In the same way that the First and Seventh Circuits' analysis of contemporaneity "implicitly" addressed the party exception, the Ninth Circuit's analysis of the party exception "implicitly" addressed the contemporaneity requirement. *Id.* Indeed, the Ninth Circuit recognized precisely as much in a footnote:

> In *Konop v. Hawaiian Airlines, Inc.*, we adopted a definition of "intercept" that encompassed both an "acquisition contemporaneous with transmission" and an act requiring a party to "stop, seize, or interrupt in progress or course before arrival." 302 F. 3d 868, 878 (9th Cir. 2002). In that case, we considered whether items viewed on a private website were intercepted, in violation of the Wiretap Act, not plug-ins that duplicated and sent GET requests, as we consider here.

*Id.* at 608. And by "adopt[ing] the First and Seventh Circuits' understanding," *see id.*, the Ninth Circuit thereby adopted the Seventh Circuit's determination that forwarding electronic communications immediately and automatically after receipt—like, for example, through code

embedded into a computer or server designed to effectuate very purpose—constitutes an "interception" that occurs "contemporaneous by any standard." *Szymuszkiewicz*, 622 F. 3d at 706; *see Pena v. GameStop*, 670 F. Supp. 3d 1112, 1120 (S.D. Cal. 2023) ("[C]ourts look to cases analyzing the FWA in applying CIPA's 'in transit' requirement."); *see also Klumb v. Goan*, 844 F. Supp. 2d 644, 661 (E.D. Tenn. 2012) (finding that "[p]rogramming a computer, either through the use of spyware or legitimate means, to automatically forward an e-mail upon receipt" was "contemporaneous enough"); *Zaratzian v. Abadir*, 2014 WL 4467919, at *6 (S.D.N.Y. Sept. 2, 2014) ("Assuming, without deciding, that an interception must be contemporaneous with the communication at issue here—the auto-forwarding of emails received by Zaratzian's email account to Abadir's email account—satisfies that standard.").

### C. Defendant's Interceptions Contain the Content of Electronic Communications

Defendant contends that "[t]he TAC is conspicuously silent on what, exactly, was purportedly intercepted and forwarded by Defendant's servers to Zeta (or any other third party)." *See* MTD at 15:15–16. That is incorrect. Along with alleging that Defendant utilizes client-side tracking tools from Zeta, Plaintiffs also allege that Defendant "integrates server-side code from Zeta to help intercept consumers' electronic communications and personally identifiable information." TAC ¶ 134. Plaintiffs then provide additional specificity, alleging that, "[t]hrough client-side and server-side tracking tools, Defendant helps Zeta intercept the content of consumers' electronic communications—including full-string URLs, button clicks, and form-field entries—alongside personally identifiable information like hashed email addresses and universal user IDs ("UUIDs") that link to consumer profiles." TAC ¶ 135. Nothing more is needed. *See, e.g.*, *Smith I*, 2025 WL 1085169, at *4 (reviewing substantively identical allegations and holding that "Plaintiffs have adequately alleged that the 'content' of their 'communications' was disclosed.").

## CONCLUSION

Defendant's motion to dismiss and strike should be denied in full.

Dated: November 21, 2025

**MARCUS RASHBAUM PINEIRO & MEYERS LLP**

By: /s/ *Michael A. Pineiro*
Michael A. Pineiro

Michael A. Pineiro (*pro hac vice*)
Christopher R. Reilly (*pro hac vice*)

**LEVIN LAW, P.A.**
Brian Levin (*pro hac vice*)
Jacob Polin (Cal. Bar No. 311203)

*Attorneys for Plaintiffs*