BLANK ROME LLP
Ana Tagvoryan (SBN 246536)
ana.tagvoryan@blankrome.com
Harrison Brown (SBN 291503)
Harrison.brown@blankrome.com
Victor Sandoval (SBN 344461)
victor.sandoval@blankrome.com
2029 Century Park East | 6th Floor
Los Angeles, CA 90067
Telephone:    424.239.3400
Facsimile:    424.239.3434

*Attorneys for Defendant*
Rack Room Shoes, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| DEMETRIUS SMITH, et al., | Case No. 3:24-cv-06709-RFL |
| Plaintiffs, | [*Assigned to Judge Rita F. Lin*] |
| v. | **REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE THIRD AMENDED COMPLAINT** |
| RACK ROOM SHOES, INC., | |
| Defendant. | Date: January 13, 2025<br>Time: 10:00 a.m.<br>Courtroom: 15 |
| | Complaint Filed: September 24, 2024<br>Complaint Served: October 9, 2024<br>Trial Date: None set |

**REPLY ISO MOTION TO DISMISS AND/OR STRIKE THIRD AMENDED COMPLAINT**

## I.    INTRODUCTION

Plaintiffs' Opposition relies on an inapplicable procedural crutch—the "law of the case" doctrine. Rather than engaging with the substantive deficiencies in their Third Amended Complaint ("TAC"), plaintiffs insist that because this Court sustained prior iterations of their complaint, it is now barred from scrutinizing the Amended Complaint, new theories, new factual allegations, and new applications of law. This premise is legally incorrect and easily rejected.

The filing of an amended complaint renders the prior complaint *functus officio*. Particularly where, as here, Plaintiffs have elected to expand their allegations—adding entirely new theories regarding "server-side" tracking, CRM integrations, and "usage" of data—the Court is not bound by its prior rulings on a narrower set of facts.

Substantively, Plaintiffs fail to identify the specific statutory basis for their Wiretap Act claims, relying instead on a "passive voice" interpretation for the crime-tort exception that defies its text and logic. They attempt to hold Defendant liable under CDAFA for the acts of others, despite clear authority that the statute does not support aiding and abetting liability. Finally, their new CIPA theories cannot properly allege that routine server data handing is an "interception in transit."

Because the TAC fails to state a claim under the pleading standards of Rule 12(b)(6), and because the law of the case doctrine does not shield an amended complaint from review, Defendant's motion should be granted.

## II.    THE LAW OF THE CASE DOCTRINE IS INAPPLICABLE.

Plaintiffs devote much of their Opposition brief to arguing that Defendant's motion is effectively a motion for reconsideration, which can be rejected under the law of the case doctrine unless "clearly erroneous." This ignores the procedural realities of this case and black letter law holding that the doctrine is inapplicable where the plaintiff files an amended complaint.

The Ninth Circuit has repeatedly held that once the plaintiff elects to file an amended complaint, the new complaint is the only operative complaint before the district court. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992) ("[A]fter amendment the original pleading no longer performs any function and is treated thereafter as non-existent[.]" (internal quotation

**REPLY ISO DEFENDANT'S MOTION TO DISMISS/STRIKE THIRD AMENDED COMPLAINT**

marks omitted)). As a consequence, "the filing of an amended complaint does not ask the court to reconsider its analysis of the initial complaint." *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1043 (9th Cir. 2018). "The amended complaint is a new complaint, entitling [Defendant] to judgment on the [motion to dismiss the] complaint's own merits[.]" *Id.* "The district court is not…bound by any law of the case." *Id.* "[P]ermitting the filing of an amended complaint requires a new determination. That leaves the district court free to correct any errors or misunderstandings without having to find that its prior decision was 'clearly erroneous.'" *Id.* (citing *United States v. Cuddy*, 147 F.3d 1111, 1114 (9th Cir. 1998).) In other words, because Plaintiffs chose to file an amended complaint, they have opened the door to a fresh challenge to the sufficiency of their pleading—and, here, the TAC does not withstand that challenge.

Further, the TAC adds allegations and claims about Defendant's CRM platforms, server-side tracking, and alleged "use" of intercepted communications. *See* ECF No. 89-4. These are not mere details; they introduce new actors, new technologies, and new theories that were absent from the SAC. Because the TAC is materially broader and different than its predecessor, any prior rulings on the earlier complaint's sufficiency are not binding and should not limit the Court's analysis of the TAC. To hold otherwise would insulate legally deficiencies theories from additional scrutiny simply because they were grafted onto a case that survived a prior motion.

## III.    THE WIRETAP ACT CLAIM FAILS.

### A.    Plaintiffs Still Fail to Identify the Statutory Basis.

Plaintiffs dismiss Defendant's argument regarding the vagueness of the statutory basis for Plaintiffs' Wiretap Act claim as a request for a "more definite statement." Opp. at 4. This misses the point. A complaint must provide "fair notice" of the claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Plaintiffs claim they bring their action "pursuant to 18 U.S.C. § 2520" but § 2520 is mere a remedial statute; it requires a predicate violation of the substantive provisions of the Act. The statute provides a remedy to "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used ***in violation of this chapter***." 18 U.S.C. § 2520. By failing to specify the violation at issue, or whether they are proceeding under § 2511(1)(a) (interception), § 2511(1)(d) (use), or some other subsection,

**REPLY ISO DEFENDANT'S MOTION TO DISMISS/STRIKE THIRD AMENDED COMPLAINT**

Plaintiffs force Defendant—and the Court—to guess at the elements they intend to prove, and the particular violation Defendant must be held to answer. This does not suffice to state a claim.

Plaintiffs' reliance on the general pleading rule that the details can be fleshed out in discovery is unavailing. Opp. at 3. While a plaintiff need not plead evidence, it must plead a coherent legal theory. Because Plaintiffs have not plead a coherent legal theory, a 12(b)(6) motion is more appropriate than a 12(e) motion. If Plaintiffs mean to allege Defendant intercepted communications under § 2511(1)(a), they should say so; if they mean to say Defendant used communications unlawfully intercepted by someone else, they should invoke § 2511(1)(d). The distinction matters, as the elements and analysis differ, as does the basis by which the Court may hold a party-participant liable under the Wiretap Act for the acts of others. Plaintiffs cannot evade this by pointing to a grab-bag of factual allegations and expect Defendant to assemble them.

**B.    The Crime Tort Exception Does Not Apply to Find an Illegal Interception.**

Section 2520(a) creates a civil liability for three specific acts regarding wire, oral, or electronic communications: interception, disclosure, and use, all of which are expressly premised on an "illegal interception." The liability then extends to person "engaged in **that violation**." 18 U.S.C. § 2520. What is "that violation" here where Meta and Attentive are the alleged interceptors, and not Rack Room? That is the question this Court needs to answer. If the violation is the interception by Meta and Attentive with Rack Room's intent/purpose imputed to them, that would be an improper application of the statute.

Plaintiffs argue that the "passive voice" language of the crime tort exception—"intercepted for the purpose of"—means the interceptor's intent is irrelevant, and only Defendant's intent matters. Opp. at 4-6. However, this interpretation ignores the first half of the statutory sentence, which—in direct contravention of Plaintiffs' interpretation—focus the exception on the intercepting person: "It shall not be unlawful under this chapter **for a person** not acting under color of law **to intercept** a wire, oral, or electronic communication… **unless such communication is intercepted for the purpose** of committing any criminal or tortious act[.]" 18 U.S.C. § 2511(2)(a)(ii)(d) (emphasis added). And, as even Plaintiffs' authority recognizes,

**REPLY ISO DEFENDANT'S MOTION TO DISMISS/STRIKE THIRD AMENDED COMPLAINT**

"context can confine a passive-voice sentence to a likely set of actors." *Bartenwerfer v. Buckley*, 598 U.S. 69, 76 (2023) (citing *E. I. du Pont de Nemours & Co. v. Train*, 430 U.S. 112, 128–129 (1977)). Here, the context is supplied by the first half the sentence, which focuses on the "person…intercept[ing] a wire, oral, or electronic communication". 18 U.S.C. § 2511(2)(a)(ii)(d). Accordingly, there is only one actor whose purpose is relevant to the exception—the person intercepting the communication. *See also Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022) ("**[t]he recording party** must also have the independent criminal or tortious purpose[.]") (emphasis supplied). Here, the TAC makes clear that Rack Room is ***not*** the person intercepting the communications.

But even if the Court agreed with Plaintiffs that only the purpose of the "interception," matters, using customer data for marketing is not a criminal act, nor is it inherently a tort. Plaintiffs assert that it becomes tortious because its use allegedly violates Defendant's privacy policy and amounts to an invasion of privacy. Opp. at 6. But that is a contract claim, not a privacy tort. Moreover, Plaintiffs do not allege that any provision of the privacy policy is violated by Rack Room's use of information voluntarily provided to it, or that the third parties were aware of Rack Room's privacy policy. This makes this case categorically different than *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021) because in that case, *Google* allegedly intercepted and used communications in contravention of Google's Privacy Policy. And, Plaintiffs have not "adequately alleged that Attentive, Meta, or the other third-parties acted with tortious purpose, because Plaintiffs have not alleged that the third parties were aware that Rack Room" had allegedly breach the Privacy Policy, or that they themselves broke their policies. ECF No. 85 at 8.[1]

//

//

---

[1] Further, Plaintiffs' argument is circular. The only tort Plaintiffs identify is the invasion of privacy caused by the data collection itself. In other words, Plaintiffs claim that the Defendant intercepted communications with the "purpose" of committing the tort that consists of that interception. Indeed, Plaintiffs fail to cite a single case where a website operator's alleged breach of a privacy policy was sufficient to satisfy the crime-tort exception, despite no allegation of the alleged interceptor's breach of any policy or any other indication of its purpose.

**REPLY ISO DEFENDANT'S MOTION TO DISMISS/STRIKE THIRD AMENDED COMPLAINT**

**C.      Defendant Did Not "Engage In" a Violation of Section 2511.**

The statute allows recovery from "the person or entity" engaged in the violation. Plaintiffs ask the Court to find that Rack Room's intent gave rise to an illegal interception by the third parties which Rack Room then "engaged in" for purposes of the private right of action.  Plaintiffs rely heavily on *Luis v. Zang*, 833 F.3d 619 (6th Cir. 2016). However, Plaintiffs ignore the critical distinction—the private right of action extended to the defendant in *Luis* because the spyware manufacturer could be liable—i.e., violated the chapter—under Section 2512 as a third party who manufactured the device for the specific purpose of interception.

Here, it is unclear which section of the Wiretap Act has been violated and what violation Rack Room is said to have engaged in. Rack Room is not a third party and it did not manufacture, market, or sell the tracking pixels. Extending liability from the manufacturer of spyware (as in *Luis*) to a website operator would represent an unprecedented expansion of the Wiretap Act. *See Saleh v. Nick, Inc*., 562 F. Supp. 3d 503, 522 (C.D. Cal. 2021). Plaintiffs are wrong that *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1011 (N.D. Cal. 2024) supports their argument. First, Plaintiffs are incorrect that their allegations that Defendant "customized," "configured," "deployed," and "intentionally integregate[d]" amounts to "active operation". Opp. at 10. For a website operator to install analytics technology on its website, the operator **must** customize, configure, deploy, and integrate the code onto its website. If Plaintiffs' argument were correct, every website operator could be said to "actively operate" website tracking technology—even if the providers of that technology provide little-to-no ability to actually operate the technology after installed. Even if that were not the case, Plaintiffs cannot argue that any of Defendant's conduct amounts to "manufacture" of a wiretapping device under Section 2512(1)(b). And, *Luis v. Zang* requires both because the alleged violation there was the manufacture of a wiretapping device. *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. at 1011 ("The Court agrees with [the "narrow" holding in *Luis*] that Section 2520 at the very least provides a private cause of action **to enforce Section 2512(1)(b) against a defendant who also** played an active role in the unlawful interception, disclosure, or use of the plaintiff's communication."). There is no violation, or liability for "active operation," alone.

**REPLY ISO DEFENDANT'S MOTION TO DISMISS/STRIKE THIRD AMENDED COMPLAINT**

Further, Plaintiffs' attempt to distinguish *Saleh*, 562 F. Supp. 3d at 522 fails. That case addressed the very question presented here—whether installing analytics technology on a website—suffice to bring this case under *Luis*. It does not: "*Luis* is distinguishable, however, because Plaintiff here does not allege [Rack Room] manufactured, marketed, or sold [the third parties'] code." *Saleh,* 562 F. Supp. 3d at 523. The *Saleh* court found that substantively identical allegations as here amounted to, at most, possession—this court should find the same.

### D.    No "Use" Liability Under § 2511(1)(d)

Plaintiffs argue that they adequately allege "use" of illegally intercepted communications by claiming Defendant used "contact information…to augment its marketing." TAC ¶ 177. This is incorrect. As this Court has recognized, "an email address is generally 'content' where it is part of the body of an email," but not when "it is used in the 'to' line to direct the email." *Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *4 (N.D. Cal., Apr. 4, 2025). And, the allegation that only "contact" information is used is akin to alleging that only the "to" line of a mailing is used. Indeed, Plaintiffs expressly allege that the "contact" information is derived from the form on the websites asking for Plaintiffs' delivery address—the literal "to" line to direct mail. TAC ¶ 87 fig. 22; ¶ 115 fig. 30. Accordingly, the logical, and only plausible, conclusion, is that the alleged "contact" information allegedly used is "record" information. Because Plaintiffs fail to allege "contents," Plaintiffs fail to allege a "use" violation. And, because liability for use extends only to illegally intercepted communications, no use violation can be alleged here where the underlying interception was not in violation of the statute.

Plaintiffs do not dispute that there is no allegation that Defendant knew (or had reason to know) that any information it used was derived from an unlawful interception. Rather, they assert that nothing more is required than alleging that Defendant "used the [third parties'] consumer profiles, which it knew incorporated the intercepted communications[.]" Opp. at 12. But, this is entirely conclusory and Plaintiffs any *facts* supporting the allegation that such content communications are used, at all. This does not suffice and is an independent basis for dismissal.

### IV.    THE CDAFA CLAIMS FAILS.

Recognizing that the CDAFA does not provide for the derivative liability at issue here,

**REPLY ISO DEFENDANT'S MOTION TO DISMISS/STRIKE THIRD AMENDED COMPLAINT**

Plaintiffs rely on Penal Code § 31. However, Plaintiffs ignore that § 31 defines who is the "principal" in a criminal offence. Nothing in its text suggests that it should be applicable to the civil suit at issue here. Its text expressly limits its application "the commission of a crime, whether it be felony or misdemeanor." Cal. Pen. Code § 31. And, moreover, the term "principal" is not used in the CDAFA. Cal. Pen. Code § 502.  Accordingly, § 31 is irrelevant. Further, when the legislature "enacts a statute under which a person may sue and recover damages from a private defendant for the defendant's violation of some statutory norm, there is no general presumption that the plaintiff may also sue aiders and abettors." *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 182 (1994). The general and inapplicable reference to § 31 cannot defeat the fact that the CDAFA does not provide for aidor and abettor liability. Indeed—the CDAFA's civil liability provision is expressly limited to "action[s] against the violator"—not the violator's accomplices or aiders and abettors. Cal. Pen. Code § 502(e)(1). Plaintiffs' reliance on *Vera v. O'Keefe*, 791 F. Supp. 2d 959, 965 (S.D. Cal. 2011) and *Vaccaro v. Altais*, 2023 WL 7003211, at *5 (C.D. Cal. Oct. 23, 2023) is misplaced because those cases concerned § 31's application to CIPA—not the CDAFA. And, whereas § 31, when applied to CIPA, "allows for [the defendant] to be viewed as a principal whether or not she actually physically recorded the confidential conversation[ because t]he plain language of [CIPA] does not limit liability to the person who has physically recorded a confidential conversation." *Vera*, 791 F. Supp. 2d at 965. The same is not true when applied to the CDAFA, which expressly targets only the "violator" who "knowingly accesses" the computer system—not "any person" as in CIPA sections 631, 632, and 637.2. Cal. Pen. Code §§ 502(c), (e)(1); 631; 632; 637.2. Because the text of the CDAFA is categorically different than the text of CIPA, such that is at least ambiguous as to whether section 31 should apply to it, neither *Vera* nor *Vaccaro* supports imposing § 31 onto the CDAFA.[2] *See, e.g., U.S. v. Alfeche*, 942 F.2d 697, 699 (9th Cir. 1991).

---

[2] Conversely, Plaintiffs do not even attempt to address *Genentech, Inc. v. JHL Biotech, Inc.*, 2019 WL 1045911, at *14 (N.D. Cal. Mar. 5, 2019) and *Oracle Corp. v. SAP AG*, 734 F. Supp. 2d 956, 967 (N.D. Cal. 2010), which correctly found that to hold Defendant liable for Meta and Attentive's (and the others') alleged conduct requires allegations that they acted as Defendant's agent. Nor do Plaintiffs attempt to argue that they have alleged, or can allege, facts sufficient to state a claim that the third parties acted as Defendant's agent.

**REPLY ISO DEFENDANT'S MOTION TO DISMISS/STRIKE THIRD AMENDED COMPLAINT**

## V.    THE NEW CIPA CLAIMS FAIL.

### A.    Plaintiffs Do Not Allege that the Content of Communications Were Used.

For the same reasons as discussed above with respect to the Wiretap Act claim, because Plaintiffs allege only that Rack Room used "contact" information, and that such information is record information. Plaintiff cannot state a claim premised on the "use" of the content of communications under CIPA. *Smith I*, 2025 WL 1085169, at *4.

### B.    No CIPA "Server Side" Claim Because Not Intercepted in Transit

Recognizing that they cannot plead interception in transit for their server-side interception claim, Plaintiffs incorrectly argue that their server-side interception claim is insulated from review because of their client-side interception claim, and that the Ninth Circuit "impliedly adopted" an approach to the contemporaneousness requirement that allows their claim to survive.

As an initial matter, although Plaintiffs are correct that "[a] Rule 12(b)(6) motion tests the legal sufficiency of a claim;" they are incorrect that the sufficiency of the server-side claim is unreviewable because the Court previously found that the client-side claim is adequately stated. *Navarro v. Block*, 250 F. 3d 729, 732 (9th Cir. 2001). Just because the two claims are brought under the same statute, does not mean that they are the same claim. When assessing whether certain claims brought under the same statute are the "same claim" courts typically look to, among other requirements, where the claims arise out of the same set of facts. *See, e.g., Rose Ct., LLC v. Select Portfolio Servicing, Inc.*, 119 F.4th 679, 686 (9th Cir. 2024); *Pasternak v. Trans Union LLC*, 2008 WL 4544370, at *3 (N.D. Cal. Sept. 30, 2008) (subsequent claim brought under different subsection of same statute not same claim for purposes of claim preclusion because "the claims arise from distinct facts and rights"). Here, the server-side interception claim requires entirely different facts than the client-side interception claim that this Court previously upheld. Not only does it differ with respect to the technical underpinnings of the claim, but it does not even involve the same parties—Zeta was not even named in any of the past complaints. The claims would require entirely different evidence relating to the information shared by server tracking, where that information was derived from, and how server-side tracking operates. To find them one and the same would insulate new, legally deficiencies theories from scrutiny

9

simply because they were grafted onto a case that survived a prior motion.

Further, Plaintiffs are incorrect that the Ninth Circuit "impliedly adopted" an approach to the contemporaneousness requirement that allows their claims to survive. *In re Facebook, Inc. Internet Tracking Litigation*, 956 F. 3d 589, (9th Cir. 2020) addressed client-side tracking—not server-side tracking. The Court found, in-line with *In re Pharmatrak, Inc. Privacy Litig.*, 329 F.3d 9, 22 (1st Cir. 2003) and *United States v. Szymuszkiewicz*, 622 F.3d 701 (7th Cir. 2010), that because client-side tracking operates through "simultaneous, unknown duplication and communication of GET requests" it does not qualify for the party exemption. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 608.[3]

Indeed, even if this Court were to find that the Ninth Circuit impliedly adopted the Seventh Circuit's opinion in *Szymuszkiewicz* with respect to the contemporaneousness requirements (and, it did not), that would not save Plaintiffs' claim, because *Szymuszkiewicz* involved "a software that instructed [defendant's employer's] email to duplicate and forward all emails [defendant's employer's] received[.]" *Id.* at 607 (discussing *Szymuszkiewicz,* 622 F.3d at 703). "The court determined that, because the copies were sent contemporaneously with the original emails, the defendant had intercepted the communications and could be held liable." *Id.* (discussing *Szymuszkiewicz,* 622 F.3d at 706). Here, by contrast, in the context of server-side tracking, there are no allegations of simultaneous duplication of information by the computer before it is sent to two respective servers. *See also In re Pharmatrak, Inc.*, 329 F.3d at 22 (addressing software that "automatically duplicated part of the communication between a user and a pharmaceutical client and sent this information to a third party (Pharmatrak)."). Rather, by definition, information is received by its destination server, before being routed elsewhere. Mot. at 14-15. And, the Ninth Circuit has *expressly* held that, "to be 'intercepted' in violation of the Wiretap Act, it must be acquired during transmission, not while it is in electronic storage." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). This interpretation "is consistent with the structure of the

---

[3] Not only did that case not speak to the contemporaneity requirement, but even if it had, it would only support the notion that client-side tracking is plausibly contemporaneous because it operates through "simultaneous, unknown duplication and communication of GET requests" that are sent to the third parties' and the website operator's servers in tandem. *Id.* at 608 n. 9.

**REPLY ISO DEFENDANT'S MOTION TO DISMISS/STRIKE THIRD AMENDED COMPLAINT**

ECPA, which created the S[tored Communications Act ("SCA")] for the express purpose of addressing 'access to *stored* ... electronic communications and transactional records.' " *Id*. (quoting S.Rep. No. 99–541 at 3) (emphasis in original). If Plaintiffs' "position were correct and acquisition of a stored electronic communication were an interception under the Wiretap Act, the government would have to comply with the more burdensome, more restrictive procedures of the Wiretap Act to do exactly what Congress apparently authorized it to do under the less burdensome procedures of the SCA. Congress could not have intended this result." *Id.*

In sum, the law of this Circuit is clear—Plaintiff's server-side interception claim must fail because there can be no contemporaneous interception where the communication had completed its journey to Defendant by the time it was allegedly routed to another party.

**C.    No CIPA "Server Side" Claim Because No Content of Communications.**

Defendant's opening motion argued that "Plaintiffs purposefully group together client-side and server-side tracking tools to obfuscate the fact that Plaintiffs cannot allege basic facts about content of communication with respect to their" server-side tracking claim. Mot. at 15 (citing TAC ¶ 135). Plaintiffs' only response is to quote the offending allegation and assert that "[n]othing more is needed." Opp. at 15 (citing *Smith I*, 2025 WL 1085169, at *4). However, *Smith I*, 2025 WL 1085169, at *4 addressed only whether allegations that relate to the client-side tracking were sufficient. The issue here, is that Plaintiffs have simply added "sever-side" tracking claims to those allegations, without alleging which of the communications are allegedly captured client-side, and which were allegedly captured server-side. This does not suffice under the federal pleading standards, as neither the parties, nor the court, can discern whether Plaintiffs can adequately allege that server-side tracking captures the content of communications.[4]

**VI.    CONCLUSION**

The Court should dismiss the Wiretap Act, CDAFA, CIPA "use," and CIPA "server-side" interception claims. In the alternative, it should strike the "server-side" interception claim.

---

[4] If the Court finds that the server-side claim is not an independent claim, it should order the server-side interception allegations stricken from the TAC.

**REPLY ISO DEFENDANT'S MOTION TO DISMISS/STRIKE THIRD AMENDED COMPLAINT**

DATED:  November 28, 2025          BLANK ROME LLP


By: */s/ Ana Tagvoryan*
　　　　Ana Tagvoryan
　　　　Victor Sandoval
Attorneys for Defendant
RACK ROOM SHOES, INC.

**REPLY ISO DEFENDANT'S MOTION TO DISMISS/STRIKE THIRD AMENDED COMPLAINT**