**LEVIN LAW, P.A.**
Brian Levin (*pro hac vice*)
Jacob Polin (Cal. Bar No. 311203)
2665 S. Bayshore Dr., Ph. 2B
Miami, FL 33133
Telephone: (305) 402-9050
E-Mail: brian@levinlawpa.com
jpolin@levinlawpa.com

**MARCUS RASHBAUM PINEIRO & MEYERS LLP**
Michael A. Pineiro (*pro hac vice*)
Christopher R. Reilly (*pro hac vice*)
2 South Biscayne Blvd., Suite 2530
Miami, FL 33131
Telephone: (305) 400-4260
E-Mail: mpineiro@mrpfirm.com
creilly@mrpfirm.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DEMETRIUS SMITH, ROBIN SAVAGE, and MIA WILLIAMS<br><br>Plaintiffs,<br><br>v.<br><br>RACK ROOM SHOES, INC.<br><br>Defendant. | Case No. 3:24-cv-06709-RFL<br><br>[*Assigned to Judge Rita F. Lin*]<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANT'S ADMINISTRATIVE MOTION FOR ORDER REGARDING COUNSEL COMMUNICATIONS AND DESIGNATION OF SINGLE LEAD TRIAL COUNSEL**<br><br>Complaint Filed: September 24, 2024<br>Complaint Served: October 9, 2024<br>Trial Date: None set |

Through an administrative motion, Defendant attempts to exploit an inadvertent transcription error in discovery-related email correspondence sent by undersigned counsel. As is evident from the email itself, the expletive term that appears in the email was very clearly <u>not</u> directed at defense counsel, and instead was the result of a dictation error that occurred amid significant background noise in my house. Within minutes of sending the email, undersigned counsel realized the transcription error and immediately and profusely apologized to opposing counsel, both by email and voicemail. Both went unreturned. Undersigned counsel takes full responsibility—and is very sorry—for his failure to proofread the email before sending it. But Defendant's motion is a step too far and is unsupported. The motion not only inaccurately portrays the email correspondence but also mischaracterizes the discovery record and intends to cause the very thing that it purportedly seeks to remedy—delay and disruption. The motion should be denied on the papers. If not, Plaintiffs' counsel respectfully requests a hearing on the matter.

## **<u>BACKGROUND</u>**

On November 17, 2025, Plaintiffs noticed the deposition of David Pamperin, a "Business Intelligence Developer" at Defendant Rack Room Shoes, for December 5th via Zoom. After receiving that notice, Defendant objected to the deposition and sought a protective order. On December 5th, the parties filed a joint discovery letter to Magistrate Judge Kim regarding this discovery dispute. ECF No. 137. In that joint discovery letter and during prior conferrals, Defendant never raised any objection to the deposition taking place via Zoom.

On December 17th, Judge Kim denied Defendant's motion for a protective order. ECF No. 141. The next day, on December 18th, undersigned counsel emailed defense counsel at 11:16 a.m. PST/2:16 p.m. ET, requesting that they send us three days during which Mr. Pamperin was available for his Zoom deposition during the weeks of January 12th and January 19th. *See* Mot., Ex. A at 2. Plaintiffs originally noticed the deposition for Zoom because Mr. Pamperin resides and works in North Carolina, where Defendant is located. But the day following the Court's Order and within a few hours of receiving our correspondence, defense counsel demanded that the deposition occur in person and in California. Because we believed this new objection sought to thwart the Court's discovery order, I sent an email, from my car, responding that "[w]e're doing it by [Z]oom"

because "it's our depo [that we noticed]." I asked defense counsel to send us dates and noted that if they gave us an issue regarding the location, we'd move for contempt. *See id*. at 2.

As a follow up, once I arrived at my house, I prepared another short email to defense counsel on this matter at 7:28 p.m. ET, noting that in their discovery letter (that was denied by Judge Kim) Defendant never raised an objection to the deposition being conducted by Zoom. *Id*. at 2. I dictated the email using my phone's dictation app from my bedroom, because all three of my children were home, including my son, who is a toddler. While dictating that email, my son burst into the room and he playfully blurted out several sentences that collectively amounted to a request for my attention. After asking him to lower his voice, I gently shooed him out of the room. During this exchange, I was unaware that the dictation function was still on, and that it was attempting to transcribe what it could decipher from that brief exchange. Once my son was out of the room, I made the mistake of sending the email without proof-reading it. As the Court can see from the email, the first two sentences of the email are straightforward: "I also should note that when we noticed the deposition it was by Zoom. You did not raise to the court any issues with that in your joint letter." *Id*. Following those two sentences, the dictation translated part of the garbled exchange into a two-word non-sequitur containing a capitalized expletive.

As the email reflects, there is no doubt that the expletive was neither directed to defense counsel nor intended to be part of the email. It makes no sense within the context of the email. It is a clear—and incredibly unfortunate—transcription error. And I am deeply sorry and embarrassed that I failed to review the dictated message before I sent it to defense counsel.

A few minutes later, I double-checked the email that I had sent to defense counsel, and it was then that I first noticed my mistake. I was—and still am—incredibly mortified, and I immediately sent the below email to defense counsel at 7:48 p.m. ET:

> Ana,
>
> I just reread my email to you and I saw that it contained a random expletive that I never actually wrote. I was dictating the email on my phone when my 3 year old son came into the room, yelling about something, and somehow that word ended up in my email. I certainly should, and normally would have, proofed the email before sending. I am incredibly mortified. I do not use that word. It's horrifying to me that this ended up in an email to you. Please

> disregard it. It was a pure dictation error and not intended. Please accept my sincere, sincere apologies. Again, I am totally horrified that this happened and I will never dictate another email again.
>
> Michael

*See id*. at 1. A few moments later, at 7:59 p.m. ET, I called defense counsel and left a lengthy voicemail reiterating my deep and sincere apologies for the horrifying mistake.

Defense counsel never responded to my email or returned my call. This motion, filed on Friday evening, was the first—and only—response that I received.

Before addressing other aspects of the motion, I want to reiterate how remorseful I feel for my mistake. I take civility and decorum extremely seriously, and I would never direct an expletive or improper comment to opposing counsel. In my 18 years as a litigator, I have never been accused of acting unprofessionally, much less of sending an email with inappropriate language. I have been appointed to several leadership positions within the South Florida community based on my professionalism, including the Local Rules Committee for the Southern District of Florida as well as serving as a Florida Bar-nominated commissioner on multiple judicial nominating commissions. And I have previously clerked for a federal judge and have an intimate understanding of the importance of civility in the practice of law and in federal actions like this one. I sincerely apologize to defense counsel and the Court for my failure to review the email before I sent it, and I assure defense counsel and the Court that it will not happen again.

Notably, before this mistake, there has not been any allegation by defense counsel that my communications have not been civil or professional.

## DISCUSSION

The Court should deny the relief sought by Defendant. ***First***, the email at issue here—containing an inadvertent transcription error that was not uttered, let alone directed to opposing counsel, and for which undersigned counsel is incredibly apologetic—does not give rise to the rather extraordinary and unfounded relief sought: removal of undersigned as lead counsel and an order requiring a California-licensed lawyer (or Mr. Levin) to serve as lead counsel. Indeed, Defendant does *not* cite to any legal authority where a court entered a similar order, especially under these circumstances where the offending communication or conduct was unintentional. That

is because there is no precedent for what Defendant seeks here, as Plaintiffs are entitled to select their lead counsel of choice and there is no requirement to have a local lead counsel.

In addition to lacking legal support, Defendant's motion seeks relief based on an inaccurate depiction of the facts. In multiple places, Defendant insinuates—or outright states—that the "gendered explicative" was intentionally conveyed. *See, e.g.*, Mtn. at 4:14. But as evinced by the record and this response, the opposite is true: Plaintiffs' counsel regrettably sent an email containing a random and unintentional expletive that appeared in the correspondence through a transcription error. *See* Mtn, Ex. A. Recognizing as much, Defendant responds by waving aside "ostensible intent," *see* Mtn. at 4:16, but as courts have noted, "intent" is precisely what matters here. *See Int'l Tech. Marketing, Inc. v. Varint Systems, Ltd.*, 991 F. 3d 361, 368 (2d Cir. 2021). And the unintentional nature of the mistaken expletive is plain and clear from the email itself and from my actions immediately after I realized the mistaken transcription.

***Second***, Defendant's argument that discovery has been delayed or disrupted because Plaintiffs use both Mr. Pineiro and Mr. Levin as lead counsel has no basis in fact. According to Defendant, "Plaintiffs have indicated that both Brian Levin … and Michael Pineiro … are lead counsel," and that "communications and availability for discussions have been divided as between them." *See* Mtn. at 2:14; *id.* at 3:23. This complaint is not only irrelevant but also makes little sense. Plaintiffs have divided offensive and defensive discovery between two firms: my firm has focused primarily on Plaintiffs' requests for discovery, and Levin Law has focused primarily on Defendant's requests for discovery. Plaintiffs have done this to expedite the discovery process, not to bog that process down. It is customary to have separate co-counsel lead different aspects of discovery in putative nationwide class actions like this one. Indeed, defense counsel routinely communicates its discovery positions through several different lawyers—including Ms. Tagvoryan, Mr. Sandoval, and Ms. Barry (who was admitted pro hac vice). By way of example, all three of these defense lawyers have sent discovery related emails in just the last week: Ms. Tagvoryan emailed objections to Mr. Pamperin's Court-ordered deposition; Mr. Sandoval emailed regarding Defendant's responses to requests for production; and Ms. Barry emailed regarding Defendant's requests for production. Thus, Defense counsel engages in the very same division of

labor regarding discovery that it claims is disruptive and now seeks to prohibit.

Further, there is no record of Plaintiffs delaying discovery that supports this motion. The Court has not granted any motions to compel against Plaintiffs. *See* ECF No. 129 (paperless order denying motion to compel without prejudice); ECF No. 141 (order denying all motions to compel by Defendant). Meanwhile, the Court has granted Plaintiffs' motion to compel. *See* ECF No. 115 (order granting in part Plaintiff's motion to compel on various issues); ECF No. 141 (order denying protective order regarding Pamperin deposition). In fact, the most challenging aspect of discovery has been obtaining Defendant's compliance with a September 29, 2025, discovery order, *see* ECF No. 115, which required the production of documents and which Defendant has avoided.

Thus, Defendant's solution here—*i.e.*, to "streamline" discovery by reducing discovery communications and conferrals to one lead counsel for Plaintiffs—will not assist the discovery process. To the contrary, it will significantly slow it down. By way of example, as recently as this week, defense counsel reiterated their refusal to proceed with a remote deposition for Mr. Pamperin, and Plaintiffs' counsel responded by again stating their intent to seek court intervention if necessary. To that response, defense counsel curtly replied, "[p]lease have Brian Levin reach out to me to arrange a time to discuss." And since then, defense counsel has refused to supply a time to meet and confer on the date and location of Mr. Pamperin's Court-ordered deposition.

As reflected by defense counsel's unwillingness to engage, nothing about their proposal is intended to make discovery more efficient. Instead, the motion appears designed to gain tactical advantage by leveraging an unintentional mistake. The Court should reject this gamesmanship.

## CONCLUSION

This is ultimately not an issue that should require the Court's attention. Despite my profound and genuine contrition for failing to proofread the email containing a transcription error, Defendant now attempts to use my mistake as a basis for seeking extreme relief that is unsupported by any legal authority, that affords them a tactical advantage in the case, and that strips Plaintiffs of their choice of lead counsel. Because my mistake was unintended and will never be repeated, and because the motion is unfounded and tactical, Defendant's motion should be denied.

Dated: December 23, 2025

**MARCUS RASHBAUM PINEIRO & MEYERS LLP**

By: *<u>/s/ Michael A. Pineiro</u>*
Michael A. Pineiro

Michael A. Pineiro (*pro hac vice*)
Christopher R. Reilly (*pro hac vice*)

**LEVIN LAW, P.A.**
Brian Levin (*pro hac vice*)
Jacob Polin (Cal. Bar No. 311203)