**LEVIN LAW, P.A.**
Brian Levin (*pro hac vice*)
Jacob Polin (Cal. Bar No. 311203)
2665 S. Bayshore Dr., Ph. 2B
Miami, FL 33133
Telephone: (305) 402-9050
E-Mail: brian@levinlawpa.com
jpolin@levinlawpa.com

**MARCUS RASHBAUM PINEIRO & MEYERS LLP**
Michael A. Pineiro (*pro hac vice*)
Christopher R. Reilly (*pro hac vice*)
2 South Biscayne Blvd., Suite 2530
Miami, FL 33131
Telephone: (305) 400-4260
E-Mail: mpineiro@mrpfirm.com
creilly@mrpfirm.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DEMETRIUS SMITH and MAIA WILLIAMS, *individually and on behalf of all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>RACK ROOM SHOES, INC.<br><br>Defendant. | Case No. 3:24-cv-06709-RFL<br><br>[*Assigned to Judge Rita F. Lin*]<br><br>PLAINTIFFS' NOTICE OF MOTION & MOTION FOR CLASS CERTIFICATION<br><br>DATE: August 25, 2026<br>TIME: 10:00 A.M.<br>PLACE: Courtroom 15, 18th Floor<br><br>Complaint Filed: September 24, 2024<br>Complaint Served: October 9, 2024<br>Trial Date: None set |

TO THE COURT, DEFENDANT, AND ITS COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on August 25, 2026, at 10:00 a.m., or as soon thereafter as this matter can be heard by the Honorable Rita F. Lin of the United States District Court, Northern District of California, located at 450 Golden Gate Ave., San Francisco, CA 94102, Courtroom 16, 18th Floor, Plaintiffs will and hereby do move for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure. This motion is based upon: 1) this notice of motion; 2) the motion and memorandum in support; 3) the attached exhibits; 4) the affidavits of Michael A. Pineiro, esq., Christopher R. Reilly, esq., Demetrius Smith, and Maia Williams; and 5) the expert report of Anya Verkhovskaya.

DATED: May 30, 2026

**MARCUS RASHBAUM PINEIRO & MEYERS LLP**

By: *___/s/ Christopher R. Reilly___*
Christopher R. Reilly

**LEVIN LAW, P.A.**
Brian Levin (*pro hac vice*)
Jacob Polin (Cal. Bar No. 311203)
2665 S. Bayshore Dr., Ph. 2B
Miami, FL 33133
Telephone: (305) 402-9050
E-Mail: brian@levinlawpa.com
jpolin@levinlawpa.com

**MARCUS RASHBAUM PINEIRO & MEYERS LLP**
Michael A. Pineiro (*pro hac vice*)
Christopher R. Reilly (*pro hac vice*)
2 South Biscayne Blvd., Suite 2530
Miami, FL 33131
Telephone: (305) 400-4260
E-Mail: mpineiro@mrpfirm.com
creilly@mrpfirm.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DEMETRIUS SMITH and MAIA WILLIAMS, *individually and on behalf of all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>RACK ROOM SHOES, INC.<br><br>Defendant. | Case No. 3:24-cv-06709-RFL<br><br>[*Assigned to Judge Rita F. Lin*]<br><br>MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION<br><br>DATE: August 25, 2026<br>TIME: 10:00 A.M.<br>PLACE: Courtroom 15, 18th Floor<br><br>Complaint Filed: September 24, 2024<br>Complaint Served: October 9, 2024<br>Trial Date: None set |

## TABLE OF CONTENTS


I. INTRODUCTION ………………………………………………………………….1

II. BACKGROUND……………………………………………………………………2

A. LEGAL BACKGROUND……………………………………………………3

B. FACTUAL BACKGROUND…………………………………………………...7

III. LEGAL STANDARD………………………………………………………………9

IV. ARGUMENT………………………………………………………………………..10

A. PLAINTIFFS HAVE STANDING TO BRING THEIR CLAIMS……………..11

B. PLAINTIFFS ESTABLISH ASCERTAINABILITY…………………………..14

C. PLAINTIFFS ESTABLISH NUMEROSITY…………………………………..15

D. PLAINTIFFS ESTABLISH COMMONALITY………………………………..16

E. PLAINTIFFS ESTABLISH TYPICALITY…………………………………….17

F. PLAINTIFFS ESTABLISH ADEQUACY OF REPRESENTATION…………19

G. PLAINTIFFS ESTABLISH PREDOMINANCE……………………………….20

H. PLAINTIFFS ESTABLISH SUPERIORITY…………………………………...23

## TABLE OF AUTHORITIES

**Cases**

*A.B. v. Hawaii State Dep't of Education*, 30 F. 4th 848, 835 (9th Cir. 2022) .............................. 15
*Allison Engine v. Sanders*, 553 U.S. 662, 669 (2008) ......................................................... 6
*Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615 (1997) .................................................... 9
*American Heritage Window Fashions, LLC v. Dep't of Revenue*, 191 So. 3d 516, 520 (Fla. 2d DCA 2016)........................................................................................................ 5
*Amgen Inc. v. Conn. Retirement Plans and Trust Funds*, 568 U.S. 455, 466 (2013).................. 10
*Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994)............... 15
*Awbrey v. Great Atlantic & Pac. Tea Co.*, 505 F. Supp. 605, 607 (N.D. Ga. 1980)..................... 9
*Bartz v. Anthropic PBC*, 791 F. Supp. 3d 1038, 1063 (N.D. Cal. 2025) .................................... 23
*Bateman v. American Multi-Cinema, Inc.*, 623 F. 3d 708, 713 (9th Cir. 2010) .......................... 23
*Californians for Disability Rights, Inc. v. Cal. Dept. of Transp.*, 249 F.R.D. 334, 348 (N.D. Cal. 2008) ....................................................................................................... 16
*Campbell v. Facebook, Inc.*, 951 F. 3d 1106, 1117 (9th Cir. 2020) ........................................... 12
*Castro v. ABM Indus., Inc.*, 325 F.R.D. 332, 342 (N.D. Cal. 2018)............................................ 20
*Diamond Alt. Energy LLC v. EPA*, 606 U.S. 100, 111 (2015) .................................................... 11
*DirecTV v. Robson*, 420 F. 3d 532, 537 (5th Cir. 2005)............................................................ 12
*Dubin v. United States*, 599 U.S. 110, 119 (2023)....................................................................... 9
*Dutta v. State Farm Mutual Auto. Ins.*, 895 F. 3d 1166, 1173 (9th Cir. 2018)............................ 11
*DZ Reserve v. Meta Platforms, Inc.*, 96 F. 4th 1223, 1240 (9th Cir. 2024)................................ 11
*Ellis v. Costco Wholesale Co.*, 657 F. 3d 970, 978 (9th Cir. 2011)............................................ 11
*Equity Lifestyle Prop., Inc. v. Cnty of San Luis Obispo*, 548 F. 3d 1184, 1189 n. 10 (9th Cir. 2008) ....................................................................................................... 11
*Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011)..................................... 23
*Flanagan v. Flanagan*, 27 Cal. 4th 766, 768 (2002) ................................................................ 2
*Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 574 (N.D. Cal. 2025)............................................ 18
*Friddle v. Epstein*, 16 Cal. App. 4th 1649, 1661 (1993)............................................................. 2

*Friedman v. Martinez*, 252 N.J. 449, 470 (2020) .......... 13
*Gruber v. Yelp Inc.*, 55 Cal. App. 5th 591, 608 (2020).......... 2
*Halpin v. Superior Court*, 6 Cal. 3d 885, 899 n. 16 (1972) .......... 2
*Hanon v. Dataproducts Co.*, 976 F. 2d 497, 508 (9th Cir. 1998) .......... 18
*Harkey v. Abate*, 131 Mich. App. 177, 181 (1983).......... 14
*Heiting v. Taro Pharmaceuticals USA, Inc.*, 728 F. Supp. 3d 1112, 1123 n. 8 (C.D. Cal. 2024) .. 3
*Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 295 (2009).......... 13
*Herrera v. LCS Fin. Serv. Co.*, 274 F.R.D. 666, 676 (N.D. Cal. 2011).......... 15
*Hunt v. Check Recovery Systems, Inc.*, 241 F.R.D. 505, 508 (N.D. Cal. 2007) .......... 9
*In re Admin. Committee ERISA Litig.*, 2005 WL 3454126, at *4 (N.D. Cal. Dec. 16, 2005) ...... 11
*In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 825 (N.D. Cal. 2020).......... 3
*In re Google Referrer Header Priv. Litig.*, 465 F. Supp. 3d 999, 1007 (N.D. Cal. 2020)........... 11
*In re High-Tech Employee Antitrust Litig.*, 985 F. Supp. 2d 1167, 1180 (N.D. Cal. 2013)......... 16
*In re JUUL Labs, Inc., Marketing Sales Practice and Prod. Liability Litig.*, 609 F. Supp. 3d 942, 966 (N.D. Cal. 2022).......... 20
*James v. Uber Tech. Inc.*, 338 F.R.D. 123, 130 (N.D. Cal. 2021).......... 24
*Jancik v. WebMD LLC*, 2025 WL 560705, at *7 (N.D. Ga. Feb. 20, 2025).......... 17
*Jimenez v. Allstate Ins.*, 765 F. 3d 1161, 1165 (9th Cir. 2014).......... 16
*Kamm v. Cal. City Dev. Co.*, 509 F. 2d 205, 212 (9th Cir. 1975).......... 23
*Kishore v. Times Internet (Uk) Ltd.*, 2026 WL 1097749, at *3 (N.D. Cal. Apr. 22, 2026).......... 17
*Knight v. CashCall, Inc.*, 200 Cal. App. 4th 1377, 1389 (2011) .......... 2
*Koeppel v. Spiers*, 808 N.W. 2d 177, 184 (Iowa 2011) .......... 8
*Kohler v. City of Wapakoneta*, 381 F. Supp. 2d 692, 704 (N.D. Ohio 2005) .......... 14
*Kosta v. Del Monte Foods, Inc.*, 308 F.R.D. 217, 222 (N.D. Cal. 2015).......... 14
*Kosta v. Del Monte Foods, Inc.*, 308 F.R.D. 217, 223 (N.D. Cal. 2015).......... 14
*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F. 3d 1152, 1162 (9th Cir. 2001).......... 19
*Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021) .......... 2
*McCann v. Iroquois Memorial Hosp.*, 622 F. 3d 745, 752 (7th Cir. 2010) .......... 7

*Melendres v. Arpaio*, 784 F. 3d 1254, 1262 (9th Cir. 2015) ........ 9
*Nielsen v. Preap*, 586 U.S. 392, 407 (2019) ........ 5
*Ocean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F. 4th 651, 665 (9th Cir. 2022) ........ 9
*Oliveira v. Lang. Line Serv., Inc.*, 767 F. Supp. 3d 984, 1002 (N.D. Cal. 2025) ........ 18
*Parsons v. Ryan*, 754 F. 3d 657, 676 (9th Cir. 2014) ........ 16
*People v. Robins*, 44 Cal. App. 5th 413, 421 (2020) ........ 13
*People v. Wesley*, 198 Cal. App. 3d 519, 787 (1988) ........ 4
*Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F. 4th 1125, 1136 (9th Cir. 2022) ........ 21
*Popa v. Microsoft Co.*, 153 F. 4th 784, 789 (9th Cir. 2025) ........ 8
*Popa v. Microsoft Co.*, 153 F. 4th 784, 791 (9th Cir. 2025) ........ 7
*Rai v. Santa Clara Valley Transp. Auth.*, 308 F.R.D. 245, 253–54 (N.D. Cal. 2015) ........ 15
*Ribas v. Clark*, 38 Cal. 3d 355, 361 (1985) ........ 2
*Rodriguez v. Ford Motor Co.*, 722 F Supp. 3d 1104, 1116 (S.D. Cal. 2024) ........ 3
*Rodriguez v. Google LLC*, 2024 WL 38302, at *3 (N.D. Cal. Jan. 3, 2024) ........ 17
*Scutieri v. Paige*, 808 F. 2d 785, 790 (11th Cir. 1987) ........ 6
*See Scholl v. Mnuchin*, 489 F. Supp. 3d 1008, 1044 (N.D. Cal. 2020) ........ 16
*See Smith v. Rack Room Shoes, Inc.*, 2025 WL 2210002, at *5 (N.D. Cal. Aug. 4, 2025) ........ 21
*Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 200 (2021) ........ 2
*Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) ........ 11
*Staton v. Boeing Co.*, 327 F. 3d 938, 953 (9th Cir. 2003) ........ 9
*Tavernetti v. Superior Court*, 22 Cal. 3d 187, 190 (1978) ........ 2
*Tejero v. Portfolio Recovery Associates, L.L.C.*, 993 F. 3d 393, 396 (5th Cir. 2021) ........ 5
*Torres v. Prudential Fin.*, 2024 WL 4894289, at *7 (N.D. Cal. Nov. 26, 2024) ........ 22
*TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) ........ 12
*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) ........ 21
*United States v. Garcidas-Ulibarry*, 231 F. 3d 1188, 1192 (9th Cir. 2000) ........ 8
*United States v. Rivera-Relle*, 333 F. 3d 914, 921 (9th Cir. 2003) ........ 8
*Valentino v. Carter-Wallace, Inc.*, 97 F. 3d 1227, 1234 (9th Cir. 1994) ........ 23

*Walker v. Darby*, 911 F. 2d 1573, 1578 (11th Cir. 1990) ... 6
*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011) ... 9
*Warden v. Kahn*, 99 Cal. App. 3d 805, 810 (1979) ... 2
*West v. Cal. Services, Bureau, Inc.*, 323 F.R.D. 295, 303 (N.D. Cal. 2017) ... 15
*Wilson v. Superior Court*, 227 Cal. App. 4th 579, 593 (2014) ... 6
*Wolin v. Jaguar Land Rover North America, LLC*, 617 F. 3d 1168, 1173 (9th Cir. 2010) ... 22
*Wolin v. Jaguar Land Rover North America, LLC*, 617 F. 3d 1168, 1176 (9th Cir. 2010) ... 23
*Wolph v. Acer America Co.*, 272 F.R.D. 477, 482 (N.D. Cal. 2011) ... 24
*Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011) ... 24

**Other Authorities**

*American Heritage Dictionary of the English Language*, p. 1085 (1st ed. 1969) ... 4
*Black's Law Dictionary* 859 (4th Rev. 1968) ... 4
Mark Lester & Larry Beason, *The McGraw–Hill Handbook of English Grammar and Usage*, 107 (2d ed. 2013) ... 5
Model Penal Code § 2.02(a)(i) ... 5

**Treatises**

J. Thomas McCarthy, *The Right of Publicity and Privacy* (2026) ... 8
Note, *Electronic Surveillance in California: A Study in State Legislative Control*, 57 Cal. L. Rev. 1189, 1201 (1968) ... 2, 3, 4
Prosser, *The Law of Torts*, p. 807–08 n. 4 (1971) ... 13
Restatement of Torts (Second) § 652B ... 12

## INTRODUCTION

Plaintiffs allege and prove that Defendant assisted third parties—including but not limited to Meta, Attentive, Zeta, Adobe, and Google—with intercepting the content of their private communications, including those that contained personally identifiable information. Plaintiffs will ultimately prevail on the merits of their claims, but that is not the question before the Court here. The question before the Court is whether the evidence to establish those claims is the same for similarly situated class members. And here, the answer to that question is an emphatic yes.

To support their claims, Plaintiffs will marshal evidence that is common and cohesive. For Meta, Plaintiffs have direct, attributable event data demonstrating that Defendant configured the Meta Pixel to reveal when a consumer viewed a product or placed that product in their carts. For the other third parties, Plaintiffs will rely on a body of evidence circumstantially proving the same. That circumstantial evidence—the design, functionality, and effectiveness of the tracking technologies—is common to the class and will adequately support claims for relief under all three causes of action. Put together, whether to support their own claims or those for other class members, Plaintiffs will rely on the same source code, the same configuration decisions, the same data paths, the same privacy policies, and the same use cases. Nothing will materially deviate from class member to class member, and Defendant will not—because it cannot—convincingly point to a single, non-speculative issue that will create individualized issues at trial.

To prove as much, Plaintiffs will begin with a robust, in-depth background section that serves two functions. *First*, Plaintiffs will preview the theories of liability that they would raise and support if moving for summary judgment tomorrow. Among other things, Plaintiffs will discuss in detail the three statutes through which they will seek class-wide relief—the Wiretap Act, CIPA § 631, and CIPA § 632—and they will then discuss the elements necessary to establish each claim. After outlining those legal theories, Plaintiffs will then analyze the evidentiary record and discuss how that body of proof will support those claims. After outlining that approach, Plaintiffs will march through each of the elements of class certification, each of which will independently and collectively demonstrate why Defendant cannot raise even a colorable argument for why this action is inappropriate for class treatment.

Because this case serves as the classic example for when and where class certification is not only appropriate but necessary, the Court should grant Plaintiffs' motion in full.

**BACKGROUND**

Plaintiffs currently intend to advance two theories of liability, one applicable to Meta and the other applicable to the remaining third-party interceptors. For purposes of class certification, the first theory of liability hinges on a spreadsheet from Meta detailing event data that the social media company attributed to Plaintiffs and their Facebook profiles. The second theory of liability concerns the remaining third-party interceptors, including Attentive, Google, and Adobe. That theory of liability hinges on whether Plaintiffs and putative class members can recover under their three claims—the Wiretap Act, CIPA § 632, and CIPA § 631—without direct evidence showing attributable interceptions. The following background explains why Plaintiffs and putative class members can recover under either theory on all three claims.

## I. LEGAL BACKGROUND

### A. Overview & Statutory Construction: CIPA § 631

CIPA § 631 contains "four clauses," all of which are relevant here. *See Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021). The first clause reads as follows:

> Any person who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electronically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument … is punishable … by imprisonment.

By its plain terms, the first clause "forbids all unauthorized connections whether made for the purpose of intercepting communications or not." *See* Note, *Electronic Surveillance in California: A Study in State Legislative Control*, 57 Cal. L. Rev. 1189, 1201 (1968).[1] Although this categorical ban on "unauthorized connections" seeks in part to serve a "property protection role," it "also serves a privacy interest" by operating as a prophylactic prohibition that "prevents

[1] Attached hereto as Exhibit A. California courts routinely draw from this academic paper when construing the California Invasion of Privacy Act. *See, e.g.*, *Ribas v. Clark*, 38 Cal. 3d 355, 361 (1985) (*en banc*); *Flanagan v. Flanagan*, 27 Cal. 4th 766, 768 (2002); *Halpin v. Superior Court*, 6 Cal. 3d 885, 899 n. 16 (1972) (*en banc*); *Tavernetti v. Superior Court*, 22 Cal. 3d 187, 190 (1978) (*en banc*); *Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 200 (2021); *Warden v. Kahn*, 99 Cal. App. 3d 805, 810 (1979); *Gruber v. Yelp Inc.*, 55 Cal. App. 5th 591, 608 (2020); *Friddle v. Epstein*, 16 Cal. App. 4th 1649, 1661 (1993); *Knight v. CashCall, Inc.*, 200 Cal. App. 4th 1377, 1389 (2011).

the surreptitious interception of telephone conversations." *See id.* As courts have noted, however, the first clause "expressly requires that the unauthorized 'connection' be made with 'any telegraph or telephone wire, line, cable, or instrument.'" *See In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 825 (N.D. Cal. 2020) (quoting Cal. Penal Code § 631(a)). For that reason, "the first clause of Section 631(a) does not apply to internet communications." *See Heiting v. Taro Pharmaceuticals USA, Inc.*, 728 F. Supp. 3d 1112, 1123 n. 8 (C.D. Cal. 2024) (collecting cases).

The second clause of CIPA § 631(a) reads as follows:

> Any person who … willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit … or is being sent from or received at any place within this state … is punishable … by imprisonment.

*See* Cal. Penal Code § 631(a). By its plain terms, the second clause "applies whether or not there is a connection of any kind involved." *See* Note, *Electronic Surveillance in California: A Study in State Legislative Control*, 57 Cal. L. Rev. 1189, 1201–02 (1968). As a corollary, unlike with the first clause of CIPA § 631, "courts have applied the second clause to internet communications." *See Rodriguez v. Ford Motor Co.*, 722 F Supp. 3d 1104, 1116 (S.D. Cal. 2024) (cleaned up). What is more, the second clause not only prohibits "read[ing]" and "learn[ing]" any "message, report, or communication," but also prohibits "attempt[ing] to read" and "attempt[ing] … to learn" any "message, report, or communication." *See* Cal. Penal Code § 631(a). In other words, like the ban on "all unauthorized connections," the second clause serves a prophylactic function by "proscrib[ing] any attempt"—whether successful or not—"to learn the contents of … a communication without the consent of the conversing parties." *See* Note, *Electronic Surveillance in California: A Study in State Legislative Control*, 57 Cal. L. Rev. 1189, 1201 (1968).

The third clause regulates those who receive information through violations of the first or second clause, providing that: "Any person who … uses, or attempts to use, in any manner, or for any purpose, or in any way, any information so obtained … is punishable by a fine … or by imprisonment." *See* Cal. Penal Code § 631(a). Like the first and second clauses of CIPA § 631, the plain text of the third clause not only prohibits "us[ing] … any information so obtained," but also "attempt[ing] to use … any information so obtained." *Id.* Here too, in other words, the third

clause imposes prophylactic protections that serve "a privacy interest." *See* Note, *Electronic Surveillance in California: A Study in State Legislative Control*, 57 Cal. L. Rev. 1189, 1201 (1968).

The fourth and final clause of CIPA § 631 relates back to all three clauses, extending criminal liability to anyone "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above." Cal. Penal Code § 631(a). Accordingly, by its plain terms, CIPA § 631(a) extends liability to those who "aid[]," "employ[]," or "conspire[] with" any person or entity who: 1) "makes an unauthorized connection"; 2) "attempts to read, or to learn, the contents or meaning of any message"; or 3) "attempts to use, in any manner, or for any purpose, … any information so obtained." *Id.*

Through a civil action brought pursuant to CIPA § 637.2, Plaintiffs intend to hold Defendant liable under the fourth clause of CIPA § 631 for aiding and abetting certain third parties—Meta, Attentive, and Zeta—with violating the second clause of CIPA § 631. Because liability under the fourth clause hinges on establishing the second clause, Plaintiffs must prove that those third parties: 1) "read[] … the content of any … communication"; 2) "learn[ed] … the content of any … communication"; or 3) "attempt[ed] to read, or to learn, … the content of any … communication." *See* Cal. Penal Code § 631(a). That analysis, in turn, depends on understanding the meaning of three terms—"read," "learn," and "attempts"—that CIPA § 631 leaves undefined. Looking to the ordinary meaning for those terms, the term "read" means "[t]o comprehend or taking the meaning of (something written or printed)." *See American Heritage Dictionary of the English Language*, p. 1085 (1st ed. 1969). The term "learn" means "[t]o become informed of; to find out." *Id.* at 744. And the term "attempts" means "[a]n effort or endeavor to accomplish a crime, amounting to more than mere preparation or planning for it, which, if not prevented, would have resulted in the full consummation of the act attempted, but which, in fact, does not bring to pass the party's ultimate design." *See Black's Law Dictionary* 859 (4th Rev. 1968).

Putting these terms together, CIPA § 631 prohibits a person from endeavoring to comprehend or to find out the "contents" of a communication "while the same is in transit … or is being sent from, or received at any place within this state." *See* Cal. Penal Code § 631(a).

### B. Overview & Statutory Construction: CIPA § 632

CIPA § 632 provides as follows:

> A person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio, shall be punished by a fine … or imprisonment.

Cal. Penal Code § 632(a) (underline added).

The underlined language—i.e., "uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication"—substantially defines CIPA § 632's ambit. In general, "[w]ords are to be given the meaning that proper grammar and usage would assign to them." *Nielsen v. Preap*, 586 U.S. 392, 407 (2019) (brackets and quotations omitted). Applying that principle here, the words "to eavesdrop upon or record" function as an adverbial infinitive phrase. Importantly, "[w]here," as here, "an infinitive phrase is used as an adverb modifying a verb, the infinitive phrase is most often understood as conveying the purpose or reason for the action expressed by the verb." *See American Heritage Window Fashions, LLC v. Dep't of Revenue*, 191 So. 3d 516, 520 (Fla. 2d DCA 2016) (parentheticals omitted); *compare* Mark Lester & Larry Beason, *The McGraw–Hill Handbook of English Grammar and Usage*, 107 (2d ed. 2013) ("A particularly easy and reliable test for adverb infinitive phrases that modify verbs is to put *in order* in front of the infinitive.") *with People v. Wesley*, 198 Cal. App. 3d 519, 787 (1988) ("The ordinary meaning of the phrase 'in order to' is to delineate a purpose.").

Because "[a]n infinitive phrase expresses purpose," *Tejero v. Portfolio Recovery Associates, L.L.C.*, 993 F. 3d 393, 396 (5th Cir. 2021), the California legislature intended for CIPA § 632 to prohibit a person from "us[ing] an electronic amplifying or recording device" for the purpose of eavesdropping or recording a private communication. And where, as here, "the element involves the nature of his conduct or a result thereof," a person "acts purposely" when "it is his conscious object to engage in conduct of that nature or to cause such a result." *See* Model Penal Code § 2.02(a)(i). CIPA § 632 thus prohibits a person from "us[ing] an electronic amplifying or recording device" when it is his conscious object to cause that device "to eavesdrop upon or record the confidential communication." *See* Cal. Penal Code § 632.

Critically, there is neither an express nor implied requirement that the intended result—i.e., eavesdropping upon or recording the confidential communication—comes to fruition. In other words, CIPA § 632 "does not make proof of that result a prerequisite to its violation." *See Wilson v. Superior Court*, 227 Cal. App. 4th 579, 593 (2014). Accordingly, whether successful or not, CIPA § 632 prohibits employing a device for the purpose of either listening secretly to a confidential communication or registering such communication on something in reproducible form. *See id.* at 593 (noting that "the phrase 'to procure' is not used as a verb, but as an … adverbial phrase," and that "Subdivision (a) is violated by the employment of others with that objective; it does not make proof of that result a prerequisite to its violation"); *Allison Engine v. Sanders*, 553 U.S. 662, 669 (2008) (analyzing "the infinitive phrase 'to get'" and holding that "'[t]o get' denotes purpose" and that "a subcontractor violates § 3792(a)(2) if the subcontractor submits a false statement to the prime contractor intending for the statement to be used by the prime contractor to get the Government to pay its claim").

**C. Overview & Statutory Construction: The Wiretap Act**

The Wiretap Act criminally prohibits "any person" from "intercept[ing] … any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a). The Wiretap Act also provides a limited private right of action for "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used." *See* 18 U.S.C. § 2520(a). As evinced by the plain text, a person cannot bring a civil claim under the Wiretap Act without alleging and proving that their communications were "intercepted, disclosed, or intentionally used." *Id.* Put differently, unlike CIPA § 631 and CIPA § 632, the Wiretap Act requires Plaintiffs to plead and prove "the actual interception of conversations." *See Walker v. Darby*, 911 F. 2d 1573, 1578 (11th Cir. 1990). Notwithstanding that, because "[t]he success of a wiretap ultimately depends upon secrecy and concealment," courts have recognized that "[d]irect evidence may not be available." *Scutieri v. Paige*, 808 F. 2d 785, 790 (11th Cir. 1987). For that reason, courts permit litigants to establish an interception "with circumstantial evidence" and "without proving the contents of specific conversations allegedly intercepted." *See Walker*, 911 F. 2d at 1573.

## II. FACTUAL BACKGROUND

Plaintiffs will establish liability—and, as particularly relevant here, class certification—through one of two ways. With respect to Meta, Plaintiffs will largely rely on a spreadsheet showing that the social media company collected event data and attributed that information to their Facebook profiles. With respect to the other third-party interceptors, Plaintiffs will rely on evidence proving that Defendant "configured," "customized," and "deployed" source code from numerous third parties—including "Attentive," "Zeta," "Google," and "Adobe"—for the purpose of "tracking and identifying consumers who navigate its website by capturing the content of their electronic communications and pairing those communications with personally identifiable information." *See* TAC ¶¶ 21, 114, 133, 151, 157, 163, 168–69, 217, 230, 241. Both approaches will entitle Plaintiffs and putative class members to recover under the three claims.

### A. Theory of Liability #1: Meta Platforms

Meta owns and operates two platforms—Facebook and Instagram—[redacted] The Meta Pixel "is a snippet of JavaScript code" that companies like Rack Room "use to track Facebook ad-drive visitor activity on [its] website." *See* Ex. E. Through the ViewContent and AddtoCart events, Defendant configured the Meta Pixel to capture specific pieces of information each time a user browsed an item or added that item to the cart, [redacted] *See* Exs C, D. Rack Room installed the Meta Pixel for the purpose of later using the intercepted information to run targeted advertisements. *See* Exs. F, G, H, I. Through this evidentiary record, Plaintiffs will establish that Defendant assisted Meta "with intercepting [their] communications while visiting Defendant's website, including communications that contained [their] personally identifiable information." *See* TAC ¶¶ 6–8.

**B. Theory of Liability #2: Attentive, Zeta, Google, and Adobe**

[redacted]

By doing so, Plaintiffs possess direct evidence that Defendant assisted third parties with both using an eavesdropping device and attempting to intercept the content of electronic communications, including those that contained personally identifiable information. *See, e.g.*, *United States v. Garcidas-Ulibarry*, 231 F. 3d 1188, 1192 (9th Cir. 2000) (noting that "[t]he

---

[2] This spreadsheet reflects event data associated with a former named representative, Robin Savage, who is no longer participating in this action and who subscribed to marketing text messages. After the Court grants the pending motion for sanctions and orders Defendant to produce documents that it has improperly withheld and that it should have turned over months ago, Plaintiffs will show that substantially the same spreadsheets and information exists for them too. *See, e.g.*, Ex. T ("Verkhovskaya Report") ¶ 78 (noting that [redacted]

[3] Here too, once the Court grants the pending motion for sanctions and Plaintiff receive documents that Defendant should have already produced, they will demonstrate that Rack Room has access to exportable information associated with Adobe that it should have turned over months ago. *See* Exs. U-V [redacted] *see also* Verkhovskaya Report ¶ 78 (noting that [redacted]).

common law meaning of attempt is the specific intent to engage in committing criminal conduct and an overt act which is a substantial step towards committing the crime") (cleaned up); *Dubin v. United States*, 599 U.S. 110, 119 (2023) (noting "uses" ordinary means "'[t]o convert to one's services,' 'to employ,' 'to avail oneself of,' and 'to carry out a purpose or action by means of'").

Plaintiffs also possess enough circumstantial evidence to demonstrate that Defendant actually intercepted the content of their electronic communications, including those that contained personally identifiable information. *See, e.g.*, *Awbrey v. Great Atlantic & Pac. Tea Co.*, 505 F. Supp. 605, 607 (N.D. Ga. 1980) (finding that the plaintiffs created a triable issue of fact under analogous circumstances because the Wiretap Act "clearly contemplates the sort of continued, indiscriminate wiretapping of private telephone conversations [that] plaintiffs have alleged here"); *see also Walker*, 911 F. 2d at 1578 (noting that the 11th Circuit has "adopted the *Awbrey* reasoning" and has held that "plaintiffs could establish a wiretapping claim with circumstantial evidence").

## LEGAL STANDARD

"Class certification is governed by Federal Rule of Civil Procedure 23." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). "Rule 23(a) establishes four prerequisites for class action litigation, which are: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *Staton v. Boeing Co.*, 327 F. 3d 938, 953 (9th Cir. 2003). "[A]ssuming the requirements of subdivision (a) are satisfied, the party seeking class certification must also demonstrate that the action is maintainable by falling within one of the three kinds of actions permitted under Rule 23(b)." *Hunt v. Check Recovery Systems, Inc.*, 241 F.R.D. 505, 508 (N.D. Cal. 2007). "To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: Common questions must 'predominate over any questions affecting individual members'; and class resolution must be 'superior to other available methods for the fair and effective adjudication of the controversy.'" *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (quoting Fed. R. Civ. P. 23(b)(3)). To satisfy these prerequisites, the movant "must prove the facts necessary … by a preponderance of the evidence." *Ocean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F. 4th 651, 665 (9th Cir. 2022). And when conducting that analysis, "[m]erits questions may be considered to the extent—but only to

the extent—that they are relevant to determine the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Retirement Plans and Trust Funds*, 568 U.S. 455, 466 (2013).

**ARGUMENT**

This case serves as the paradigmatic example for when class certification is appropriate. Rack Room operated a single website, deployed a uniform set of tracking technologies, and subjected every consumer to the same undisclosed surveillance. The evidence demonstrates that Defendant activated, configured, and maintained these technologies for years, facilitating the systematic interception of confidential communications, including those that contained personally identifiable information. For the Meta classes, the argument for class certification is particularly straightforward: Plaintiffs possess direct, attributable event data conclusively demonstrating that Meta not only collected the content of their communications but also attributed that content to their Facebook profiles. For the non-Meta classes, the evidentiary record is similarly robust demonstrating that Defendant engaged in continued, indiscriminate wiretapping and eavesdropping on private conversations. Across all proposed classes, Plaintiffs satisfy every prerequisite for class certification: they possess Article III standing; they define their classes using objective, verifiable criteria; they propose classes with hundreds of thousands of consumers; they raise common questions that will resolve liability in one stroke; and they ensure that this Court can adjudicate class members' claims far more efficiently and fairly through the class action device. To that end, Plaintiffs respectfully request that the Court certify the following classes:

> **Nationwide Purchaser Class:** All individuals who purchased products through Rack Room's website from May 1, 2022, through December 1, 2025.
> **Nationwide Meta Class**: All individuals who purchased products through Rack Room's website from July 1, 2021, through December 1, 2025, and who Meta used identifiers to attribute either ViewContent events from product pages or AddtoCart events.
> **California Purchaser Class – CIPA § 631**: All California residents who purchased products through Rack Room's website between May 1, 2022, and December 1, 2025, using shipping addresses exclusively within California.
> **California Meta Class – CIPA § 631**: All California residents who purchased products through Rack Room's website between July 1, 2021, through December 1, 2025, using shipping addresses exclusively within California and who Meta used identifiers to attribute either ViewContent events from product pages or AddtoCart events.
> **California Purchaser Class – CIPA § 632**: All California residents who purchased products through Rack Room's website between May 1, 2022, through December 1, 2025.
> **California Meta Class – CIPA § 632**: All California residents who purchased products through Rack Room's website between July 1, 2021, through December 1, 2025, and who Meta used identifiers to attribute either ViewContent events from product pages or AddtoCart events.

## I. PLAINTIFFS HAVE STANDING TO BRING THEIR CLAIMS

Plaintiffs possess Article III standing. For the Meta classes, Plaintiffs possess evidence demonstrating an interception and, by extension, an intrusion. For the non-Meta classes, Plaintiffs have circumstantial evidence proving actual interceptions, and they also have direct evidence establishing that—at a minimum—Defendant used eavesdropping devices for the purpose of intercepting the content of their confidential communications. Nothing else is required.

Before analyzing the prerequisites to class certification under Rule 23, "the court must be satisfied that the named plaintiffs have standing to assert their claims." *In re Admin. Committee ERISA Litig.*, 2005 WL 3454126, at *4 (N.D. Cal. Dec. 16, 2005). "Because the preponderance of the evidence standard applies at the class certification stage, standing at the time of class certification must be established by a preponderance of the evidence." *DZ Reserve v. Meta Platforms, Inc.*, 96 F. 4th 1223, 1240 (9th Cir. 2024). "Standing exists if at least one named plaintiff meets the requirements." *Ellis v. Costco Wholesale Co.*, 657 F. 3d 970, 978 (9th Cir. 2011). As a corollary, "once the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded, and the court proceeds to consider whether the Rule 23(a) prerequisites for class certification have been met." *Melendres v. Arpaio*, 784 F. 3d 1254, 1262 (9th Cir. 2015) (internal quotations omitted). Importantly, "[t]he jurisdictional question of standing precedes, and does not require, analysis of the merits." *Equity Lifestyle Prop., Inc. v. Cnty of San Luis Obispo*, 548 F. 3d 1184, 1189 n. 10 (9th Cir. 2008).

"[T]he irreducible constitutional minimum of standing contains three elements: injury in fact, causation, and redressability." *Diamond Alt. Energy LLC v. EPA*, 606 U.S. 100, 111 (2015) (quotations omitted). "The presence of an injury in fact is the first and foremost element a plaintiff must show to satisfy standing." *Dutta v. State Farm Mutual Auto. Ins.*, 895 F. 3d 1166, 1173 (9th Cir. 2018) (quotations omitted). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quotations omitted). "Concreteness 'requires an injury to be *de facto*, that is, to actually exist.'" *In re Google Referrer Header Priv. Litig.*, 465 F. Supp. 3d 999, 1007 (N.D. Cal. 2020) (quotations

omitted). "Where, as here, [courts] deal with an intangible harm that is linked to a statutory violation, [they] are guided in determining concreteness by both history and the judgment of Congress, or the legislature that enacted the statute." *Campbell v. Facebook, Inc.*, 951 F. 3d 1106, 1117 (9th Cir. 2020) (quotations omitted). As a corollary, the Article III analysis "requires a court to assess whether an individual plaintiff has suffered a harm that has traditionally been actionable in our nation's legal system." *Popa v. Microsoft Co.*, 153 F. 4th 784, 791 (9th Cir. 2025). "Those include, for example, reputational harms, disclosure of private information, and intrusion upon seclusion." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021).

**A. Plaintiffs Possess Standing to Bring Claims under the Wiretap Act**

As previously outlined, Plaintiffs can advance circumstantial evidence demonstrating "the sort of continued, indiscriminate wiretapping" of private conversations that properly supports an actual interception and an actual intrusion for purposes of Article III standing. *See Awbrey*, 505 F. Supp. at 607; *see also McCann v. Iroquois Memorial Hosp.*, 622 F. 3d 745, 752 (7th Cir. 2010) ("[T]he plaintiffs need not produce direct evidence of the intentional interception; for often the only way to prove that a stealthy interception occurred is through circumstantial evidence."); *DirecTV v. Robson*, 420 F. 3d 532, 537 (5th Cir. 2005) ("Circumstantial evidence can support a finding that a communication was intercepted, even absent direct evidence."); Restatement of Torts (Second) § 652B (noting that intrusion upon seclusion includes tapping "telephone wires").

**B. Plaintiffs Possess Standing to Bring Claims Under CIPA § 631 and CIPA § 632**

Beginning with CIPA § 631, Plaintiffs have standing to bring a claim under that statute because they have established that Rack Room "aid[ed]" third parties with "read[ing], or attempt[ing] to read, or to learn" the content of their confidential communications. *See* Cal. Penal Code § 631(a); Exs. L, M, N, O, P, Q, R, S [redacted]

For the Meta classes, the analysis is straightforward: Plaintiffs possess direct evidence demonstrating that Meta collected and attributed event data that revealed the content of their communications while navigating Defendant's website. *See* Exs. C, D. There is no dispute about Article III standing for these classes given the direct and explicit evidence of interception.

Separately, the analysis is also straightforward for the non-Meta classes: By activating and deploying the tracking technologies on its website, Rack Room—at a minimum—attempted to read or learn the content of confidential communications. *See* Ex. L, M, N, O, P, Q, R, S. And since at least 1862, California has provided residents with a private right of action against any person who "attempts to read, any message, or to learn the contents thereof whilst the same is being sent over any telegraph line." Ex. W. Because "history" serves as "the touchstone for concreteness," *see Popa v. Microsoft Co.*, 153 F. 4th 784, 789 (9th Cir. 2025), this legislative history independently and decisively establishes standing.

To be sure, "attempted conduct normally does not give rise to an intentional tort because the required element of actual harm does not occur." *Koeppel v. Spiers*, 808 N.W. 2d 177, 184 (Iowa 2011). But importantly, an attempted interception does not presuppose failure; instead, "[a] successful attempt is a rational concept that is well established in the Penal Code." *See People v. Robins*, 44 Cal. App. 5th 413, 421 (2020). In other words, "[a] person may be convicted of an attempt to commit a crime even though that person may have actually completed the crime." *See United States v. Rivera-Relle*, 333 F. 3d 914, 921 (9th Cir. 2003); *see also* Cal. Penal Code § 663. Against that backdrop, an attempt to intercept a private conversation constitutes an actionable intrusion because "the full benefits of privacy protected by the tort are diminished when a reasonable person believes someone could have listened." *See Koeppel*, 808 N.W. 2d at 182. Numerous courts and treatises are in accord. *See* Prosser, *The Law of Torts*, p. 807–08 n. 4 (1971) (noting that intrusion upon seclusion "extend[s] to eavesdropping upon private conversations by means of wire tapping and microphones," including where "no one listens"); J. Thomas McCarthy, *The Right of Publicity and Privacy* (2026) (noting that "[t]he vast majority of courts have held that it is not necessary that the defendant actually obtain embarrassing information—or indeed any information at all—about plaintiff"); *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 295 (2009) (finding "the requisite intrusion in the first place" despite noting that "Hitchcock never viewed or recorded plaintiffs inside their offices by means of the equipment he installed both there and in the storage room"); *Friedman v. Martinez*, 252 N.J. 449, 470 (2020) (joining "the courts in many other jurisdictions that have concluded that a victim does not have to present evidence that she was secretly recorded to bring a cause of action for intrusion upon seclusion.") (collecting cases).

The same holds true with respect to "[u]sing an electronic amplifying or recording device" for the purpose of eavesdropping or recording a confidential communication. Cal. Penal Code § 632; *see Koeppel*, 808 N.W. 2d at 184 ("The secret use of an electronic listening or recording device is abhorrent to the interests sought to be protected by the tort."); *Harkey v. Abate*, 131 Mich. App. 177, 181 (1983) (finding that "the installation of the hidden viewing devices complained of can itself constitute a sufficient wrongful intrusion"); *Kohler v. City of Wapakoneta*, 381 F. Supp. 2d 692, 704 (N.D. Ohio 2005) (finding that "the use or installation of hidden listening devices or cameras was enough to intrude on the seclusion of another").

## II. PLAINTIFFS ESTABLISH ASCERTAINABILITY

Plaintiffs satisfy the ascertainability requirement without difficulty. As evinced by their expert's opinion, Plaintiffs define the proposed classes—all of which rely on internal records kept from either Rack Room or Meta—through a methodology that is both objective and verifiable. By doing so, Plaintiffs thus establish that the proposed classes are identifiable and ascertainable.

"In addition to the four requirements set forth in Rule 23(a), most courts have implied an additional threshold requirement: that the members of the class are readily ascertainable." *Kosta v. Del Monte Foods, Inc.*, 308 F.R.D. 217, 222 (N.D. Cal. 2015). "Ascertainability is needed for properly enforcing the preclusive effect of final judgment." *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011). To qualify as ascertainable, "[t]he class definition must be sufficiently definite so that it is administratively feasible to determine whether a particular person is a class member." *Wolph v. Acer America Co.*, 272 F.R.D. 477, 482 (N.D. Cal. 2011). "Put differently, the Court must identify the persons (1) entitled to relief, (2) bound by a final judgment, and (3) entitled under Rule 23(c)(2) to the best notice practicable in a Rule 23(b)(3)." *James v. Uber Tech. Inc.*, 338 F.R.D. 123, 130 (N.D. Cal. 2021) (quotations omitted).

Plaintiffs define their classes without resorting to "extensive and individualized fact-finding or minitrials." *See Kosta v. Del Monte Foods, Inc.*, 308 F.R.D. 217, 223 (N.D. Cal. 2015). As an example, to establish the residency and shipping addresses for putative class members, [redacted]

[redacted] For the Meta subclasses, Plaintiffs' expert will rely on her "decades of experience" to identify membership by crafting "standard data queries" that take the purchase information and match it against records from Meta that Plaintiffs will later receive "in response to valid legal processes such as a production request or a subpoena." *See* Verkhovskaya Report ¶¶ 2–59. Because this methodology identifies class members through "objective" criteria, Plaintiffs have no trouble establishing that their proposed classes are ascertainable. *See, e.g.*, *Herrera v. LCS Fin. Serv. Co.*, 274 F.R.D. 666, 676 (N.D. Cal. 2011) (finding the plaintiffs satisfied the ascertainability where they proposed consulting "publicly available real estate databases" because "[c]lass members can be ascertained from these databases by reference to objective criteria").

## III. PLAINTIFFS ESTABLISH NUMEROSITY

Plaintiffs meet the numerosity requirement comfortably. As reflected by the evidentiary record, this is not an action that concerns ten or twenty people; this is an action that involves hundreds of thousands—if not millions—of consumers who accessed and navigated Defendant's website. Under any standard, Plaintiffs therefore demonstrate that joinder is impracticable here.

"Rule 23(a)(1) requires a party seeking class certification to show that the class is so numerous that joinder of all members is impracticable." *A.B. v. Hawaii State Dep't of Education*, 30 F. 4th 848, 835 (9th Cir. 2022) (quotations omitted). "Whether joinder would be impracticable depends on the facts and circumstances of each case and does not, as a matter of law, require the existence of any specific minimum number of class members." *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994). Notwithstanding that, "[a] class of forty or more members raises a presumption of impracticability of joinder based on numbers alone." *Rai v. Santa Clara Valley Transp. Auth.*, 308 F.R.D. 245, 253–54 (N.D. Cal. 2015) (quotations omitted). Moreover, "[i]n analyzing numerosity a court may make common-sense assumptions and reasonable inferences." *West v. Cal. Services, Bureau, Inc.*, 323 F.R.D. 295, 303 (N.D. Cal. 2017).

Over a month-long period, [redacted]

[redacted] Using "common-sense assumptions and reasonable inferences," Plaintiffs satisfy the numerosity requirement with ease. *See Scholl v. Mnuchin*, 489 F. Supp. 3d 1008, 1044 (N.D. Cal. 2020) (finding numerosity was met for a class consisting of "85,000 incarcerated persons"); *Californians for Disability Rights, Inc. v. Cal. Dept. of Transp*., 249 F.R.D. 334, 348 (N.D. Cal. 2008) (finding numerosity satisfied where "there is no real question that there are at least 22 class members" and where "common sense dictates that there are thousands—if not hundreds of thousands—more").

## IV. PLAINTIFFS ESTABLISH COMMONALITY

Like with ascertainability and numerosity, Plaintiffs have little difficulty establishing the commonality requirement. For all classes, Plaintiffs allege a common scheme in which Defendant deployed tracking technologies from third parties—including Meta, Attentive, Zeta, Google, and Adobe—for the purpose of analyzing website traffic and running targeted advertisements. Coupled with the common legal questions, Plaintiffs will rely on a common body of evidence that serves as the paradigmatic example what satisfies the commonality standard.

"Rule 23(a)(2) requires 'questions of law or fact common to the class.'" *Parsons v. Ryan*, 754 F. 3d 657, 676 (9th Cir. 2014) (quoting Fed. R. Civ. P. 23(a)(2)). Known as commonality, "Plaintiffs must show that the class members have suffered 'the same injury,' meaning that class members' claims must 'depend upon a common contention' of such a nature that determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke.'" *In re High-Tech Employee Antitrust Litig.*, 985 F. Supp. 2d 1167, 1180 (N.D. Cal. 2013) (quoting *Dukes*, 564 U.S. at 350). "These common questions may center on shared legal issues with divergent factual predicates or a common core of salient facts coupled with disparate legal remedies." *Jimenez v. Allstate Ins.*, 765 F. 3d 1161, 1165 (9th Cir. 2014) (quotations omitted). For purposes of satisfying the commonality requirement, "even a single common question will do." *Dukes*, 564 U.S. at 359 (quotations and brackets omitted).

With respect to the Meta classes, Plaintiffs' proof and theories of liability hinge on a host of common questions, including: 1) whether Rack Room deployed the Meta Pixel during the class period; 2) whether the Meta Pixel constitutes a wiretapping device; 3) whether Rack Room

configured the Meta Pixel to collect ViewContent or AddtoCart events; 4) whether Meta was able to associate those events with a Facebook profile; 5) whether Rack Room facilitated those interceptions intentionally; 6) whether class members consented to those interceptions; and 7) the purpose for which Rack Room facilitated those interceptions. With respect to the Purchaser classes, Plaintiffs' proof and theories of liability likewise hinge on a similar set of common questions, including: 1) whether Rack Room activated and deployed tracking technology from Attentive, Zeta, Google, and Adobe during the class period; 2) whether the tracking technologies constitute eavesdropping devices; 3) whether Rack Room configured the tracking technologies to collect the content of electronic communications; 4) whether the third parties initially designed or Rack Room later configured the tracking technologies to collect personally identifiable information; 5) whether class members consented to Rack Room's use of those tracking technologies; and 6) the purpose for which Rack Room utilized the tracking technologies.

As courts have noted when reviewing analogous claims and evidence, "[l]itigating a class action suit would produce common answers to these questions, and each of these answers will 'drive the resolution of the litigation' and 'affect all … putative class members.'" *Jancik v. WebMD LLC*, 2025 WL 560705, at *7 (N.D. Ga. Feb. 20, 2025) (quoting *Dukes*, 564 U.S. at 350); *see also Rodriguez v. Google LLC*, 2024 WL 38302, at *3 (N.D. Cal. Jan. 3, 2024) (finding that the plaintiffs' claims "pose[d] common questions of law or fact," including "whether Google ha[d] 'permission' to collect third party app data based on the 'objective meaning' of Google's sWAA disclosures"); *Kishore v. Times Internet (Uk) Ltd.*, 2026 WL 1097749, at *3 (N.D. Cal. Apr. 22, 2026) (reviewing analogous allegations and claims and holding that "[c]ommon questions of law and fact include whether Defendant disclosed Plaintiffs' and Settlement Class Members' Personally Identifiable Information (i.e., personal identifiers and details of the videos they watched) to third parties, including Meta, without their consent").

## V. PLAINTIFFS ESTABLISH TYPICALITY

Plaintiffs easily satisfy the typicality requirement. The premise supporting that conclusion is simple: where every class member's injury stems from the same systemic conduct, applied uniformly and without differentiation, the named representatives' claims are typical of the class. Rack Room cannot credibly argue otherwise. Its website operated identically for every visitor;

its tracking technologies captured the same categories of data from every transaction; and its unauthorized disclosures to third parties followed a single, undifferentiated protocol. Plaintiffs therefore did not suffer a unique or idiosyncratic harm; they suffered precisely what every other class member suffered, through precisely the same mechanism. Typicality is thus met.

"Rule 23(a)(3) requires that 'the claims or defenses of the representative parties are typical of the claims or defenses of the class." *Staton*, 327 F. 3d at 957 (quoting Fed. R. Civ. P. 23(a)(3)). "To demonstrate typicality, Plaintiffs must show that the named parties' claims are typical of the class." *Ellis*, 657 F. 3d at 984. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Co.*, 976 F. 2d 497, 508 (9th Cir. 1998). As a corollary, "[t]he typicality requirement is met when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Oliveira v. Lang. Line Serv., Inc.*, 767 F. Supp. 3d 984, 1002 (N.D. Cal. 2025) (quotation omitted).

Just like the other class members, Plaintiffs: 1) visited Rack Room's website and purchased products; 2) entered identifying information, including their full name and address; 3) reasonably expected that their communications would remain confidential; and 4) never provided Rack Room with consent to transmit the content of the confidential communications, including those that contained personally identifiable information. *See* TAC ¶¶ 7–9; *See* Ex. Y–EE. And just like every other class member, Plaintiffs have alleged and established that Rack Room "systematically disclose[d] such information to numerous third parties," including Meta, Attentive, Zeta, Google, and Adobe. *See* TAC ¶ 55; *see also* Ex. C, D, L, M, N, O, P, Q, R, S. Because class members used the same website and were subject to the same systemic practices, Plaintiffs' claims "are typical of the class[es]." *See Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 574 (N.D. Cal. 2025) (holding that "the proposed class representatives' claims are typical of the class" because "all plaintiffs and class members used the Flo App and were subject to the same app and SDK practices"); *Kishore*, 2026 WL 1097749, at *3 ("Plaintiffs' claims are both factually and legally similar to those of the putative Settlement Class because, like Plaintiffs, all Settlement Class

Members allegedly had their personal identifiers and video-viewing information disclosed in the same manner and as part of the same alleged practice, through the use of tracking technologies on Defendant's website."); *Rodriguez*, 2024 WL 38302, at *3 (finding typicality because "[n]amed Plaintiffs Rodriguez, Cataldo, and Harvey are Android users and aver claims typical of Class 1, while named Plaintiff Santiago uses an Apple device and avers claims typical of Class 2").

## VI. PLAINTIFFS ESTABLISH ADEQUACY OF REPRESENTATION

Plaintiffs satisfy the adequacy-of-representation requirement under Rule 23(a)(4). The adequacy inquiry ensures that named representatives harbor no conflicts of interest and that they will prosecute the action vigorously on their behalf. Plaintiffs meet both prongs of this test with ease. They share the same interests as the putative class, and they have also actively participated in every phase of this litigation. What is more, Plaintiffs have also retained counsel who bring substantial experience to this action and who have already dedicated substantial time and resources investigating, pleading, and pursuing these claims on behalf of the class.

"Rule 23(a)(4) requires that 'the representative parties [must] fairly and adequately protect the interests of the class.'" *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F. 3d 1152, 1162 (9th Cir. 2001) (quoting Fed. R. Civ. P. 23(a)(4)). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Products, Inc.*, 521 U.S. at 625. "To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members; and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis*, 657 F. 3d at 985 (quotations omitted).

Plaintiffs establish the adequacy-of-representation requirement with ease. *First*, Plaintiffs have no conflicts of interests with other class members. *See* Williams and Smith Decl. ¶¶ 1–8. Plaintiffs have also demonstrated that they are adequate class representatives who are willing to prosecute this action through trial. Indeed, Plaintiff Williams and Plaintiff Smith have already made significant contributions to this litigation, including by assisting in the pleadings, gathering records, responding to written discovery requests, appearing for depositions, consulting with

counsel on case developments and strategy, and submitting declarations in support of this motion. *Id.*; *see also Castro v. ABM Indus., Inc.*, 325 F.R.D. 332, 342 (N.D. Cal. 2018) (finding that plaintiffs were adequate representative when they "have been active participants in the litigation").

Plaintiffs' counsel have also demonstrated their adequacy under Rule 23(g), which focuses on "(1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions or other complex litigation and the type of claims in the litigation; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class." *Scholl*, 489 F. Supp. 3d at 1045. The attorneys from Marcus Rashbaum Pineiro & Meyers LLP ("MRP Law") working on this case are experienced in prosecuting class actions and complex litigation. *See* Ex. JJ. Plaintiffs' counsel has dedicated substantial time and resources to investigating, pleading, and pursuing these claims, and they have also demonstrated their knowledge of the applicable law, including in opposition to Defendant's motions to dismiss. Accordingly, Plaintiffs request that the Court appoint MRP Law and their local counsel, Levin Law P.A., as class counsel. *See, e.g.*, *In re JUUL Labs, Inc., Marketing Sales Practice and Prod. Liability Litig.*, 609 F. Supp. 3d 942, 966 (N.D. Cal. 2022) (finding class counsel was adequate "[b]ased on their thorough and robust advocacy to date").

## VII. PLAINTIFFS ESTABLISH PREDOMINANCE

Common questions of law and fact overwhelmingly predominate here. The central liability questions—whether Defendant deployed tracking technologies that intercepted the contents of consumers' private communications, whether Defendant played an active role in facilitating those interceptions, and whether Defendant acted with a criminal or tortious purpose—are each susceptible to generalized, class-wide proof. Plaintiffs will establish these elements through two bodies of common evidence: 1) attributable event data from Meta for the Meta classes, and 2) circumstantial evidence of systemic, indiscriminate wiretapping for the non-Meta classes. Because these shared questions go to the heart of every class member's claims under the Wiretap Act, CIPA § 631, and CIPA § 632, they are far more prevalent and important than any residual questions.

"Federal Rule of Civil Procedure 23(b)(3) requires that, before a class is certified under that subsection, a district court must find that 'questions of law or fact common to the class

members predominate over any questions affecting only individual members.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting Fed. R. Civ. P. 23(b)(3)). "Considering whether 'questions of law or fact common to the class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc.*, 577 U.S. at 453 (quotations and brackets omitted). "In order for the plaintiffs to carry their burden of proving that a common question predominates, they must show that the common question relates to a central issue in the plaintiffs' claim." *Olean*, 31 F. 4th at 665 (quotations omitted). "Rule 23(b)(3), however, does not require a plaintiff seeking class certification to prove that each element of her claim is susceptible to class wide proof." *Amgen*, 568 U.S. at 469 (quotations and brackets omitted). Instead, "[t]he Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc.*, 521 U.S. at 623. Put differently, "[t]he predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc.*, 577 U.S. at 543 (citations and quotations omitted).

To state their claims under the Wiretap Act, Plaintiffs and class members will show through common evidence that Defendant played an "active role" in intercepting the contents of their communications, including by "customiz[ing] and deploy[ing]" the source code that effectuated those interceptions. *See Smith v. Rack Room Shoes, Inc.*, 2025 WL 2210002, at *5 (N.D. Cal. Aug. 4, 2025) (quotations omitted). Plaintiffs will also show that Defendant engaged in such misconduct for "a criminal or tortious purpose." *See Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F. 4th 1125, 1136 (9th Cir. 2022). To be sure, unlike with CIPA § 631 and CIPA § 632, courts have held that the Wiretap Act requires Plaintiffs and class members to prove "the actual interception of conversations," *see Walker*, 911 F. 2d at 1577, but with respect to the Meta classes, Plaintiffs and class members can rely on the spreadsheets evincing attributable

interceptions. *See* Exs. C, D. And with respect to the non-Meta classes, Plaintiffs and class members will establish their claim through circumstantial evidence, including through common proof demonstrating that Defendant engaged in "continued, indiscriminate wiretapping" of private conversations. *See Awbrey*, 505 F. Supp. at 607; *see also* Ex. L, M, N, O, P, Q, R, S.

Plaintiffs will also rely on the same bodies of proof—the attributable event data for the Meta classes and the circumstantial evidence for the non-Meta classes—when establishing their claims under CIPA § 631 and CIPA § 632. Plaintiffs will point to the attributable event data from Meta to conclusively demonstrate that Defendant's use of the Meta Pixel—a wiretapping and eavesdropping device—led to a third party successfully wiretapping and eavesdropping upon their private conversations. *See* Exs. C, D, KK, LL; *see also* Verkhovskaya Report ¶¶ 2–52. By the same token, Plaintiffs will point to the circumstantial evidence to demonstrate that Defendant used the remaining tracking technologies to eavesdrop upon private conversations. *See* Ex. L, M, N, O, P, Q, R, S. Taken together, these bodies of proof are precisely the sort of "generalized evidence" that satisfy the predominance requirement. *See Wolin v. Jaguar Land Rover North America, LLC*, 617 F. 3d 1168, 1173 (9th Cir. 2010); *Jancik*, 2025 WL 560705, at *9 (finding predominance because "the production of Event Data anticipated from Meta should clearly reveal the individuals from which Meta received video-viewing data"); *Rodriguez*, 2024 WL 38302, at *9 (analyzing analogous facts and finding that "[t]he predominance inquiry of 23(b)(3) is … satisfied"); *Frasco*, 349 F.R.D. at 577 (reviewing analogous facts and finding that "[c]ommonality and predominance are demonstrated for the CIPA § 632"); *Torres v. Prudential Fin.*, 2024 WL 4894289, at *7 (N.D. Cal. Nov. 26, 2024) (reviewing analogous facts and finding predominance because "[i]f a factfinder determines that a reasonable user would understand Prudential's privacy policies in such a way that those policies confer consent, the Court can then evaluate whether the effort required to ascertain which class members read the privacy policies would defeat predominance"); *Kishore*, 2026 WL 1097749, at *4 (reviewing analogous facts and finding that "common questions predominate here because the common question of Defendant disclosed Plaintiffs' and the Settlement Class Members' Personally Identifiable Information (i.e., personal identifiers and details of the videos they watched) to third parties, including Meta, without their consent, and thus

violated the VPPA, predominates over any individual questions.”).

## VIII. PLAINTIFFS ESTABLISH SUPERIORITY

The class action device exists precisely for cases like this one: where individual claims, though meritorious, are too small to justify the cost of separate litigation, and where common questions make collective resolution not merely convenient but also necessary. A class action is superior here because it advances both judicial economy and fairness to class members who would otherwise have no practical means of vindicating their rights. No competing litigation clouds the field; no class member has sought to go it alone; and no manageability concerns tip the balance against certification. Plaintiffs thus satisfy the superiority requirement.

“Rule 23(b)(3)’s superiority test requires the court to determine whether maintenance of this litigation as a class action is efficient and whether it is fair.” *Wolin v. Jaguar Land Rover North America, LLC*, 617 F. 3d 1168, 1176 (9th Cir. 2010). “This inquiry at its very core assesses whether the claims could not be resolved but for a class action.” *Bartz v. Anthropic PBC*, 791 F. Supp. 3d 1038, 1063 (N.D. Cal. 2025) (quotations omitted). As part of that inquiry, Rule 23 “provides a non-exhaustive list of factors relevant to the superiority inquiry: ‘(A) the class members’ interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.’” *Bateman v. American Multi-Cinema, Inc.*, 623 F. 3d 708, 713 (9th Cir. 2010) (quoting Fed. R. Civ. P. 23(b)(3)). When analyzing this non-exhaustive list, “[s]uperiority must be looked at from the point of view (1) of the judicial system, (2) of the potential class members, (3) of the present plaintiff, (4) of the attorneys for the litigants, (5) of the public at large, and (6) of the defendant.” *Kamm v. Cal. City Dev. Co.*, 509 F. 2d 205, 212 (9th Cir. 1975). “Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation.” *Valentino v. Carter-Wallace, Inc.*, 97 F. 3d 1227, 1234 (9th Cir. 1994).

Given the size of the class, “[t]here is no doubt that a class action is the superior method of adjudicating [class members’] claims.” *See Frasco*, 349 F.R.D. at 557. Moreover, “[t]hus far, no

class members have expressed interest in litigating this case through separate actions; no other pending cases appear to address the current controversy; no one has suggested that [California] … is an inappropriate forum; and no significant manageability concerns appear to outweigh the manageability concerns that would exist if this case was litigated through separate actions." *See Jancik*, 2025 WL 560705, at *9. Accordingly, "[s]uperiority is satisfied." *See Frasco*, 349 F.R.D. at 557 ("Resolution of the common questions discussed in this order on a classwide basis will promote efficiency by (1) bypassing the need to relitigate identical questions and conduct nearly identical discovery in parallel litigations and (2) avoiding the strain on scarce judicial resources that suits by individual Flo App users would impose."); *Rodriguez*, 2024 WL 38302, at *9–10 (finding that "class treatment of this case is the superior method of adjudication because each class member would not have to litigate numerous and substantial issues to establish his or her right to recover individually") (quotations omitted); *Kishore*, 2026 WL 1097749, at *4 (finding that the plaintiffs satisfied the superiority requirement because "[a] class action in this case enables the most efficient use of Court and attorney resources and reduces costs to the class members by allocating costs among them"); *Jancik*, 2025 WL 560705, at *9 (finding that the plaintiffs satisfied the superiority requirement and rejecting the argument that "each putative class member would need to individually prove that his or her PII was captured and shared with Meta").

## CONCLUSION

Because Plaintiffs satisfy the prerequisites under Rule 23 for maintaining a class action, their motion should be granted in full.

DATED: May 29, 2026

**MARCUS RASHBAUM PINEIRO & MEYERS LLP**

By: /s/ *Christopher R. Reilly*
Christopher R. Reilly

Michael A. Pineiro (*pro hac vice*)
Christopher R. Reilly (*pro hac vice*)

**LEVIN LAW, P.A.**
Brian Levin (*pro hac vice*)
Jacob Polin (Cal. Bar No. 311203)

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 29, 2026, a true and correct copy of the foregoing motion was served on counsel for the Defendant through the e-mail addresses listed below.

/s/ *Christopher R. Reilly*
Christopher R. Reilly

**SERVICE LIST**

**Anahit Tagvoryan**
**Brad W. Seiling**
Manatt, Phelps & Phillips
2049 Century Park East
Suite 1700
Los Angeles, CA 90067
310-312-4347
Email: ATagvoryan@manatt.com
Email: bseiling@manatt.com

**Brandon M Wong**
Manatt, Phelps & Phillips, LLP
695 Town Center Drive
14th Floor
Costa Mesa, CA 92626
714-458-5763
Email: BWong@manatt.com

**Kyla Nunez**
Manatt, Phelps and Phillips, LLP
1215 K Street, Suite 1900
Sacramento, CA 95814
317-752-6475
Email: knunez@manatt.com