MANATT, PHELPS & PHILLIPS, LLP
Ana Tagvoryan (Bar No. 246536)
atagvoryan@manatt.com
Brad W. Seiling (Bar No. 143515)
bseiling@manatt.com
2049 Century Park East, Suite 1700
Los Angeles, CA 90067
Telephone: (310) 312-4000
Facsimile: (310) 312-4224

MANATT, PHELPS & PHILLIPS, LLP
Kyla Núñez (Bar No. CA 329484)
KNunez@manatt.com
1215 K Street, Suite 1900
Sacramento, CA 95814
Telephone: (916) 552-2300
Facsimile: (916) 552-2323

MANATT, PHELPS & PHILLIPS, LLP
Brandon Wong (Bar No. CA 327372)
BWong@manatt.com
695 Town Center Dr., 14th Floor
Costa Mesa, CA 92626
Telephone: (714) 371-2500
Facsimile: (714) 371-2550

Attorneys for Defendant
RACK ROOM SHOES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEMETRIUS SMITH and MAIA WILLIAMS, on behalf of themselves and all other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RACK ROOM SHOES, INC.,<br><br>Defendant. | Case No. 3:24-cv-06709-RFL<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Date: August 25, 2026<br>Time: 10:00 a.m.<br>Dept: Courtroom 4, 17th Floor<br>Judge: Hon. Rita F. Lin<br><br>Trial Date: N/A<br><br>Action Filed: September 24, 2024 |

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | STATEMENT OF PLAINTIFFS' CLAIMS AND PROPOSED CLASSES | 2 |
| | A. Federal Wiretap Act (18 U.S.C. § 2511) | 3 |
| | B. California Invasion of Privacy Act § 631 (Cal. Penal Code § 631) | 4 |
| | C. California Invasion of Privacy Act § 632 (Cal. Penal Code § 632) | 4 |
| | D. Plaintiffs' Evidence on their Motion | 4 |
| III. | RELEVANT BACKGROND AND RECORD EVIDENCE. | 5 |
| | A. General Functionality of a Meta Pixel | 5 |
| | B. Evidence Pertaining to Plaintiff Smith. | 6 |
| | C. Evidence Pertaining to Plaintiff Williams. | 6 |
| | D. Rack Room's Use of Attentive, Zeta, Adobe and Google. | 7 |
| IV. | LEGAL STANDARD FOR CLASS CERTIFICATION. | 8 |
| V. | PLAINTIFFS LACK ARTICLE III STANDING. | 9 |
| VI. | THE PUTATIVE CLASSES ARE NOT ASCERTAINABLE. | 13 |
| VII. | INDIVIDUAL ISSUES PREDOMINATE OVER COMMON QUESTIONS. | 155 |
| | A. Questions of Law and Fact Predominate Over Any Common Questions. | 15 |
| | B. Additional Evidence Overwhelmingly Establishes that Individual Issues Predominate. | 23 |
| VIII. | PLAINTIFFS AND CLASS COUNSEL ARE NOT ADEQUATE. | 25 |
| | A. Plaintiffs Are Not Adequate Class Representatives. | 26 |
| | B. Class Counsel Cannot Adequately Represent the Putative Classes. | 28 |
| IX. | A CLASS ACTION IS NOT THE SUPERIOR METHOD OF RESOLVING THE CASE. | 30 |
| X. | CONCLUSION | 30 |

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Al-Ahmed v. Twitter, Inc.*, 648 F. Supp. 3d 1140 (N.D. Cal. 2023) ....23

*Alberghetti v. Corbis Corp.*, 263 F.R.D. 571 (C.D. Cal. 2010), *aff'd*, 476 F. App'x 154 (9th Cir. 2012) ....27

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ....15

*AmeriPride Servs., Inc. v. Valley Indus. Serv., Inc.*, 2006 WL 2308442 (E.D. Cal. 2006) ....29

*Benedict v. Hewlett-Packard Co.*, 314 F.R.D. 457 (N.D. Cal. 2016) ....25

*Berrien v. New Raintree Resorts Int'l, LLC*, 276 F.R.D. 355 (N.D. Cal. 2011) ....9

*Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009) ....12

*Blair v. CBE Grp., Inc.*, 309 F.R.D. 621 (S.D. Cal. 2015) ....16

*Boulton v. Community.com, Inc.*, No. 23-3145, 2025 WL 314813 (9th Cir. Jan. 28, 2025) ....21

*Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225 (11th Cir. 2016) ....24

*Brown v. Google*, 685 F. Supp. 3d 909 (N.D. Cal. 2023) ....16, 19, 20

*Calhoun v. Google LLC*, 349 F.R.D. 588 (N.D. Cal. 2025) ....9, 16, 18

*Campbell v. Facebook Inc.*, 315 F.R.D. 250 (2016) ....18

*Castillo v. Bank of Am. N.A.*, 980 F.3d 723 (9th Cir. 2020) ....15, 23

*Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949) ....28

*Cohen v. Implant Innovations, Inc.,* 259 F.R.D. 617, 644 (S.D. Fla. 2008) ....30

*Coleman v. Burger King Corp.,* No. 22-CV-20925, 2025 WL 3280900, at *16 (S.D. Fla. Nov. 25, 2025) ....30

*Comcast Corp. v. Behrend*,
569 U.S. 27, 34 (2013) ..... 25

*Corral v. Staples the Off. Superstore LLC*,
No. 2:22-CV-01254-MCS-PVC, 2023 WL 2347445 (C.D. Cal. Feb. 6, 2023) ..... 25

*Daniel F. v. Blue Shield of California*,
305 F.R.D. 115 (2014) ..... 13

*Dawidzik v. Tesla, Inc.*,
No. EDCV 25-01982-KK-SPX, 2025 WL 3786963 (C.D. Cal. Dec. 29, 2025) ..... 12

*DellaSala v. Samba TV, Inc.*,
3:25-CV-03470-JSC, 2025 WL 3034069 (N.D. Cal. Oct. 30, 2025) ..... 24

*Duran v. U.S. Bank Nat'l Ass'n*,
59 Cal. 4th 1 (2014) ..... 30

*Dutta v. State Farm Mutual Auto. Ins.*,
895 F.3d 1166 (9th Cir. 2018) ..... 9

*DZ Reserve v. Meta Platforms, Inc.*,
96 F.4th 1223 (9th Cir. 2024) ..... 9, 15

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ..... 9, 25

*Federated University Police Officers' Association v. Regents of University of California*,
No. SACV 15-00137-JLS, 2015 WL 13273308 (C.D. Cal. July 29, 2015) ..... 22

*Fendler v. Westgate–Cal. Corp.*,
527 F.2d 1168 (9th Cir. 1975) ..... 29

*Frasco v. Flo Health, Inc.*,
349 F.R.D. 557 (N.D. Cal. 2025) ..... 19, 20, 24, 25

*Garcia v. Blackhawk Network, Inc.*,
No. 2:25-CV-07550-JLS-SSC, 2026 WL 925028 (C.D. Cal. Apr. 1, 2026) ..... 10

*Garnica v. HomeTeam Pest Def., Inc.*,
230 F. Supp. 3d 1155 (N.D. Cal. 2017) ..... 25

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982) ..... 8

*Griffith v. TikTok, Inc.*,
5:23-CV-00964-SB-E, 2024 WL 4308813 (C.D. Cal. Sept. 9, 2024) ..... 8

*Guido v. L'Oreal, USA, Inc.*,
284 F.R.D. 468 (C.D. Cal. 2012) ..... 30

*Gutierrez v. Converse Inc.*,
No. 24-4797, 2025 WL 1895315 (9th Cir. July 9, 2025) ..... 21

*Halley v. Target Corp.*,
No. SACV 17-0692 JGB, 2024 WL 4875346 (C.D. Cal. Oct. 25, 2024) ..... 29, 30

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ..... 11

*Hanni v. Am. Airlines, Inc.*,
2010 WL 289297 (N.D. Cal. Jan. 15, 2010) ....................13

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) ....................25

*Hartless v. Clorox Co.*,
273 F.R.D. 630 (S.D. Cal. 2011), *aff'd in part*, 473 F. App'x 716 (9th Cir. 2012) ....................30

*Hataishi v. First Am. Home Buyers Prot. Corp.*,
223 Cal. App. 4th 1454 (2014) ....................22

*Hatch v. Reliance Ins. Co.*,
758 F.2d 409 (9th Cir. 1985) ....................29

*Hernandez v. County of Monterey*,
305 F.R.D. 132 (2015) ....................13

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) ....................23

*Herzman v. Smile Brands Inc.*,
No. 25-CV-03400-H-BLM, 2026 WL 1110698 (S.D. Cal. Apr. 23, 2026) ....................10

*In re Arris Cable Modem Consumer Litig.*,
327 F.R.D. 334 (N.D. Cal. 2018) ....................28, 29

*In re Clorox*,
301 F.R.D. ....................13

*In re Comput. Memories Sec. Litig.*,
111 F.R.D. 675 (N.D. Cal. 1986) ....................28

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ....................17

*In re Facebook Internet Tracking Litigation*,
956 F.3d 589 (9th Cir.) ....................20

*In re Google Inc. Gmail Litig.*,
2014 WL 1102660 ....................16, 18

*In re Google Inc. Gmail Litig.*,
No. 13–MD–02430 ....................16, 18

*In re Meta Pixel Tax Filing Cases Meta Platforms, Inc.*,
826 F. Supp. 3d at 1235 ....................22

*In re Meta Pixel Tax Filing Cases Meta Platforms, Inc.*,
No. 22-CV-07557, 2026 WL 1025741 (N.D. Cal. Mar. 30, 2026) ....................12, 15, 24

*In re Quarterdeck Office Sys. Sec. Litig.*,
No. CV 92-3970-DWW(GHKX), 1993 WL 623310 (C.D. Cal. Sept. 30, 1993) ....................27

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
267 F.R.D. 583 (2010) ....................13

*Ingraham v. Capital One Fin. Corp.*,
No. 24-CV-05985-TLT, 2026 WL 1759155 (N.D. Cal. June 16, 2026) ....................12, 13, 16, 18, 22

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) ........................................................................23

*Katz v. United States*,
389 U.S. 347 (1967) (concurring opinion)......................................................................19

*Kearney v. Hyundai Motor Co.*,
No. SACV 09-1298 DOC, 2010 WL 9093204 (C.D. Cal. June 4, 2010)..........................12

*Kearney v. Salomon Smith Barney, Inc.*,
39 Cal. 4th 95 (2006) ......................................................................................................25

*Kennedy v. Allied Mut. Ins. Co.*,
952 F.2d 262 (9th Cir. 1991) ..........................................................................................26

*Khamooshi v. Politico LLC*,
No. 24-CV-07836-SK, 2025 WL 2822879 (N.D. Cal. Oct. 2, 2025) ..............................11

*Kight v. CashCall, Inc.*,
200 Cal. App. 4th 1377 (2012) ......................................................................................18

*Kight v. Cash Call, Inc.*,
231 Cal. App. 4th 112 (2014) ...................................................................................16, 19

*Kishnani v. Royal Caribbean Cruises Ltd.*,
No. 25-CV-01473-NW, 2025 WL 1745726 (N.D. Cal. June 24, 2025)...........................10

*Koeppel v. Speirs*,
808 N.W.2d 177 (Iowa 2011) ..........................................................................................23

*Lee v. Pep Boys-Manny Moe & Jack of Cal.*,
No. 12-CV-05064-JSC, 2015 WL 9480475 (N.D. Cal. Dec. 23, 2015) ...........................27

*Lightoller v. JetBlue Airways Corp.*,
No. 23-CV-00361-H-KSC, 2023 WL 3963823 (S.D. Cal. June 12, 2023) .......................10

*Lineberry v. AddShoppers, Inc.*,
No. 23-CV-01996-VC, 2025 WL 1533136 (N.D. Cal. May 29, 2025)..........................9. 12, 13, 28

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)........................................................................................................12

*Magadia v. Wal-Mart Assocs., Inc.*,
999 F.3d 668 (9th Cir. 2021) ............................................................................................9

*Massie v. General Motors LLC*,
No. CV 21-787-RGA¸ 2022 WL 534468 (D. Del. Feb. 17, 2022) ....................................11

*McCausland v. Gray Media Grp., Inc.*,
No. 22 CIV. 7539 (PGG), 2024 WL 1374765 (S.D.N.Y. Mar. 31, 2024).........................23

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023)......................................................................10, 11

*Morrison v. Nat'l Australia Bank*,
561 U.S. 247 (2010).........................................................................................................25

*N. Alaska Salmon Co. v. Pillsbury*,
174 Cal. 1 (1916) ............................................................................................................25

*Nunez v. BAE Sys. San Diego Ship Repair Inc.*,
292 F. Supp. 3d 1018 (S.D. Cal. 2017) ........ 26

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) (en banc) ........ 8, 15

*Paladin Assocs., Inc. v. Mont. Power Co.*,
328 F.3d 1145 (9th Cir. 2003) ........ 30

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014) ........ 15

*Petersen v. Costco Wholesale Co., Inc.*,
312 F.R.D. 565 (C.D. Cal. 2016) ........ 26

*Popa v. Microsoft Corp*.,
153 F.4th 784 (9th Cir. 2025) ........ 1, 9, 10, 12

*Radio City, Inc. v. Celestron Acquisition, LLC*,
No. 5:20-CV-03642-EJD, 2023 WL 5519324 (N.D. Cal. Aug. 25, 2023) ........ 28, 29

*Radobenko v. Automated Equip. Corp.*,
520 F.2d 540 (9th Cir. 1975) ........ 26

*Reisberg v. Renaissance Learning, Inc.*,
No. 8:25-CV-01379-FWS-JDE, 2026 WL 1048242 (C.D. Cal. Feb. 17, 2026) ........ 11

*Richard Green (Fine Paintings) v. McClendon*,
262 F.R.D. 284 (S.D.N.Y. 2009) ........ 29

*Rodman v. Safeway, Inc.*,
125 F. Supp. 3d 922 (N.D. Cal. 2015) ........ 30

*Rodriguez v. Brushfire Records, Inc*.,
No. 2:25-cv-09797-CAS-PDx, 2025 WL 3692144 (C.D. Cal. Dec. 15, 2025) ........ 9

*Rodriguez v. Culligan Int'l Co*.,
No. 25-CV-00225-AJB-KSC, 2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) ........ 12

*Rodriguez v. Google LLC*,
20-CV-04688-RS, 2024 WL 38302 (N.D. Cal. Jan. 3, 2024) ........ 19

*Rojas v. HSBC Card Servs. Inc.*,
93 Cal. App. 5th 860 (2023) ........ 16

*Rusow v. Skinspirit Essential LLC*,
24-CV-09317-CRB, 2025 WL 4657637 (N.D. Cal. Oct. 15, 2025) ........ 23

*Saeedy v. Microsoft Corp*.,
No. 23-CV-1104, 2023 WL 8828852 (W.D. Wash. Dec. 21, 2023) ........ 11

*Sanchez v. Wal–Mart Stores, Inc.*,
2009 WL 1514435 (E.D. Cal. May 28, 2009) ........ 25

*Schallert v. Laird Superfood, Inc*.,
No. 2:25-cv-12407-SPG-PVC, slip op. (C.D. Cal. June 5, 2026) ........ 12

*Sethavanish v. ZonePerfect Nutrition Co.*,
No. 12–2907–SC, 2014 WL 580696 (N.D. Cal. Feb. 13, 2014) ........ 13

*Sullivan v. Oracle Corp.*,
51 Cal. 4th 1191 (2011) ....................25

*Surowiec v. Cap. Title Agency, Inc.*,
790 F. Supp. 2d 997 (D. Ariz. 2011) ....................29

*Thele v. Google, LLC*
No. 25-CV-09704-NW, 2026 WL 1970746 (N.D. Cal. July 7, 2026)....................12

*Torres v. Nutrisystem, Inc.*,
289 F.R.D. 587 (C.D. Cal. 2013) ....................22

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)....................9

*True Health Chiropractic, Inc. v. McKesson Corp.*,
896 F.3d 923 (9th Cir. 2018) ....................24

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)....................8, 15

*Walker v. Darby*,
911 F.2d 1573 (11th Cir. 1990) ....................3

*Walter v. Leprino Foods Co.*,
670 F. Supp. 3d 1035 (2023) ....................13

*Wang v. Chinese Daily News, Inc.*,
737 F.3d 538 (9th Cir. 2013) ....................15

*Welling v. Alexy*,
155 F.R.D. 654 (N.D. Cal. 1994)....................25

*White v. Symetra Assigned Benefits Serv. Co.*,
104 F.4th 1182 (9th Cir. 2024) ....................15

*Wolin v. Jaguar Land Rover N. Am., LLC*,
617 F.3d 1168 (9th Cir. 2010) ....................30

*Wortman v. Air New Zealand*,
326 F.R.D. 549 (2018) ....................13

*Wrighten v. Metro. Hosps., Inc.*,
726 F.2d 1346 (9th Cir. 1984) ....................29

## STATUTES

18 U.S.C.A. § 2511(2)(d)....................3

18 U.S.C. § 2511(1)(a)....................3

18 U.S.C. § 2520(a) ....................3

18 U.S.C. § 2520(e) ....................23

Cal. Civ. Proc. Code § 340(a) ....................23

Cal. Penal Code § 631(a) ....................4. 15, 20, 21, 22, 24

Cal. Penal Code § 632(a) ....................4, 20, 21, 22

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
NEW YORK

Cal. Penal Code §§ 632(a), (c) .......... 19
CIPA .......... passim
ECPA .......... 10, 23
Federal Wiretap Act (18 U.S.C. § 2511) .......... 1, 2, 3, 16
Privacy Act § 631 (Cal. Penal Code § 631) .......... 1, 3, 4
Privacy Act § 632 (Cal. Penal Code § 632) .......... 4
U.S. Code § 2511(2)(d) .......... 15

## RULES

FED. R. CIV. P. 23(g)(1)(A)(i)–(iv) .......... 29
Rule 12(b)(1) .......... 9
Rule 23 .......... 1, 8, 9, 13, 15
Rule 23(a) .......... 8, 9
Rule 23(a)(2) .......... 15
Rule 23(b) .......... 8
Rule 23(b)(3) .......... 13, 15, 18
Rule 23(g) .......... 30

## I. INTRODUCTION

Plaintiffs Demetrius Smith ("Smith") and Maia Willaims ("Williams") ask this Court to certify six putative classes arising out of the alleged deployment of third-party tracking technologies on Defendant Rack Room Shoes' ("Defendant" or "Rack Room") website. But Plaintiffs' motion is built on a foundation of sand. After nearly two years of litigation and extensive discovery, Plaintiffs have failed to produce any competent evidence establishing the elements necessary to satisfy Rule 23. Their motion rests on unauthenticated and unexplained exhibits, unsupported assertions by counsel, and the debunked opinions of an "expert" who opines on nothing more than ascertainability, and whose methodology is the subject of a pending motion to exclude. The failure of the evidence is not merely on the merits, but on the proof required to establish the elements of Rule 23. The Court must conduct a "rigorous analysis" of the evidence which itself must satisfy the preponderance standard. Plaintiffs cannot meet this burden by arguing what the evidence will show *in the future*; but rather, the Court must convince itself of what the evidence shows *today*. Plaintiffs' motion fails at every step of the Rule 23 analysis.

First, Plaintiffs lack Article III standing. Even if the Court accepted Plaintiffs' "attempt" and "purpose" theories of liability for the California Invasion of Privacy Act ("CIPA") Sections 631 and 632, and their "circumstantial evidence" theory for the Wiretap Act, under the Ninth Circuit's recent decision in *Popa v. Microsoft Corp.*, a bare statutory violation does not establish concrete or actual injury. Plaintiffs have not demonstrated—by any evidence, much less a preponderance—that they suffered a cognizable, traditional privacy harm from any attempted or actual interception. Neither named Plaintiff can identify any sensitive content or personally identifiable information subject to third party tracking, and the Meta event browsing data they cite is neither private nor confidential, if it can be attributed to them at all.

Second, the putative classes are not ascertainable. Plaintiffs' proposed methodology for identifying class members for the Meta classes—matching "Meta Event Data" or similar data to purchase records—is fatally flawed because the Meta Pixel attributes browsing activity to whichever Facebook account is logged in or identifiable on the device, not to the person actually browsing the website. Even Plaintiffs' own expert could not reliably identify class members under the proposed criteria and could not match Plaintiffs' own purchase and browsing details, including dates, to the Meta Event Data. Critically, Plaintiffs are not part of the Meta classes they purport to represent.

Third, individual issues overwhelmingly predominate over common questions. Consent, reasonable expectation of privacy, and injury are all inherently individualized inquiries that cannot be resolved on a classwide basis, especially where there is ***no evidence*** that the third party tools worked uniformly and consistently through the class period, the online privacy policy was ambiguous and changed over the class period, Plaintiffs themselves were not on notice of the privacy policy, and class members were also exposed to other marketing privacy policies, including those from Attentive and Meta. The named Plaintiffs' own testimony—in which one Plaintiff declared "there's nothing private about the Internet" and the other acknowledged she always accepts cookies—underscores that these issues require claim-by-claim adjudication and the objective standards applied by some courts in factually distinguishable cases do not apply. Even if they did, the statutes of limitations, and the geographical limitations of at least the CIPA claims, mean individual issues still predominate. Moreover, the nationwide classes under the Wiretap Act necessarily require individualized choice of law analyses to determine, among other things, standing and injury.

Fourth, Plaintiffs' claims are not typical and neither they nor their counsel are adequate representatives. Smith and Williams demonstrated striking unfamiliarity with their own case at deposition—Smith did not even know the lawsuit was a class action until his deposition, both disclaimed representing anyone other than themselves, and most strikingly, and what will be the subject of a subsequent motion for relief, Plaintiffs failed to preserve their devices and data relevant to the claims, and class counsel failed to advise them to do so.

For these reasons and others, pursuing the three claims with the defined classes is not the superior method of adjudicating this dispute. Under binding precedent and applicable standards of review, and in the absence of competent evidence in fact, the Court must deny Plaintiffs' Motion.

## II. STATEMENT OF PLAINTIFFS' CLAIMS AND PROPOSED CLASSES

In the Third Amended Complaint ("TAC") as well as their discovery responses, Plaintiffs contend as follows: Smith visited rackroomshoes.com around July 14, 2024, purchased several pairs of shoes, and his information was recorded and disclosed "on or around July 2024" and included hashed or unique identifiers that could later be paired with his first name, last name, email address, phone number, and delivery address. (TAC ¶¶ 7, 88, 139; Tagvoryan Decl. Ex. A at No. 2.) Williams visited the website

around March 10, 2024, purchased several pairs of shoes, and that her information was transmitted "on or around March 2024" and likely included the same "personally identifiable information." (TAC ¶ 9; Tagvoryan Decl. Ex. B at No. 2.) Beyond the identifiers themselves, Plaintiffs also allege that the intercepted content included button clicks, "page views," and "AddToCart" data (disclosing item names and types). (TAC ¶¶ 72–77, 118–119.)

Plaintiffs seek certification of six putative classes, organized into two categories. (Pls.' Mot. at 10.) The "Purchaser Classes" (one nationwide and two California-specific classes for CIPA Sections 631 and 632) encompass all individuals—or California residents, as applicable—who purchased products through Defendant's website during the relevant class periods (ranging from May 2022 through December 2025).[1] The "Meta Classes" (one nationwide and two California-specific classes for CIPA Sections 631 and 632) are narrower subsets limited to purchasers whose ViewContent or AddtoCart events Meta attributed using identifiers, with class periods beginning as early as July 2021. (Pls.' Mot. at 10.) Plaintiffs assert three causes of action on behalf of their proposed classes. (Pls.' Mot. at 12–14.)

### A. Federal Wiretap Act (18 U.S.C. § 2511)

Plaintiffs allege that Defendant violated the federal Wiretap Act by playing an "active role" in intercepting the contents of electronic communications. (Pls.' Mot. at 21.) The Wiretap Act prohibits "any person" from intercepting "any wire, oral, or electronic communication," 18 U.S.C. § 2511(1)(a), and provides a private right of action for any person whose communication is "intercepted, disclosed, or intentionally used," 18 U.S.C. § 2520(a). The Wiretap Act requires Plaintiffs to prove "the actual interception of conversations." (Pls.' Mot. at 6 (citing *Walker v. Darby*, 911 F.2d 1573, 1578 (11th Cir. 1990)).) Consent is a statutory exception to such interception. 18 U.S.C.A. § 2511(2)(d).

For the Meta Classes, Plaintiffs rely on spreadsheets from Meta showing browser event data that Defendant and Meta purportedly collected and linked to Smith's and William's Facebook profiles. (Pls.' Mot. at 7, 21–22.) For the non-Meta classes, Plaintiffs rely exclusively on circumstantial "evidence," contending it demonstrates "continued, indiscriminate wiretapping" of private conversations. (Pls.' Mot. at 22.) The circumstantial evidence, however, is never shown.

[1] Defendant also refers to these classes as the "non-Meta classes."

**B. California Invasion of Privacy Act § 631 (Cal. Penal Code § 631)**

Plaintiffs proceed under the fourth clause of CIPA Section 631(a), which extends liability to anyone who, without the consent of all parties, "aids, agrees with, employs, or conspires with" a person who violates the statute's substantive prohibitions. Cal. Penal Code § 631(a). Plaintiffs' theory is that Defendant aided the third parties in violating the second clause of § 631(a), which prohibits willfully and without consent "read[ing] or attempt[ing] to read, or to learn the contents or meaning of any message … while the same is in transit…at any place within this state." (Pls.' Mot. at 4–5.)

For the non-Meta classes, Plaintiffs erroneously contend they must only show that the third parties either: (1) "read" the content of communications; (2) "learn[ed]" the content; or (3) "attempt[ed] to read, or to learn" the content for a Section 631 violation. (Pls.' Mot. at 4.).

**C. California Invasion of Privacy Act § 632 (Cal. Penal Code § 632)**

Plaintiffs allege that Defendant violated CIPA Section 632 by "intentionally and without the consent of all parties to a confidential communication, us[ing] an electronic amplifying or recording device to eavesdrop upon or record . . . confidential communication[s]." Cal. Penal Code § 632(a). (Pls.' Mot. at 5.) Plaintiffs argue that Section 632 is violated when a person uses a device for the purpose of eavesdropping or recording, regardless of whether the interception actually succeeds. (Pls.' Mot. at 5–6.) Plaintiffs contend there is no requirement that the eavesdropping "comes to fruition" because the statute "does not make proof of that result a prerequisite to its violation." (Pls.' Mot. at 6.)

**D. Plaintiffs' Evidence on their Motion.**

Plaintiffs advance two parallel evidentiary theories to support their claims across all three statutes. First, for the Meta classes, Plaintiffs rely on what they characterize as "direct, attributable event data"—a Meta spreadsheet showing [redacted]—to prove that Meta collected the content of their communications while they navigated Defendant's website. (Pls.' Mot. at 1, 7.) Taken at face value, the spreadsheet at Exhibit D (ECF 200-4) shows only the following limited information linked to Plaintiffs (identified by tab name):

- [redacted]
- [redacted]

Critically, not only do the spreadsheets not correlate with the dates of the website purchases by either Plaintiff (ECF 200-31), or the devices they claim to have used to make those purchases (*see* Tagvoryan Decl. Ex. B ("Williams Tr.") 36:4–37:18 & Ex. A ("Smith Tr. 40:14–20; 47:2-7), the spreadsheets fail to identify the Facebook accounts associated with the data. Even if considered, as shown below, these documents do not support Plaintiffs' claims, much less show common or typical issues among class members. They also do not contain any personally identifying information. (*See* Expert Report of Jim Vint ("Vint Rep.") ¶¶ 56, 171-174.)

Second, for the non-Meta classes (covering Attentive, Zeta, Google, and Adobe), Plaintiffs rely on unidentified evidence concerning the "design, functionality, and effectiveness" of the tracking technologies, along with unidentified proof that Defendant "configured," "customized," and "deployed" source code for the purpose of capturing electronic communications and pairing them with personally identifiable information. (Pls.' Mot. at 1, 7–8.) These arguments are mere conclusions. Plaintiffs do not present any concrete or clear evidence concerning these purported non-Meta tracking technologies—how they functioned, what data they captured related to users of the website, when they did so, or how they are uniform with each other and across the class periods.[2] Vint Rep. ¶¶ 75, 100-102; 115; 117, 123-125; 119.

## III. RELEVANT BACKGROND AND RECORD EVIDENCE.

### A. General Functionality of a Meta Pixel

As explained in the Motion to Strike and Exclude the Expert Report of Anya Verkhovskaya ("Mot. to Exclude") and further explored in the Expert Report of Jim Vint (filed concurrently herewith), in simplified terms, the Meta Pixel attributed browsing activity to whichever Facebook account was logged in or linked on the device at the time of the browsing event—not necessarily to the person physically using the device. In other words, if a family member or spouse used a device on which the account holder is logged in to Facebook, the pixel will attribute all of that person's browsing activity to the account holder. The Event Data therefore reflects, at best, which Facebook account was attributed to the browser, not who was actually shopping on the website. This distinction is central to the reliability problems in Plaintiffs'

[2] Plaintiffs fail to authenticate, describe, link or lay the proper foundation for the relevance of the exhibits (including Exhibits L through S) that they attach to the Motion, and leave the Court guessing as to what they are, mean, or purport to represent. No weight should be given to this evidence. (Exs. L–S.) (*See* Tagvoryan Decl. ¶¶ 11-13).

evidence for the Meta classes. (*See* Vint Rep., ¶¶ 56, 124, 159-160, 165.)

### B. Evidence Pertaining to Plaintiff Smith.

On July 14, 2024, Smith browsed products for purchase on behalf of his wife using his iPhone device. (TAC ¶ 7; ECF 200-31; Smith Tr. 39:17-25; 43:14–44:15; 159:8–10). Although Smith alleged that a notice appeared at the bottom of his screen stating that his continued use of the website would constitute assent to Defendant's Privacy Policy, he testified that this allegation was incorrect and that he never saw any notice pop up on the website. (TAC ¶ 7; Smith Tr. 53:9-19, 55:4-22.) The July 14, 2024, purchase was Smith's **only** purchase on the website, and his only time accessing and browsing the website. (ECF 200-31; Smith Tr. 38:3–39:12; 124:8–14.) Critically, there is no evidence that Smith's browsing activity and personal information was obtained by any third-party tracking pixel on this day.[3]

In the TAC, Smith alleges that because of the privacy policy online, he possessed an expectation of privacy and never consented to Defendant assisting other third parties with intercepting his confidential communications. (TAC ¶ 7.) However, in deposition, Smith unequivocally stated he never read the privacy policy, did not agree to it, received no promise from Rack Room Shoes to safeguard his information, affirmatively believed nothing on the Internet is private (including before and during the relevant period), conceded his expectation of privacy was not reasonable, and admitted he expected his data to be shared—all of which directly contradict the allegations in the Complaint that Rack Room promised to safeguard his information. (Smith Tr. 55:16–56:15, 61:12–62: 25, 66:14–67:3, 122:17–19.)

### C. Evidence Pertaining to Plaintiff Williams.

On March 10, 2024, Williams browsed products for purchase. (TAC ¶ 9; ECF 200-31.) Though Williams alleges in the complaint that upon accessing the website, a notice appeared at the bottom of her screen stating that her continued use of the website would constitute assent to Defendant's Privacy Policy (TAC ¶ 9.), Williams could not recall if she saw or read such a notice, and testified that had she seen a pop up, she would have accepted the cookies and not read the privacy policy. (Williams Tr. at 36:4–7,

---

[3] Smith also downloaded and produced his Facebook account activity reports. Mr. Smith's testimony establishes that: (1) much of the third-party retailer activity attributed to his "Demetrius Smith" account—including visits to Zappos and Crocs—was actually generated by his wife's browsing on his shared MacBook, not by his own conduct or from his iPhone; (2) he has no Facebook record specifically documenting his own visit to the Rack Room Shoes website; and (3) he, like Williams, never reviewed any of this Facebook activity data until over a year after he filed the Complaint against Rack Room Shoes. (Smith Tr. 127:7–14, 133:23–134:18, 137:3–142:24, 143:25–145:21.)

41:8-24, 42:2–23, 46:18–47:5, 134:2–13.) With two devices disclosed by her in discovery (her laptop and an iPhone), Williams could not remember which device she used to access the website on that date or whether that device was also logged into a Facebook account at the time. (*Id*. at 36:4–16, 145:3–147:8.) Although Defendant has additional records of online purchases by Williams, Williams could not recall the details of those purchases and believed the March 2024 visit was her "first time". (*Id*. at 34:13–18, 73:1–74:4; Tagvoryan Decl. Ex. F at No. 1.) There is no evidence that Williams' browsing activities and personal information were obtained by any third party on the dates of her purchases.

Like Smith, Williams cites the privacy policy and argues that it led her to possess an expectation of privacy in communications, and she never consented to Defendant assisting other third parties with intercepting those confidential communications. (TAC ¶ 9.) However, Ms. Williams' deposition testimony reveals that she did not read the privacy policy, does not recall seeing or agreeing to it, cannot identify any promise by Defendant to safeguard her information, and was unable to articulate any expectation of privacy derived from the privacy policy—directly contradicting the core allegations of her Complaint. (Williams Tr. at 44:9–22, 57:18-58:8, 125:20–126:5; 138:3-138:20.)

**D. Rack Room's Use of Attentive, Zeta, Adobe and Google.**

On September 29, 2025, the Court issued a discovery order expressly recognizing that Meta and Attentive were the third parties at issue and further limiting the remaining relevant third parties to LiveIntent, Sovrn, LiveRamp, Neustar, AtData, and Throttle for purposes of knowledge and intent. (ECF 115.) The Court should deny outright Plaintiffs' attempt to certify classes arising from conduct outside that narrowed scope. In any event, these non-Meta "tracking technologies" did not operate uniformly across the non-Meta classes such that liability can be established through common, class-wide proof.

Take Attentive Mobile, Inc. ("Attentive") for example. Attentive was a service provider used for mobile marketing between February 2022 and June 2025. (Declaration of Jason Bogolin ("Bogolin Decl.") ¶ 3.) Only those consumers who opted in were linked to Attentive profiles—neither Smith nor Williams subscribed to this service and neither have any Attentive data attributed to them, much less circumstantial evidence showing intercepted data (as opposed to personal information voluntarily provided through the sign-up form online). (*Id.* ¶ 5; Declaration of Kevin McNall ("McNall Decl."), ¶¶ 14-15; Tagvoryan Decl. ¶ 11.) By contrast, former Plaintiff Savage did so, and her profile is the only evidence Plaintiffs put forth

to support their theory of "common" evidence of interception of purported communication contents or personally identifiable information. (Pls.' Mot. at 8 n. 2.) But even that data for Savage does not show any interception. (*See* ECF 200-12; Tagvoryan Decl. ¶ 11.) This failure is dispositive. Plaintiffs' circumstantial theory—assuming it is valid—depends entirely on the existence of a uniform technical practice from which classwide interception may be inferred. Without proof of that uniformity, the key liability questions—whether any particular user's communications were intercepted, what data (if any) was captured, and how the technologies functioned in a given interaction—necessarily turn on individualized facts, including text marketing sign-ups. (Bogolin Decl. ¶¶ 4-6.)

As to Adobe, likely referring to Adobe Analytics, Plaintiffs attach and cite to four exhibits—N, O, P, and Q—but N is a third-party's slide deck from 2019, outside the class period; O is partial deposition testimony from David Pamperin, which, as outlined in the Motion to Exclude, does not support the notion that Defendant deployed Adobe code during the class period that attempted to intercept the contents of communications or personally identifiable information; P does not show how Adobe Analytics was configured or enabled, or how long it ran on the website; and Q is a contemporaneous email record as of April 2022, the main topic of which does not relate to Adobe, but rather Mobius (a performance reporting tool for paid media). (Tagvoryan Decl. ¶ 12.) To the extent Zeta refers to LiveIntent, and regardless, it was not used by Rack Room during the class period. (Declaration of Molly Hartney ("Hartney Decl."), ¶¶ 2-6.) Lastly, there is no discussion or exhibits related to Google. The Court should ignore this "evidence."[4]

## IV. LEGAL STANDARD FOR CLASS CERTIFICATION.

Rule 23(a) requires numerosity, commonality, typicality, and adequacy of representation before a class may be certified. Additionally, the case must fit one of the types of class actions outlined in Rule 23(b). "Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "Before it can certify a class, a district court must be 'satisfied, after a **rigorous analysis**, that the prerequisites" of both Rule 23(a) and 23(b)(3) have been satisfied.'" *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022) (en banc) (quoting *Gen. Tel. Co.*

[4] Plaintiffs must demonstrate that the challenged technologies were in fact deployed and operated in a uniform manner across the non-Meta classes. *See Griffith v. TikTok, Inc.*, 5:23-CV-00964-SB-E, 2024 WL 4308813, at *10 (C.D. Cal. Sept. 9, 2024) (denying class certification where each class member's claims depended on the implementation of technologies on each particular website, which required individual inquiries). The motion does not do so.

*of Sw. v. Falcon*, 457 U.S. 147, 161 (1982) (emphasis added)). This rigorous analysis "requires 'judging the persuasiveness of the evidence presented' for and against certification and 'resolv[ing] any factual disputes necessary to determine whether' the requirements of Rule 23 have been satisfied." *Calhoun v. Google LLC*, 349 F.R.D. 588, 594 (N.D. Cal. 2025) (quoting *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982–83 (9th Cir. 2011). The "district court must also consider the merits if they overlap with the Rule 23(a) requirements." *Ellis*, 657 F.3d at 981.

"Plaintiffs seeking class certification bear the burden of demonstrating that each element of Rule 23 is satisfied." *Berrien v. New Raintree Resorts Int'l, LLC*, 276 F.R.D. 355, 359 (N.D. Cal. 2011) (citing *Falcon*, 457 U.S. at 158–61 (1982)). "[P]laintiffs must prove the facts necessary to carry the burden … by a **preponderance of the evidence**." *Olean*, 31 F.4th at 665 (emphasis added).

## V. PLAINTIFFS LACK ARTICLE III STANDING.

Standing is a threshold jurisdictional inquiry, and the Court must assure itself that Article III standing exists at every stage of the litigation. *Magadia v. Wal-Mart Assocs., Inc.*, 999 F.3d 668, 673–74 (9th Cir. 2021). At the class-certification stage, "the standing inquiry can be reassessed with the benefit of actual evidence," and plaintiffs bear the burden of proving standing by a preponderance of the evidence. *Lineberry v. AddShoppers, Inc.*, No. 23-CV-01996-VC, 2025 WL 1533136, at *4 (N.D. Cal. May 29, 2025); *DZ Reserve v. Meta Platforms, Inc.*, 96 F.4th 1223, 1240 (9th Cir. 2024); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 978 (9th Cir. 2011). "The presence of an injury in fact is the first and foremost element a plaintiff must show to satisfy standing." *Dutta v. State Farm Mutual Auto. Ins.*, 895 F.3d 1166, 1173 (9th Cir. 2018). A statutory violation alone is insufficient. Rather, Article III requires a concrete injury that is "real and not abstract." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). Where the asserted harm is intangible, the plaintiff must demonstrate a "'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Id.* at 424.

Consistent with *TransUnion*, courts in the Ninth Circuit have repeatedly dismissed website-tracking claims where plaintiffs could identify only alleged statutory violations untethered to any concrete privacy injury. *See Popa v. Microsoft Corp.*, 153 F.4th 784, 791-95 (9th Cir. 2025) (affirming dismissal of wiretapping claim under Rule 12(b)(1)); *Rodriguez v. Brushfire Records, Inc.*, No. 2:25-cv-09797-CAS-PDx, 2025 WL 3692144, at *6-*7 (C.D. Cal. Dec. 15, 2025) (following *Popa* and dismissing "vague

and generalized allegations" of harm untethered to plaintiff's actual interactions); *Herzman v. Smile Brands Inc.*, No. 25-CV-03400-H-BLM, 2026 WL 1110698, at *4 (S.D. Cal. Apr. 23, 2026) (dismissing claims for failure to demonstrate a "concrete" injury in fact from an alleged website visit); *Garcia v. Blackhawk Network, Inc.*, No. 2:25-CV-07550-JLS-SSC, 2026 WL 925028, at *6 (C.D. Cal. Apr. 1, 2026) (dismissing ECPA claim for lack of "detailed allegations" of plaintiff's actual harm"); *Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-CV-01473-NW, 2025 WL 1745726, at *3-*4 (N.D. Cal. June 24, 2025) (general allegations of interception insufficient).

Plaintiffs fail to satisfy that burden here. For the Meta subclasses, Plaintiffs contend that standing is straightforward because they possess direct evidence of actual interception; for the non-Meta classes, they argue that at minimum, Defendant used eavesdropping devices for the purpose of intercepting communications, which satisfies the injury-in-fact requirement under all three statutes (Pls.' Mot. at 11–14). Plaintiffs are wrong. First, neither Plaintiff has evidence of actual interception of their browsing activities—the Meta documents show event data from dates not tied to Plaintiffs' website visits or devices. *See supra*. Second, Article III standing does not arise merely because of a violation of a privacy statute. As *Popa* explained, plaintiffs must demonstrate "more than just a statutory violation when evaluating whether a plaintiff has alleged a concrete injury." *Popa*, 153 F.4th at 793.

The evidence does not establish any traditionally recognized privacy harm. At best, it consists of ordinary retail browsing activity and purchase-related website interactions.[5] The Ninth Circuit has held that information concerning a plaintiff's online interactions with a retail website—including more than thirty categories of browsing information—contained "no embarrassing, invasive, or otherwise private information" and was akin to the observations of a store clerk. *Id.* at 786, 791; *see also Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) (allegations that plaintiff input "her personal information in text fields" deemed insufficient to establish concrete injury); *Lightoller v. JetBlue Airways Corp.*, No. 23-CV-00361-H-KSC, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023) (interception of "'mouse

[5] Williams has no "AddToCart" events at all and could not independently recall the website visits or purchases reflected in Rack Room's transaction data. (Vint Rep. ¶ 166; Williams Tr. at 34:13–18; 134:12–18 & Ex. 3.) Smith similarly testified that he visited Defendant's website a single time to purchase shoes for his wife's business, which is consistent with Rack Room's records. (Smith Tr. at 25:3–17, 27:20–23, 40:21–25, 133:23–134:2, 142:5–11.) The Event Data Plaintiffs identify—[redacted]—reflect only routine shopping activity and reveal nothing comparable to the embarrassing or sensitive information that courts have found sufficient to establish standing.

movements, clicks, keystrokes …, URLs of webpages visited, and/or other electronic communications in real-time'" is insufficient); *Khamooshi v. Politico LLC*, No. 24-CV-07836-SK, 2025 WL 2822879, at *2 (N.D. Cal. Oct. 2, 2025) ("browsing activity, geolocation data, device type, browser type, and 'device fingerprints'" are "insufficient to establish a concrete privacy injury"). Plaintiffs cannot tie any tracking conduct to either an intrusion upon seclusion, or purported public disclosure of private facts—there is neither a "highly offensive intrusion into a private place" nor "private facts." *See Hammerling v. Google LLC,* 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) (dismissing intrusion upon seclusion claims because "data collection and disclosure to third parties that is 'routine commercial behavior' is not a 'highly offensive' intrusion."); *Reisberg v. Renaissance Learning, Inc.*, No. 8:25-CV-01379-FWS-JDE, 2026 WL 1048242, at *5 (C.D. Cal. Feb. 17, 2026) (dismissing claims for lack of standing where "the limited number of third parties to which [defendant] allegedly disclosed Plaintiffs' allegedly private information, and the lack of any alleged special relationship or other facts that would support a particular level of embarrassment due to the disclosure to these particular third-parties.")

Plaintiffs' theory is further undermined because the alleged data is effectively anonymous. (Vint Rep. ¶¶ 59, 104.) Anonymized or non-identifying information does not support a reasonable expectation of privacy. *See Saeedy v. Microsoft Corp*., No. 23-CV-1104, 2023 WL 8828852, at *4 (W.D. Wash. Dec. 21, 2023) (collecting cases and holding that anonymized data is "insufficiently personal"); *Massie v. General Motors LLC*, No. CV 21-787-RGA¸ 2022 WL 534468, at *5 (D. Del. Feb. 17, 2022) ("Plaintiffs do not have a reasonable expectation of privacy over the anonymized data captured by the Session Replay software"). Plaintiffs do not present any evidence that personally identifying information was intercepted or collected.[6] To the extent Plaintiffs argue that Meta collected their personal information, Plaintiffs also admitted that they separately provided that same information to Meta in the context of opening a Facebook account. (Williams Tr. 53:23–54:8; Smith Tr. 76:21–84:17.) That information cannot be considered "confidential" such that its subsequent disclosure would constitute a concrete injury.[7]

---

[6] In *Mikulsky*, for example, the court found no concrete injury even where the plaintiff allegedly entered sensitive health information because the activity remained "basically anonymous" and was not connected to identifying information. 2024 WL 251171, at *5. The same is true here: there is no information provided that would enable Defendant (or anyone else) to identify Plaintiffs.

[7] What is left, then, is the browsing events unrelated to their purchases, which courts have unequivocally held are neither private nor confidential. And in the case of Smith, he was not the actual visitor to the

The non-Meta classes fare no better. Plaintiffs contend that merely "activating" or "deploying" tracking technologies establishes injury because those technologies were allegedly capable of intercepting communications. But Article III does not recognize standing based on speculative future harm or unrealized capabilities. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *Birdsong v. Apple, Inc.*, 590 F.3d 955, 961 (9th Cir. 2009); *Kearney v. Hyundai Motor Co.*, No. SACV 09-1298 DOC, 2010 WL 9093204, at *4 (C.D. Cal. June 4, 2010). The recent decision in *Thele v. Google LLC* is instructive. *Thele,* No. 25-CV-09704-NW, 2026 WL 1970746, at *2 (N.D. Cal. July 7, 2026). There, the court, following *Popa*, dismissed plaintiffs' tracking claims because they "generaliz[d] the type of information accessible in their Google accounts" but did not "identify what – if any – personal data Gemini actually accessed or used." *Id*. The same deficiency exists here—Plaintiffs identify no confidential or personally identifiable information, and no evidence that any information was actually obtained by Attentive, Zeta, Adobe, or Google during their visits. *See Id.*[8] With respect to Attentive in particular, neither Smith nor Williams signed up for text messaging through Attentive, have any Attentive data or profiles, and do not demonstrate—even by circumstantial evidence—that their browsing activity was or could have been intercepted by Attentive. (Bogolin Decl. ¶ 5; Tagvoryan Decl. ¶ 11; Williams Tr. at 97:16–98:10, 70:1–16, 100:6–15.) And there is no evidence that Defendant used Zeta technology. (Hartney Decl. ¶¶ 2-6.) Accordingly, Plaintiffs fail to establish a concrete injury as to any of the challenged third-party technologies.[9]

---

website at the time of the Meta Event Data. (Smith Tr. 46:17-18, 47:2-7 (**Q: Did you place any of these orders that you see in 2021? A: No**.)

[8] *Dawidzik v. Tesla, Inc.*, No. EDCV 25-01982-KK-SPX, 2025 WL 3786963, at *5 (C.D. Cal. Dec. 29, 2025) (applying *Popa* and dismissing under Article III where "Plaintiff has not 'plausibly alleged the infringement of any privacy interest.'") (cleaned up); *Rodriguez v. Culligan Int'l Co.*, No. 25-CV-00225-AJB-KSC, 2025 WL 3064113, at *3 (S.D. Cal. Nov. 3, 2025) (finding no standing under *Popa* because the plaintiff failed "to demonstrate anything more than an alleged statutory violation is consequently fatal to her claim."); *Schallert v. Laird Superfood, Inc.*, No. 2:25-cv-12407-SPG-PVC, slip op. at 9-10 (C.D. Cal. June 5, 2026) (dismissing for lack of standing where the complaint lacked "specific allegations about Plaintiff's particularized injury.").

[9] Even if the Court were to conclude that one Plaintiff has established standing (neither has), certification would still be improper because of plaintiff-specific factual inquiries that cannot be resolved on a class-wide basis. Recent authority confirms that standing itself may defeat predominance when determining whether a particular plaintiff suffered a concrete privacy injury requires individualized evidence. In *Ingraham v. Capital One Financial Corp.*, the court the court explained that one plaintiff had established a privacy harm while another had not, demonstrating that standing depended on individualized facts rather than common proof. *Id.* Likewise, in *In re Meta Pixel Tax Filing Cases Meta Platforms, Inc.*, the court denied certification where some plaintiffs could demonstrate a concrete privacy injury while others could

Because Plaintiffs failed to demonstrate standing to assert their CIPA and Wiretap Act claims by a preponderance of the evidence, they must be dismissed from the case, and "the motion for class certification of a class against [Defendant] need not be reached." *Lineberry*, 2025 WL 1533136, at *6.

## VI. THE PUTATIVE CLASSES ARE NOT ASCERTAINABLE.[10]

Although Rule 23 does not expressly mention ascertainability, courts in the Ninth Circuit routinely require plaintiffs seeking certification under Rule 23(b)(3) to show that the proposed class is defined by objective criteria and that membership can be determined feasibly by reference to those criteria. *Wortman v. Air New Zealand*, 326 F.R.D. 549 (2018); *Walter v. Leprino Foods Co.*, 670 F. Supp. 3d 1035 (2023); *Hernandez v. County of Monterey*, 305 F.R.D. 132 (2015); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583 (2010). That requirement prevents the administrative burdens inconsistent with class treatment and protects defendants by identifying who will be bound by any judgment. *Hernandez*, 305 F.R.D. at []. Objective criteria are not enough, however, if plaintiffs lack a workable method for applying them in practice. A class is not ascertainable where membership cannot be determined through a manageable process, even if records may exist, or where identifying members would require individualized merits inquiries. *Daniel F. v. Blue Shield of California*, 305 F.R.D. 115 (2014); *McKenzie Law Firm, P.A. v. Ruby Receptionists, Inc.*, Not Reported in Fed. Supp. (2020); *Hanni v. Am. Airlines, Inc.*, 2010 WL 289297, at *9 (N.D. Cal. Jan. 15, 2010).

Thus, in a consumer class action where plaintiffs rely on retailer records, they must produce sufficient evidence that those records can actually identify class members without mini-trials. *In re Clorox*, 301 F.R.D. at 440 (citing *Sethavanish v. ZonePerfect Nutrition Co.*, No. 12–2907–SC, 2014 WL 580696, at *4–6 (N.D. Cal. Feb. 13, 2014)).

---

not. No. 22-CV-07557-PCP, 2026 WL 1025741, at *4 (N.D. Cal. Mar. 30, 2026). And in *Lineberry*, the court denied certification where a named plaintiff failed to establish anything more than the collection of basic website-visit information. 2025 WL 1533136, at *4–6. Here, Smith's single website visit and purchase was not tracked by Meta, or any other third party. Williams similarly cannot show relevant tracking on the days of her purchases; nor any evidence at all of what the other trackers allegedly collected from each person, whether that information was private, whether it was linked to the individual, whether it revealed anything sensitive, and whether it bears the requisite relationship to a traditionally recognized privacy harm. As *Ingraham* recognized, those issues cannot be answered through common proof. 2026 WL 1759155, at *7–8.

[10] Defendant disputes that numerosity has been satisfied on the evidence—it has not.

As demonstrated in the Motion to Exclude,[11] Plaintiffs' Meta classes are not ascertainable, and the expert's opinion is unreliable. Meta Event Data cannot reliably identify the actual Rack Room purchaser or website user, which is necessary because <u>the class definitions require the purchaser and the Meta identifier to be the same person</u>. (Pls.' Mot. at 10 ("Individuals [or California residents] who purchased products…and who Meta used identifiers to attribute [ViewContent and AddtoCart] events].").) The Meta Pixel does not attribute event data to the person physically shopping, and the data may reflect activity by a spouse, family member, or other device user rather than the putative class member. (Vint Rep. ¶ 16.) The named-plaintiff record illustrates the defect: Not only did Smith admit that many of the browsing activity are attributable to his wife using his device (Smith Tr. 131:2–5, 134:3–135:16), but Williams likewise disclaimed having visited the website on a date identified in her Facebook activity reports—a date several months after the filing of the Complaint. (Williams Dep. 95:1–96:19.) Plaintiffs' expert conceded that purchase dates must match Meta Event Data dates to confirm that the purchaser and website user are the same person, but she did not perform that comparison, and the Meta data does not match Plaintiffs' own purchase dates or device usage. (*See supra*; Vint Rep. ¶¶ 164-165.) This means that using Verkhovskaya's incomplete methodology, *Plaintiffs would not meet the objective criteria*, either.

Moreover, Plaintiffs' proposed ascertainability methodology is speculative, untested, and dependent on data that may never exist or be produced. (Vint Rep. ¶¶ 163-177.) Plaintiffs' proposed California classes also cannot be reliably identified because Plaintiffs' own expert conceded that the sole method for determining California residency is the shipping address in Rack Room's purchase data, and that she has no independent basis—beyond a lay "general understanding"—for equating a shipping address with a place of residence. (Tagvoryan Decl. Ex.C at 68:5–14, 69:6–19.)[12] Because a shipping address is not a reliable proxy for residency—and no additional verification step is proposed—Plaintiffs have failed to demonstrate that the California classes can be ascertained through objective, administratively feasible criteria. Because Plaintiffs offer only speculative and unverified methods to

---

[11] Page limitations preclude Defendant from detailing all of the manifest deficiencies in the Verkhovskaya Report, so Defendant incorporates arguments from its motion to exclude by reference.

[12] This issue also goes to commonality and predominance, as the Verkhovskaya Report provides no methodology for verifying actual residency and instead simply relies "upon the addresses within the Rack Room Purchase Data during the Class period(s)." ECF 200-20 at ¶ 64.

identify the Meta and California specific class members, Plaintiffs fail to establish ascertainability.

## VII. INDIVIDUAL ISSUES PREDOMINATE OVER COMMON QUESTIONS.

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). A common question "must be of such a nature that it is capable of class-wide resolution." *Wal-Mart Stores, Inc.*, 564 U.S. at 350. "[A]s in all class actions, commonality cannot be determined without a precise understanding of the nature of the underlying claims." *Parsons v. Ryan*, 754 F.3d 657, 676 (9th Cir. 2014). Rule 23 requires a common contention capable of generating a common answer that resolves each class member's claim. *Wal-Mart Stores, Inc.*, 564 U.S. at 350.

Rule 23(b)(3)'s predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Accordingly, the predominance analysis "focuses on the relationship between the common and individual issues in the case." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 545 (9th Cir. 2013) (internal quotation marks omitted). "[I]f the discovery and trial process must assess thousands of claims one claim at a time, then the individualized issue will weigh heavy in the predominance balancing." *In re Meta Pixel Tax Filing Cases Meta Platforms, Inc.*, No. 22-CV-07557, 2026 WL 1025741, at *10 (N.D. Cal. Mar. 30, 2026) (citation omitted). Predominance is absent where a class includes individuals who were not exposed to the challenged conduct or were not injured by it, even where a common legal theory is asserted. *See Castillo v. Bank of Am. N.A.*, 980 F.3d 723, 730–33 (9th Cir. 2020).

Courts in the Ninth Circuit recognize that the commonality and predominance inquiries "overlap." *White v. Symetra Assigned Benefits Serv. Co.*, 104 F.4th 1182, 1191 (9th Cir. 2024) (citing *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022) (en banc)). After separating questions common to the legal claims of the class from those that "present individualized issues," courts "analyze whether the common questions predominate over the individual questions." *DZ Reserve v. Meta Platforms, Inc.*, 96 F.4th 1223, 1233 (9th Cir. 2024).

### A. Questions of Law and Fact Predominate Over Any Common Questions.

**<u>Consent.</u>** Section 631(a) incorporates a consent element. Section 632 likewise prohibits recording a "confidential communication without the consent of all parties to the communication." The Wiretap Act similarly exempts from its purview situations where one of the parties to the communication has given

prior consent to interception. 18 U.S. Code § 2511(2)(d). Thus, lack of consent is a crucial *element* of Plaintiffs' CIPA and Wiretap Act claims.

Consent under CIPA may be express or implied. *See Rojas v. HSBC Card Servs. Inc.*, 93 Cal. App. 5th 860, 881 (2023) ("Implied consent constitutes 'consent' under the [California Invasion of] Privacy Act."); *Brown v. Google*, 685 F. Supp. 3d 909, 926 (N.D. Cal. 2023) (same). In evaluating implied consent, the Court must examine the surrounding circumstances, which "may include the party's own conduct and background." *Kight II*, 231 Cal. App. 4th at 133; *cf. Torres*, 289 F.R.D. at 594 (if a caller "expected the calls to be recorded," then he "may have implicitly consented to the recording by the very act of making the call"). This inquiry requires the Court to "evaluate to which of the various sources each individual user has been exposed and whether each individual knew about and consented to the interception based on the sources to which she was exposed." *In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *15.

Most recently, the Northern District of California held that "[c]ourts recognize that the consent inquiry focuses on 'a user's subjective understanding of the terms of the relevant agreement' and accounts for 'a broad set of materials.'" *Ingraham v. Capital One Fin. Corp.*, No. 24-CV-05985-TLT, 2026 WL 1759155, at *6 (N.D. Cal. June 16, 2026) (quoting *Calhoun v. Google LLC*, 349 F.R.D. 588, 597 n.3 (N.D. Cal. 2025)) (denying class certification); *see also In re Google Inc. Gmail Litig.*, No. 13–MD–02430–LHK, 2014 WL 1102660, at *16 (N.D. Cal. Mar. 18, 2014) (denying class certification because consent is an "intensely factual question" requiring "consideration of the circumstances" "to divine whether the party whose [data] was intercepted was on notice that the [data] would be intercepted").

Courts in the Ninth Circuit have found that consent is an individualized issue where there is evidence that class members received varying disclosures, had differing subjective understandings of data collection practices, or obtained information about alleged interceptions from multiple sources. *See, e.g., Calhoun v. Google LLC*, 349 F.R.D. 588, 599 (N.D. Cal. 2025) (denying class certification where consent "means liability…ultimately turns on each class member's subjective understanding"); *Blair v. CBE Grp., Inc.*, 309 F.R.D. 621, 629 (S.D. Cal. 2015) (denying class certification where defendant provided evidence demonstrating "the need for individualized inquiries regarding consent").

Here, as an initial matter, Smith was fully aware that websites track and share data, expressly admitted he generally expects his data to be shared, and proceeded to use the website and make purchases

anyway, all while taking no steps to reject cookies. (Smith Tr. at 53:15–56:15, 57:8–18, 59:7–13, 94:20–23, 126:7–21, 148:19–25.)

Second, Rack Room's privacy policy creates an issue of individualized implied consent. To be sure, Plaintiffs allege that visitors to Defendant's website would have encountered a notification at the bottom of their screen containing a link to its Privacy Policy, that Plaintiffs did so, and that Plaintiffs understood that policy to mean that they were not consenting to data collection. (TAC ¶¶ 7, 9.) However, neither Smith nor Williams read the privacy policy (Williams Tr. 44:9–15; Smith Tr. 66:14–67:3.), so that allegation is without merit.[13] But some putative class members may have read the privacy policy, and their interpretations would be different. This Court previously acknowledged that the privacy policy at issue at the time of Plaintiffs' purchases may be "reasonably susceptible to more than one interpretation, with one of those interpretations suggesting consent and another belying it." (ECF 52 at 4 (citing *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 789 (N.D. Cal. 2019)).) The acknowledged ambiguity means that individual class members who *did* read the privacy policy may have reached different reasonable interpretations—some understanding it to authorize the data practices at issue, and others not.[14] Some, like the Plaintiffs, may not have encountered the privacy policy at all. Whether a given class member consented thus depends on individualized facts: whether they were on notice of or read the policy, how they interpreted its purportedly ambiguous terms, whether they clicked "Accept" on the cookie banner or simply closed it without interacting (as Williams might have)[15], and what they subjectively understood their continued use of the website to authorize. Adjudicating whether each putative class member impliedly consented through their course of conduct—reading, clicking, continuing to browse, making purchases, and failing to opt out—would require precisely the type of individualized

[13] Smith did not encounter a notification banner during his single visit to the site. (Smith Tr. 53:9–19, 65:8–18.) The notification banner did not appear each time for every visitor. (McNall Decl. ¶ 11.)

[14] Williams' interpretations demonstrate the very ambiguity the Court identified in its Order. She acknowledged the policy could also be read to authorize tracking to "enhance the experience" on the site, and she found the two statements to be potentially "inconsistent"—confirming the ambiguity. (Williams Tr. at 123:10–125:16.)

[15] Williams' testimony draws a distinction between (1) her lack of any specific memory of seeing the particular notice alleged in the Complaint on the Rack Room Shoes website in March 2024, and (2) her general, generic familiarity with cookie pop-up banners across the internet as a whole, which she says she typically accepts by clicking "Accept" without reading any accompanying language beyond the cookie notice itself. (Williams Tr. 36:4–7, 41:8–42:23.)

inquiry that defeats predominance under Rule 23(b)(3).[16]

Third, customers who signed up for text messaging through Attentive were separately on notice of both Rack Room's and Attentive's data collection practices. (Bogolin Decl. ¶ 6 & Ex. F; Tagvoryan Decl., Exs. I & J.) Fourth, class members with Facebook accounts, including Plaintiffs, received notice of data collection practices on other websites, and the Court must now weigh such evidence due to its relevance at this stage of the litigation. (ECF 20 Exs. 2–11; ECF 52 n.1.) Collectively, the issue of consent indisputably presents individualized questions that defeat predominance because putative class members were exposed to several disclosures and indisputably developed different understandings of those disclosures based on their own unique experiences with Internet privacy. "The Court would need to grapple with the 'diversity of disclosures' that putative class members were exposed to." *Ingraham*, 2026 WL 1759155, at *7 (quoting *In re Google Inc. Gmail Litig.*), 2014 WL 1102660, at *15.[17]

Courts have denied certification of damages classes where defendants produced concrete evidence that different class members may have had varying ***subjective*** understandings of data collection practices arising from a broad set of materials. In *Calhoun v. Google LLC*, the court held that implied consent asks about a user's *subjective* understanding of the terms of the relevant agreement and is an intensely factual question that requires consideration of the circumstances surrounding the alleged privacy violation, taking into account a broad set of materials. 349 F.R.D. 588 (2025). Similarly, in *Campbell v. Facebook, Inc.*, the court found that implied consent required an individual user-by-user inquiry to determine whether class members impliedly consented to alleged interceptions, and that this issue precluded class certification on predominance grounds. *Campbell v. Facebook Inc.*, 315 F.R.D. 250 (2016); *see also*

---

[16] *See, e.g., In re Google Inc. Gmail Litig.*, No. 13–MD–02430, at *16, 21 (reasoning that "[i]mplied consent is an intensely factual question that requires consideration of the circumstances surrounding the interception"). Moreover, the Privacy Policy was updated on December 4, 2024, a year before the end of the class periods, and the updated version further disclosed the use of tracking technologies (cookies, pixels, tags) that may collect data tied to individuals for interest-based advertising and remarketing through third-party ad networks. (*See* McNall Decl. ¶ 5, Ex. B.)

[17] Also relevant is each class member's personal experiences with online privacy, which varies. *Hataishi*, 223 Cal. App. 4th at 1467 (refusing to certify class due to the issue of consent because it required considering, "among other things, . . . 'the [plaintiff's] prior experiences with business communications . . .'" (quoting *Kight v. CashCall, Inc.*, 200 Cal. App. 4th 1377, 1396 (2012))). Some may be like Smith, who never reads privacy policies because "[w]e all [*sic*] being watched" and who believes "there's nothing private about the Internet." (Smith Tr. 55:19–56:7, 69:17–18.) Others may be like Williams, who always accepts cookies. (Williams Dep. 42:4–43:6.) And still others will have different beliefs and experiences.

*Brown v. Google LLC* (denying certification because the individual issue of whether plaintiffs impliedly consented to Google's data collection in private browsing mode predominated).[18]

**Reasonable Expectation of Privacy**. Section 632 adds another inherently individual issue into the mix—whether the communication at issue was a "confidential communication," which means "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto . . .." Cal. Penal Code §§ 632(a), (c). Whether a communication is confidential within the meaning of the statute turns on a reasonable expectation of privacy, which requires an individualized inquiry. *Kight*, 231 Cal.App.4th 112 (2014); *Torres*, 289 F.R.D. at 592 ("To determine whether each class member had an expectation of confidentiality would require a detailed factual inquiry into the circumstances of each call.").

The analysis requires two prongs: (1) whether a subjective expectation of privacy existed; and (2) whether that expectation is objectively reasonable. *Katz v. United States*, 389 U.S. 347, 360–361 (1967) (concurring opinion). Here, neither plaintiff had a subjective expectation of privacy, particularly Smith who unequivocally testified to not having such expectation at all. According to Plaintiffs, the notification did not appear for Smith, may not have appeared for Williams, and did not appear every time. (McNall Decl. ¶ 11; Smith Tr. at 55:10–22, 66:14–25; Williams Tr. at 36:4–7, 41:8–24.) Thus, Plaintiffs' theory of a reasonable expectation of privacy depends on individualized *evidence* because not all class members were exposed to the challenged conduct. *Cf. Rodriguez v. Google LLC,* 20-CV-04688-RS, 2024 WL 38302, at *9 (N.D. Cal. Jan. 3, 2024) (certifying classes where the reasonable-expectation inquiry was capable of classwide resolution because the relevant conduct was users' common act of turning off Google activity settings and Google's common representations). The Court need not even reach the objectivity analysis, because the question of whether a purchaser had an expectation to begin with is individualized.

[18] Plaintiffs' reliance on *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 582, 586-87 (N.D. Cal. 2025), is misplaced. There, the court found commonality and predominance because the evidence showed that all class members were subject to the same onboarding process and necessarily disclosed the same categories of sensitive reproductive health information, which Flo transmitted through uniformly configured "Custom Events" bearing names that themselves conveyed health-related information. *Id.* at 582-83. The court repeatedly emphasized that liability could be resolved through common proof because users "experienced the same Flo App and SDK practices" and the challenged data collection occurred in a materially uniform manner across the class. *Id.* at 573–74. Here, by contrast, Plaintiffs offer no evidence that website visitors transmitted the same information, interacted with the same third-party technologies, or were subject to any uniform data collection practice. Nor have they shown that any alleged event or custom-event data reflected common content across putative class members.

Next, there is no evidence from which the Court can determine that the *nature* of the data collected would create a reasonable expectation of privacy on a classwide basis. At most, Plaintiffs point to unidentified users' ViewContent and AddtoCart events on a public shoe retailer site, which, as per the above, Plaintiffs do not have evidence of on a classwide basis, much less for the non-Meta classes. Furthermore, because this case does not involve sensitive data, such as healthcare or financial data, subjective expectations of privacy cannot be inferred. Smith, for example, testified that "[e]verything is under surveillance" and that "there's nothing private about the Internet," a belief he held when visiting Defendant's website in 2024 and that he professes he will hold "until we transition from this planet earth. It's over with for privacy." (Smith Tr. at 69:6–24.)

Put simply, the underlying evidence for the question of reasonable expectation of privacy is not common across the board and therefore the Court may not rely on that evidence to conclude that confidentiality is a common merits question among class members, even through an objective lens. It is the lack of common evidence that distinguishes this case from the summary judgment ruling in *Brown v. Google*, 685 F.Supp.3d 909 (2003), and the class certification rulings in *In re Facebook Internet Tracking Litigation*, 956 F.3d 589 (9th Cir.) and *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557 (2025) (finding the app's privacy representations were made uniformly to all users, making the reasonable expectation of confidentiality a common rather than individualized question).

**Interception and Injury.** Plaintiffs' erroneous reading of Sections 631 and 632 do not eliminate individual issues of actual interception and injury. Vint Rep. ¶¶ 115, 120, 145-146, 150-158. Plaintiffs' commonality and predominance arguments rest on an incorrect statutory premise: that CIPA liability may be established through system-level proof alone. (Pls.' Mot. at 2–6, 12–14). According to Plaintiffs, the presence of tracking technologies on Defendant's website is sufficient because Section 631(a) purportedly imposes liability based on an "attempt" to learn communications regardless of whether any communication was actually acquired in transit, and Section 632(a) purportedly imposes liability whenever a device is deployed "for the purpose" of recording, regardless of whether any communication was actually recorded. (*Id.* at 2–6). Even if Plaintiffs have evidence of the presence of all five tracking technologies on the website during the class period, ***which they do not***, neither theory is consistent with

CIPA's statutory text.[19]

First, Plaintiffs' theory improperly detaches "attempt" from Section 631's statutory limitations, reads the words "in transit" out of the statute, and recasts it as a prohibition on any technology capable of receiving data. That reading fails. Even assuming the second clause supplies an independent basis for liability, it still requires an attempt to read or learn the contents or meaning of a communication *while* that communication is *in transit*. It is hard to imagine how someone can attempt to learn a message while in transit if they have not already intercepted it. *See Boulton v. Community.com, Inc.*, No. 23-3145, 2025 WL 314813, at *1–2 (9th Cir. Jan. 28, 2025) (affirming dismissal of a Section 631(a) claim because the defendant "could have only read or attempted to read" the plaintiff's text after it was received, meaning the communication was not accessed "in transit" within the meaning of the statute); *Gutierrez v. Converse Inc.,* No. 24-4797, 2025 WL 1895315, at *1 (9th Cir. July 9, 2025) (summary judgment for defendant where evidence showing a third party "*could* read" messages sent through a website chat feature was insufficient under Section 631(a)) (emphasis in original). Plaintiffs cannot equate "attempt" with system capability. At most, the alleged presence of tracking technologies could show that a tool was deployed. It does not establish that any particular user's communication was actually read or attempted to be read while in transit, which is the statutory requirement. Cal. Penal Code §631(a).

Second, Section 632(a) does not prohibit installing or deploying a device, and it does not include the "attempt" language found in Section 631(a). Nor does it rise and fall on mere use without the act of recording. Under their view, Section 632(a) would be satisfied whenever tracking technology was allegedly designed or configured for recording, even if no confidential communication was actually recorded or overheard. CIPA is a penal statute, and Section 632(a) requires intentional use of a qualifying

[19] And even if accepted, Plaintiffs' theories would not eliminate the need for individualized proof with respect to what each user transmitted for the non-Meta classes and when, whether that information constituted communicative content, and for all classes, whether any communication was confidential, and whether the user consented or reasonably expected monitoring. Those questions cannot be answered by pointing to the presence of tracking code at a moment frozen in time. The analysis must also look to plaintiffs' conduct: what affirmative steps, if any, class members tool to enhance their own privacy. Vint Rep. ¶¶ 100-102; 115, 150-158. For example, some may have configured their browsers to be more privacy protective and reject cookies or use some variation of "incognito mode" to mask their identity. Some browsers, including those Plaintiffs used, do this by default. *Id.* ¶¶ 42, 120, 140-141. Putative class members could have also used virtual private networks to hide their browsing and location data or installed browser add-ons. *Id.* ¶¶ 32, 84-85. And then there are Facebook's own privacy settings. Williams Dep. 99:15-21; Tagvoryan Declaration in support of Motion to Strike, ¶ 7. Website visitors could have taken all, none, or a mix of these affirmative privacy-protective actions.

device where "use" means to eavesdrop upon or record a confidential communication. Cal. Penal Code § 632(a). It does not create liability based on device presence, system architecture, or alleged attempt in the abstract. *See Federated University Police Officers' Association v. Regents of University of California*, No. SACV 15-00137-JLS (RNBx), 2015 WL 13273308, at *9–11 (C.D. Cal. July 29, 2015) (dismissing CIPA claim against the installer of a recording system). Indeed, this would read the word "injury" out of the private right of action under Section 632.7.

These statutory defects are not merely merits issues; they expose the absence of any common method for proving liability. A plaintiff cannot manufacture predominance by redefining statutory elements to avoid individualized proof. Here, the only "common" question Plaintiffs identify—whether tracking technology was present on Defendant's website—does not resolve the questions that CIPA actually asks. Under Section 631(a), those include whether each user transmitted communicative content, whether any third party read or attempted to read that content, and whether such reading occurred while the communication was in transit. Cal. Penal Code § 631(a). Under Section 632(a), those include whether each interaction was a confidential communication, and whether it was eavesdropped upon or recorded. Cal. Penal Code § 632(a). Dozens of courts have weighed these elements exactly in this way when deciding certification. *See, e.g.*, *In re Meta Pixel Tax Filing Cases*, 826 F. Supp. 3d at 1235 (denying certification where Section 631 and 632 statutory issues were too individualistic to satisfy the predominance requirement); *Torres v. Nutrisystem, Inc.*, 289 F.R.D. 587, 592 (C.D. Cal. 2013) (denying certification where elements of confidentiality under Section 632 required separate proof for each class member); *Hataishi v. First Am. Home Buyers Prot. Corp.*, 223 Cal. App. 4th 1454, 1467 (2014) (same).

The recent decision in *Ingraham v. Capital One Financial Corp.* is instructive. No. 24-cv-05985-TLT, 2026 WL 1759155, at *1–2 (N.D. Cal. June 16, 2026). There, plaintiffs alleged that third-party tracking technologies duplicated and transmitted users' personal and financial information. The court denied class certification because resolving liability required individualized determinations of "what, if any, data was shared, how that data was shared, for what purpose the data was shared, and the nature of that data." 2026 WL 1759155, at *7–8. The court recognized that not every website activity resulted in information being shared, and the "parties dispute which information was shared regarding even the named Plaintiff in this action; individualized inquiries would be needed to determine whether and, if so,

what information was sent for any particular individual through a particular technology." *Id*. at *6. Here, too, Plaintiffs' evidence does not show such commonality, even where a common legal theory is asserted. *See Castillo v Bank of America N.A.*, 980 F.3d 723 (9th Cir. 2020) (denying class certification where plaintiffs lacked common proof of liability sufficient to establish predominance, despite asserting a common legal theory).[20]

**B. Additional Evidence Overwhelmingly Establishes that Individual Issues Predominate.**

**Statute of limitations**. CIPA claims are limited to one year. *See* Cal. Civ. Proc. Code § 340(a) (one year for CIPA claims); *Rusow v. Skinspirit Essential LLC*, 24-CV-09317-CRB, 2025 WL 4657637, at *8 (N.D. Cal. Oct. 15, 2025) (same). Wiretap Act claims are limited to two years. *See* 18 U.S.C. § 2520(e) (two years for ECPA claims); *Al-Ahmed v. Twitter, Inc.,* 648 F. Supp. 3d 1140, 1155, n. 1 (N.D. Cal. 2023) (same). Yet, Plaintiffs' classes date back to May 1, 2022 (for the non-Meta classes) and July 1, 2022 (for the Meta classes). Plaintiffs fail to explain how or why purported interceptions earlier than September 2023 should be included as viable claims.

In the TAC, Plaintiffs raise tolling and the discovery rule. To invoke the delayed discovery doctrine, Plaintiff must show "(1) the time and manner of discovery <u>and</u> (2) the inability to have made earlier discovery despite reasonable diligence." *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 901 (N.D. Cal. 2023) (emphasis original). Plaintiffs allege: "Specifically, Plaintiffs and other Class members could not have learned through the exercise of reasonable diligence of Defendant's conduct as alleged herein." (TAC ¶ 203.) First, as indicated in the Vint Report, that is not true. (Vint Rep. at ¶ 64.) Evidence of tracking technologies is easily available through browser developer tools, Google account tools, and in this case, directly from Facebook account records that each subscriber has easy access to. (*See* ECF 20, Exs. 12–13; *see generally McCausland v. Gray Media Grp., Inc.,* No. 22 CIV. 7539 (PGG), 2024 WL

[20] Plaintiffs' theory that an attempt or intent constitutes an actionable intrusion because a person is essentially deprived of "the full benefits of privacy" if someone could have listened in (even if they did not) is entirely misplaced. (Pls.' Mot. 13:17 (citing *Koeppel v. Speirs*, 808 N.W.2d 177, 182 (Iowa 2011)).) Plaintiffs cite a single California case to support their "attempted interception" theory—*Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272 (2009). *Hernandez* was not a CIPA case. It involved an employer surreptitiously placing a recording device in an employee's semi-private office. The California Supreme Court held that these facts could establish an intrusion of privacy. *Hernandez*, 47 Cal. 4th at 293. That case provides little insight into how the Court should evaluate these claims based on the installation of common online tracking software. Plaintiffs cite no CIPA or Wiretap Act cases, and almost all cited cases concern different states' common law invasion of privacy torts.

1374765, at *4, n. 3 (S.D.N.Y. Mar. 31, 2024) (explaining that the "'Off Facebook Activity' tool is a feature…that allows a Facebook user to '[v]iew a summary of information Facebook receives about [the user's] activity on other apps and websites."). Indeed, both Williams and Smith have admitted to and produced reports they downloaded from their Facebook accounts—including what is called "Off-Facebook Activity Reports"—that show what browsing activity Facebook has collected. (Williams Tr. 93:5–97:15; Williams Ex. 6; Smith Tr. 127:7–130:22; Smith Exs. 5, 9, 10; Vint Rep. ¶ 64.) But even so, Plaintiffs fail to explain why this would not create individualized issues with respect to how and when any particular customer learned of purported tracking technologies on the website. *See, e.g., In re Meta Pixel Tax Filing Cases Meta Platforms, Inc.,* 22-CV-07557-PCP, 2026 WL 1025741, at *9-10 (N.D. Cal. Mar. 30, 2026) (finding that individualized statute-of-limitations issues defeated predominance); *True Health Chiropractic, Inc. v. McKesson Corp.,* 896 F.3d 923, 931 (9th Cir. 2018) (explaining that "[d]efenses that must be litigated on an individual basis can defeat class certification"); *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1241 (11th Cir. 2016) ("Individual affirmative defenses can defeat predominance in some circumstances.").

**Location Data for the California Classes**. CIPA Section 631 claims are limited to violations "within this state." Cal. Penal Code § 631(a); *see DellaSala v. Samba TV, Inc.*, 3:25-CV-03470-JSC, 2025 WL 3034069, at *3 (N.D. Cal. Oct. 30, 2025) (explaining that to invoke a CIPA violation, plaintiffs must allege conduct within the state). Where, as here, there are individual issues per plaintiff regarding where the violation occurred, there cannot be a predominant issue. In *Frasco v. Flo Health, Inc.*, the court refused to certify a Section 631 class because plaintiffs could not establish that the statute's territorial requirement could be proven on a classwide basis. 349 F.R.D. 557 (N.D. Cal. 2025). The court explained that Section 631 requires proof that the communication was being sent from or received at a place within California and held that plaintiffs had failed to identify a common method for determining whether putative class members completed the relevant communications while located in California, rejecting plaintiffs' reliance on generalized evidence of a California nexus. *Id.* at 586–87.

Defendant's servers are outside California. McNall Decl. ¶ 14. Plaintiffs offer no method for determining whether the communications were sent from, received in, or intercepted in California. Indeed, Williams could not even remember if she was physically within California when she ordered shoes.

(Williams Tr. at 75:13–76:5; 88:22–89:2; Tagvoryan Decl. Ex. F (response to ROG 1). Nor do Plaintiffs identify common evidence of locations at the time of the alleged interceptions. The Court would need to conduct individualized inquiries into the circumstances of each communication to determine whether Section 631 applies at all. Vint Rep. ¶¶ 32-33. Where, as here, individualized proof is required to establish a threshold element of liability, predominance is lacking. *See Frasco*, 349 F.R.D. at 586–87; *see also Garnica v. HomeTeam Pest Def., Inc.,* 230 F. Supp. 3d 1155, 1160 (N.D. Cal. 2017) (denying class certification where geographic evidentiary issues were "not susceptible to common answers.").[21]

**Damages**. Plaintiffs fail to show damages are "capable of measurement on a classwide basis" under *Comcast Corp. v. Behrend*, and both the Wiretap Act (damages "for each day of violation") and CIPA (damages "for each violation") require individualized proof. 569 U.S. 27, 34 (2013).

## VIII. PLAINTIFFS AND CLASS COUNSEL ARE NOT ADEQUATE.

"To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Ellis*, 657 F.3d at 985. "The Court has an obligation to 'ensure that the litigation is brought by a named Plaintiff who understands and controls the major decisions of the case.'" *Benedict v. Hewlett-Packard Co.*, 314 F.R.D. 457, 471 (N.D. Cal. 2016) (quoting *Sanchez v. Wal–Mart Stores, Inc.*, 2009 WL 1514435, at *3 (E.D. Cal. May 28, 2009)). "A plaintiff is an inadequate representative when he demonstrates a 'striking unfamiliarity' with the case such that he is incapable of 'checking the otherwise unfettered discretion of counsel in prosecuting the suit.'" *Corral v. Staples the Off. Superstore LLC*, No. 2:22-CV-01254-MCS-PVC, 2023 WL 2347445, at *6 (C.D. Cal. Feb. 6, 2023) (quoting *Welling v. Alexy*, 155 F.R.D. 654, 659 (N.D. Cal. 1994)). "[C]lass certification should not be granted if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted) (affirming denial of

[21] Section 632 also does not apply extraterritorially. *See Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 119–20 (2006) ("[T]here can be no question but that the principal purpose of section 632 is to protect the privacy of confidential communications [of] [C]alifornia residents *while they are in California* . . . .") (italics in original); *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191 (2011); *N. Alaska Salmon Co. v. Pillsbury*, 174 Cal. 1, 4 (1916) ("The presumption is that [the state] did not intend to give its statutes any extraterritorial effect."); *cf. Morrison v. Nat'l Australia Bank*, 561 U.S. 247, 248 (2010) ("When a statute gives no clear indication of an extraterritorial application, it has none.").



MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
NEW YORK

class certification where plaintiff's conduct created unique defenses).[22] Where attacks on the named plaintiff's credibility will jeopardize the interests of the class, that plaintiff cannot adequately represent the class. *Nunez v. BAE Sys. San Diego Ship Repair Inc.*, 292 F. Supp. 3d 1018, 1035 (S.D. Cal. 2017).

**A. Plaintiffs Are Not Adequate Class Representatives.**

Neither Plaintiff is an adequate class representative. Smith and Williams submitted virtually identical self-serving declarations to establish adequacy. But they cannot use sham declarations to contradict prior deposition testimony showing their lack of adequacy, striking unfamiliarity with the case, failure to understand class-representative duties, and credibility issues that jeopardize the putative classes. *Cf. Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 267 (9th Cir. 1991) ("'sham' testimony" cannot contradict earlier testimony to manufacture an issue of fact to "avoid summary judgment"); *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 544 (9th Cir. 1975) (finding that purported issues of fact raised in litigants declaration were "sham issues which should not subject the defendants to the burden of a trial").

Plaintiffs are inadequate because neither has meaningfully monitored or directed the case. Smith could not identify or describe the documents he reviewed for deposition, appeared to confuse a deposition notice with a complaint, and admitted he merely scanned materials because he had too many personal matters occupying his attention. (*See* Smith Tr. 12:17–13:23.) He apparently first received case documents only two months before his May 2026 deposition, thought the case was filed "sometime" in 2025 though it was filed in 2024, and testified that he retained counsel and signed a retainer after filing suit. (*Id*. 14:16–15:10; 16:24–17:7; 34:15–17.) Williams declares she "intend[s] to testify at trial," but testified that she is a 24-hour caregiver for her son and could not guarantee alternative care if required to travel from Victorville to San Francisco for a trial lasting up to three weeks. (Williams Decl. ¶ 8; Williams Tr. 20:23–24, 21:10–16.) Plaintiffs also do not understand their class-representative roles. Smith understood his duty to represent the class only as answering defense counsel's deposition questions. (Smith Tr. 116:2–3.) He learned for the first time at deposition that the complaints were class actions; previously, he believed his lawyers were suing only on his behalf. (*Id*. 41:6–15.) Even then, he did not understand what a class action was, believed he represented only himself, Williams, and Savage, and at one point thought he had signed

[22] "Unique defenses can go to either the typicality or adequacy of class representatives." *Petersen v. Costco Wholesale Co., Inc.*, 312 F.R.D. 565, 577 (C.D. Cal. 2016). Defendant does not concede typicality.

up for a settlement, not to be a class plaintiff. (*Id*. 31:23–32:20, 41:6–42:24, 115:11–116:14.) Williams likewise did not understand what being a class representative means, thought she was suing only for herself, confirmed she was speaking only for herself because she did not know what other class members alleged, did not know a class representative's duties, and did not think she owed duties to anyone. (Williams Tr. 79:22–80:14, 139:3–140:13.)

Neither Plaintiff has been "actively involved in this litigation." (Smith Decl. ¶ 7; Williams Decl. ¶ 7.) Williams did not recall having received a copy of the Complaint or reading it before it was filed. (Williams Tr. 27:17–28:10, 35:3–36:3.) Neither plaintiff knew many versions of the complaints were filed. (*Id*. 24:14–21; Smith Tr. 112:6–8.) Smith also admitted having failed to correct multiple incorrect allegations in the Complaint, including with respect to the notification banner on the website and the number of shoes he purchased from Defendant's website. (*Id*. at 59:7–21, 63:17–23, 65:8–18.) *See In re Quarterdeck Office Sys. Sec. Litig.*, No. CV 92-3970-DWW(GHKX), 1993 WL 623310, at *6 (C.D. Cal. Sept. 30, 1993) (finding the named plaintiffs inadequate when they were "not familiar with the changes in the various amended complaints filed on behalf of the class"). Williams did not recall reviewing interrogatory responses or signing a verification made under penalty of perjury. (Williams Tr. 86:8–24.) Smith likewise confirmed his verified denial of certain requests for admission was inaccurate.[23]

These striking admissions raise genuine concerns that Plaintiffs are merely empty vessels for advancing counsel's pecuniary interests, not the rights of the absent class members. Smith and Williams, who demonstrated "striking[] unfamiliar[ity] with [their] class representative role and how [t]his case is proceeding," do not clear the bar. *Lee v. Pep Boys-Manny Moe & Jack of Cal.*, No. 12-CV-05064-JSC, 2015 WL 9480475, at *11 (N.D. Cal. Dec. 23, 2015). *See Alberghetti v. Corbis Corp.*, 263 F.R.D. 571, 580 (C.D. Cal. 2010) (denying certification) ("One of this Court's duties 'is to ensure that the parties are not simply lending their names to a suit controlled entirely by the class attorney.'") (citation omitted), *aff'd*, 476 F. App'x 154 (9th Cir. 2012).

[23] He was asked about a Request for Admission asking him to admit that he did not preserve device data when he retained counsel on September 5, 2024. (Smith Tr. 164:10–25.) When asked why he denied that request if it was actually true that he did not preserve the data, Mr. Smith could not explain his denial. (Smith Tr. 164:24–165:6.) He ultimately conceded: "Q: So you cannot verify this response, as you sit here today, correct, as being truthful and accurate, correct? A: Correct." (Smith Tr. 165:7–10.) He also confirmed he did not preserve device data when the Complaint was filed. (Smith Tr. 165:19–22.)

Worse yet, Smith is also subject to significant credibility concerns. "[I]t is self-evident that a Court must be concerned with the integrity of individuals it designates as representatives for a large class of plaintiffs." *In re Comput. Memories Sec. Litig.*, 111 F.R.D. 675, 682 (N.D. Cal. 1986) (citing *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 549 (1949)). Smith verified an interrogatory response about Facebook IDs despite not knowing what they are. (Smith Tr. 160:2–16.) Smith also admitted that he verified a false response to a request for admission asking him to admit that he did not preserve his device data at the outset of the litigation. (*Id*. at 163:25–165:22.)

Finally, Plaintiffs are both inadequate because they failed to preserve data and devices that likely had bearing on the claims and defenses in this case. Smith testified that he did not have his MacBook Pro laptop imaged, despite identifying it as a possible alternate device. (Smith Tr. 147:22–148:11, 164:5–165:22; Tagvoryan Decl. Ex. D at No. 3.) Williams testified that she had not imaged or otherwise provided her attorneys the old HP laptop and iPhone 13 that she used in March 2024 to browse the Internet and likely Defendant's website. (Williams Tr. 36:13–38:11, 106:1–17.) She does not possess either device. (*Id*. 38:3–7, 39:6–25.) Smith and Williams owed non-delegable duties to preserve their data and devices the moment they determined that they would sue Defendant. *In re Arris Cable Modem Consumer Litig*., 327 F.R.D. 334, 358 (N.D. Cal. 2018); *see also Radio City, Inc. v. Celestron Acquisition, LLC*, No. 5:20-CV-03642-EJD, 2023 WL 5519324, at *5 (N.D. Cal. Aug. 25, 2023) ("Destroying evidence during litigation simply because counsel 'did not ask for it' is not accidental conduct; Plaintiff consciously disregarded her duties to preserve evidence."). In fact, they represented to this Court and to Defendant that they imaged and produced device data. (Tagvoryan Decl. ¶ 16.) These failures "weakens [their] evidentiary record compared to the typical class member, potentially raises credibility issues, could generate a spoliation-related instruction to the jury, and overall reinforces that [they are] atypical and inadequate representative[s] for the class." *Lineberry*, 2025 WL 1533136, at *9.

**B. Class Counsel Cannot Adequately Represent the Putative Classes.**

As Plaintiffs' counsel admitted recently: "Plaintiffs' counsel has made mistakes. They could have simplified some of the requests for production; they could have crafted those requests with a little more precision; and at times they could have done a better job assessing whether and where to make concessions." (ECF 208 at 1:2–5.) They also could have refrained from making false statements on the

record. (ECF 217.) Class counsel cannot adequately represent the classes for additional reasons.

First, class counsel is inadequate because they failed to advise Plaintiffs to preserve their devices and device data after this suit was filed. *Cf. In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. at 358 (named plaintiff not an adequate representative where he spoliated evidence by selling his modem that was relevant to the litigation). The Ninth Circuit has long established that competence of counsel is a critical criterion for class counsel adequacy. *Fendler v. Westgate–Cal. Corp.*, 527 F.2d 1168, 1170 (9th Cir. 1975); *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 416 (9th Cir. 1985); *Wrighten v. Metro. Hosps., Inc.*, 726 F.2d 1346, 1351 (9th Cir. 1984). This is because the duty to preserve evidence falls on both the lawyer and the client. *See Surowiec v. Cap. Title Agency, Inc.*, 790 F. Supp. 2d 997, 1006 (D. Ariz. 2011) ("'The preservation obligation runs first to counsel, who has 'a duty to advise his client of the type of information potentially relevant to the lawsuit and of the necessity of preventing its destruction.'" (quoting *Richard Green (Fine Paintings) v. McClendon*, 262 F.R.D. 284, 290 (S.D.N.Y. 2009))). Failing to advise clients to preserve evidence relevant to claims and defenses in the litigation indisputably is a competence issue. *Radio City, Inc. v. Celestron Acquisition, LLC*, No. 5:20-CV-03642-EJD, 2023 WL 5519324, at *4 (N.D. Cal. Aug. 25, 2023) ("Lead Counsel's failure to produce these documents in the first instance and failure to ensure that their client preserved relevant evidence during litigation is inexcusable").[24]

Additionally, counsel cannot adequately represent the putative classes. The sole active attorney from MRP Law, Christopher Reilly, is neither experienced in prosecuting class actions and complex litigation, nor acting as lead counsel for any certified class. Courts must consider four factors in appointing class counsel, including: "the work counsel has done in identifying or investigating potential claims in the action; counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; counsel's knowledge of the applicable law; and the resources that counsel will commit to representing the class[.]" FED. R. CIV. P. 23(g)(1)(A)(i)–(iv). Plaintiffs failed to submit any declarations (or any competent evidence) made under penalty of perjury addressing these mandatory factors. *See Halley v. Target Corp.*, No. SACV 17-0692 JGB (MRWX), 2024 WL 4875346, at *7 (C.D.

[24] Whether counsel was aware of the spoliation is irrelevant. *AmeriPride Servs., Inc. v. Valley Indus. Serv., Inc.*, 2006 WL 2308442 at *7 (E.D. Cal. 2006) (disregarding that "litigation counsel was unaware of the construction schedule and therefore had no way of knowing that the destruction of evidence was occurring").

Cal. Oct. 25, 2024) (noting that attorneys from each law firm "submitted declarations listing their qualifications and experience with class action litigation and indicating they will zealously represent the Class"); *Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468, 484 (C.D. Cal. 2012) (concluding that plaintiffs' co-counsel of record each independently met Rule 23(g) criteria based on submitted declarations). Each law firm must be individually adequate. *Halley*, 2024 WL 4875346, at *7; *Guido*, 284 F.R.D. at 484. Plaintiffs advance only an unauthenticated exhibit purporting to detail the ostensible qualifications of both firms. *See Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003) (arguments not raised in a party's opening brief are deemed waived). *See* also Tagvoryan Decl. ¶ 18.

## IX. A CLASS ACTION IS NOT THE SUPERIOR METHOD OF RESOLVING THE CASE.

"[T]he purpose of the superiority requirement is to assure that the class is the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (internal quotation marks omitted). As noted previously, the ascertainability (two step, Meta records process based on conjecture) and undisputed individual issues makes this case inappropriate for class treatment. "A court may not abridge or prevent a defendant from presenting a defense 'simply because that defense [would be] cumbersome to litigate in a class action.'" *Rodman v. Safeway, Inc.*, 125 F. Supp. 3d 922, 942 (N.D. Cal. 2015) (quoting *Duran v. U.S. Bank Nat'l Ass'n*, 59 Cal. 4th 1, 34 (2014)), *aff'd*, 694 F. App'x 612 (9th Cir. 2017); *see also Coleman v. Burger King Corp.*, No. 22-CV-20925, 2025 WL 3280900, at *16 (S.D. Fla. Nov. 25, 2025) (denying class certification where proposed class would create "administrative nightmares."); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 640 (S.D. Cal. 2011) (noting that "if litigated through trial, the case would be unmanageable as the court would have to engage in individual inquiries for thousands of class members"), *aff'd in part*, 473 F. App'x 716 (9th Cir. 2012). The ascertainability question alone would create an administrative nightmare.[25]

## X. CONCLUSION

Plaintiffs have failed to meet their evidentiary burden. Defendant's evidence overshadows the Plaintiffs' barebone Motion and the Court's "rigorous analysis" of the evidence and the applicable statutes and case law compel a single ruling: denial. The Court must deny Plaintiffs' motion for class certification.

[25] Moreover, because the Wiretap Act and CIPA provide sizeable statutory damages and attorneys' fees, individual litigation is a sufficient alternative to a class action. *Cohen v. Implant Innovations, Inc.*, 259 F.R.D. 617, 644 (S.D. Fla. 2008) (denying class certification where attorneys' fees were recoverable).

Respectfully submitted,

Dated: July 13, 2026

MANATT, PHELPS & PHILLIPS, LLP

By: */s/ Ana Tagvoryan*
Ana Tagvoryan

Attorneys for Defendant
RACK ROOM SHOES, INC.