**MARCUS RASHBAUM PINEIRO
& MEYERS LLP**
Michael A. Pineiro (*pro hac vice*)
Christopher R. Reilly (*pro hac vice*)
2 South Biscayne Blvd., Suite 2530
Miami, FL 33131
Telephone: (305) 400-4260
E-Mail: mpineiro@mrpfirm.com
          creilly@mrpfirm.com

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DEMETRIUS SMITH and MAIA WILLIAMS, *individually and on behalf of all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>RACK ROOM SHOES, INC.<br><br>Defendant. | Case No. 3:24-cv-06709-RFL<br><br>[*Assigned to Judge Rita F. Lin*]<br><br>PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE |

**PLAINTIFFS' RESPONSE TO THE ORDER TO SHOW CAUSE**

## **INTRODUCTION**

Plaintiffs' counsel respectfully submit this response to the Court's July 9, 2026, Order to Show Cause. At the outset, let me be clear and unequivocal. The statement in my affidavit that "[t]he ESI production omits documents that postdate September 2024" was inaccurate, and I take full responsibility for it. This response is not offered to excuse the mistake, but to explain, as candidly as I can, how it occurred and why it was the product of good faith rather than any intent to mislead the Court or to falsely accuse Defendant or for any other improper purpose.

The standard bearing on the conduct at issue is one of good faith and objective reasonableness. Sanctions premised on a court's inherent authority or bad-faith conduct require a showing that counsel "acted in bad faith, vexatiously, wantonly, or for oppressive reasons" or in "willful disobedience" of a court order. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991). Plaintiffs respectfully submit that the record here reflects a genuine, if mistaken, belief held in good faith, not the kind of vexatious or oppressive conduct that warrants a fee-shifting sanction.

## **BACKGROUND**

The mistaken averment arose from a genuine misunderstanding. The documents postdating September 2024 were produced as a supplemental production on March 6, 2026, described by counsel for Defendant as stemming from a "privilege review." Based on the parties' conferrals, I had understood the operative ESI production to have been made on February 20, 2026. Nothing within that February production extended past September 2024, and I believed that a privilege review of that production would necessarily encompass the same date range. On that understanding, I did not appreciate that the supplemental production in fact was comprised of sixty-three documents from September 2024 to on or around September 2025. That belief was mistaken, and I readily acknowledge that I did not review the supplemental production before making the averment, as I should have. But it was an honest belief, formed against the backdrop of how the productions had been described and sequenced, not a knowing misstatement.

That good faith is further reflected in the broader course of this discovery. Plaintiffs served their requests for production and interrogatories in January 2025, and over the following year the parties conferred on numerous issues. During that period, Plaintiffs filed seven discovery disputes, and they exhaustively conferred with defense counsel on a slew of issues, including the lack of

1

**PLAINTIFFS' RESPONSE TO THE ORDER TO SHOW CAUSE**

produced metadata and fulsome productions of source code and configurations. In short, Plaintiffs' concerns about the ESI production were not manufactured; they were the culmination of documented disputes over the completeness of Defendant's productions.

Plaintiffs recognize that the issues raised in the motion for sanction were inadequately conferred upon before filing, and that the notifying email was sent shortly before the motion was filed rather than well in advance. To be clear, I regret that the compressed schedule did not allow for a fuller conferral. But the timing of our motion was driven by the fast-approaching discovery deadlines; it was not, in other words, driven by any desire to distract Defendant from its opposition to the motion for class certification or for any other improper purpose.

In January and February of this year, the Court held hearings in which it expressed frustration with the pace of discovery, noting that "both sides" were "behind the mark to get your discovery done for the class certification deadline," and that "you folks are not going to get another chance to move this date." Shortly after producing discovery, Plaintiffs received a letter from Defendant in late February indicating perceived deficiencies in our productions. On or around early March, I began conferring with defense counsel to obviate these perceived deficiencies. My father passed away in mid-March. Even prior to fully returning to work, I began to again confer with defense counsel, and, during the month of April, I focused almost exclusively on remedying the perceived deficiencies in our production, spending many hours meeting with our vendors and re-downloading and re-producing social media reports that Defendant deemed inadequate. Because of my father's passing, the parties rescheduled the depositions for key employees, David Pamperin and Wayden Enciso, from mid-March to the first week of May, immediately preceding the in-person deposition of Demetrius Smith on May 6, 2026. Fact discovery closed on May 8, 2026, resulting in a motion deadline of May 15, 2026, under the Local Rules. Having focused almost exclusively on our side of the ledger prior to those depositions, I only became aware of the issues with Defendant's production shortly before the depositions. At Mr. Smith's deposition, on May 6, 2026, I indicated our intent to move to extend the discovery period by eight weeks, which would have allowed for follow-on discovery and conferrals. Defendant rejected that request.

On May 14, 2026, I itemized what I believed to be the discovery issues and extended an invitation to confer the following day. When Ms. Tagvoryan responded that she was at a funeral,

2

**PLAINTIFFS' RESPONSE TO THE ORDER TO SHOW CAUSE**

I extended condolences and offered to meet with any other member of her team. I understand, in hindsight, that these steps came too late, and I accept the Court's guidance that the meet-and-confer process should have been completed before seeking relief. I also now recognize that under the circumstances I should have followed through with seeking to move to extend the fact discovery deadline, despite Defendant's opposition, to allow the time for a meaningful conferral process.

Once again, I recognize that these circumstances do not relieve me of responsibility; they do, however, help explain how the oversight occurred in the first place despite genuine diligence.

## ARGUMENT

None of the potential sources of authority for a fee award against counsel (the Court's inherent power, 28 U.S.C. § 1927, and Rule 37) supports the imposition of sanctions on these facts.

First, under the Court's inherent power, sanctions require an "express finding that the sanctioned party's behavior 'constituted or was tantamount to bad faith.'" *Haeger v. Goodyear Tire & Rubber Co.*, 793 F.3d 1122 (9th Cir. 2015) (quoting *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 961 (9th Cir. 2006)); *see also Fink v. Gomez*, 239 F.3d 989 (9th Cir. 2001) (quoting *United States v. Stoneberger*, 805 F.2d 1391, 1393 (9th Cir. 1986)) ("A specific finding of bad faith … must precede any sanction under the court's inherent powers.").

Second, 28 U.S.C. § 1927 reaches only an attorney who "multiplies the proceedings in any case unreasonably and vexatiously." Such sanctions "must be supported by a finding of subjective bad faith," which is present only when "an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent." *Blixseth v. Yellowstone Mt. Club*, LLC, 796 F.3d 1004 (9th Cir. 2015). As the Ninth Circuit has emphasized, "[t]he key term in the statute is 'vexatiously'; carelessly, negligently, or unreasonably multiplying the proceedings is not enough." *Franco v. Dow Chem. Co.*, 611 F.3d 1027 (9th Cir. 2010).

Third, while Rule 37 does not explicitly require a finding of bad faith, the presence of good faith bears on whether an award would be "unjust" and provides "substantial justification" for not imposing sanctions or fees. *Hyde & Drath v. Baker*, 24 F.3d 1162 (9th Cir. 1994).

As explained before, there was no improper purpose behind Plaintiffs' sanctions motion. In its Order to Show Cause, the Court cited to Counsel for Defendant's statement at the July 6, 2026, hearing that Defendant was forced to spend time briefing the sanctions issues at the same

3

**PLAINTIFFS' RESPONSE TO THE ORDER TO SHOW CAUSE**

time it was preparing its Opposition to Plaintiffs' motion for class certification. Again, there was nothing tactical about the timing of Plaintiffs' motion for sanctions.  Indeed, it was Plaintiffs—not Defendant—that had to brief both motions at the same time. As reflected by the docket, the motion for sanctions was filed on May 15, 2026, to comply with the discovery schedule and Local Rules. That deadline came rather inconveniently for Plaintiffs, who were in the process of preparing their own motion for class certification, which they ultimately filed on May 29, 2026, the day it was due. Defendant's Opposition to the sanctions motion was filed on May 29th, before Plaintiffs' motion for class certification was filed later that evening.

Again, I deeply regret the mistake about the Defendant's ESI production. But the mistake was an honest, inadvertent error about the scope of a supplemental production; it was not a knowing falsehood or an effort to mislead the Court or to gain a tactical advantage.

The Court of Appeals has repeatedly vacated inherent-power sanctions where the record shows only inadvertence or ordinary negligence rather than bad faith. *See, e.g.*, *Fink*, 239 F. 3d at 992.  For example, in *Fink*, the Ninth Circuit reaffirmed that its cases "have consistently focused on bad faith," that a court "may not sanction mere 'inadvertent' conduct," and that only "[w]illful or reckless disregard of court rules justifies punitive action." *Id.* (quoting *Zambrano v. City of Tustin*, 885 F.2d 1473, 1484-85 (9th Cir. 1989)). The *Fink* court also noted that sanctions are not appropriate where "there was no evidence that the attorney had 'acted in bad faith or intended to mislead the court.'" *Id.* (quoting *Yagman v. Republic Ins.*, 987 F.2d 622, 628 (9th Cir. 1993)).

Measured against these standards, sanctions are not warranted. My mistake, the product of a genuine misunderstanding about the scope of a supplemental production amidst very difficult personal circumstances, while deeply regrettable, was done in good faith.

DATED: July 24, 2026

MARCUS RASHBAUM PINEIRO & MEYERS LLP

By:     /s/ Christopher R. Reilly
            Christopher R. Reilly

4

**PLAINTIFFS' RESPONSE TO THE ORDER TO SHOW CAUSE**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 24, 2026, a true and correct copy of the foregoing response was served on counsel for the Defendant through ECF Notification.

/s/ *Christopher R. Reilly*
Christopher R. Reilly

5

**PLAINTIFFS' RESPONSE TO THE ORDER TO SHOW CAUSE**