UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEMETRIUS SMITH, et al.,<br>Plaintiffs,<br>v.<br>RACK ROOM SHOES, INC.,<br>Defendant. | Case No. 24-cv-06709-RFL<br><br>**NOTICE OF TENTATIVE OPINION**<br>Re: Dkt. Nos. 199, 216 |

Having reviewed the briefs and evidence submitted by the parties on Plaintiffs' Motion for Class Certification, the Court is of the tentative opinion that Named Plaintiffs have failed to establish that they have Article III standing, and as a result the Court must dismiss the action.

At the class certification stage, Plaintiffs bear the burden to establish, by a preponderance of the evidence, that at least one named plaintiff has suffered an Article III injury with respect to each claim. *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1239–40 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1051 (2025). "[S]tanding is the threshold issue in any suit. If the individual plaintiff lacks standing, the court need never reach the class action issue." *NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 926 F.3d 528, 532 (9th Cir. 2019) (citation omitted). Because "the jurisdictional and merits issues are inseparable, the court must treat a factual attack on jurisdiction as a motion for summary judgment and construe disputed issues of fact in" Plaintiffs' favor. *Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1139 (9th Cir. 2024). Here, construing disputed issues of fact in Plaintiffs' favor, it does not appear that Plaintiffs have carried their burden to show Article III standing by a preponderance of the evidence.

Plaintiffs' most straightforward injury theory is that the Meta Pixel collected their

browsing activity on rackroomshoes.com. (Dkt. No. 216 at 20.)[1] However, it does not appear that Plaintiffs have shown by a preponderance of the evidence that the Meta Pixel actually captured their browsing activity on rackroomshoes.com. Plaintiffs have introduced a spreadsheet showing that the Meta Pixel captured activity on rackroomshoes.com associated with Smith's Facebook account between July and October 2021, and that the Meta Pixel captured activity on rackroomshoes.com associated with Williams's Facebook account in April 2022 and April 2023. (Dkt. No. 200-4.) However, Smith asserts that he visited rackroomshoes.com only once, in 2024, and that other activity on that website was his wife's. (Dkt. No. 219-2 at 26, 39–41, 47–48, 134–35, 142–43; Dkt. No. 200-39 ¶ 3.) Williams has submitted a declaration in support of class certification that describes only a 2024 visit to rackroomshoes.com. (Dkt. No. 200-40 ¶ 3.) In her deposition, Williams described the 2024 visit as her "first" visit to rackroomshoes.com, and when shown a record of a 2021 purchase associated with her account, she said it was not "familiar" to her. (Dkt. No. 219-3 at 35, 70–73.) She also acknowledged that her son has access to, and browses the internet from, her computer and phone with her supervision. (*Id.* at 41.) There is no evidence that the Meta Pixel collected any data from Smith's and Williams's 2024 visits. Construing Plaintiffs' testimony and other evidence in their favor, they do not appear to have established by a preponderance of the evidence that the Meta Pixel collected any data attributable to them. And of course, ostensible injuries to others using Plaintiffs' accounts cannot provide a basis for Plaintiffs' own standing.

Plaintiffs' other injury theories are more abstract. First, they argue that Rack Room's general "indiscriminate" use of third-party trackers is circumstantial evidence of actual tracking. (Dkt. No. at 216 at 17, 20.) But no reasonable factfinder could find this evidence sufficient to demonstrate that Plaintiffs' data was, in fact, collected by any tracker. The record regarding the Meta Pixel shows why: Both Plaintiffs made purchases in 2024, while the Meta Pixel was on Rack Room's website, yet there is no evidence that their data was collected by the Meta Pixel or

[1] All citations to page numbers refer to ECF pagination.

any other third-party tracker on the purchase dates. Therefore, general evidence that Rack Room deployed third-party trackers during the time period at issue does not carry Plaintiffs' burden to establish standing by a preponderance of the evidence.

As to the CIPA claims, Plaintiffs argue that they were harmed by "Rack Room['s] . . . attempt[] to read or learn the content of confidential communications," even if no information about them was actually collected. (Dkt. No. 216 at 21.)[2] Article III standing may be satisfied by a showing that "an individual plaintiff has suffered a harm that has traditionally been actionable in our nation's legal system." *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025). While the harm need not be an "exact duplicate" to the traditional harm, it must bear a "close relationship" to its historical analogue. *Id.* at 790. Plaintiffs contend that the mere presence of third-party trackers on Rack Room's website inflicts the kind of harm that would be traditionally actionable as an intrusion on seclusion, because those trackers are trying to collect Plaintiffs' data, even if they are ultimately unsuccessful. (Dkt. No. 216 at 21.)

On the factual record in this case, the mere presence of trackers—without any actual tracking—does not bear the requisite close relationship to the type of harm traditionally at issue in intrusion on seclusion. Intrusion on seclusion involves "intentional interference with [a plaintiff's] interest in solitude or seclusion, either as to [their] person or as to [their] private affairs or concerns, of a kind that would be highly offensive to a reasonable [person]." *Id.* at 791 (emphasis and citation omitted). The traditional example used in the Restatement of Torts is taking intimate photos through someone's bedroom window using a telephoto lens. *Id.* There is no evidence here that the trackers attempted to collect "embarrassing, invasive, or otherwise private information" from Plaintiffs as they visited Rack Room's website, which sells shoes. *Id.* Nor have Plaintiffs provided evidence sufficient to conclude by a preponderance of the evidence that the Meta Pixel engaged in widespread compilation of either Plaintiff's online activities into

---

[2] Plaintiffs do not appear to argue that they can establish standing with respect to the Federal Wiretap Act claim by showing an "attempted" interception. (Dkt. No. 216 at 14.)

profiles so comprehensive that they became sensitive and highly personal. *Id.* at 794; *see also id.* at 791 ("To the extent Microsoft's tracking software *could* be offensive in particular circumstances (e.g., involving sensitive medical or financial information), Popa does not plausibly allege the infringement of any such privacy interest" and thus lacks standing) (emphasis in original).

Plaintiffs argue that the California Supreme Court has extended intrusion upon seclusion to some circumstances where no information was actually collected, citing *Hernandez v. Hillsides, Inc.*, 211 P.3d 1063 (Cal. 2009). That case, however, further illustrates the gap in Plaintiffs' evidence. In *Hernandez,* two employees discovered a secret camera operating in their shared office. *Id.* at 1070. While anyone with access to a remote monitoring station could have watched or recorded the plaintiffs behind closed doors, including while changing clothes and discussing highly personal matters, it was undisputed that no one did so, and the employer had installed the camera to attempt to record an unauthorized after-hours intruder. *Id.* at 1068, 1077. The California Supreme Court acknowledged that in such settings attempts to capture video images could give rise to an intrusion even if nothing was recorded, *id.* at 1076–77, but held as a matter of law that the intrusion at issue was not highly offensive in light of the scope and motive of the surveillance. *Id.* at 1079–80. The mere presence of tracking software that fails to collect any actual information about Plaintiffs, on a website involving non-sensitive information, does not bear a "close relationship" to the harm at issue in *Hernandez*. Moreover, drawing all reasonable inferences in Plaintiffs' favor, Plaintiffs still have not shown that the mere presence of such trackers is more "highly offensive" than the intrusion in *Hernandez*.

Plaintiffs argue that false promises in Rack Room's Privacy Policy are sufficient to show that Plaintiffs' website activities were sensitive and private enough to support injury in fact. (Dkt. No. 240 at 10.) But Named Plaintiffs undisputedly did not read the Privacy Policy, and therefore could not have relied on it in forming their expectation of privacy.[3] Second, even

[3] *See* Dkt. No. 219-3 at 45 (Williams Deposition) ("Q: Have you ever read the Privacy Policy on rackroomshoes.com? A: No. I don't think so."); *Id.* at 48 ("I didn't read it"); Dkt. No. 219-2 at

assuming without deciding that knowledge of the Privacy Policy could be imputed to Named Plaintiffs, it is difficult to see how the ambiguous and contradictory language in the Privacy Policy could create an expectation that Plaintiffs' activity on Rack Room's shoe website would be treated as sensitive, notwithstanding other evidence indicating their activity on the website was not sensitive in any way. *Smith v. Rack Room Shoes, Inc.*, No. 24-cv-06709-RFL, 2025 WL 1085169, at *2–3 (N.D. Cal. Apr. 4, 2025). Ultimately, it does not appear that Plaintiffs have carried their burden to show that they have suffered the concrete injury necessary to support Article III standing.

At the hearing, each side will address the tentative opinion, and then at the end the parties will have additional time to present any additional argument that they wish the Court to hear. The parties **shall not** file written responses to this notice.

**IT IS SO ORDERED.**

Dated: September 3, 2026

RITA F. LIN
United States District Judge

56 (Smith Deposition) ("Q: Okay. Did you read Rack Room Shoes' privacy policy on the website when you visited? A: No.").