UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEMETRIUS SMITH, et al.,<br>Plaintiffs,<br>v.<br>RACK ROOM SHOES, INC.,<br>Defendant. | Case No. 24-cv-06709-RFL<br><br>**ORDER DISMISSING CLAIMS FOR LACK OF STANDING AND DENYING MOTION FOR CLASS CERTIFICATION**<br><br>Re: Dkt. Nos. 216, 220, 246 |

Plaintiffs Demetrius Smith and Maia Williams seek certification of six classes asserting claims against Defendants Rack Room Shoes, Inc. under provisions of the California Invasion of Privacy Act, Cal. Penal Code §§ 631 and 632, and the Federal Wiretap Act, 18 U.S.C. § 2511(1)(a). (Dkt. No. 216.) Plaintiffs assert that Rack Room "assisted third parties—including but not limited to Meta, Attentive, Zeta, Adobe, and Google—with intercepting the content of their private communications, including those that contained personally identifiable information." (*Id.* at 9.)[1] However, despite framing their proposed class claims exclusively around the alleged unlawful interception of class members' information, Plaintiffs conceded at oral argument on their motion that they lack any reliable evidence that their own communications were actually intercepted when they visited Rack Room's website.

In their briefs, Plaintiffs argue that they can show circumstantial evidence of interception based on Rack Room's "indiscriminate" use of third-party trackers during the class period. But their rebuttal expert recognized that many factors limit whether a third-party tracker succeeds in collecting personally identifiable information from a website visitor. For example, on the dates

[1] All citations to page numbers refer to ECF pagination.

of their visits to Rack Room's website, the record indicates that Meta's tracker was active on Rack Room's website, but obtained no personally identifiable data about their visits. The presence of a tracker is not a sufficient basis to draw a reasonable inference of actual tracking. As to their CIPA claims, Plaintiffs assert that they were harmed by the mere "attempt" to intercept their communications, regardless of whether an interception actually occurred. But Plaintiffs failed to put forward evidence from which a reasonable jury could conclude that their browsing activity on Rack Room's website was sensitive enough to make the mere presence of active third-party tracking technology on rackroomshoes.com objectively offensive, without any actual tracking. Therefore, as explained in greater detail below, Plaintiffs have failed to show that they have suffered an injury in fact sufficient for Article III standing. Therefore, the three claims for which certification is sought are **DISMISSED** without prejudice for lack of subject matter jurisdiction, and the Motion for Class Certification is **DENIED**.

## I. BACKGROUND

Named Plaintiffs, Demetrius Smith and Maia Williams, each visited and purchased shoes from rackroomshoes.com in 2024. (Dkt. No. 200-39 ¶ 3; Dkt. No. 200-40 ¶ 3.) Later that year, Plaintiffs filed this lawsuit against Rack Room, alleging that during their 2024 web visits, Rack Room enabled third parties to covertly intercept Plaintiffs' identity and interactions with the website—including the items they viewed, added to their cart, and purchased. (Dkt. No. 128 ¶¶ 7, 9.) The allegations in the operative complaint center around pixel tracking technologies used on Rack Room's website. (*See*, *e.g.*, *id.* ¶¶ 64–91, 101–109, 113–125.) Pixels are snippets of JavaScript code that are installed on a website, usually by the website owner, to track web visitor actions on the site. (Dkt. No. 200-5; Dkt. No. 219-13 ¶¶ 44–45.) The pixel may be programmed to send the information it collects directly to a third-party company, which can then link the information to broader consumer profiles. (*Id.*) For example, in certain circumstances, the Meta Pixel can link website activity to "the last Facebook account signed into th[e] device and browser" on which the activity occurred. (Dkt. No. 219-13 ¶¶ 64, 159.)

The record reflects that, between July and October 2021, the Meta Pixel[2] captured activity on rackroomshoes.com from a device and browser that was signed in to Smith's Facebook account. (Dkt. No. 200-4.) In April 2022 and April 2023, the Meta Pixel captured activity on rackroomshoes.com from a device and browser that was signed in to Williams's Facebook account. (*Id.*) As further detailed below, the record indicates that these incidents did not involve either Smith or Williams' own web activity. There is no evidence that the Meta Pixel captured browsing activity associated with Plaintiffs during their visits to or purchases on Rack Room's website. There is also no direct evidence that any other tracking technology captured any browsing activity associated with Plaintiffs.

While Plaintiffs testified that they generally believed that browsing for shoes is sensitive information (Dkt. No. 219-2 at 69; Dkt. No. 219-3 at 51–52, 64–66), Plaintiffs did not provide any specific reason why their shoe browsing and purchasing activities were especially sensitive or private. In their briefs, Plaintiffs point to rackroomshoes.com's Privacy Policy as the basis for their privacy expectations. When Plaintiffs visited the website in 2024, the Privacy Policy included the following statements:

- Rack Room Shoes collects information through cookies and beacons (as discussed below) but none of the information collected through cookies or beacons is personally identifiable.
- We also allow third party companies such as Google Analytics to place beacons, cookies or tags on our Site. Google Analytics utilizes cookies to gather information regarding use of our Site, which Google uses to generate reports for us regarding our Site.
- Rack Room Shoes may share your information [consistent with the Privacy Policy] with our website hosting partners, vendors, subcontractors, agents,

[2] While the Complaint discusses a broad range of third-party technology, the only individualized evidence that Plaintiffs have introduced to show that Smith and Williams were tracked on rackroomshoes.com are records produced by Meta. (Dkt. No. 200-4.)

> consultants and other service providers ("Service Providers") to perform functions on our behalf when such sharing is required for the Service Provider to perform their functions on our behalf or to permit us to perform our functions.

(Dkt. No. 219-15 at 4, 6.) Plaintiffs testified at their depositions that they did not read Rack Room's Privacy Policy.[3] Smith testified that "[w]hat I learned about privacy is nothing's private. We all being watched. So you can read it all you want, but if you put your information on there, . . . it's going to get shared. . . . So, no, I don't read no privacy policy because it ain't nothing private." (Dkt. No. 219-2 at 56–57.) Williams responded, "I'm not sure," when asked if Rack Room had "promise[d] to safeguard [her] information." (Dkt. No. 219-3 at 59.)

## II. LEGAL STANDARD

At the class certification stage, Plaintiffs bear the burden to establish, by a preponderance of the evidence, that at least one named plaintiff has suffered an Article III injury with respect to each claim. *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1239–40 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1051 (2025).[4] To establish Article III standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 339 (citation modified). "Standing is the threshold issue in any suit. If the individual plaintiff lacks standing,

---

[3] *See* Dkt. No. 219-2 at 56 (Smith Deposition) ("Q: Okay. Did you read Rack Room Shoes' privacy policy on the website when you visited? A: No."); Dkt. No. 219-3 at 45 (Williams Deposition) ("Q: Have you ever read the Privacy Policy on rackroomshoes.com? A: No. I don't think so."); *Id.* at 48 ("I didn't read it.").

[4] At oral argument on their motion, Plaintiffs asserted that they were entitled to rely on "uncontroverted allegations" in their complaint to support Article III standing at the class certification stage. Plaintiffs' standing allegations are contested. And even if they were not, the Ninth Circuit's decision in *DZ Reserve* forecloses this argument. 96 F.4th at 1240 ("[A]lthough standing may be established at the pleading stage through allegations in the complaint, . . . standing at the time of class certification *must* be established by a preponderance of the evidence.") (emphasis added).

the court need never reach the class action issue." *NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 926 F.3d 528, 532 (9th Cir. 2019) (citation modified).

Courts handle factual challenges to standing differently depending on whether they are intertwined with the merits. When "the question of standing is dependent on the resolution of factual issues going to the merits of the action," then the jurisdiction and merits issues are "intertwined." *Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1144 (9th Cir. 2024). (citation modified). In that situation, "the court must treat a factual attack on jurisdiction as a motion for summary judgment and construe disputed issues of fact" in favor of the party seeking to establish jurisdiction. *Id.* at 1139. Thus, courts apply the same standards applicable on summary judgment to any issue on which the plaintiff bears the burden of proof: that is, the plaintiff must provide "evidence from which a reasonable jury could return a verdict in [their] favor." *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 854 (9th Cir. 2019). On the other hand, when standing is not inseparable from the merits, "a district court faced with a factual challenge to its exercise of jurisdiction may resolve disputed facts as to purely jurisdictional questions." *Bowen*, 118 F.4th at 1139.

## III. DISCUSSION

### A. Plaintiffs Lack Article III Standing

Construing disputed issues of fact in Plaintiffs' favor, Plaintiffs have not proffered evidence from which a reasonable jury could find, under a preponderance of the evidence standard, that Plaintiffs have suffered an injury that would confer Article III standing on them. Plaintiffs have two injury theories: one based on the actual interception of their information, and one based on the attempt to intercept their information. Each is considered in turn.

#### 1. Interception Injury Theory

Plaintiffs' most straightforward injury theory is that the Meta Pixel collected their personally identifiable browsing activity on rackroomshoes.com. (Dkt. No. 216 at 20.) Whether such an interception did or did not occur is a factual issue that goes to the merits of the action, requiring disputed issues of fact to be resolved in Plaintiffs' favor at to each claim. *Bowen*, 118

F.4th at 1145. However, resolving all such disputes in their favor, Plaintiffs have not introduced evidence that the Meta Pixel actually captured their browsing activity on rackroomshoes.com.

Regarding Smith, the spreadsheet shows that the Meta Pixel collected information of visits to rackroomshoes.com in 2021. (Dkt. No. 200-4.) But Smith consistently testified that he visited rackroomshoes.com only once, in 2024, and that all other activity on that website was his wife's, presumably visiting from a browser that was signed in to Smith's Facebook account. (Dkt. No. 219-2 at 39–40, 47–48, 125, 134–36; Dkt. No. 200-39 ¶ 3.) Therefore, there is no evidence that Smith's single visit to the website in 2024 was tracked by the Meta Pixel.

Williams has likewise submitted a declaration in support of class certification that describes only a single 2024 visit to rackroomshoes.com. (Dkt. No. 200-40 ¶ 3.) In her deposition, Williams described the 2024 visit as her "first" visit to rackroomshoes.com, and when shown a record of a 2021 purchase associated with her Rack Room account, she said it was not "familiar" to her. (Dkt. No. 219-3 at 35, 70–73.) Williams has submitted no testimony or other evidence that she visited or made purchases from rackroomshoes.com in April 2022 or April 2023, when the spreadsheet shows that the Meta Pixel recorded browsing activity associated with her Facebook account. (Dkt. No. 200-4.) Williams also acknowledged that her son has access to, and browses the internet from, her computer and phone with her supervision. (Dkt. No. 219-3 at 41.)

In sum, and as Plaintiffs acknowledged at oral argument, there is no evidence that the Meta Pixel collected any data from Smith's and Williams's 2024 visits to rackroomshoes.com, nor is there evidence that the activity that was recorded in 2021, 2022, and 2023 was Plaintiffs' own browsing activity. And, of course, ostensible injuries to others using a browser that was signed in to Plaintiffs' accounts cannot provide a basis for Plaintiffs' own standing.

Alternatively, Plaintiffs argue that Rack Room's general "indiscriminate" use of third-party trackers is circumstantial evidence of actual tracking. (Dkt. No. at 216 at 17, 20.) Rack Room acknowledged in its answer that it uses third-party tracking tools, and Plaintiffs have submitted internal Rack Room records indicating that some third-party trackers were in use

during some portions of the putative class period. (Dkt. No. 240 at 3–7 (citing record evidence); *see also*, *e.g.*, Dkt. No. 175 ¶ 66; Dkt. No. 200-6 (Rack Room Shoe's Meta Pixel activity chart for April 29, 2025–May 26, 2025); Dkt. No. 200-38 (internal email sent from Rack Room email address in 2023 stating "[w]e use Facebook pixel extension").) But no reasonable factfinder could find this evidence sufficient to demonstrate that Plaintiffs' own data was, in fact, collected by any tracker in a personally identifiable manner.

As Rack Room's expert, James Vint, explains, a third-party tracker's ability to collect and transmit information in a manner that can be linked to the website user is impacted by many factors, including the browser being used, whether the browser and device are signed in to a social media account, and what cookie blocking features are enabled. (221-5 ¶¶ 127–160.) Plaintiffs' rebuttal expert also acknowledges these factors may result in third-party tracks failing to collect personally identifiable browsing information. (Dkt. No. 240-1 ¶¶ 41–52.) In short, there is no material dispute that the presence of a third-party tracker does not automatically result in the collection and transmission of personally identifiable information to a third party. The record evidence regarding the Meta Pixel is illustrative of this point: Both Plaintiffs made purchases in 2024, while the Meta Pixel was on Rack Room's website, yet there is no evidence that their data was collected by the Meta Pixel on the purchase dates. Therefore, the mere fact that Plaintiffs visited rackroomshoes.com once in 2024 does not raise the inference that their browsing activity was captured.

Drawing all reasonable inferences in Plaintiffs' favor, they do not present evidence from which a reasonable jury could find that a third-party tracker collected any data attributable to them from rackroomshoes.com.

**2. Attempt Injury Theory**

As to the CIPA claims, Plaintiffs argue that they were harmed by "Rack Room['s] . . . attempt[] to read or learn the content of confidential communications," even if no information

about them was actually collected.[5] (Dkt. No. 216 at 21.) Article III standing may be satisfied by a showing that "an individual plaintiff has suffered a harm that has traditionally been actionable in our nation's legal system." *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025). While the harm need not be an "exact duplicate" to the traditional harm, it must bear a "close relationship" to its historical analogue. *Id.* at 790. Plaintiffs contend that the mere presence of active third-party trackers on Rack Room's website inflicts the kind of harm that would be traditionally actionable as an intrusion on seclusion, because those trackers are trying to collect Plaintiffs' data, even if they are ultimately unsuccessful. (Dkt. No. 216 at 21–22; *see also* Dkt. No. 240-1 ¶¶ 52, 59 (Plaintiffs rebuttal expert explaining that "anytime a user visits a webpage, the server attempts to transmit data and instructions based on its own instructions," and "all users when first opening a website are given the same potential capabilities from the onset, as well as all of the third-party code necessary to provide those functions").

Plaintiffs have not carried their burden of raising a material dispute of fact as to injury on this theory. On the factual record in this case, the mere presence of active trackers—without any actual tracking—does not bear the requisite close relationship to the type of harm traditionally at issue in intrusion on seclusion. Intrusion on seclusion involves "intentional interference with [a plaintiff's] interest in solitude or seclusion, either as to [their] person or as to [their] private affairs or concerns, of a kind that would be highly offensive to a reasonable [person]." *Popa*, 153 F.4th at 791 (emphasis omitted and citation modified). The traditional example used in the Restatement of Torts is taking intimate photos through someone's bedroom window using a telescopic lens. *Id.* There is no evidence here that the trackers attempted to collect "embarrassing, invasive, or otherwise private information" from Plaintiffs as they visited Rack Room's website, which sells shoes. *Id.* Nor have Plaintiffs provided evidence sufficient to support a preponderance of the evidence conclusion that the Meta Pixel engaged in widespread

[5] Plaintiffs do not argue that an attempted interception would be a cognizable injury for purposes of their Federal Wiretap Act claim. (Dkt. No. 216 at 14, 20–22.) However, even if they had, the same reasoning would apply to that claim as to the CIPA claims, for the same reasons.

compilation of either Plaintiff's online activities into profiles so comprehensive that they became sensitive and highly personal. *Id.* at 794; *see also id.* at 791 ("To the extent Microsoft's tracking software *could* be offensive in particular circumstances (e.g., involving sensitive medical or financial information), Popa does not plausibly allege the infringement of any such privacy interest" and thus lacks standing) (emphasis in original).

Plaintiffs argue that the California Supreme Court has extended intrusion upon seclusion to some circumstances where no information was actually collected, citing *Hernandez v. Hillsides, Inc.*, 211 P.3d 1063 (Cal. 2009). That case, however, further illustrates the gap in Plaintiffs' evidence. In *Hernandez,* two employees discovered a secret camera operating in their shared office. *Id.* at 1070. While anyone with access to a remote monitoring station could have watched or recorded the plaintiffs behind closed doors, including while changing clothes and discussing highly personal matters, it was undisputed that no one did so, and the employer had installed the camera to attempt to record an unauthorized after-hours intruder. *Id.* at 1068, 1077. The California Supreme Court acknowledged that in such settings attempts to capture video images could give rise to an intrusion even if nothing was recorded, *id.* at 1076–77, but held as a matter of law that the intrusion at issue was not highly offensive in light of the scope and motive of the surveillance. *Id.* at 1079–80. The mere presence of active tracking software that fails to collect any actual information about Plaintiffs, on a website involving objectively non-sensitive information, does not bear a "close relationship" to the harm at issue in *Hernandez*. Moreover, drawing all reasonable inferences in Plaintiffs' favor, Plaintiffs still have not shown that the mere presence of such trackers is more "highly offensive" than the intrusion in *Hernandez*.

Plaintiffs argue that false promises in Rack Room's Privacy Policy are sufficient to show that Plaintiffs' website activities were sensitive and private enough to support injury in fact. (Dkt. No. 240 at 10–11.) But Plaintiffs undisputedly did not read the Privacy Policy, and therefore could not have relied on it in forming their expectation of privacy. Second, even assuming without deciding that knowledge of the Privacy Policy could be imputed on Plaintiffs, it is difficult to see how the ambiguous language in the Privacy Policy could create an

expectation that Plaintiffs' activity on Rack Room's shoe website would be treated as sensitive. For example, the Privacy Policy says that *Rack Room* does not use cookies to collect personally identifiable information, but discloses that third parties are permitted to collect information using cookies—without specifying whether the collected information is personally identifiable. (Dkt. No. 219-15 at 4, 6.) The Privacy Policy also permits Rack Room to share users' information with service providers "to perform their functions on our behalf or to permit us to perform our functions." (*Id.*); *Smith v. Rack Room Shoes, Inc.*, No. 24-cv-06709-RFL, 2025 WL 1085169, at *2 (N.D. Cal. Apr. 4, 2025) (describing ambiguities in Rack Room's privacy policy). Such privacy commitments are insufficient to create the heightened expectation of privacy that would need to exist to give rise to a cognizable injury based on an attempted collection alone, especially given the lack of any evidence that Plaintiffs' activity on the website was objectively or subjectively very sensitive.

In sum, even drawing all reasonable inferences in Plaintiffs' favor, Plaintiffs do not present evidence from which a reasonable jury could find that they suffered a cognizable injury under this theory.[6]

## IV. CONCLUSION

Because Plaintiffs have not met their burden of showing that they have standing as to the claims on which they move for class certification—the Federal Wiretap Act claim and CIPA Section 631 and Section 632 claims—those claims are **DISMISSED** without prejudice. Fed. R. Civ. P. 12(h)(3); *NEI*, 926 F.3d at 532. The Motion for Class Certification (Dkt. No. 216) is **DENIED**. Rack Room's Administrative Motion for Leave to file a Surreply (Dkt. No. 246) is

[6] All reasonable inferences must be drawn in Plaintiffs' favor as to their Section 632(a) claim. The standing inquiry is intertwined with the merits as to that claim, because the claim requires proof that the communications at issue were "confidential." Cal. Penal Code § 632(a). By contrast, as to Plaintiffs' Section 631(a) claim, Plaintiffs conceded at the hearing, and the Court agrees, that the standing inquiry is distinct from the merits of that claim, which does not require any showing that the communications at issue were private. Cal. Penal Code § 631(a). Thus, as to Section 631(a), the Court must resolve any disputed issues of fact and assess whether Plaintiffs have shown the requisite injury in fact. However, this difference is immaterial here, because as noted above, Plaintiffs have failed their burden under either standard.

**GRANTED** because Rack Room is entitled to respond to the new evidence introduced by Plaintiffs on reply, and Rack Room's objection to Plaintiffs' reply evidence (Dkt. No. 244) is overruled. Because the Expert Report of Anya Verkhovskaya was not material to the determination that Plaintiffs lacked standing, Defendants' Motion to Strike (Dkt. No. 220) is **DENIED AS MOOT**. The parties shall submit a proposed case schedule by **October 19, 2026**, as the two remaining individual claims asserted in the Third Amended Complaint under Cal. Penal Code § 502 and for common law invasion of privacy.

**IT IS SO ORDERED.**

Dated: September 21, 2026

RITA F. LIN
United States District Judge